**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

QUEST DIAGNOSTICS INVESTMENTS LLC,

Plaintiff,

v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS, ESOTERIX, INC., and
ENDOCRINE SCIENCES, INC.,

Defendants.

C.A. No. 18-1436 (MN)

**LETTER TO THE HONORABLE MARYELLEN NOREIKA
FROM KENNETH L. DORSNEY**

*Of Counsel*:

Adam R. Gahtan
Kevin X. McGann
Eric M. Majchrzak
Fenwick & West LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: 212.430.8500
Email:     agahtan@fenwick.com
kmcgann@fenwick.com
emajchrzak@fenwick.com

Melanie L. Mayer
Elizabeth B. Hagan
Fenwick & West LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Email:     mmayer@fenwick.com
ehagan@fenwick.com

Dated: July 30, 2019

Kenneth L. Dorsney (#3726)
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302.888.6800
kdorsney@morrisjames.com

*Attorney for Plaintiff
Quest Diagnostics Investments LLC*

# Morris James LLP

Kenneth L. Dorsney
302.888.6855
kdorsney@morrisjames.com

July 30, 2019

**VIA EFILING and HAND DELIVERY**
The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street, Unit 19
Wilmington, DE 19801-3555



> **RE:** ***Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings, et al.,*** **No. 18-1436-MN (D. Del.)**

Your Honor:

Plaintiff Quest respectfully requests an order compelling Defendants ("LabCorp") to respond to certain Quest interrogatories. Counsel met and conferred on May 22, 2019 pursuant to L.R. 7-1.1. and Quest continued to try to resolve matters thereafter, but the parties remain unable to resolve the following disputes.

## I.   BACKGROUND

On September 17, 2018, Quest filed its Complaint asserting four patents relating to the use of mass spectrometry to detect and quantitate vitamin D and testosterone. (D.I. 1.) LabCorp answered on November 21, 2018. (D.I. 11.) Quest amended its answer to LabCorp's counterclaims on May 8, 2019, to add, *inter alia,* assignor estoppel. (D.I. 46.)

Quest served its interrogatories on February 4, 2019. Six months after receiving the interrogatories, LabCorp has still neither supplemented its original responses (Ex. A), which failed to provide *any* response to nearly half of the interrogatories, *i.e.*, Interrogatory Nos. 5, 6, 9, 10, and 11 (*see* Ex. A at 13-14, 15, 19-21), nor provided any assurances that it will do so despite Quest's repeated requests as reflected in the parties' correspondence (attached as Exhibits B-G).

It is stonewalling to rely on objections, with no substantive responses, six months after service of the requests. *See, e.g., Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, No. 8:13-cv-01880, D.I. 134 (C.D. Cal. Jan. 9, 2018) (Ex. I). A responding party has a continuing obligation to supplement its responses in a timely manner. Fed. R. Civ. P. 26(e). Where a party has failed to make disclosures or cooperate in discovery, the requesting party may move for an order compelling discovery pursuant to Rule 37.

Although responses are long overdue for all the interrogatories, to reduce the burden on the Court, Quest focuses on a few of the most important ones here.

## II.   QUEST'S MOTION TO COMPEL

### A.   Interrogatory No. 5:

Interrogatory No. 5 seeks the bases for LabCorp's contention that its accused tests do not infringe the asserted claims of the patents-in-suit. LabCorp objected to the interrogatory as

The Honorable Maryellen Noreika
July 30, 2019
Page 2



seeking privileged information and as premature because it seeks (1) "full contentions before any
adequate discovery has taken place;" (2) "non-infringement positions before Quest . . .
provid[ed] its infringement contentions;" and (3) "information subject to expert discovery."
(Ex. A at 13.)[1]  LabCorp has had Quest's infringement contentions since April 12, 2019, which
should have given it more than enough time to formulate at least *some* response to this
interrogatory, but, to date, it has failed to do so, despite this Court's order that "encourages the
parties to serve and respond to contention interrogatories early in the case."  (D.I. 18, ¶ 8(d)(ii).)

     Moreover, in its answer, affirmative defenses, and counterclaims, LabCorp has stated that
it has non-infringement positions with respect to each asserted patent.  These positions are not
privileged, and they are relevant to claim construction, among other issues.  It is reasonable for
Quest to know them now, especially with the first claim construction exchange scheduled for
August 23, 2019.  (D.I. 18, ¶ 11.)

     On Friday, July 26, 2019, LabCorp suggested it "expects" to supplement its response to
Interrogatory No. 5 "by August 9, 2019."  (Ex. G at 8.)  Because LabCorp has made similar
representations before (*see*, *e.g.*, Ex. D at 2), without following through, Quest believes that the
Court's intervention is required.

**B. Interrogatory No. 7**

     Interrogatory No. 7 seeks information necessary for Quest to support its assignor estoppel
defense based on inventor-assignor Brett Holmquist's role at LabCorp after leaving Quest:  the
nature of the projects on which he worked, as well as his "role in each project."  (Ex. A at 17.)
During the meet and confer process, Quest also explained that this interrogatory is limited to
projects concerning mass spectrometry testing of testosterone and vitamin D.  (*See, e.g.*, Ex. F at
2.)  The interrogatory is tailored to discover information that is highly relevant to assignor
estoppel.  (D.I. 43 at 1-2.)

     To date, LabCorp has provided only the titles that Dr. Holmquist has held at LabCorp, the
dates for which he held them, and indicated that ███████████████████████████████████
████████████████████████████████████████████████████████████████████████████  (Ex. A
at 17; Ex. E at 2.)  This is insufficient.  Dr. Holmquist's involvement in the development and
practice of the accused Vitamin D tests is central to establishing privity for assignor estoppel.
(D.I. 43 at 2.)  LabCorp's refusal to provide any further response is particularly troubling in light
of LabCorp's objections to Quest's proposed search terms directed to the same subject matter,
and its refusal, to date, to provide even "hit" counts for such search terms or identify Dr.
Holmquist's email address, despite Quest's repeated inquiries.  (Ex. H at 1, 3.)  LabCorp should
supplement its response to provide the requested information.

     On Friday, July 26, 2019, LabCorp suggested it "expects" to supplement its response to
Interrogatory No. 7 "by August 9, 2019."  (Ex. G at 8.)  LabCorp, however, has made similar

---

[1]    As another attempt to avoid its obligation under Federal Rule of Civil Procedure 33 to timely
respond to Quest's discovery requests, LabCorp proposed during the parties' meet and confer
that the parties "discuss[ ] an agreed schedule for each party to rebut the other's disclosures."
(Ex. E at 2.)  LabCorp cannot unilaterally avoid its discovery obligations by suggesting an
amended schedule.

The Honorable Maryellen Noreika
July 30, 2019
Page 3



representations before (*see*, *e.g.*, Ex. D at 2 ("LabCorp said it will provide a response . . . by May 31, 2019")), but has not yet done so. Quest therefore believes it still requires the Court's intervention to receive a response to this interrogatory.

### C.  Interrogatory No. 10

Interrogatory No. 10 asks whether LabCorp believes "there are any non-infringing alternatives" for the accused tests. (Ex. A at 20-21.) To date, LabCorp has refused to provide *any* response because it contends it is a "rebuttal" interrogatory and, pursuant to the Scheduling Order, Quest must first provide its position on damages. (*Id.*) This argument is meritless.

To take meaningful discovery about tests that LabCorp might assert are non-infringing equivalents, Quest needs LabCorp at least to identify such tests. This information is solely within LabCorp's possession and, moreover, LabCorp has had Quest's infringement contentions for months. LabCorp is fully capable of answering Interrogatory No. 10 without reference to Quest's position on damages, and should be required to do so.

### D.  Interrogatory No. 11

Interrogatory No. 11, which asks LabCorp to "[i]dentify any tests that are or typically are performed or ordered in conjunction with any one of the" accused tests, seeks threshold information related to convoyed sales that is solely within LabCorp's possession. (Ex. A at 21-22, Ex. D at 5-6.) Despite Quest's request for LabCorp to answer this interrogatory (Ex. B at 2 and Ex. D at 5-6), LabCorp has provided no substantive response (Ex. F at 3). Contrary to LabCorp's assertions, this is not a contention interrogatory; it seeks *facts* uniquely in LabCorp's possession that are necessary for Quest to develop and present its case for damages.

Convoyed sales are relevant to the reasonable royalty analysis. *See, e.g.*, *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) (explaining that inclusion of bundling and convoyed sales in the royalty rate and royalty base was proper); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 432-33 (D. Del. 2007) (explaining that convoyed sales occur when the sale of an infringing product "is likely to cause the sale of another," and "may be used in determining a reasonable royalty rate"). Quest's interrogatory, which includes a request to identify such additional tests and the frequency with which they are ordered or performed in conjunction with the accused tests seeks simply seeks *facts* that would support a convoyed sales analysis.

On Friday, July 26, 2019, LabCorp suggested it would provide documents responsive to this interrogatory by the substantial completion of document production (August 23, 2019) "unless LabCorp's investigation reveals that the burden to collect and review such information would be undue." (Ex. G at 9.) This response, provided months too late, commits to nothing and is therefore insufficient.

### III.  CONCLUSION

For the foregoing reasons, Quest respectfully requests that the Court order LabCorp to respond to Quest's Interrogatory Nos. 5, 7, 10, and 11.

The Honorable Maryellen Noreika
July 30, 2019
Page 4



                                            Respectfully submitted,

                                            */s/ Kenneth L. Dorsney*

                                            Kenneth L. Dorsney (#3726)
                                            kdorsney@morrisjames.com

cc:  All counsel of record (via electronic mail)

# EXHIBIT   A

# REDACTED IN ITS ENTIRETY

# EXHIBIT  B

HIGHLY CONFIDENTIAL



FENWICK & WEST LLP

902 BROADWAY, SUITE 14   NEW YORK, NY 10010-6035

TEL 212.430.2600   WWW.FENWICK.COM

ERIC MAJCHRZAK

April 30, 2019

EMAIL EMAJCHRZAK@FENWICK.COM
Direct Dial + 1 212 430-2689

**VIA E-MAIL**

Olivia Kim
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Suite 1550
Los Angeles, CA 90071
okim@wsgr.com

Re:   *Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings, et al.*, No. 18-cv-01436-MN (D. Del.)
<u>LabCorp's Discovery Responses</u>

Dear Olivia:

We write regarding deficiencies in Laboratory Corporation of America Holdings', Esoterix, Inc.'s, and Endocrine Sciences, Inc.'s (collectively, "LabCorp") Responses and Objections to Quest Diagnostics Investments LLC's First Set of Interrogatories (Nos. 1-11) ("LabCorp's Interrogatory Responses") and Responses and Objections to Quest Diagnostics Investments LLC's First Set of Requests for Production of Documents, ESI, and Things (Nos. 1-64) ("LabCorp's Production Responses").

Please provide the information requested in the letter below by May 9, 2019 or let us know when LabCorp is available for a meet-and-confer on these issues.

**<u>LabCorp's Interrogatory Objections and Responses</u>**

**LabCorp's Objections Violate the Federal Rules**

As a preliminary matter, LabCorp's objections violate the Federal Rules of Civil Procedure due, in part, to their lack of specificity. The Federal Rules require that the "grounds for objecting to an interrogatory must be stated with specificity," Fed. R. Civ. P. 33(b)(4), but LabCorp's objections provide none. As an example, LabCorp's objection to Interrogatory 4 reads:

1

HIGHLY CONFIDENTIAL

> In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this interrogatory to the extent it seeks information that is protected by attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection. LabCorp further objects to this interrogatory to the extent it is vague and ambiguous as to the scope of the interrogatory. LabCorp also objects to the interrogatory to the extent that it seeks information that is not relevant to any claim or defense at issue in this case or not proportional to the needs of the case. LabCorp additionally objects to the interrogatory under D. Del. LR 26.1 as containing separate subparts that should each be counted as a separate interrogatory or request.

(LabCorp's Interrogatory Responses, at 12.)  Instead of specific objections, LabCorp suggests the possibility of objections, *i.e.*, "*to the extent* it seeks information that is protected by attorney-client privilege," "*to the extent* it is vague and ambiguous," or "*to the extent* that it seeks information that is not relevant to any claim or defense." (*Id.* (emphases added).)  LabCorp fails to identify a single vague and ambiguous, irrelevant, or privileged aspect of the Interrogatory.  Please confirm that LabCorp will provide suitable specificity in its objections as to *every* interrogatory or Plaintiff will assume that LabCorp waives its right to make any such objections.

Separately, on multiple occasions, LabCorp objected because the interrogatory sought "full contentions before any adequate discovery has taken place," "LabCorp's non-infringement positions before Quest . . . provid[ed] its infringement contentions," and information subject to "expert discovery."  (*See*, *e.g.*, LabCorp's Interrogatory Responses, at 13, 15, 19, 21.)  These objections are inappropriate.  Under Federal Rule 26(e)(1), a party "who has responded to an interrogatory . . . must supplement or correct its disclosure response."  The Federal Rules therefore require LabCorp to provide answers to each interrogatory based on its current knowledge and then provide updated responses as further information comes available.  Please confirm that LabCorp is not withholding any responses based on these objections.  To the extent LabCorp was relying on these objections, please confirm that LabCorp will provide updated interrogatory responses promptly.

**LabCorp's Responses Are Inadequate or Missing Altogether**

Federal Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  LabCorp violated this rule by providing *no* response to nearly half of Quest's Interrogatories, *i.e.*, **Interrogatory Nos. 5, 6, 9, 10, and 11**.  Please provide full responses to each interrogatory immediately.

The responses that LabCorp did provide are inadequate.  In response to **Interrogatory No. 1**, for example, LabCorp provides no information regarding testing performed by Endocrine Sciences, Inc.  Public information, however, makes it clear that Endocrine Sciences, Inc. performs relevant testing.  (*See*, *e.g.*, Endocrine Sciences, *Testosterone, Total and Free*, available at: https://www.endocrinesciences.com/test-menu/45446/testosterone-total-and-free.)  Moreover, the information provided is incomplete.  For example, a LabCorp brochure describes Test No. 500116 as an "HPLC/MS-MS" method for "Vitamin D, 25-Hydroxy" (*see*, *e.g.*, LabCorp, *Evaluating Vitamin D Metabolism Using HPLC/MS-MS*, available at:

2

http://testmenu.labcorp.com/sites/default/files/Vitamin%20D%20by%20Mass%20Spectrometry_2.pdf), but LabCorp does not refer to Test No. 500116 in its interrogatory response.  Please update LabCorp's response to Interrogatory No. 1 immediately, including by providing a *full* list of relevant tests.

For **Interrogatory No. 8**, LabCorp's response points to a single document: LC00001196-LC00002000.  Please response to Interrogatory No. 8 immediately with information sufficient to determine gross and net revenues, reimbursements, volume of testing, costs, expenses, profits, and individuals with knowledge of this information.

### LabCorp's Request for Production Objections and Responses

**Request for Production Nos. 2, 4, and 5** seek information regarding LabCorp's knowledge of and actions concerning the Patents-in-Suit.  LabCorp responded to these Requests by stating it "has not identified any opinions of counsel on which it will rely in this case" and that "[i]f and when LabCorp so elects, it will produce responsive, non-privileged opinion(s) of counsel[.]"  These responses sidestep the specific Requests and contravene the Federal Rules.  First, the Requests seek a variety of information concerning LabCorp's knowledge and actions regarding the Patents-in-Suit, not just opinions that LabCorp intents to rely on in this case.  LabCorp must produce *all* the information requested in Request for Production Nos. 2, 4, and 5 or, if privileged, log it in its privilege log.  Second, LabCorp's suggestion that it will produce responsive, non-privileged information only if it "so elects" is improper under the Federal Rules.  LabCorp cannot pick and choose what information it will disclose.  Please confirm that LabCorp will comply with its obligations under the Federal Rules and that it will produce *all* documents, ESI, and things that are responsive to these Requests.

**Request for Production No. 3** seeks information "concerning infringement or non-infringement of any claim of the Patents-in-Suit."  LabCorp responded that it already "has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s)," without any statement regarding its continuing obligations to produce further information in response to discovery requests and otherwise.  The scope of documents, ESI, and things responsive to this Request is broader than LabCorp's first, incomplete production.  Please confirm that LabCorp will produce *all* documents, ESI, and things responsive to this Request.

HIGHLY CONFIDENTIAL

**Request for Production Nos. 7, 8, 9, and 10** request information concerning the testing methods associated with the Accused Testosterone and/or Vitamin D Tests. Rather than agree to produce this relevant information, LabCorp said it already "has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s)." These responses suggest that LabCorp does not intend to produce any further information concerning the Accused Testosterone and/or Vitamin D Tests. This is inappropriate. As described in an April 4, 2019 letter to Olivia Kim, for example, LabCorp's initial production (*see* LC00000001-LC00001200) is deficient for several reasons and LabCorp's second production (*see* LC00001201-LC00001612) does not fully remedy those deficiencies. Moreover, further discovery will likely reveal additional deficiencies. Please confirm that LabCorp will produce further documents, ESI, and things responsive to these Requests.

**Request for Production Nos. 15 and 16** ask for information "relating to any litigation, investigations, or administrative proceedings regarding LabCorp's performance" of the Accused Testosterone and/or Vitamin D Tests. Based on general, non-specific objections, LabCorp states that it "will not conduct a search for documents responsive to th[ese] request[s]." Specifically, LabCorp objects to the Requests as overbroad and burdensome because they seek "all documents, ESI, and things," as "irrelevant" and "not proportional to the needs of the case" for an unidentified reason, premature under an unnamed portion of the Default Standard Discovery, and directed toward privileged information, again, for an unspecified reason. This is inappropriate. Federal Rule 34(b)(2)(B) requires that a response "either state that inspection and related activities will be permitted as requested or state *with specificity* the grounds for objecting to the request, including the reason." (emphasis added). Given the lack of specificity in LabCorp's objections, Plaintiff assumes there is no basis to withhold such information. Please therefore confirm that LabCorp will produce documents, ESI, and things responsive to these Requests.

**Request for Production Nos. 26 and 27** ask for information "relating to any comparisons of the Accused [Testosterone and/or Vitamin D Tests] to any other product or testing method." As with Requests 3 and 7-10, LabCorp dodged these specific Requests and stated that it already "has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s)." As with Requests 3 and 7-10, these responses with respect to Requests 26 and 27 are inappropriate. The "produced core technical documents" do not relate to comparisons between the Accused Testosterone and/or Vitamin D Tests and other testing methods. That earlier, incomplete production is irrelevant to these Requests. Under the Federal Rules, LabCorp has a duty to produce such responsive comparisons. Please therefore confirm that LabCorp will produce documents, ESI, and things responsive to Requests 26 and 27.

**Request for Production Nos. 28, 29, 30, 31, 34, and 35** seeks relevant information concerning the sales of the Accused Testosterone and Vitamin D Tests. In response, LabCorp suggests that it has already satisfied its obligations with respect to the Requests due to the production of a single spreadsheet. That is wrong. The Requests seek relevant information not included in the spreadsheet, *e.g.*, "gross and net income" and "unit sales, revenue, . . . and profits." Moreover, the requested information – *e.g.*, "volume of the Accused [Testosterone and/or Vitamin D] Tests performed by LabCorp in the United States" – is undecipherable from the information already

4

HIGHLY CONFIDENTIAL

produced. ███████████████████████████████████████████████
███████████████████████████████████████████████████████████ Finally, LabCorp cannot satisfy its obligations with respect to these Requests by providing only its own distillation of the requested information. The Requests seek the underlying information itself, *e.g.*, the documents underlying the numbers provided in LC00001196-LC00001200. Please confirm that LabCorp will produce *all* documents, ESI, and things responsive to these Requests.

**Request for Production Nos. 44 and 45** seek "documents, ESI, and things relating to LabCorp's activities in the research, development, manufacture, testing, marketing, use, sale, or patenting of mass spectrometry-based [testosterone/vitamin D] tests." In response, LabCorp notes that it *already* "has produced core technical documents related to the accused method(s) and/ product(s) sufficient to show how the accused method(s) and/or product(s) work(s)" and "documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s)." LabCorp also suggests that it *will* produce "documents sufficient to identify any of LabCorp's patents relating to the accused method(s) and/or product(s)." These responses ignore requested information. For example, none of the documents LabCorp already produced or promised to produce describe the development or marketing of the Accused Testosterone and/or Vitamin D tests. Please confirm that LabCorp will produce documents consistent with the entire scope of these Requests.

**Request for Production Nos. 46, 47, 50, and 51** seek information comparing the Accused Testosterone and/or Vitamin D Tests to other mass spectrometry testing methods. Such information is relevant and tailored specifically to the needs of this litigation (*i.e.*, it seeks information concerning only the Accused Tests). LabCorp's refusal to search for and produce such information is improper. Please confirm that LabCorp will produce documents relevant to these Requests.

**Request for Production Nos. 48 and 49** seek "[a]ll laboratory notebooks describing the research and development of the" Accused Testosterone and Vitamin D Tests. In response, LabCorp stated that it already "has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s)." LabCorp's production to date, however, includes only standard operating procedures and validation reports. LabCorp has not produced any laboratory notebooks describing the creation and development of the Accused Testosterone and/or Vitamin D Tests. Please confirm that LabCorp will produce all the laboratory notebooks describing the research and development of the Accused Testosterone and Vitamin D Tests.

**Request for Production No. 55** seeks documents, ESI, and things "relied upon or referred to in preparing the Answer to Quest's Complaint in this action." In response, LabCorp stated that it already "has produced core technical documents . . . sufficient to show how the accused method(s) and/or product(s) work(s)," but said nothing further. From this response, it is unclear whether LabCorp intends to provide further documents responsive to this Request. Please confirm that LabCorp will produce *all* documents, ESI, and things responsive to this Request or affirmatively confirm that LabCorp relied upon only the documents bearing Bates Nos. LC00000001-LC00001200 in preparing its Answer.

HIGHLY CONFIDENTIAL

**Request for Production No. 56** requests "documents, ESI, and things forming the basis for or that may refute the Affirmative Defenses and Counterclaims in LabCorp's Answer to Quest's Complaint in this action." LabCorp responded that it "will not conduct a search for documents responsive to this request, including at least because the proper scope of this request, if any, is wholly subsumed by other requests." Although LabCorp suggests the scope of Request No. 56 is duplicative of other requests, it provides no reference to any other Requests. LabCorp should either show that other Requests overlap with the *entirety* of Request No. 56 or agree to produce documents, ESI, and things responsive to this Request. Please confirm that LabCorp will do so.

**Request for Production Nos. 57 and 58** seek information "produced to any other persons in connection with discovery in United States and/or foreign litigations concerning, referring, or relating to" the Accused Testosterone and/or Vitamin D Tests. LabCorp stated that it "will not conduct a search for documents responsive to th[ese] request[s]." These Requests seek information relevant to Plaintiff's claims, *i.e.*, information concerning the testing methods accused in this litigation. LabCorp's burden in producing such information will be minimal because LabCorp already gathered and produced it for other litigations. There is no basis for LabCorp's refusal to even conduct a search. Please confirm that LabCorp will search for and produce documents, ESI, and things responsive to these Requests.

**Request for Production Nos. 63 and 64** seek correspondence regarding the Accused Testosterone and Vitamin D Tests. Such information is relevant and tailored specifically to the needs of this litigation (*i.e.*, it seeks information concerning only the Accused Tests). LabCorp's refusal to search for and produce such information is improper. Please confirm that LabCorp will produce documents relevant to these Requests.

With respect to **Request for Production Nos. 18, 19, 40, 41, 52, and 53** LabCorp responds that it "is willing to meet and confer regarding the scope of this Request." The scope of each of these Requests is appropriate and consistent with the Federal Rules. In any event, Plaintiff is willing to meet and confer with respect to these Requests. Please provide a time on May 9, 2019 that is convenient.

Sincerely,

/s/ *Eric Majchrzak*
Eric Majchrzak

cc:     All Counsel of Record

# EXHIBIT   C



633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
PHONE 323.210.2900
FAX 866.974.7329
www.wsgr.com

May 17, 2019

**VIA EMAIL**

Eric Majchrzak
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010-6035
emajchrzak@fenwick.com

**Re:** ***Quest Diagnostics Investments LLC v. Laboratory Corp. of Am Holdings et al.*** **Case No. 1:18-cv-01436 (D. Del)**

Dear Eric:

I write in response to your letter dated April 30, 2019 regarding discovery issues.

**Quest's Facially Overbroad Interrogatories (e.g. No. 4):** LabCorp's responses do not violate the Federal Rules. Lab Corp stated its grounds for objecting with specificity. Quest appears to take issue with some objections to Quest's Interrogatory No. 4 that use the phrase "to the extent." These objections are not improper and do not merely "suggest the possibility of objections" as Quest incorrectly argues. Rather the objections are made to the portions of the scope of the Interrogatory that are objectionable. Indeed, Federal Rule of Civil Procedure Rule 33, the very same one that Quest cites, uses "to the extent" in similar way: "Each interrogatory must, *to the extent* it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3) (emphasis added). Quest can hardly complain about the necessity for objections when Quest's chose to draft improper interrogatories that sweep so broadly they require such objections.

**Interrogatories Nos. 13, 15, 19, and 21:** As to your discussion of certain objections made in response to Interrogatory Nos. 13, 15, 19, and 21, LabCorp is aware of its obligations under Rule 26(e)(1) and will comply with them.

**Quest's Premature Contention Interrogatories (Nos. 5, 6, 9, 10):** LabCorp's responses to these interrogatories subject to objections are proper, especially given how little information Quest has provided about issues related to the interrogatories. As to Interrogatory No. 5, Quest improperly requests a premature identification of claim constructions and noninfringement positions. Quest only recently served infringement contentions, LabCorp's invalidity contentions are due in a week and claim construction exchanges are more than three months away. As to the

**Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

Eric Majchrzak
May 17, 2019
Page 2

remaining Interrogatories, they request rebuttal contentions when Quest has not provided any contentions to rebut.

**Interrogatory No. 1:** LabCorp's response to this Interrogatory is not inadequate. The test number of the test at the first link Quest provided appears to match a test number (501475) that was included in LabCorp's Response to Interrogatory No. 1. It is unclear from your letter what Quest argues is missing. We can be available for a call to discuss and look into it. As to the second link, it appears to be broken. If you can provide one that works, we will look into it.

**Interrogatory No. 8:** Quest's request for an explanation and description of LabCorp's discovery response is improper because the Interrogatory does not request any explanation or description. Nevertheless, we will investigate whether we can provide any additional information related to your questions.

**Request for Production Nos. 2, 4, and 5:** These requests are facially improper as they are overbroad requests directed specifically to privileged information (e.g. "communications with counsel" and "freedom-to-operate opinions"). LabCorp objected to them on these grounds, among others. Lab Corp responded, subject to its objections, that it would produce an opinion of counsel if it elects to rely on one. At present, LabCorp stands on its objections and responses.

**Request for Production Nos. 3:** This request is grossly overbroad as it requests "All documents, ESI, and things concerning infringement or non-infringement of any claim of the Patents-in-Suit." LabCorp properly objected and responded subject to objections. LabCorp is aware of its obligations under Rule 26(e) and will comply with them.

**Request for Production Nos. 7, 8, 9, 10.** Quest has failed to identify single purportedly deficiency remaining after LabCorp's first and second productions. If Quest identifies one, we will look into it.

**Request for Production Nos. 15 and 16.** LabCorp's responses are proper. Quest chose to direct these requests toward unidentified legal issues, obviously implicating relevancy, proportionality, and privilege. If Quest can identify an issue of any purported relevance to this case, we will look into it.

**Request for Production Nos. 26 and 27.** These requests are grossly overbroad and irrelevant as they are directed to things "*relating to* any comparison" of the accused test to "*any other* product or testing method" (emphases added). LabCorp objected and responded subject to the objections, including by noting its earlier production of core technical documents. Those documents are certainly relevant, as technical information about the tests is at least related to

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
May 17, 2019
Page 3

comparing them to any other test. If Quest can identify a specific deficiency regarding LabCorp's responses, we will consider it.

**Request for Production Nos. 28, 29, 30, 31, 34, and 35:** Requests 34 and 35 are directed to precisely what LabCorp provided and responded that it had already provided. Contrary to Quest's argument, LabCorp's production included unit sales and revenue. As indicated above, we will look into your questions regarding LC00001196 and see if we can provide any additional information related to your questions. If there is additional information falling within the other requests that Quests believes is missing please identify it and we will look into it.

**Request for Production Nos. 44 and 45:** These requests are overbroad and sweep in irrelevant information, which is also not proportional to the needs of this case. LabCorp has produced responsive information and has indicated it will produce additional responsive information. Quest has not identified any reason why additional development and marketing information should be produced. If Quest has one, please provide it and we will consider it.

**Request for Production Nos. 46, 47, 50, 51:** These requests are overbroad and sweep in irrelevant information about tests not related to the patented technology, which is also not proportional to the needs of this case. The requests appear designed to indiscriminately target privileged analyses, to the extent any analyses exist. Additionally, Requests 50 and 51 are duplicative of Requests 26 and 27, which were addressed above. If there are specific categories of documents Quest seeks, please identify them and we will consider them.

**Request for Production Nos. 48 and 49:** These requests appear irrelevant, duplicative, and not proportional to the needs of the case given LabCorp's production of core technical documents. Quest has not identified any reason why additional research and development information should be produced. If Quest has one, please provide it and we will consider it.

**Request for Production Nos. 55**: LabCorp has nothing further to add and refers Quest to LabCorp's objections and response subject to objections.

**Request for Production Nos. 56**: LabCorp has nothing further to add and refers Quest to LabCorp's objections and response subject to objections. If Quest can identify a specific category of documents that should be produced and has not, we will look into it.

**Request for Production Nos. 57 and 58**: These requests are grossly overbroad as they purport to indiscriminately sweep in any productions from other unidentified litigations "concerning, referring, or relating to" to the accused tests. Quest has not identified any litigation

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
May 17, 2019
Page 4

or any reason to expect productions from such litigation to be relevant and proportional to the needs of this case. If Quest identifies a litigation or such a reason, we will consider it.

**Request for Production Nos. 63 and 64**: These requests are grossly overbroad and inconsistent with the Default Standard for Discovery. They are overbroad because they seek correspondence related to "All documents, ESI, and things referring or relating to correspondence between LabCorp and any third party relating to mass spectrometry-based testosterone tests . . . ." Your letter incorrectly characterizes these requests as be limited to "only the Accused Tests" when they are clearly not. Even if the requests had been limited in that way, they still improperly subvert the Default Standard for Discovery, which indicates that product names are "over-broad terms."

**Request for Production Nos. 18, 19, 40, 41, 52, and 53**: LabCorp can be available to meet and confer regarding these requests on Wednesday May 22, 2019 at 11 am PDT. To ensure a productive meet and confer, please be prepared to explain and defend the scope of these requests.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Erik J. Carlson

cc: All counsel of record

# EXHIBIT   D

HIGHLY CONFIDENTIAL



FENWICK & WEST LLP

902 BROADWAY, SUITE 14    NEW YORK, NY 10010-6035

TEL 212.430.2600    WWW.FENWICK.COM

ERIC MAJCHRZAK

May 23, 2019

EMAIL EMAJCHRZAK@FENWICK.COM
Direct Dial + 1 212 430-2689

**VIA E-MAIL**

Erik Carlson
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Suite 1550
Los Angeles, CA 90071
ecarlson@wsgr.com

Re:     *Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings, et al.*, No. 18-cv-01436-MN (D. Del.):
        <u>Meet-and-Confer Regarding Deficiencies in LabCorp's Objections and Responses</u>

Erik:

        We write regarding the meet-and-confer held on May 22, 2019 during which we discussed deficiencies in Laboratory Corporation of America Holdings' ("LCA"), Esoterix, Inc.'s ("Esoterix"), and Endocrine Sciences, Inc.'s ("Endocrine") (collectively, "LabCorp") Responses and Objections to Quest Diagnostics Investments LLC's First Set of Interrogatories (Nos. 1-11) ("LabCorp's Interrogatory Responses") and Responses and Objections to Quest Diagnostics Investments LLC's First Set of Requests for Production of Documents, ESI, and Things (Nos. 1-64) ("LabCorp's Production Responses").

        Based on our discussions during the meet-and-confer, we understand that LabCorp is undertaking the following actions:

- **Interrogatory No. 1**:  In response to Interrogatory No. 1, LabCorp provided a list of six LCA test numbers, six Esoterix test numbers, and directed Quest to a single document: LC00001196-LC00001200.  That response was deficient for several reasons, including:

1

HIGHLY CONFIDENTIAL



LabCorp said it will investigate these deficiencies and provide a response by **May 31, 2019**.

- **Interrogatory No. 5**:  Interrogatory No. 5 asks LabCorp to describe its basis for contending that the Accused Testosterone and Vitamin D Tests do not infringe the Patents-in-Suit.  Quest explained that refusing to provide an answer to this interrogatory is improper.  Indeed, the "Court encourages the parties to serve and respond to contention interrogatories early in the case."  (Scheduling Order, D.I. 18, at ¶ 8(d)(ii).)  LabCorp has had notice of Quest's infringement positions since at least April 12, 2019 when Quest served its initial infringement contentions.  In addition, on December 12, 2018, LabCorp filed an answer and counterclaims asserting that it did not infringe the Patents-in-Suit.  LabCorp must have had a Rule 11 basis for its non-infringement position that it should explain in response to this Interrogatory.  By **May 29, 2019**, LabCorp said it will inform Quest whether it will provide an answer to Interrogatory No. 5 by **June 5, 2019**.

- **Interrogatory No. 7**:  With respect to mass spectrometry testing of testosterone and vitamin D (including the Accused Testosterone and Vitamin D Tests), LabCorp said it will investigate every project that Brett Holmquist has worked on, his role in those projects, and the nature of the projects.  LabCorp said it will provide a response based on these inquiries by **May 31, 2019**.

- **Interrogatory No. 8**:  Interrogatory No. 8 asks LabCorp to identify certain sales data for the Accused Testosterone and Vitamin D Tests.  In response to Interrogatory No. 8, LabCorp directed Quest to a single document: LC00001196-LC00001200.  That response was deficient.

2

███████        Third, LC00001196-LC00001200 does not include several pieces of requested information, including (1) "gross and net revenue," (2) "reimbursements," (3) "costs," (4) "all other expenses," (5) "identity of documents sufficient to show financial data requested," and (6) identity of persons with knowledge of the requested information. LabCorp said it will investigate the meaning of "revenue" and "volume" in LC00001196-LC00001200 as well as the information missing from LC00001196-LC00001200. LabCorp said it will provide a response based on these investigations by **May 31, 2019**.

- **Hardcopy Document Search and Production**:  The parties discussed LabCorp's search for and production of hardcopy documents to date.  LabCorp provided no information regarding the breadth of its searches or collection.  That is, LabCorp would not provide any information regarding the custodians it collected hardcopy documents from, whether it searched for or collected hardcopy documents from the individuals listed on its initial disclosures and interrogatory responses, or the methods LabCorp used to search for and collect hardcopy documents.  Without providing any detail, LabCorp said only that it performed a reasonable search under the circumstances.  LabCorp said it will provide an update on its hardcopy document collection and production by **May 31, 2019**.

- **Request for Production Nos. 3, 8, 10, 26, 27, 44, 45, 48, 49, and 55**:  For each of these Requests, LabCorp referred Quest to standard operating procedures already produced without any assurance that it would search for and produce additional responsive documents.  As explained during the meet-and-confer, however, each Request seeks relevant information beyond the standard operating procedures:

    Request for Production No. 3 seeks documents, ESI, and things "concerning infringement or non-infringement" of the Patents-in-Suit.  This Request includes, *inter alia*, mass spectrometry data from LabCorp's performance of the Accused Testosterone and Vitamin D Tests.

    Request for Production Nos. 8 and 10 seek documents "sufficient to show all steps, operations, calculations and equipment used" for the Accused Testosterone and Vitamin D Tests.  These Requests seek, at least, documents describing how LabCorp performs the standard operating procedures, such as what calculations LabCorp performs (via technician or software), what information LabCorp uses in those calculations (*e.g.*, specific parent and fragment ions and the identity of such ions), and how LabCorp interprets the data it receives.

    Request for Production Nos. 26 and 27 seek documents, ESI, and things "relating to any comparison" of the Accused Testosterone and Vitamin D tests.  The standard operating procedures themselves do not provide any comparisons.  Such comparisons are relevant for several reasons, including, at least, the identification of potentially non-infringing alternatives.

    Request for Production Nos. 44 and 45 seek documents, ESI, and things relating to, for example, LabCorp's research, development, sale, and use of the Accused Testosterone and Vitamin D Tests.  The standard operating procedures produced thus far do not include this information; yet, it is relevant to issues of infringement and the identification of potential non-infringing alternatives.  Documents responsive to these Requests will include, *inter alia*, reports, meeting minutes, and correspondence

3

describing LabCorp's development of the Accused Testosterone and Vitamin D Tests.

Request for Production Nos. 48 and 49 seek "laboratory notebooks describing the research and development" of the Accused Testosterone and Vitamin D Tests. The standard operating procedures produced thus far do not include notebooks. Such notebooks will describe LabCorp's development of the Accused Testosterone and Vitamin D Tests as well as information concerning the information produced by and analyzed during the performance of the Accused Testosterone and Vitamin D Tests. That information is relevant to, at least, the infringement analysis.

Request for Production No. 55 seeks documents, ESI, and things LabCorp "relied upon or referred to in preparing the Answer to Quest's Complaint." Documents responsive to this Request are relevant. Unless LabCorp relied solely on the standard operating procedures already produced, it must produce further documents, ESI, or things in response to this Request.

LabCorp said it will provide Quest an update regarding its plans to search for, collect, and produce documents responsive to these Requests beyond the standard operating procedures already produced by **May 31, 2019**.

- **Request for Production Nos. 28-31, 34, and 35**: As with Interrogatory No. 8, these Requests seek documents, ESI, and things concerning sales information that is absent from LC00001196-LC00001200. As Quest explained, these Requests seek, in particular, documents showing LabCorp's "net and gross income" (Requests 28 and 29), "unit sales, revenue, expenses (fixed and variable), and profits" (Requests 29 and 31), and "volume" (Requests 34 and 35). LabCorp said it will investigate these issues and provide a response by **May 31, 2019**.

- **Request for Production No. 12**: This Request seeks documents, ESI, and things "constituting any search for publications and documents relating to the Patents-in-Suit." Quest explained on the meet-and-confer that LabCorp's response to this Request – *i.e.*, that it "will produce responsive non-privileged documents or information sufficient to show its first awareness of any of the Patents-in-Suit" – did not address the information sought by the Request. LabCorp said it will investigate this issue and provide a response by **May 31, 2019**.

- **Request for Production Nos. 18, 19, 40, 41, 52, and 53**: As LabCorp requested in its Production Responses, the parties meet-and-conferred on these Requests. Quest described the scope of the Requests and provided exemplary types of documents that would respond to each Request. For example, Requests 18 and 19 seek, *inter alia*, any licenses (*e.g.*, if LabCorp licenses a third-party's intellectual property) or subcontracting agreements (*e.g.*, if LabCorp uses a third-party to conduct any testing) that LabCorp has with respect to the Accused Testosterone and Vitamin D Tests. These Requests would include comparable licenses that may be relevant to damages. Requests 40 and 41 seek information concerning the business aspects of the Accused Testosterone and Vitamin D Tests, including, *inter alia*, business and marketing plans, sales and volume projections, and meeting minutes and correspondence discussing the same. Requests 52 and 53 seek sample reports (similar to what a patient would receive) for each Accused Test, including sample reports for any variation within each test, *e.g.*, if the information provided in a

HIGHLY CONFIDENTIAL

report changed for a particular test at some point, LabCorp should provide sample reports for each period. LabCorp agreed to search for and produce documents responsive to these Requests and provide an update by **May 31, 2019**.

We further understand that the parties reached agreement with respect to Request for Production No. 56. LabCorp's response to this Request stated that it would not conduct a search for these documents. However, during the meet-and-confer, LabCorp confirmed that it will produce documents responsive to Request for Production No. 56, at least because such documents fall within the scope of other Requests. Thus, it is Quest's understanding that LabCorp will not withhold documents responsive to Request for Production No. 56.

Several disputes remain between the parties. First, with respect to several Interrogatories and Requests for Production (*e.g.*, Interrogatories 3 and 4 and Requests for Production Nos. 2, 4, 46, 47, 50, 51) LabCorp took the view that if a request *could* include privileged information, it had *no* obligation to respond to the Interrogatory or search for non-privileged documents in response that request. For example, Interrogatory No. 3 asks LabCorp to explain "any actions taken by LabCorp upon becoming aware of the [Patents-in-Suit]." LabCorp stated that it would not answer this portion of the Interrogatory, even with respect to non-privileged actions (including, for example, internal business meetings, scientific reports or discussions) because LabCorp may have taken other actions over which it could claim a privilege. As reiterated numerous times on the meet-and-confer, Quest believes that view is contrary to the Federal Rules.

Second, further with respect to Interrogatory No. 4 and Request for Production Nos. 2, 4, and 5, the parties disagree about the scope of privilege. These Requests seek information regarding opinions, patent clearances, freedom-to-operate opinions, and similar documents with respect to the Patents-in-Suit. Even if such documents are privileged (a point for later discussion), LabCorp has an obligation to search for and identify the requested information; the fact that such documents or opinions exist, the date of their creation, and the identity of their authors does not constitute privileged information even if LabCorp claims privilege over the underlying document or opinion. LabCorp again expressed the view that it had no obligation to search for such information because the underlying documents or opinions would likely contain privileged information, and it would not agree that information such as the date or author of such a document is not privileged. LabCorp also took the position that any opinions of counsel are irrelevant. LabCorp is mistaken. As Quest explained during the meet-and-confer, even if LabCorp had no duty to obtain an opinion of counsel, such opinions are absolutely relevant, including to the issue of willful infringement. *See Greatbatch Ltd. v. AVX Corp.,* No. 13-cv-723, 2016 U.S. LEXIS 171939, at *5 (D. Del. Dec. 13, 2016) (opinions of counsel relevant to issue of willful infringement).

Third, Interrogatory No. 11 asks LabCorp to "[i]dentify any tests that are or typically are performed or ordered in conjunction with any" of the Accused Testosterone or Vitamin D Tests. LabCorp responded that this Interrogatory contemplates a convoyed sales theory, which it believes is irrelevant under a reasonable royalty analysis. As explained during the meet-and-confer, Quest disagrees with LabCorp's interpretation of the law. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1385 (Fed. Cir. 2001) ("We also conclude that Martin

permissibly included all Infinite products in the royalty base, and that Martin did not provide an unfair double recovery by factoring the bundling and convoying sales into the royalty rate. The jury was entitled to rely on evidence of bundling and convoyed sales in determining the proper scope of the royalty base."); *Immersion Corp. v. HTC Corp.*, No. 12-cv-259, 2015 WL 834209, at *5 n.8 (D. Del. Feb. 24, 2015) ("Which is not to say that sales of [non-infringing product] are irrelevant. The relevance, however, seems like a consideration as *Georgia-Pacific* factor #6 ('the existing value of the invention to the licensor as a generator of sales of [its] non-patented items; and the extent of such derivation or convoyed sales') in a reasonable royalty analysis.") (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 432-33 (D. Del. 2007) ("convoyed sales may be used in determining a reasonable royalty rate where the hypothetical licensee would have anticipated increased convoyed sales as a result of sales of the allegedly infringing product"). Quest maintains that this is an insufficient ground on which to refuse to answer the Interrogatory.

Fourth, LabCorp refuses to provide *any* response to Interrogatory Nos. 9 and 10 because, in LabCorp's view, they are "rebuttal" Interrogatories. Quest maintains that this is an inappropriate view of the Interrogatories and that LabCorp has a duty to respond to each. First, as explained during the meet-and-confer, Interrogatory No. 9 asks LabCorp to explain what damages it believes are appropriate in this matter if the Patents-in-Suit are found valid and infringed. LabCorp may answer the Interrogatory independent of any Quest positions, and so it does not seek a "rebuttal." Similarly, Interrogatory 10 asks LabCorp to identify whether it believes there are any non-infringing alternatives to the Accused Testosterone and Vitamin D Tests. Again, LabCorp may answer the Interrogatory without consulting Quest's views on the issue and therefore it is not a "rebuttal."

Fifth, LabCorp stated that it had not started ESI review (or even potentially collection – LabCorp refused to provide any detail regarding its discovery efforts to date) because it claimed the Delaware Default Standard for Discovery required a separate ESI-specific meet-and-confer before it incurred any ESI-related obligations. Further, LabCorp suggested that because Quest had not requested such an ESI meet-and-confer, LabCorp had no current ESI obligations. Quest disagrees with that position. LabCorp's obligation to collect, review, and produce ESI began when Quest served its initial set of Requests for Production. Indeed, the Default Standard for Discovery places the responsibility for suggesting search terms (if LabCorp chooses to use search terms) with LabCorp, not Quest:

> If the *producing party* [*i.e.*, LabCorp] elects to use search terms to locate potentially responsive ESI, *it* shall disclose the search terms to the requesting party. . . . The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

Delaware Default Standard for Discovery, § 5(b) (emphasis added).

HIGHLY CONFIDENTIAL

Sixth, Quest maintains that LabCorp's objections throughout the Interrogatory Responses and Production Responses improperly lack specificity.  (*See, e.g.*, Letter from E. Majchrzak to O. Kim, at 1-2 (Apr. 20, 3019).)

For the remaining disputes, please let us know if LabCorp will reconsider its positions by **May 31, 2019**.  Quest maintains that LabCorp's positions with respect to each of the above disputed issues are inappropriate and contrary to the Federal Rules and the Delaware Default Standard for Discovery.  Quest remains willing to discuss a reasonable solution to these issues to avoid burdening the Court.

Sincerely,

/s/ *Eric Majchrzak*

Eric Majchrzak

cc:     All Counsel of Record

7

# EXHIBIT   E



633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027

PHONE 323.210.2900
FAX 866.974.7329

www.wsgr.com

June 5, 2019

**VIA EMAIL**

Eric Majchrzak
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010-6035
emajchrzak@fenwick.com

Re:   *Quest Diagnostics Investments LLC v. Laboratory Corp. of Am Holdings et al.*
      *Case No. 1:18-cv-01436 (D. Del)*

Dear Eric:

I write in response to your letter dated May 23, 2019 regarding discovery issues. We understand that Quest intends to request a discovery teleconference with the Court. It is premature to do so because the parties are still actively resolving disputes and many of the issues included in Quest's May 23, 2019 letter were: raised for the first time in that letter; never addressed during the meet and confer; or only addressed in cursory fashion on the meet and confer. For those reasons, there has not been a meaningful conference of counsel on those issues and raising them would not only burden the Court unnecessarily but would violate Local Rule 7.1.1 due to Quest's failure to make a reasonable effort to reach agreement. If, after review of this letter, Quest contends that any issues remain to the raise with the Court now please identify them with specificity. We are willing to continue discussions towards resolving outstanding disputes, if any.

**Interrogatory No. 1**: LabCorp's response is not deficient for the reasons below.

As to any testing performed by Endocrine, we have investigated and determined that LabCorp's response sufficiently covers tests by Endocrine. Quest's argument that LabCorp provided no information on Endocrine's testing is wrong. As publicly-available information indicates, Endocrine Sciences is a division of Esoterix. https://www.esoterix.com/endocrinology-services. ████████████████████████████████ Thus, there is no additional information to provide.

████████████████████████████████████████████████
████████████████████████████████████████

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
June 5, 2019
Page 2

As to LCA Test No. 070001, as Quest admits, LabCorp included information about LCA Test No. 070001 in its document production, indeed in the very portion of LabCorp's production (LC00001196-LC00001200) that LabCorp identified in accordance with Rule 33(d). Thus, Quest is simply wrong to suggest this test was not identified or that LabCorp's response is deficient. To move past a dispute, LCA Test No. 070001 is hereby added to the table in LabCorp's response to Interrogatory No. 1 and LabCorp will formalize the amendment in due course.

Quest's final purported issue with LabCorp's response to Interrogatory No. 1 was never raised before by Quest, either by letter or during the May 22, 2019 meet and confer. ███████████████████████████████████████████████████████████████████

**Interrogatory No. 5**: LabCorp's focus is currently on document collection and review in accordance with the Court's August 23, 2019 deadline for substantial completion of document production. As we discussed on the meet and confer, LabCorp remains open to discussing an agreed schedule for each party to rebut the other's disclosures under Paragraph 7 of the scheduling order (D.I. 18). But Quest's attempt to force early discovery of LabCorp's privileged Rule 11 basis for asserting non-infringement is improper.

**Interrogatory No. 7**: LabCorp responded to this integratory by providing the titles that Brett Holmquist has held at LabCorp and the dates for which he held them. ██████████████████████████████████████ Quest's request for description of "every project on which he has worked" and other minutiae of Dr. Holmquist's work at LabCorp is overbroad, unduly burdensome, not proportional to the needs of the case, and vague and ambiguous.

**Interrogatory No. 8**: LabCorp has investigated the information provided in response to the interrogatory and confirmed that the revenue and volume values provided are the ones that are kept in the ordinary course of business. It is unclear what additional information Quest seeks as to "gross and net" revenue. LabCorp continues its investigation into the remaining items identified in Quest's letter and intends to provide responsive nonprivileged documents or information, to the extent such documents or information are located after a reasonable search, by the deadline for substantial completion of document production.

**Hardcopy Document Search and Production**: LabCorp's search for responsive non-privileged documents, including hardcopy documents from the individuals listed on its initial disclosures and interrogatory responses, is ongoing. LabCorp intends to produce responsive nonprivileged documents, to the extent such documents are located after a reasonable search, by the deadline for substantial completion of document production. As indicated on the meet and

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
June 5, 2019
Page 3

confer, LabCorp is under no obligation to divulge its privileged communications or work product
as to document collection.

**Request for Production Nos. 3, 8, 10, 26, 27, 44, 45, 48, 49, and 55**: Quest only
addressed these numerous requests in cursory fashion on the meet and confer and in its letter
resorts to incorrect and misleading statements about LabCorp's position. Quest fails to mention
that LabCorp produced not only standard operating procedures but also more than 700 pages of
validation reports for the accused tests (*e.g.* LC00000334–1019, LC00001151–95, 1482–535).
Thus, LabCorp's production includes data and information regarding steps, operations,
calculations, and equipment used.

As to Requests for Production Nos. 3, LabCorp maintains its objections and response at
least because the request is overbroad as it appears to be a boilerplate catch all that purports to
cover any issue related to case given that infringement and noninfringement permeate almost all,
if not all issues, in a patent case, i.e. damages (the extent of infringement), validity (one cannot
infringe an invalid patent), etc.

As to Request for Production Nos. 8 and 10, Quest has not identified a single step,
operation, calculation, or equipment that has not been addressed by LabCorp's production to
date. Nevertheless, LabCorp will continue its investigation, document collection, and review as
to these topics. LabCorp intends to produce responsive nonprivileged documents, to the extent
such documents are located after a reasonable search, by the deadline for substantial completion
of document production.

As to Requests for Production Nos. 26 and 27, LabCorp maintains its objections and
responses at least because the requests are overbroad for being directed to comparisons of the
accused tests to "any other product or testing method." LabCorp will interpret these requests to
be limited to comparisons of mass spectrometry based testosterone tests or mass spectrometry
based Vitamin D tests. LabCorp will continue its investigation, document collection, and review
as to these topics. LabCorp intends to produce responsive nonprivileged documents, to the extent
such documents are located after a reasonable search, by the deadline for substantial completion
of document production.

As to Requests for Production Nos. 44, 45, Quest incorrectly argues "LabCorp referred
Quest to standard operating procedures already produced without any assurance that it would
search for and produce additional responsive documents." Instead, LabCorp identified additional
documents it already had produced and agreed to search for and produce additional responsive,
nonprivileged documents. If Quest, has specific concerns with the scope of LabCorp's response
please identify them.

**HIGHLY CONFIDENTIAL**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
June 5, 2019
Page 4

As to Requests for Production Nos. 48 and 49, LabCorp is currently investigating the burden associated with collection, review, and production of laboratory notebooks. LabCorp will inform Quest as to whether it is willing produce laboratory notebooks in the next couple weeks.

As to Requests for Production No. 59, Quest incorrectly argues "LabCorp referred Quest to standard operating procedures already produced without any assurance that it would search for and produce additional responsive documents." Instead, LabCorp agreed to search for and produce additional responsive, nonprivileged documents. If Quest, has specific concerns with the scope of LabCorp's response please identify them.

**Request for Production Nos. 28-31, 34, and 35**: LabCorp will continue its investigation, document collection, and review. LabCorp intends to produce additional responsive nonprivileged documents, to the extent such documents are located after a reasonable search, by the deadline for substantial completion of document production.

**Request for Production No. 12**: LabCorp maintains its objections and response. LabCorp will continue its investigation, document collection, and review. LabCorp intends to produce responsive nonprivileged documents, to the extent such documents are located after a reasonable search, by the deadline for substantial completion of document production.

**Request for Production Nos. 18, 19, 40, 41, 52, and 53**: LabCorp will continue its investigation, document collection, and review. LabCorp intends to produce responsive nonprivileged documents, to the extent such documents are located after a reasonable search, by the deadline for substantial completion of document production.

**Request for Production No. 56**: LabCorp maintains its position in its March 6, 2019 objections and responses, which was agreed with by Quest on the meet and confer.

**Interrogatories 3 and 4 and Requests for Production Nos. 2, 4, 46, 47, 50, 51**: Quest incorrectly characterizes LabCorp's position on the meet and confer as "if a request *could* include privileged information, it had *no* obligation to respond to the Interrogatory or search for non-privileged documents in response that request." Quest further incorrectly writes that "LabCorp stated that it would not answer this portion of the Interrogatory, even with respect to non-privileged actions (including, for example, internal business meetings, scientific reports or discussions) because LabCorp may have taken other actions over which it could claim a privilege."

First, LabCorp provided responsive nonprivileged information in response Interrogatories 3 and 4. As indicated in LabCorp's responses to those interrogatories, LabCorp's factual

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
June 5, 2019
Page 5

investigation is ongoing, and LabCorp reserves the right to supplement the responses based on the results of that investigation. LabCorp will continue its investigation, document collection, and review. LabCorp will supplement with responsive nonprivileged information, to the extent that any such information is located after additional investigation.

As to Request for Production Nos. 46, 47, 50, and 51, LabCorp will continue its investigation, document collection, and review. LabCorp intends to produce responsive nonprivileged documents, to the extent such documents are located after a reasonable search, by the deadline for substantial completion of document production.

**Interrogatory No. 4 and Request for Production Nos. 2, 4, and 5**: As to these requests, they facially target privileged information. Rule 26(b)(1) limits the scope of discovery to "non privileged matter[s]." LabCorp is willing to conduct an investigation, document collection, and review into potential nonprivileged responsive documents and to produce responsive nonprivileged documents, to the extent such documents are located after a reasonable search, by the deadline for substantial completion of document production. LabCorp maintains its objections based on privilege and the burden associated with searching for privileged information. Furthermore, a search for privileged information is not proportional to the needs of the needs of the case given the burden and the minimal, if any, relevant information that could be provided. Quest's citation to *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2016 U.S. Dist. LEXIS 171939 (D. Del. Dec. 13, 2016) actually supports LabCorp's position because, in that case, the defendant elected to rely on opinions of counsel and produced them. As LabCorp indicated in its responses, and reiterated in its May 17, 2019 letter, LabCorp would produce an opinion of counsel if it elects to rely on one.

**Interrogatory No. 11**: Quest appears to concede that it intended to direct Interrogatory No. 11 to damages, i.e. convoyed sales, an issue as to which Quest bears the burden of proof. As Paragraph 8.d.ii of the scheduling order (D.I. 18) states: "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof." Quest has not provided any damages contentions and is the party that should first do so, if at all. Additionally, Interrogatory No. 11 is over broad in that it is directed to "any tests that are or typically are performed or ordered in conjunction" with the accused tests. None of the cases Quest cites authorize such a broad inquiry into any test performed or ordered in conjunction with an accused test. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) (allowing testimony as to convoyed sales where there was evidence as to bundling and convoyed sales); *Immersion Corp. v. HTC Corp.*, No. 12-cv-259, 2015 WL 834209, at *5 n.8 (D. Del. Feb. 24, 2015) (a lost profits case stating in dicta that certain software "seems like a consideration" to a reasonable royalty); *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 432-33 (D. Del. 2007)

**HIGHLY CONFIDENTIAL**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
June 5, 2019
Page 6

(agreeing with an argument that certain noninfringing sales should be excluded because they are not convoyed sales). LabCorp's focus is currently on document collection and review in accordance with the Court's August 23, 2019 deadline for substantial completion of document production. As we discussed on the meet and confer, LabCorp remains open to considering a reasonable time frame to supplement its response to this Interrogatory after Quest has served satisfactory damages contentions.

**Interrogatory Nos. 9 and 10**: Quest appears to concede these interrogatories are directed to damages, an issue as to which Quest bears the burden of proof. As indicated above, the scheduling order provides that Quest address these issues first. D.I. 198 ¶ 8.d.ii.

**ESI review and collection**: LabCorp has begun the process to collect, review, and produce ESI and will write separately with a list of proposed search terms.

**Objections**: Quest never discussed a single issue regarding specificity as to LabCorp's objections on the meet and confer. If Quest has one please identify it. This is yet another instance where Quest failed to put forth a reasonable effort to reach agreement.

LabCorp remains willing to continue the discussions as to any of the above in the hopes the parties need not burden the Court unnecessarily.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Erik J. Carlson

Erik J. Carlson

cc: All counsel of record

HIGHLY CONFIDENTIAL

# EXHIBIT   F

HIGHLY CONFIDENTIAL



FENWICK & WEST LLP

902 BROADWAY, SUITE 14   NEW YORK, NY 10010-6035
TEL 212.430.2600   WWW.FENWICK.COM

June 24, 2019

ERIC MAJCHRZAK

EMAIL EMAJCHRZAK@FENWICK.COM
Direct Dial + 1 212 430-2689

**VIA E-MAIL**

Erik Carlson
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Suite 1550
Los Angeles, CA 90071
ecarlson@wsgr.com

      Re:    *Quest Diagnostics Investments LLC v. Laboratory Corporation of America*
            *Holdings, et al.*, No. 18-cv-01436-MN (D. Del.):
            <u>Deficiencies in LabCorp's Objections and Responses</u>

Erik:

      We write in response to your June 5, 2019 letter.

      As an initial matter, we disagree with your suggestion that seeking relief from the Court would violate Local Rule 7.1.1.  Quest raised LabCorp's discovery deficiencies in multiple letters and during an hour-and-a-half meet-and-confer on May 22, 2019.  To the extent LabCorp still refuses to comply with its obligations under the Federal Rules, the issues are ripe for adjudication by the Court.

      We understand that LabCorp is now agreeing to produce documents responsive to Request for Production Nos. 2, 4, 5, 8, 10, 12, 18, 19, 26-31, 34, 35, 40, 41, 46, 47, and 50-53 as well as documents responsive to Interrogatory Nos. 4 and 8.

      With respect to Request for Production No. 56, Quest never agreed that LabCorp's objections and response was appropriate.  Rather, as you explained during the meet-and-confer, LabCorp intends to produce documents responsive to this Request; LabCorp is simply of the view that other requests encompass the entire scope of Request No. 56.  The result – as you explained it – is that LabCorp will produce documents in response to Request No. 56.  Quest agrees that LabCorp should produce documents responsive to Request No. 56.

      Even assuming LabCorp does what it says it will do (which it is obligated to do under the Federal Rules) there are still outstanding disputes between the parties:

Erik Carlson
June 24, 2019

**Interrogatory No. 5:**  Interrogatory No. 5 seeks the basis or bases for LabCorp's contention that the Accused Vitamin D and Testosterone Tests do not infringe the claims of the Patents-in-Suit.  Quest served Interrogatory No. 5 on February 4, 2019 and its infringement contentions on April 12, 2019.  LabCorp's response to this interrogatory is overdue.  The fact that LabCorp is collecting and reviewing documents to comply with the substantial completion deadline is irrelevant to LabCorp's obligation to provide an answer to Interrogatory No. 5.

Similarly, as explained during the meet-and-confer, LabCorp's proposal that the parties "discuss[ ] an agreed schedule for each party to rebut the other's disclosures" is unacceptable. LabCorp cannot unilaterally avoid its obligations under the Federal Rules by suggesting an amended schedule.  LabCorp *currently* has an obligation under Federal Rule of Civil Procedure 33 to answer Interrogatory No. 5.

Your letter suggests this interrogatory is an "attempt to force early discovery of LabCorp's privileged Rule 11 basis for asserting non-infringement."  We disagree.  This Request is not early.  Through its denials of infringement, affirmative defenses, and counterclaims, LabCorp stated that it has non-infringement positions against the Patents-in-Suit.  Quest may discover those positions, which certainly are not privileged.

Despite multiple requests, LabCorp remains unwilling to comply with its obligations under the Federal Rules.  Unless LabCorp agrees to answer Interrogatory No. 5 – and to do so quickly (as a response is already months tardy) – the parties are at an impasse.

**Interrogatory No. 7:**  For every project on which Brett Holmquist worked, Interrogatory No. 7 requests information concerning Dr. Holmquist's "role in each project" and "the nature of the project."  LabCorp now suggests that this Request is directed to "minutiae," is overbroad, unduly burdensome, disproportionate to the needs of the case, or vague and ambiguous.  As explained during the meet-and-confer and in previous correspondence, this interrogatory only seeks information on projects concerning mass spectrometry testing of testosterone and vitamin D (including the Accused Testosterone and Vitamin D Tests).  That information is highly relevant (especially given Quest's Amended Answer to LabCorp's counterclaims), narrowly tailored to the issues in this case, and uniquely within LabCorp's possession.

If LabCorp remains unwilling to provide a full response to Interrogatory No. 7, then the parties are at an impasse.

**Interrogatory No. 8:**  Interrogatory No. 8 seeks information concerning relevant financial metrics, including "gross and net revenues," "reimbursements," "costs," "all other expenses," "profits," and the identify of persons with knowledge of such information.  In response, LabCorp pointed to a single spreadsheet that has none of this information.  During the meet-and-confer, LabCorp said it would investigate the missing information.  Your June 5, 2019 correspondence mentions (in passing) only "revenue" and "volume," while ignoring the other requested information.

Moreover, even the brief mention of "revenue" and "volume" is insufficient.  While you suggest "the revenue and volume values provided are the ones that are kept in the ordinary course of business," you did not explain the meaning of those values as you said you would

2

Erik Carlson
June 24, 2019

during the meet-and-confer. ███████████████████████████████
███████████████████

We also do not understand your issue with a request for "gross and net revenue." Those are two separate financial metrics. Yet, LabCorp only provided values for something it calls "revenue." LabCorp does not say whether the "revenue" values it reported represent gross revenue, net revenue, or some other value.

LabCorp must provide a full answer to Interrogatory No. 8. Despite multiple requests and a meet-and-confer, LabCorp remains unwilling to do so.

**Interrogatory Nos. 9 and 10:** Interrogatory Nos. 9 and 10 seek information relevant to Quest's damages inquiry. Interrogatory No. 10, for example, asks whether LabCorp believes "there are any non-infringing alternatives" for the Accused Vitamin D and Testosterone Tests. That information is relevant to the damages inquiry and solely within LabCorp's possession.

LabCorp's suggestion that it can avoid its obligations under the Federal Rules based on the Scheduling Order misses the point and makes little sense. The Scheduling Order states only that "contention interrogatories, if filed, shall first be addressed by the party with the burden of proof." (D.I. 18, ¶ 8(d).) Interrogatories 9 and 10 are not contention interrogatories, they merely ask LabCorp for information concerning the damages analysis. Nothing in the Scheduling Order prevents interrogatories that seek relevant information. Moreover, information relevant to damages is solely within LabCorp's possession, but LabCorp has yet to produce anything beyond a single spreadsheet. LabCorp is fully capable of answering Interrogatory Nos. 9 and 10 without reference to Quest's position on damages; yet, LabCorp has refused to do so.

**Interrogatory No. 11:** Interrogatory No. 11 asks LabCorp to "[i]dentify any tests that are or typically are performed or ordered in conjunction with any one of the" Accused Vitamin D or Testosterone Tests. This interrogatory seeks relevant and necessary information that is solely within LabCorp's possession and it is not a contention interrogatory. LabCorp's citation of the Scheduling Order is therefore misguided. LabCorp can answer this Interrogatory without reference to Quest's position on damages.

Separately, LabCorp's objection – that Interrogatory No. 11 is overbroad because it seeks "any tests that are or typically are performed or ordered in conjunction" with the Accused Vitamin D and/or Testosterone Tests – is meritless. As previously explained, convoyed sales are relevant to the reasonable royalty analysis and concern the identity of tests performed and/or ordered with the Accused Vitamin D and Testosterone Tests. A request for the identity and frequency with which LabCorp performs such additional tests with the Accused Tests seeks information entirely within the scope of the convoyed sales analysis. This Request is therefore not overbroad. In any event, LabCorp cannot refuse to answer an interrogatory entirely based on its breadth. Even if this Request was overbroad (which it is not), LabCorp must still answer the Request to the best of its ability within the unobjectionable scope of the Request.

LabCorp has maintained that it will not answer Interrogatory No. 11. Unless LabCorp's position changes and it agrees to provide a full response, there is a dispute among the parties on this issue.

3

Erik Carlson
June 24, 2019

<center>HIGHLY CONFIDENTIAL</center>

**Request for Production Nos. 44 and 45:**  Request for Production Nos. 44 and 45 seek documents, ESI, and things, relating to "LabCorp's activities in the research, development, manufacture, testing, marketing, use, sale, or patenting of mass spectrometry-based" vitamin D and testosterone tests.  In response, LabCorp said it already "produced core technical documents" and "documents sufficient to show the revenue and the volume of the accused method(s)."  LabCorp also said it would produce documents "sufficient to identify any of LabCorp's patents relating to the accused method(s) and/or product(s)."

As explained during the meet-and-confer and in our previous correspondence, that is insufficient.  At least reports, meeting minutes, and correspondence regarding the Accused Vitamin D and/or Testosterone Tests would also be responsive to these Requests, but are not within the list of documents that LabCorp produced (only standard operating procedures, validation reports, and a single spreadsheet) or said it would produce (LabCorp patents).

Although we explicitly raised our request for these types of documents during the meet-and-confer and previous correspondence, LabCorp is still taking the position that its discovery response was sufficient and asking that if Quest "has specific concerns with the scope of LabCorp's response please identify them."  Quest has identified its concerns, multiple times.

**Request for Production Nos. 48 and 49:**  Laboratory notebooks underlying the development of the Accused Vitamin D and/or Testosterone Tests are highly relevant to this matter.  Yet, your June 5, 2019 correspondence says only that "LabCorp will inform Quest as to whether it is willing to produce laboratory notebooks in the next couple weeks."  If LabCorp is unwilling to produce laboratory notebooks or let Quest know whether it is willing to do so in a reasonable amount of time (information which LabCorp should have provided in March 2019), then Quest must bring this matter to the Court's attention.

<center>*     *     *</center>

Quest remains willing to resolve these disputes and to avoid burdening the Court.  Despite multiple letters detailing these issues and a meet-and-confer, however, LabCorp has maintained its positions, including by refusing to respond to multiple interrogatories.  If LabCorp is willing to reconsider its positions, please let us know in a timely manner.

Sincerely,

/s/ *Eric Majchrzak*

Eric Majchrzak

cc:     All Counsel of Record

<center>4</center>

# EXHIBIT   G



633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027

PHONE 323.210.2900
FAX 866.974.7329

www.wsgr.com

July 26, 2019

**VIA EMAIL**

Eric Majchrzak
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010-6035
emajchrzak@fenwick.com

Re:   *Quest Diagnostics Investments LLC v. Laboratory Corp. of Am Holdings et al.*
      **Case No. 1:18-cv-01436 (D. Del)**

Dear Eric:

    We write to identify deficiencies in Quest's discovery responses and to address the outstanding disputes in your June 24, 2019 letter.

<div align="center"><strong>DEFICIENCIES IN QUEST'S DISCOVERY RESPONSES</strong></div>

    Quest's responses to LabCorp's are deficient for the reasons addressed below. Please provide your availability for a meet and confer with local counsel at one of the following times: Thursday August 1 at 10:00 am or 11:00 am PDT or Friday August 2 at 10 am or 11 am PDT.

    **Quest's Interrogatory General Objection No. 12 and Request for Production General Objection No. 13 (Quest's affiliates)** is improper because it purports to limit Quest's duty to respond to Quest Diagnostics Investments LLC ("Quest Investments"). Quest Investments has disclosed that it is a wholly-owned subsidiary of Quest Diagnostics Incorporated. D.I. 4. And, as can be seen from Quest's own response to Interrogatory No. 1, Quest itself uses "Quest" to refer to Quest Diagnostics Incorporated (e.g. "Quest Test Number" 14966 is a test number offered on a site owned by Quest Diagnostics Incorporated. https://testdirectory.questdiagnostics.com/test/test-detail/14966/?cc=NEL; https://www.questdiagnostics.com/home/privacy-policy/terms-conditions). This is not an isolated incident. In response to Interrogatory No. 7, Quest has purported to rely on commercial success of "Quest's . . . Tests" as a secondary consideration of nonobviousness. Please withdraw this objection and confirm that Quest Investments considers documents and information in the possession, custody, and control of affiliates including Quest Diagnostics Incorporated as within the possession, custody, or control of Quest Investments.

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 2

    **Quest's response to Interrogatory No. 1 (ID of Quest's Tests)** is deficient for numerous reasons. Quest responded with objections and a table listing Quest Test Numbers and Names for ▮ tests.

    a)  First, the response does not identify all tests responsive to the Interrogatory but instead improperly limits the response to tests that "practice the claimed inventions." The interrogatory requests an identification of any test "directed to measuring, detecting, quantifying or analyzing Vitamin D or testosterone using mass spectrometry." Information about other Quest and licensee tests that do not practice the patents is relevant and proportional to damages as such information would tend to show the availability and acceptability of noninfringing alternatives.

    b)  Second, Quest has failed to identify ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ as a secondary consideration of nonobviousness in response to Interrogatory No. 7.

    c)  Third, Quest has failed to identify any standard operating procedure associated with any test. Such information is relevant and proportional to damages as such information would tend to show information about operation and development of tests that practice the claimed invention and the availability and acceptability of noninfringing alternatives. Quest's statement suggesting it may produce relevant evidence (e.g. SOPs) only if it intends to rely on the test to prove commercial success is improper at least because Quest has already contended its tests practice the patents and in response to Interrogatory No. 7 that "the commercial success of Quest's . . . Tests demonstrates objective evidence of nonobviousness of the Asserted Patents." LabCorp is entitled to test both contentions, including by analyzing the information about Quest's tests that are exclusively within Quest's possession, custody, or control.  Additionally, the requested information is relevant and proportional to other issues including damages, lack of willfulness, and other remedies.

    d)  Fourth, Quest has failed to "identify the date each such Test was first made, publicly used, sold, shipped, offered for sale, or tested in the United States" and has failed to identify any Evidentiary Support. Such information is relevant and proportional to invalidity as such information would tend to show public uses, sales, or other prior art to the asserted patents.

**HIGHLY CONFIDENTIAL**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 3

**Quest's response to Interrogatory No. 2 (Financial info re Quest's Tests)** is deficient because Quest has completed failed to answer. The information is relevant and proportional to damages as such information would tend to show information about operation and development of tests that practice the claimed invention and the availability and acceptability of noninfringing alternatives. Quest's response to this interrogatory that the request is "incapable of being answered" because it refers to tests identified in response to one of LabCorp's Interrogatory appears to be a disingenuous delay tactic. This appears especially egregious because Quest already asked for, and LabCorp agreed to, extend Quest's time to respond. Yet Quest provided no substantive response to this Interrogatory nor did it request any clarification. The preceding Interrogatory No. 1 asks for just an identification of tests and the context of Interrogatory No. 2 clearly indicates test identified in Interrogatory No. 1 was intended. To further address Quest's response, LabCorp hereby corrects this interrogatory to seek information regarding Tests "identified in response to Interrogatory *No. 1*" and refer to "testing performed by *Quest*."

**Quest's responses to Interrogatory Nos. 3 and 4 (Additional Info re Quest's Tests)** are deficient and appear disingenuous for the same reasons as above and because Quest has completely failed to answer. To further address Quest's response, LabCorp hereby corrects this interrogatory to seek information regarding tests "identified in response to Interrogatory *No. 1*."

**Quest's response to Interrogatory No. 5 (Conception and Reduction to Practice)** is deficient for several reasons.

    a) First, Quest has failed to identify any conception or reduction to practice date for any asserted claim. Instead, it has responded by suggesting a legal analysis that could be done to arrive at a contention. Quest's reference to "earliest effective filing date" requires an analysis as to whether written description support is found in any earlier specification on a claim-by-claim basis. For example, the '867 patent is a continuation-in-part of an earlier application and Quest has failed to provide any contention as to whether the effective filing date of the claims is the filing date of the patent or the earlier application (no. 11/101,166). As another example, there is no priority claim on the face page of the '427 patent and Quest's attempt to claim priority by certificate of correction was denied by the USPTO on March 9, 2013. Yet the text of the '427 patent purports to claim priority to two earlier applications. Quest has failed to identify which application filing date it contends is the effective filing date. Please identify *the date* for each claim that Quest contends is *the effective filing date* if Quest maintains its contention that an effective filing date is the date of conception and reduction to practice.

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 4

b) Second, Quest's further response regarding the '862 is deficient and nonsensical. Quest purports to contend the prosecution history of the '862 patent references a conception and reduction to practice date of ███████ based on Quest's citation to documents in the '862 patent's prosecution history that do not refer to the ██████ date anywhere. Then Quest purports to "reserve the right to prove an earlier invention date, as set forth in the prosecution history for the '862 patent" when the cited documents set forth no such earlier date.

c) Third, the information Quest cites in its response is incomplete because the cited Caufield Declaration relies on excerpts of "Validation Summary Report for Total Testosterone" e.g. QUESTMS-00003104–3107. Please provide a complete copy of the cited report.

d) Fourth, Quest's attempt to rely on Rule 33(d) is improper because the burden of deriving or ascertaining the answer will *not* be substantially the same for either party. Indeed, LabCorp is *unable* to determine *Quest's contention* in this case from a review of the prosecution history. Quest must provide it.

**Quest's response to Interrogatory No. 7 (validity contentions)** is deficient for several reasons.

a) First, Quest objects that it is "unable to meaningfully respond" based on its incorrect assertion that LabCorp has not identified any "concrete theory" for invalidity. But Quest remained silent after receiving LabCorp's invalidity contentions until more than a month later when it first provided these complaints in place of sufficient contentions. Even now, Quest's admissions in its objections to this interrogatory show its inability to respond is feigned because LabCorp provided concrete theories. According to Quest, LabCorp provided "over 55 claim charts" and nine "specific" obviousness combinations per Asserted Patent. Yet Quest only attempted to respond "[t]o the extent LabCorp identifies references as anticipatory." Please provide a full and meaningful response, including to LabCorp's contentions regarding obviousness.

b) Second, even the information that Quest did provide regarding anticipation is problematic. Quest contends that certain references are not prior art (e.g. Clarke and Schoutsen) with no explanation or description of the bases for those contentions. Please provide all legal and factual bases for such contentions.

**HIGHLY CONFIDENTIAL**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 5

    c)   Third, when addressing each anticipatory reference, Quest purports to contend the reference does not disclose "and/or" LabCorp has not identified any disclosure regarding certain limitations with no support whatsoever. Please identify which contention Quest relies on and describe the legal and factual bases for such contention.

    d)   Fourth, Quest lists purported secondary considerations such as ██████████ █████████ commercial success but provides no description of any legal or factual bases for such contentions and fails to provide any identification of Evidentiary Support. Please provide a description of the bases and an identification of Evidentiary Support.

      **Quest's response to Interrogatory No. 8 (damages contentions)** is deficient because Quest failed to provide a sufficient description of any legal or factual bases for its contentions under any theory, including a reasonable royalty, convoyed sales, willful infringement, pre-judgment and post-judgment interest and costs, and an award of attorney's fees. Quest has failed to provide any substantive response as to the monetary amount, explanation of the underlying methodology, identification of factors, and explanation of why each theory is economically justified. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ Please cure these deficiencies.

      **Quest's response to Interrogatory No. 9 (bases for injunction)** is deficient because it fails to describe any contention that appears to apply to Plaintiff Quest Diagnostics Investments LLC and does not identify any other entity that purportedly has or will suffer irreparable harm. In General Objection No. 12, Quest purports to only respond on behalf of Plaintiff Quest Diagnostics Investments LLC—an objection that is improper—yet here Plaintiff appears to be responding on behalf of some other affiliate, licensee, or entity without identifying them or describing how they relate to any cognizable theory that would entitle Plaintiff Quest Diagnostics Investments LLC to an injunction. Please supplement Quest's response to cure these deficiencies.

      **Quest's response to LabCorp's document requests re Quest's ██████████ tests (Nos. 6, 7, 23, 25, 26, 33, 34, 35, 38, 53, 54, 58, 64, 74 and General Objection No. 3)** are deficient because Quest improperly attempts to withhold this relevant and proportional discovery about Quest's ██████████ mass-spectrometry testosterone and Vitamin D tests. Quest bases its position on two primary objections: (a) it has not relied on Quest's tests to show commercial success; and (b) it has not asserted lost profits. Both fail.

**HIGHLY CONFIDENTIAL**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 6

a) First, Quest's responses improperly impose a triggering condition that Quest will
only respond if Quest relies on tests that practice the asserted patents to show
secondary considerations. *E.g.* Nos. 6, 7 ("if quest pursues commercial success");
Nos. 23, 25, 26, 38, 53, 74 ("if Quest relies on any Quest test"); No. 64 ("if Quest
relies on its own tests"). Quest has already contended that "[p]rocedures
associated with" ███ "Quest Test Number[s]" practice the claimed inventions.
(Response to Interrogatory No. 1.) And Quest has already relied on "commercial
success of Quest's . . . Tests" in contending that the purported commercial success
"demonstrates objective evidence of nonobviousness of the Asserted Patents."
(Response to Interrogatory No. 7.) ████████████████████████████
████████████████████████████████████████████████████
███████████████████ So Quest's own triggering condition has been satisfied and its
refusal to provide responsive documents is contradicted by its own litigation
positions. Even if Quest had not already relied on such tests, information about
Quest's ██████████ tests that practice the patents are relevant and
proportional to other issues in the case including invalidity, damages, lack of
willfulness, and other remedies. Information about Quest's ██████████ tests
that do not practice the patent are also relevant and proportional to show the
availability and acceptability of non-infringing alternatives.

b) Second, General Objection No. 3 says information regarding Quest's tests is not
relevant and "not reasonably calculated . . ." (i.e. the wrong standard) because
Quest has not asserted a claim of lost profits. That objection fails for similar
reasons because information about Quest's test are relevant and proportional to
other issues in the case as discussed above. In addition, to support Quest's
allegation that it is entitled to an injunction, Quest has relied on purported harm
that is based on Quest's ██████████ tests: "price erosion, loss of market
position, loss of reputation, goodwill and brand name recognition, loss of or
reduction in potential investments in research and development that further
adversely affects Quest's reputation, goodwill and ability to hire and retain top
researchers." (Response to Interrogatory No. 10.)

c) Additionally, Quest's Interrogatory and Request for Production General Objection
No. 10 (Documents after commencement of litigation) is improper because it
purports to relieve Quest of the duty to disclose documents dated or prepared after
the date of commencement of litigation. Quest provides no authority or support
for its improper objection. And information about Quest's tests after litigation has
commenced are relevant to all the issues discussed above. Please withdraw these

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 7

improper objections and provide a date by which Quest will produce documents in response to these requests.

**Quest response to LabCorp's document request re the development of relevant tests (Nos. 5, 6, 7, 10, 11, 35)** is deficient because Quest improperly attempts to limit its response to documents "*sufficient to show* conception and reduction to practice of the inventions claimed in the Asserted Patents and each inventor's contribution thereto." (emphasis added) In doing so, it appears Quest attempts to cherry pick only those documents that support its position while withholding documents by which LabCorp could test Quest's position. Accordingly, it is improper for Quest to withhold documents regarding conception, reduction to practice, and diligence—or lack of any of the foregoing—associated with the asserted patents, which are clearly relevant and proportional (Nos. 5, 6, 7, 11, 35). Additionally, Quest's attempts to withhold documents regarding relevant tests that do not practice the asserted patents or prior art tests considered by the inventors (Nos. 5 and 10) is improper. Please confirm that Quest will not improperly limit its production in response to these requests.



"

**Quest requested a meet and confer in response to certain requests for production** Nos. 2 (prosecution docs), 36 (plans and strategy for Quest's tests), 48 (first awareness of infringement), 55 (business strategies), 56 (promotional expenditures), 65 (corporate structure), 67 (ID of marketing and sales people), 73 (Quest's relationship with owners). We will be available to listen to Quest's concerns regarding these requests on the meet and confer addressing the deficiencies above.

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 8

**RESPONSE TO OUTSTANDING DISPUTES IN QUEST'S JUNE 24, 2019 LETTER**

**Interrogatory No. 5 (noninfringement contentions):** LabCorp will supplement its response to this interrogatory to provide bases for LabCorp's contention that the Accused Vitamin D and Testosterone Tests do not infringe the claims of the Patents-in-Suit. LabCorp expects to supplement by August 9, 2019.

**Interrogatory No. 7 (Holmquist projects):** LabCorp will supplement its response to this interrogatory to provide Dr. Holmquist's "role in each project" and "the nature of the project." LabCorp expects to supplement by August 9, 2019.

**Interrogatory No. 8 (financial metrics):** LabCorp is currently searching for documents showing the additional financial metrics Quest seeks. We expect that LabCorp will be able to produce a profit and loss statement related to the Accused Tests, or similar information, by the deadline for substantial completion of document discovery. This information is more difficult and time consuming to collect and review than the revenue information that was already provided.



**Interrogatory Nos. 9 (damages contentions) and 10 (noninfringing alternatives)**: These interrogatories are contention interrogatories related to damages, an issue as to which Quest bears the burden of proof. The party serving the contentions interrogatories, i.e. Quest, bears the burden of showing why early answers are necessary. *Novanta Corp. v. Iradion Laser, Inc.*, 2016 U.S. Dist. LEXIS 126042, at *22–23 (D. Del. Sep. 16, 2016). Quest has failed to make

**HIGHLY CONFIDENTIAL**

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 9

the showing. First, Quest bears the burden of proof on damages and has not served any contentions that would allow a response. Only recently, Quest served objections and a boilerplate response to LabCorp's interrogatory asking for Quest's damages contentions. The boilerplate response has substantial deficiencies and don't allow a substantive response. Quest merely lists the names of standard damages types but fails to provide any substance as to the monetary amount, explanation of the underlying methodology, identification of factors, and explanation of why each theory is economically justified. (LabCorp further addresses this deficiency earlier in this letter). Second, LabCorp expects that each party will be producing significant amounts of information between now and the August 23, 2019 deadline for substantial completion of document production. LabCorp expects that both productions will have information that impacts each party's position as to damages. Third, LabCorp needs discovery from Quest regarding potential noninfringing alternatives that Quest has refused to provide (another issue LabCorp further addresses earlier in this letter). Fourth, the fact discovery cutoff is more than eight months away and LabCorp expects that both parties are still developing litigation positions.

**Interrogatory No. 11 (convoyed sales)**: This interrogatory seeks information related to Quest's purported convoyed sales damages theory. LabCorp maintains its objection for reasons similar to those with respect to Interrogatory Nos. 9 and 10 because Quest has failed to make the required showing for an early response to this contention interrogatory. Nevertheless, LabCorp is currently investigating whether it has any documents or information responsive to this request and the burden associated with responding. LabCorp expects that it will provide such documents or information, if any, by the deadline for substantial completion of document production unless LabCorp's investigation reveals that the burden to collect and review such information would be undue.

**Request for Production Nos. 44 and 45:** LabCorp agrees to search for "reports, meeting minutes, and correspondence regarding the Accused Vitamin D and/or Testosterone Tests" and produce responsive, non-privileged, documents located after a reasonable search. LabCorp expects to complete its production in response to these requests by the deadline for substantial completion of document production.

**Request for Production Nos. 48 and 49:** LabCorp agrees to search for "Laboratory notebooks underlying the development of the Accused Vitamin D and/or Testosterone Tests" and produce responsive, non-privileged, documents located after a reasonable search. LabCorp expects to complete its production in response to these requests by the deadline for substantial completion of document production.

HIGHLY CONFIDENTIAL

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

Eric Majchrzak
July 26, 2019
Page 10

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Erik J. Carlson

cc: All counsel of record

HIGHLY CONFIDENTIAL

# EXHIBIT   H

| From: | Eric Majchrzak |
|---|---|
| To: | Carlson, Erik; Dorsney, Kenneth L.; Quest_LabCorp_Team; Quest_LabCorp_MJTeam |
| Cc: | mferrario@kilpatricktownsend.com; WSGR - LabCorp |
| Subject: | RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms |
| Date: | Wednesday, July 24, 2019 1:43:59 PM |

Erik,

Quest cannot agree to a list of search terms that excludes Quest's terms 6-8.  Please provide hit counts for those searches.  Also, to help us craft potential alternative search terms for 6-8, please provide Brett Holmquist's email address.

We also note that any delay associated with LabCorp's review is due to the four months between when Quest served its first discovery requests and when LabCorp proposed search terms, not Quest's requests for reasonable search terms.

Regards,
Eric

**From:** Carlson, Erik [mailto:ecarlson@wsgr.com]
**Sent:** Friday, July 19, 2019 4:54 PM
**To:** Eric Majchrzak <emajchrzak@fenwick.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Eric,

Please see below. As before, these hit counts do not include family members that will also be swept into the review population. LabCorp is willing to begin review of the documents returned by the below terms, which exclude Quest's terms 6–8. Those terms are improper under the Default Discovery Order because their use of (Brett Or Holmquist) in conjunction with other over-broad terms renders them not sufficiently focused.

The total universe of documents returned by the search terms below is more than 30k when family members are included and duplicates excluded. We propose that LabCorp begin its review and production as soon as possible given the upcoming deadline for substantial completion of document discovery. If Quest continues to pursue over-broad connectors or improper terms using (Brett OR Holmquist) that increase the universe of documents to review, Quest may cause a delay of LabCorp's production.

| LabCorp's Proposed Search Terms – ███████ | | Hits Across All Custodians |
|---|---|---|
| 1 | testo! /25 extract | |

| | | |
|---|---|---|
| 2 | testo! / █ ("MS/MS" or "mass spec!" or "tandem MS or "MS2") | 11,959 |
| 3 | testo! /25 ion! | |
| 4 | ("vitamin D!" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) /25 ("MS/MS" or "mass spec!" or "tandem MS" or "MS2") | |
| 5 | ("vitamin D!" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) /25 ion! | |
| **Quest's Proposed Search Terms –** █ | | **Hits Across All Custodians** |
| 1 | 7,972,867 OR 7972867 OR (867 /3 patent) OR 7,972,868 OR 7972868 OR (868 /3 patent) OR 8,101,427 OR 8101427 OR (427 /3 patent) OR 8,409,862 OR 8409862 OR (862 /3 patent) | |
| 2 | (Quest /10 patent) AND ("vitamin D" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR testo!) | |
| 3 | (504115 OR 500337 OR 500338 OR 500342 OR 803580 OR 501475 OR 500116 OR 500286 OR 070001 OR 500726 OR 500159 OR 500510 OR 500600 OR 503580) █ (precursor! OR fragment! OR ion! OR "MS/MS" OR "mass spec!" OR "tandem MS" OR "MS2") | 3,332 |
| 4 | (504115 OR 500337 OR 500338 OR 500342 OR 803580 OR 501475 OR 500116 OR 500286 OR 070001 OR 500726 OR 500159 OR 500510 OR 500600 OR 503580) █ (revenue! OR income! OR volume! OR expense! OR market! OR projection! OR forecast! OR financ! OR licens!) | 1,058 |
| 5 | ((SOP /10 (0042 OR 0005 OR 0012 OR 0035 OR 0044 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0070 OR 0042)) OR (LCMS /10 (0012 OR 0070 OR 0035 OR 0042 OR 0005 OR 0044 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0042)) OR ("ESO-CAL" /5 (0044 OR 0042 OR 0005 OR 0012 OR 0035 OR 0070 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0042))) AND (precursor! OR fragment! OR ion! OR "MS/MS" OR "mass spec!" OR "tandem MS" OR "MS2") | |
| 6 | (Brett OR Holmquist) AND (504115 OR 500116 OR 500337 OR 500510 OR 500338 OR 500600 OR 500342 OR 503580 OR 803580) | - |
| 7 | (Brett OR Holmquist) AND ("vitamin D" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) | - |
| 8 | (Brett OR Holmquist) /25 Quest | - |

Regards,
Erik



**Erik J. Carlson** • Wilson Sonsini Goodrich & Rosati
633 West Fifth Street, Suite 1550 • Los Angeles, CA 90071 • 323.210.2940 • ecarlson@wsgr.com

---

**From:** Eric Majchrzak <emajchrzak@fenwick.com>
**Sent:** Thursday, July 18, 2019 11:04 AM
**To:** Carlson, Erik <ecarlson@wsgr.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Erik,

For LabCorp's (Modified) Proposed Search Term No. 2 and Quest's Proposed Search Term Nos. 3 and 4, can you please send us the hit counts associated with your proposed connectors.

For Quest's Proposed Search Term Nos. 6-8, can you please send us the hit counts associated with those searches.

Regards,
Eric

---

**From:** Carlson, Erik [mailto:ecarlson@wsgr.com]
**Sent:** Friday, July 12, 2019 5:33 PM
**To:** Eric Majchrzak <emajchrzak@fenwick.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Eric,

We are beginning to check the email volume returned by Quest's search terms and have the following objections. We reserve the right to send further objections to these or any other search terms as we continue to assess volume.

**LabCorp's (Modified) Proposed Search Term No. 2 is over broad.** The search term generated more than 14,900 hits across the custodians, even when not including document family members that will also be swept in. We will revert to the w/10 connector LabCorp originally proposed and assess

whether this modification is acceptable. If you have a proposal for tailoring this search term more narrowly please advise.

**Quest's Proposed Search Term Nos. 3 and 4 are over broad.** The search terms generated more than 11,700 and 9,800 hits respectively across the custodians, even when not including document family members that will also be swept in. We will revert to the w/10 connector LabCorp proposed on 6/26 and assess whether this modification is acceptable. If you have a proposal for tailoring this search term more narrowly please advise.

**Quest's Proposed Search Term Nos. 6–8 are over broad.** The terms include (Brett OR Holmquist) and Quest proposes applying them to custodians including Dr. Holmquist himself and others who send and receive email from him. Quest's Proposed Term No. 6 sweeps in every, or nearly every, email where Dr. Holmquist was a sender, recipient, or cc that includes one of the accused test numbers. The Delaware Default Standard for Discovery indicates that "product [] names" are "over-broad." Quest's Proposed Term No. 7 sweeps in every, or nearly every, email where Dr. Holmquist was a sender, recipient, or cc that includes "Vitamin D," "Vit D," etc. Such terms are even broader than the improper product names. Quest's Proposed Term No. 8 sweeps in every email where Quest is w/25 of Dr. Holmquist's first or last name. The Delaware Default Standard for Discovery indicates that "company names" are "over-broad." LabCorp will not use these terms unless they include additional narrowing criteria.

Regards,
Erik

---

**From:** Eric Majchrzak <emajchrzak@fenwick.com>
**Sent:** Thursday, July 11, 2019 9:10 AM
**To:** Carlson, Erik <ecarlson@wsgr.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Erik,

Quest agrees to the following search terms (*i.e.*, the terms suggested in my June 19 email with "/25" in place of "/p" as suggested by your message below):

| LabCorp's (Modified) Proposed Search Terms | |
|---|---|
| 1 | testo! /25 extract |
| 2 | testo! /25 ("MS/MS" or "mass spec!" or "tandem MS" or "MS2") |
| 3 | testo! /25 ion! |
| 4 | ("vitamin D!" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) /25 ("MS/MS" or "mass spec!" or "tandem MS" or "MS2") |
| | ("vitamin D!" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR |

| 5 | DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) /25 ion! |
|---|---|

| Quest's Proposed Search Terms | |
|---|---|
| 1 | 7,972,867 OR 7972867 OR (867 /3 patent) OR 7,972,868 OR 7972868 OR (868 /3 patent) OR 8,101,427 OR 8101427 OR (427 /3 patent) OR 8,409,862 OR 8409862 OR (862 /3 patent) |
| 2 | (Quest /10 patent) AND ("vitamin D" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol OR testo!) |
| 3 | (504115 OR 500337 OR 500338 OR 500342 OR 803580 OR 501475 OR 500116 OR 500286 OR 070001 OR 500726 OR 500159 OR 500510 OR 500600 OR 503580) AND (precursor! OR fragment! OR ion! OR "MS/MS" OR "mass spec!" OR "tandem MS" OR "MS2") |
| 4 | (504115 OR 500337 OR 500338 OR 500342 OR 803580 OR 501475 OR 500116 OR 500286 OR 070001 OR 500726 OR 500159 OR 500510 OR 500600 OR 503580) AND (revenue! OR income! OR volume! OR expense! OR market! OR projection! OR forecast! OR financ! OR licens!) |
| 5 | ((SOP /10 (0042 OR 0005 OR 0012 OR 0035 OR 0044 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0070 OR 0042)) OR (LCMS /10 (0012 OR 0070 OR 0035 OR 0042 OR 0005 OR 0044 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0042)) OR ("ESO-CAL" /5 (0044 OR 0042 OR 0005 OR 0012 OR 0035 OR 0070 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0042))) AND (precursor! OR ion! OR "MS/MS" OR "mass spec!" OR "tandem MS" OR "MS2") |
| 6 | (Brett OR Holmquist) AND (504115 OR 500116 OR 500337 OR 500510 OR 500338 OR 500600 OR 500342 OR 503580 OR 803580) |
| 7 | (Brett OR Holmquist) AND ("vitamin D" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) |
| 8 | (Brett OR Holmquist) /25 Quest |

Please confirm that LabCorp will use these terms.

Regards,
Eric

---

**From:** Carlson, Erik [mailto:ecarlson@wsgr.com]
**Sent:** Tuesday, July 09, 2019 12:48 PM
**To:** Eric Majchrzak <emajchrzak@fenwick.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Eric,

The discovery platform LabCorp uses does not have the capability to use the "/p" (within paragraph) connector in search terms. We propose using "w/25" (within 25 words) in place of "/p".

Regards,
Erik

**From:** Eric Majchrzak <emajchrzak@fenwick.com>
**Sent:** Friday, June 28, 2019 10:07 AM
**To:** Carlson, Erik <ecarlson@wsgr.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Erik,

We believe the connectors in LabCorp's suggested search terms (*e.g.*, "/10" instead of "/p") are too narrow.  Can you please provide the "hit counts" for the search terms with Quest's proposed connectors and with the connectors LabCorp is currently suggesting?

Regards,
Eric

**From:** Carlson, Erik [mailto:ecarlson@wsgr.com]
**Sent:** Wednesday, June 26, 2019 9:25 PM
**To:** Eric Majchrzak <emajchrzak@fenwick.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Eric

Lab Corp objects to Quest's terms as overly broad in violation of the Delaware Default Standard for Discovery 5.b. LabCorp proposes the attached search terms. Please confirm that Quest does not object to LabCorp using the attached search terms.

Regards,
Erik

**From:** Eric Majchrzak <emajchrzak@fenwick.com>
**Sent:** Wednesday, June 19, 2019 10:42 AM
**To:** Carlson, Erik <ecarlson@wsgr.com>; Dorsney, Kenneth L. <KDorsney@morrisjames.com>;
Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>; Quest_LabCorp_MJTeam
<Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** RE: Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Erik,

We note that LabCorp's initial proposed search terms are lacking.  First, LabCorp proposed
only five unique terms; proposed terms 5 and 6 and entirely duplicative of term 4 and terms 8
and 9 are entirely duplicative of term 7.  Second, several of the proposed terms are too
narrow.  For example, "vitamin D" without alternative terms could miss relevant documents.
The same is true for "mass spec!" and "MS/MS."

Quest's initial proposed modifications to LabCorp's search terms are outlined in track changes
below.

| | LabCorp's Proposed Search Terms | |
|---|---|---|
| 1 | testo! /~~10~~p extract | |
| 2 | testo! /~~10~~p ("MS/MS" or "mass spec!" or "tandem MS" or "MS2") | |
| 3 | testo! /~~10~~p ion! | |
| 4 | ("vitamin D!" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) /~~10~~p ("MS/MS" or "mass spec!" or "tandem MS" or "MS2") | |
| N/A | ~~"hydroxyvitamin D!" /10 ("MS/MS" or "mass spec!")~~ **[DELETED AS REDUNDANT]** | |
| N/A | ~~"dihydroxy vitamin D!" /10 ("MS/MS" or "mass spec!")~~ **[DELETED AS REDUNDANT]** | |
| 5 | ("vitamin D!" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) /~~10~~p ion! | |
| N/A | ~~"hydroxyvitamin D!" /10 ion!~~ **[DELETED AS REDUNDANT]** | |
| N/A | ~~"dihydroxy vitamin D!" /10 ion!~~ **[DELETED AS REDUNDANT]** | |

It is LabCorp's responsibility to diligently and reasonably search for and produce ESI
responsive to Quest's Requests for Production.  Nothing in this message should be interpreted
as a waiver of any of Quest's Requests for Production nor as a concession that LabCorp's
proposed search terms would locate all ESI responsive to Quest's Requests for Production.

Assuming and contingent upon LabCorp's modification of the search terms described above,

Quest provides the following proposed search terms pursuant to Paragraph 5(b) of the Default Standard for Discovery:

| Quest's Proposed Search Terms | |
|---|---|
| 1 | 7,972,867 OR 7972867 OR (867 /3 patent) OR 7,972,868 OR 7972868 OR (868 /3 patent) OR 8,101,427 OR 8101427 OR (427 /3 patent) OR 8,409,862 OR 8409862 OR (862 /3 patent) |
| 2 | (Quest /10 patent) AND ("vitamin D" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol OR testo!) |
| 3 | (504115 OR 500337 OR 500338 OR 500342 OR 803580 OR 501475 OR 500116 OR 500286 OR 070001 OR 500726 OR 500159 OR 500510 OR 500600 OR 503580) AND (precursor! OR fragment! OR ion! OR "MS/MS" OR "mass spec!" OR "tandem MS" OR "MS2") |
| 4 | (504115 OR 500337 OR 500338 OR 500342 OR 803580 OR 501475 OR 500116 OR 500286 OR 070001 OR 500726 OR 500159 OR 500510 OR 500600 OR 503580) AND (revenue! OR income! OR volume! OR expense! OR market! OR projection! OR forecast! OR financ! OR licens!) |
| 5 | ((SOP /10 (0042 OR 0005 OR 0012 OR 0035 OR 0044 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0070 OR 0042)) OR (LCMS /10 (0012 OR 0070 OR 0035 OR 0042 OR 0005 OR 0044 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0042)) OR ("ESO-CAL" /5 (0044 OR 0042 OR 0005 OR 0012 OR 0035 OR 0070 OR 0004 OR 0009 OR 0115 OR 0005 OR 0038 OR 0046 OR 0042))) AND (precursor! OR fragment! OR ion! OR "MS/MS" OR "mass spec!" OR "tandem MS" OR "MS2") |
| 6 | (Brett OR Holmquist) AND (504115 OR 500116 OR 500337 OR 500510 OR 500338 OR 500600 OR 500342 OR 503580 OR 803580) |
| 7 | (Brett OR Holmquist) AND ("vitamin D" OR "Vit D" OR "VitD" OR 25OH OR 25-OH OR 1,25OH OR DHVD OR OHVD OR 25VD OR "25-hydroxy" OR "25 hydroxy" OR "1,25-dihydroxy" OR "1,25 dihydroxy" OR cholecalciferol OR ergocalciferol) |
| 8 | (Brett OR Holmquist) /p Quest |

Please confirm that you will use the LCA terms as Quest has revised them. If you do not consent to use the revised terms, please let us know that, so that we may all come to an agreement on how to proceed.


Regards,
Eric


**From:** Carlson, Erik [mailto:ecarlson@wsgr.com]
**Sent:** Wednesday, June 05, 2019 3:18 PM
**To:** Eric Majchrzak <emajchrzak@fenwick.com>; Dorsney, Kenneth L.

<KDorsney@morrisjames.com>; Quest_LabCorp_Team <Quest_LabCorp_Team@fenwick.com>;
Quest_LabCorp_MJTeam <Quest_LabCorp_MJTeam@morrisjames.com>
**Cc:** mferrario@kilpatricktownsend.com; WSGR - LabCorp <labcorp@wsgr.com>
**Subject:** Quest v. LabCorp, Case No. 18-cv-01436 (D. Del.) - LabCorp ESI Search Terms

Counsel:

In accordance Paragraph 5.b. of the Delaware Default Standard for Discovery, LabCorp elects
to use search terms to locate potentially responsive ESI. Below is a disclosure of search terms
LabCorp expects to use for LabCorp's identified ESI custodians. If you wish to request any
additional terms (no more than 10 additional terms in accordance with the Delaware Default
Standard for Discovery), please send them by **Monday, June 10, 2019**. If we do not hear from
you by then, we will understand that Quest does not wish to request any additional search
terms.

Proposed Search Terms
1.    testo! /10 extract!
2.    testo! /10 ("MS/MS" or "mass spec!")
3.    testo! /10 ion!
4.    "vitamin D!" /10 ("MS/MS" or "mass spec!")
5.    "hydroxyvitamin D!" /10 ("MS/MS" or "mass spec!")
6.    "dihydroxy vitamin D!" /10 ("MS/MS" or "mass spec!")
7.    "vitamin D!" /10 ion!
8.    "hydroxyvitamin D!" /10 ion!
9.    "dihydroxy vitamin D!" /10 ion!

Regards,
Erik

**WSGR** Erik J. Carlson • Wilson Sonsini Goodrich & Rosati
633 West Fifth Street, Suite 1550 • Los Angeles, CA 90071 • 323.210.2940 • ecarlson@wsgr.com

This email and any attachments thereto may contain private, confidential, and privileged
material for the sole use of the intended recipient.  Any review, copying, or distribution of this
email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended
recipient, please contact the sender immediately and permanently delete the original and any
copies of this email and any attachments thereto.

--------------------------------------------

NOTICE:
This email and all attachments are confidential, may be legally privileged, and are intended solely for the individual or entity to whom the email is addressed.  However, mistakes sometimes happen in addressing emails.  If you believe that you are not an intended recipient, please stop reading immediately.  Do not copy, forward, or rely on the contents in any way.  Notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and then delete or destroy any copy of this email and its attachments.  Sender reserves and asserts all rights to confidentiality, including all privileges that may apply.

# EXHIBIT   I

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 8:13-cv-01880-JLS-KES                    Date: January 9, 2018

Title:  BAL SEAL ENGINEERING, INC. V. NELSON PRODUCTS, INC.

PRESENT:

#### THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

| Jazmin Dorado | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):          **Order GRANTING Plaintiff's Motion to Compel Interrogatory Responses (Dkt. 129)**

## I.     PROCEDURAL BACKGROUND.

On December 19, 2017, Plaintiff and Counter-defendant Bal Seal Engineering, Inc. ("Bal Seal") filed a joint stipulation pursuant to Local 37-2 moving to compel Defendant and Counterclaimant Nelson Products, Inc. ("NPI") to provide further responses to Bal Seal's Interrogatories, Set One, Nos. 1-11, and Set Two, Nos. 16-19 and 24-41 (collectively, the "Rogs"). (Dkt. 129-1.)  The at-issue discovery demands are (1) contention interrogatories seeking "all facts" supporting allegations in NPI's Second Amended Answer and Counterclaims ("SACC"); and (2) interrogatories requesting information about NPI's customers and sales.

Both parties filed supplemental memoranda on December 26, 2017.  (Dkts. 131, 132.) The Court held a hearing on January 9, 2018.  For the reasons set forth below, the Court GRANTS Bal Seal's motion.

## II.     DISCUSSION.

### A.     Contention Rogs Nos. 1-11, 16-19, 24-27, 30.

Bal Seal seeks to compel responses to Rogs asking NPI to "state all facts" supporting certain allegation in NPI's SACC.  (Dkt. 129-1 at 11-22 (quoting Rogs Nos. 1-11, 16-19, 24-27,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:13-cv-01880-JLS-KES                              Date: January 9, 2018
                                                                                    Page 2

and 30).)  Bal Seal argues that it served these interrogatories on October 27, 2016 (Nos. 1-11) and May 3, 2017 (Nos. 16-19, 24-27, and 30), yet has received no substantive responses.  (Dkt. 129-3 [Fuller Decl.] ¶¶ 4, 8.)  Instead, NPI served objections, which included the following statement:  "NPI … objects to this request in that it is premature to answer contention interrogatories at this time and NPI will supplement this response at the close of discovery."  (Dkt. 129-1 at 11-22.)  Bal Seal now argues that NPI's responses are "long overdue."  (Id. at 21.)

        NPI, in turn, reiterates its objections that the contention Rogs are "premature" and cites an advisory committee note to Rule 33 of the Federal Rules of Civil Procedure for the proposition that interrogatories involving "mixed questions of law and fact" are "best resolved after much or all of the other discovery has been completed …."  (Dkt. 129-1 at 22-23 (citing Fed. R. Civ. P. 33 advisory committee's note to 1970 amendment).)  It argues that it has not yet received sufficient information to provide substantive responses to Bal Seal's demands, including concerning antitrust allegations.  (Dkt. 129-1 at 23.)  NPI advises that it intends to serve answers prior to the close of fact discovery on February 9, 2018.  (Id.; Dkt. 107 (order setting discovery cut-off).)  It suggests as a compromise that it provide responses to the contention Rogs by February 5, 2018.  (Dkt. 129-1 at 25.)

        At the hearing on the motion, the parties confirmed that their dispute regarding the contention Rogs relates solely to the timing of NPI's responses.  While NPI cites case law for the proposition that responses to contention interrogatories "could be postponed until near the close of discovery," (Dkt. 129-1 at 24 (citing Campbell v. Facebook Inc., 13-cv-05996, 2015 WL 3533221, at *6 (N.D. Cal. June 3, 2015)), that time has now come in this case.  As noted above, fact discovery ends in less than one month, and the motion filing cut-off is February 16, 2018.  (Dkt. 107.)[1]  Bal Seal's counsel represented during argument that Bal Seal has scheduled a series of depositions during the week of January 29, 2018.  Prior to those depositions, Bal Seal must have an opportunity to receive and review NPI's responses to its contention Rogs.  Further, before the pending motion cut-off, Bal Seal must have the chance to seek relief if it determines that those responses are inadequate.

        Based on these facts, postponing NPI's responses until the eve of the discovery cut-off would not be appropriate.  NPI has been on notice of the relevant Rogs for months, and they seek facts underlying NPI's allegations in the SACC.  NPI should have been aware of facts supporting those allegations at the time it filed its pleading.  See Fed. R. Civ. P. 11(b).  Requiring responses at this juncture is therefore not premature.

        Further, if NPI learns information in the future necessitating revisions to its Rog responses, it may supplement or correct those responses.  See Fed. R. Civ. P. 26(e) (stating circumstances when a party must "supplement or correct" a disclosure or response); Henry v.

_____

        [1]  While Bal Seal's counsel advised at the January 9, 2018 discovery hearing that it intended to seek a continuance of these deadlines, none has been granted as of the date of this order.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:13-cv-01880-JLS-KES                    Date: January 9, 2018
                                                                  Page 3

Rizzolo, 08-cv-00635, 2010 WL 3385448, at *6 (D. Nev. Aug. 24, 2010) ("It is therefore not premature to require Plaintiffs to fully answer Defendant's [contention] interrogatories subject to the right to amend their responses if additional facts are hereafter discovered."). Given that this action is in the late stages of discovery, ordering responses will not unduly require NPI to supplement multiple times if it learns additional information as discovery closes. Cf. Campbell, 2015 WL 3533221, at *6 ("It also strikes the Court as unnecessarily burdensome to constantly revise and update such responses.").

Accordingly, NPI is ordered to provide supplemental substantive factual responses to Rog Nos. 1-11, 16-19, 24-27, and 30 within 7 days of this order.

   B.     **Sales Related Rogs Nos. 28-29, 31-41.**

The parties also dispute whether NPI's responses to Rogs Nos. 28-29 and 31-41 are adequate. Those requests are as follows:

•     Rog No. 28: "Please IDENTIFY all PERSONS known to YOU or believed by YOU to have been a customer of BAL SEAL and for whom YOU made canted coil springs based in whole or in part upon canted coil spring engineering specifications given YOU by the customer during the period 2008 to the present."

•     Rog No. 29: "Please state the amount of YOUR sales (in terms of date, product description, units and dollars) of canted coil springs that YOU sold to each PERSON identified in response to interrogatory 28 above during the period 2008 to the present."

•     Rogs Nos. 31-41: "Please describe all sales (in terms of date, product description, units and dollars) YOU made to [specified third party][2] of canted coil springs during the period 2008 to the present where those springs were designed to be used in place of BAL SEAL canted coil springs, including but not limited to, [specified Bal Seal part numbers]."

(Dkt. 129-1 at 25-33; 36-37.)

In answering Rog Nos. 28, 29, and 31-40, NPI asserted objections and stated that it would "respond … under Rule 33(d)" of the Federal Rules of Civil Procedure ("Rule 33(d)")), which allows parties to respond to interrogatories in certain circumstances by referencing documents. (Dkt. 129-1 at 25-33.) Although Rog No. 41 is similar in form to Rog Nos. 31-40, NPI responded to that demand in a different manner by asserting objections, stating that "this interrogatory was specifically already covered in [a Bal Seal request] in the subpoena to

---

        [2] Each of Rog Nos. 31-41 relate to a different third party, including Accellent, St. Jude Medical, Tesla, Omnetics, Norgren Kloehn, Parker EPS, Parker Packing, Spacecraft, ITT Canon, Sorin, and Glenair.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:13-cv-01880-JLS-KES                                     Date: January 9, 2018
                                                                                              Page 4

Glenair," and noting that Bal Seal had filed a motion for protective order regarding an NPI
subpoena to Glenair.  (Id. at 36-37.)

        Bal Seal contends that these responses are inadequate.  With respect to Rogs
Nos. 28-29 and 31-40, Bal Seal argues that NPI has failed to specify records containing
the requested information as required by Rule 33(d).  (Dkt. 129-1 at 33-34.)  Further,
with respect to Rog No. 41, Bal Seal faults NPI for providing only an "evasive non-
response."  (Id. at 37-38.)

        NPI counters that it responses are appropriate under Rule 33(d).  (Dkt. 129-1 at
34-35.)  It states that NPI provided Bal Seal "an index" on September 22, 2017 in a meet
and confer letter that correlated documents NPI produced with specific requests for
production relating to NPI customers.  (Id. at 34; Dkt. 129-17 [Van Loben Sels Decl.],
Ex. B.)  NPI sets forth that index in the parties' joint stipulation, and contends that its
identification of documents satisfies Rule 33(d).  (Dkt. 129-1 at 35.)

        Bal Seal disputes the adequacy of NPI's index because (1) it is not verified;
(2) NPI created it in September 2017 and subsequently produced "thousands" of
documents not referenced in the index; (3) it does not identify which documents are sales
related; and (4) NPI has allegedly failed to produce sales documents dated after 2013
such that they could not be captured in the index.  (Dkt. 131 at 6; Dkt. 131-2 (NPI
discovery report stating it produced documents "through the [2013] filing of the
complaint").)

        Rule 33(d) provides in full:

        If the answer to an interrogatory may be determined by examining, auditing,
        compiling, abstracting, or summarizing a party's business records (including
        electronically stored information), and if the burden of deriving or ascertaining
        the answer will be substantially the same for either party, the responding party
        may answer by:

                (1) specifying the records that must be reviewed, in sufficient detail to
                enable the interrogating party to locate and identify them as readily as the
                responding party could; and

                (2) giving the interrogating party a reasonable opportunity to examine and
                audit the records and to make copies, compilations, abstracts, or
                summaries.

Fed. R. Civ. P. 33(d).

        While Rule 33(d) allows a party to respond to an interrogatory by specifying
responsive records, the Court finds that NPI's current verified Rog responses, which

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:13-cv-01880-JLS-KES                                    Date: January 9, 2018
                                                                                    Page 5

generally reference Rule 33(d) but state no specific categories of documents, are
inadequate.  At the hearing on Bal Seal's motion, NPI's counsel agreed that NPI would
be willing to provide updated and verified responses to Rogs Nos. 28-29 and 31-41.
Accordingly, NPI is ordered <u>within 10 days of this order</u> to provide Bal Seal verified
supplemental responses to those demands consistent with the Federal Rules of Civil
Procedure.  If NPI chooses to respond to the Rogs pursuant to Rule 33(d), its responses
should specify by Bates number sales-related documents relevant to each third-party
referenced.  In particular, and without exclusion to other categories, NPI should provide
discrete categories of Bates numbers for (1) invoices; (2) purchase orders; and
(3) accounting records, if any, relating to each third-party.  If, following receipt of those
responses and review of responsive documents, Bal Seal believes that NPI's responses
remain deficient, then the parties are encouraged, following a comprehensive meet and
confer, to use the Court's informal telephonic procedure for resolving discovery disputes.

### C.     <u>Sanctions.</u>

Rule 37 of the Federal Rules of Civil Procedure provides for an award of
expenses and fees in appropriate circumstances where a discovery motion is granted.
Fed. R. Civ. P. 37(a)(5).  Although Bal Seal did not submit with its motion an attorney
declaration setting forth the expenses that Bal Seal incurred in making the motion, it may
do so if desired for consideration of a sanction award.

                                                      Initials of Deputy Clerk <u>JD</u>