**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

QUEST DIAGNOSTICS INVESTMENTS LLC,

               Plaintiff,

       v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS, ESOTERIX, INC., and
ENDOCRINE SCIENCES, INC.,

               Defendants.

C.A. No. 18-1436 (MN)

**RESPONSIVE LETTER TO THE HONORABLE MARYELLEN NOREIKA**
**FROM KENNETH L. DORSNEY**

*Of Counsel*:

Adam R. Gahtan
Kevin X. McGann
Eric M. Majchrzak
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone:  212.430.2600
Email: agahtan@fenwick.com
kmcgann@fenwick.com
emajchrzak@fenwick.com

Melanie L. Mayer
Elizabeth B. Hagan
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Email: mmayer@fenwick.com
ehagan@fenwick.com

Dated:  August 27, 2019

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 302.888.6800
kdorsney@morrisjames.com

*Attorney for Plaintiff*
*Quest Diagnostics Investments LLC*



Kenneth L. Dorsney
302.888.6855
kdorsney@morrisjames.com

August 27, 2019

**VIA E-FILING and HAND DELIVERY**
The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street, Unit 19
Wilmington, DE 19801-3555

     **RE:**    *Quest Diagnostics Investments LLC v. Laboratory Corporation of*
              *America Holdings, et al.,* **No. 18-1436-MN (D. Del.)**

Your Honor:

     Plaintiff ("Quest") respectfully opposes Defendants' ("LabCorp") request.

## I.    BACKGROUND

     Discovery opened on January 15, 2019.  (D.I. 18.)  LabCorp delayed serving requests for five months, until June 12, 2019.  Quest responded on July 19, 2019.

## II.    ARGUMENT

### A.    Documents and Interrogatories Regarding Quest's Tests
           **(RFP Nos. 6-7, 23, 25-27, 38, 53-54, 64, and 74 and Interrogatory Nos. 1-4)**

     LabCorp argues that information about *Quest's* mass spectrometry vitamin D and testosterone tests is relevant discovery, regardless of whether Quest intends to argue commercial success, a decision that Quest has reasonably not yet made.[1]  LabCorp is wrong, and the cases it cites provide no authority for compelling a patentee to produce such sensitive information when no present issue relates to it.  For example, in *Leader Techs., Inc. v. Facebook, Inc.*, No. 08-862, 2009 WL 3021168, at *2–3 (D. Del. Sept. 4, 2009), the court explained that the "case [wa]s fundamentally about whether [the accused infringer] infringes [the patentee's] patent, not about whether [the patentee] practices its own patent," and so refused to order patentee to produce claim charts for its own products, ordering it only to identify those of its products/services that practiced the asserted claims.  The court in *Sonix Tech Co. Ltd. v. Yoshida*, No. 12-380, 2014 WL 11878354 (S.D. Cal. Dec. 5, 2014) likewise limited patentee's obligation to identifying its patent-practicing products/services for the asserted patents.  *Id.* at *3–4.[2]  Quest has already identified those of its

---

[1]    LabCorp also argues that Quest should produce information regarding its licensees' mass spectrometry testing.  Quest does not possess or control any such information.

[2]    The *Sonix* court found production requests relating to patentee's products that do and do not practice the asserted claims might be relevant to assessing the scope of patentee's infringement positions, but Quest has already provided this information in infringement

The Honorable Maryellen Noreika
August 27, 2019
Page 2



products that practice the asserted claims, in response to LabCorp's Interrogatory No. 1 (*see* LabCorp Ex. A at 9), thus satisfying the requirements of the cases LabCorp cites in support of its motion.[3]  Until Quest elects to rely on commercial success, there are no issues to which the discovery LabCorp seeks pertains.  And, indeed, at least one court has denied a motion to compel discovery of patentee's product details even where patentee *did* rely on commercial success, because the risk of harm from disclosing such information to a competitor outweighed the limited potential relevance of the information.  *V. Mane Fils S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-cv-2304 (FLW), 2008 U.S. Dist. LEXIS 82540, at *15–17 (D.N.J. Oct. 15, 2008).[4]

Quest's present reluctance to produce commercially-sensitive details about its own products stems also from Quest's objection to LabCorp's designation of John Peterson to receive access to Confidential and Highly Confidential Information.  (D.I. 62.)  As argued in Quest's pending motion, granting Mr. Peterson access to this information could put Quest at a competitive disadvantage unrelated to, and unwarranted by the needs of this litigation.  (*See id.* at 2–3.)

LabCorp argues that the "obvious typo" in its Interrogatories Nos. 2–4 did not render them insufficiently clear.  The *presence* of errors is obvious, but it is not at all obvious how Quest should interpret them, and, in any event, it has no obligation to do so.  Interrogatory No. 2 seeks information about tests "identified in response to Interrogatory No. 2," but it provides no criteria for tests to identify; answering is impossible.  Compounding the confusion, the same Interrogatory seeks information about the "volume of testing performed by **LabCorp** or any other entity at **LabCorp's** direction."  (Ex. A at 10 (emphasis added)), information that Quest obviously does not have.  Quest has no obligation to guess at LabCorp's meaning.  It is required only to respond to interrogatories "[a]s written," and this court will not compel responses when interrogatories are poorly drafted.  *See Novanta Corp. v. Iradion Laser, Inc.*, No. 15-1033, 2016 U.S. Dist. LEXIS 126042, at *26–27 (D. Del. Sept. 16, 2016).  LabCorp may serve *additional* interrogatories, which Quest will answer, but it has already answered LabCorp's Interrogatory No. 2 and dependent Interrogatories Nos. 3 and 4 as written.

### B.    Documents Regarding Quest's Licenses (RFP Nos. 14, 23, 28–30, 37, 59)

Quest agreed to produce licenses with third parties for the technology claimed in the Patents-in-Suit.  LabCorp seeks much more burdensome discovery, including information about licenses entirely unrelated to the Patents-in-Suit because, in LabCorp's view, such information is relevant to *Georgia Pacific* factor No. 15, and about the "context surrounding any licensing and any unsuccessful attempts at licensing" (LabCorp Br. at 2), whatever that might be.

---

contentions, which it will supplement as discovery proceeds, if necessary.  *Id.* at *2.

3    Plaintiff is Quest Diagnostics Investments LLC, which does not itself offer any tests; the information LabCorp seeks belongs to related company Quest Diagnostics Incorporated., putting it at a further remove.

4    LabCorp also relies on *Astellas Pharma Inc. v. Actavis Elizabeth LLC*, No. 16-905, D.I. 231, at 1–3 (D. Del. May 15, 2018) which, seemingly without relevance here, concerned knowledge of polymorphic forms as it related to inherent anticipation.

The Honorable Maryellen Noreika
August 27, 2019
Page 3



Georgia Pacific factor No. 15 considers the "amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Final, executed licenses can provide information relevant to factor No. 15, but LabCorp does not explain why information about "unsuccessful attempts" would be relevant. In any event, Quest has not engaged in any such unsuccessful attempts, except possibly for discussions with LabCorp.

LabCorp's licensing "context" claim is also unsupported. *In re Antor Media Corp.*, on which it relies, was not about discovery; it was about whether a patentee had established a nexus between *executed* licenses (not of record) and the claimed invention, for non-obviousness purposes. 689 F.3d 1282, 1294 (Fed. Cir. 2012). Quest will produce executed licenses.

### C.   Documents and Interrogatories Regarding Conception and Reduction to Practice of the '867 Patent (RFP Nos. 1, 5-7, 11, 35 and Interrogatory No. 5)

LabCorp complains about Quest's response to Interrogatory No. 5 and certain requests for production related to conception and reduction to practice. (*See* LabCorp. Br. at 3.) Yet, as LabCorp admits, Quest has already produced one of the most (if not the most) relevant documents with respect to the conception and reduction to practice of the '867 patent: a declaration about that very issue filed during prosecution (*see* LabCorp Br. at 3), on which the PTO relied to disqualify a reference as prior art. (*See* Ex. H; Ex. J at 2). Quest has also agreed to produce documents sufficient to show or that reflect conception and reduction to practice. LabCorp attempts to manufacture a dispute out of Quest's objection to LabCorp's numerous overbroad production requests that refer to "all documents" by suggesting Quest will "withhold relevant information while cherry picking documents that are only helpful for Quest." (LabCorp Br. at 3.) Quest has no intention of engaging in such behavior, and LabCorp cites no evidence to support its accusation. Moreover, LabCorp itself has objected to every document request from Quest seeking production of "all documents," citing the burden associated with such productions. (*E.g.*, Ex. K at 8, 9, 10.) Finally, as to LabCorp's argument that it practiced the claimed inventions before the date of invention by Quest, it is unclear why Quest would have documents that tend to prove or disprove LabCorp's theory about its own work. (*See* LabCorp Br. at 3.) In any event, Quest will produce (as it already stated (Ex. B at 9, 17, 18, 20, 25)) appropriate documents located after a reasonable search that show conception and reduction to practice of the invention claimed in the '867 patent.

With respect to Interrogatory No. 5, fact discovery continues until April 3, 2020, over seven months from now. (D.I. 18, ¶8(a) at 4.) During that time, Quest will supplement its response to Interrogatory No. 5 as appropriate. LabCorp's request that Quest provide a final response by September 27, 2019 – six months before the close of fact discovery – is impractical and prejudicial.

### III.   CONCLUSION

For the foregoing reasons, Quest respectfully requests that the Court deny LabCorp's requests.

3

The Honorable Maryellen Noreika
August 27, 2019
Page 4



Respectfully submitted,

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (#3726)
kdorsney@morrisjames.com

cc:  All counsel of record (via CM/ECF and electronic mail)

4

# EXHIBIT  J

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 12/946,785 | CAULFIELD ET AL. |
| | Examiner | Art Unit | |
| | MARCELA M. CORDERO GARCIA | 1654 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒  Responsive to communication(s) filed on <u>28 March 2012</u>.

2a) ☐  This action is **FINAL**.        2b) ☒  This action is non-final.

3) ☐  An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒  Claim(s) <u>13,16-30,34 and 36-42</u> is/are pending in the application.

    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐  Claim(s) _____ is/are allowed.

7) ☐  Claim(s) _____ is/are rejected.

8) ☐  Claim(s) _____ is/are objected to.

9) ☒  Claim(s) <u>13,16-30,34 and 36-42</u> are subject to restriction and/or election requirement.

**Application Papers**

10) ☐  The specification is objected to by the Examiner.

11) ☐  The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

12) ☐  The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

13) ☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some * c) ☐ None of:

      1. ☐  Certified copies of the priority documents have been received.

      2. ☐  Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐  Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒  Notice of References Cited (PTO-892)

2) ☐  Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒  Information Disclosure Statement(s) (PTO/SB/08)
Paper No(s)/Mail Date <u>3/28/2012</u>.

4) ☐  Interview Summary (PTO-413)
Paper No(s)/Mail Date. _____ .

5) ☐  Notice of Informal Patent Application

6) ☐  Other: _____ .

QUESTMS-00002962

Application/Control Number: 12/946,785                                                    Page 2
Art Unit: 1654

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

1.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on

3/28/2012 has been entered.

### *Status of the claims*

2.      Claims 13, 16-30, 34, 36-42 are pending. Claims 13, 16-19, 22-23, 29, 34, 36-40

have been amended.  Claims 13, 16-30, 34, 36-42 are presented for examination on the

merits.

### *Declaration under 37 CFR 1.131*

3.      The declaration of Michael P. Caulfied filed on 3/28/2012 under 37 CFR 1.131 is

sufficient to overcome the Soldin (US 7,473,560) reference.

### *Terminal Disclaimer*

4.      The terminal disclaimer for US 6,977,143 has been reviewed and is accepted.

The terminal disclaimer has been recorded.

### *Interview*

5.      Examiner contacted Applicant's representative (Joseph P. Meara) to request TDs

for 12/607,905 and 13/118,180 in order to place the application in condition for

Application/Control Number: 12/946,785                                                          Page 3
Art Unit: 1654

allowance. However, Examiner was not able to get a timely response. Therefore the

corresponding ODP rejections are set forth as follows:

### Double Patenting

6.      The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees.   A nonstatutory

obviousness-type double patenting rejection is appropriate where the conflicting claims

are not identical, but at least one examined application claim is not patentably distinct

from the reference claim(s) because the examined application claim is either anticipated

by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140

F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29

USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.

1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422

F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163

USPQ 644 (CCPA 1969).

        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on a nonstatutory

double patenting ground provided the conflicting application or patent either is shown to

be commonly owned with this application, or claims an invention made as a result of

activities undertaken within the scope of a joint research agreement.

QUESTMS-00002964

Application/Control Number: 12/946,785                                    Page 4
Art Unit: 1654

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

7.     Claims 13, 16-30, 34, 36-42 are provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1-5, 7-11, 13-14 of copending Application No. 12/607,905 in view of Sowers et al. (American Journal of Epidemiology, 2001). Although the conflicting claims are not identical, they are not patentably distinct from each other because both the instant application and US '905 are drawn to a method for determining the amount of testosterone in a sample when taken from a human, comprising:

(a) purifying testosterone from a sample from a female human, wherein said purifying comprises extracting testosterone from said sample;

(b) ionizing said purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer; and

(c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the sample;

wherein said testosterone is not derivatized prior to mass spectrometry, and wherein the method is capable of detecting testosterone at concentrations of less than 10 ng/dL in the sample.

US '905 does not expressly teach measuring testosterone in samples from a human female.

Application/Control Number: 12/946,785                                    Page 5
Art Unit: 1654

Sowers et al. teach that estrogens and their effect on reproductive health and chronic diseases, including cardiovascular disease and cancers, particularly breast cancer, have been the overwhelming focus of hormone studies in women. In contrast, there is relatively little information about the role of androgens in women's health. However, testosterone products are being increasingly promoted to women in the lay press as a means of increasing well-being.

Testosterone is the most important circulating and naturally occurring androgen in both men and women. In women, testosterone is produced primarily through peripheral conversion of androstenedione (50 percent) with the remainder of production concentrated in the ovary (25 percent) and adrenal cortex (25 percent). During pregnancy, the placenta may also serve as a source of the hormone.

In women, abnormally high levels of testosterone have been associated with hirsutism and polycystic ovary syndrome. Hirsutism is a consequence of increased production of testosterone or testosterone precursors (dehydroepiandrosterone, 3*-androstanediol, or androst-4-ene-3,17-dione) and depression of sex hormone binding globulin. Circulating levels of free to total testosterone in hirsute women are double those of nonhirsute women. Polycystic ovary syndrome is related to ovulatory dysfunction and is a common cause of female infertility.

Testosterone concentrations have been evaluated for their associations with chronic diseases. Serum levels of testosterone have been suspected in the etiology of breast cancer of postmenopausal women. Zeleniuch-Jacquotte et al. reported an increased risk of breast cancer with increasing concentrations of serum total

QUESTMS-00002966

testosterone (unadjusted p for trend < 0.05). However, this trend was no longer significant after adjustment for total estradiol concentrations and the percent of sex hormone binding globulin-bound estradiol. Nonetheless, those authors speculated that testosterone or its metabolites might still play a role in breast cancer etiology by altering the availability of estrogens, by competitively binding with sex hormone binding globulin, and/or by acting as an estrogen precursor. Likewise, androgen concentrations have been associated with insulin levels and diabetes mellitus. However, a temporal sequence between higher levels of androgen and increased insulin levels has not been firmly established, as higher androgen concentrations may result in increased insulin resistance or increased insulin production may stimulate androgen production in the ovary. Sowers et al. have reported an association of osteoarthritis and serum testosterone concentrations in women aged 25–45 years.

Numerous studies have examined factors that influence testosterone concentrations in men, and these may provide an indication of the factors that influence or are associated with testosterone concentrations in women. In men, older age has been consistently associated with declining levels of testosterone. Lower testosterone concentrations were associated with increased body mass. Smoking was also associated with increased concentrations of serum testosterone in men, whereas alcohol consumption and moderate physical activity do not appear to be associated with variation in testosterone concentrations (e.g., abstract).

Testosterone levels. Women were evaluated annually on the anniversary of their initial assessment (±1 month). At each examination, blood was drawn in days 3–7 of the

QUESTMS-00002967

Application/Control Number: 12/946,785                                    Page 7
Art Unit: 1654

follicular phase of the menstrual cycle and after an 8-hour fast. For women not normally

menstruating within 3 months of the examination, blood was drawn after fasting and

indexed to the anniversary date of their first annual examination. Serum was frozen at

−80°C. Total testosterone was assessed with a solid-phase 125I radioimmunoassay

based on a testosterone-specific antibody immobilized to the wall of a polypropylene

tube. The assay precision was ±15.5 percent. Table 1 shows that total testosterone in

pg/mL has a concentration of about 209-223 pg/mL and 33 pg/mL for low

concentrations in women (e.g., page 258). Please note that 209 pg/mL x (100 mL/dL) x

(1 ng/1000 pg) is equal to 20.9 pg/dL which is within the detection limit. Further, the

method also includes extraction of testosterone which reads upon concentrating the

sample and thus would potentially encompass lower levels than the testosterone

circulating levels in women.

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to utilize the method of US '905 to measure testosterone in women.

One of ordinary skill in the art at the time the invention was made would have been

motivated to do so because estrogens and their effect on reproductive health and

chronic diseases, including cardiovascular disease and cancers, particularly breast

cancer, have been the overwhelming focus of hormone studies in women. In contrast,

there is relatively little information about the role of androgens in women's health.

However, testosterone products are being increasingly promoted to women in the lay

press as a means of increasing well-being.  One of ordinary skill in the art at the time

the invention was made would have had a reasonable expectation of success because

QUESTMS-00002968

Application/Control Number: 12/946,785                                    Page 8
Art Unit: 1654

the method of US '905 was more sensitive than the average values of testosterone in

serum in women and because the method includes concentrating the sample extraction

before testosterone measurement.

     This is a provisional obviousness-type double patenting rejection because the

conflicting claims have not in fact been patented.

8.     Claims 13, 16-30, 34, 36-42 are provisionally rejected on the ground of

nonstatutory obviousness-type double patenting as being unpatentable over claims 13-

39 of copending Application No. 13/118,180 in view of Sowers et al. (American Journal

of Epidemiology, 2001).  Although the conflicting claims are not identical, they are not

patentably distinct from each other because Although the conflicting claims are not

identical, they are not patentably distinct from each other because both the instant

application and US '180 are drawn to a method for determining the amount of

testosterone in a sample when taken from a human, comprising:

     (a) purifying testosterone from a sample from a female human, wherein said

purifying comprises extracting testosterone from said sample;

     (b) ionizing said purified testosterone to produce one or more testosterone ions

detectable by a mass spectrometer; and

     (c) detecting the amount of one or more of the testosterone ion(s) by a mass

spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to

the amount of testosterone in the sample;

QUESTMS-00002969

wherein said testosterone is not derivatized prior to mass spectrometry, and

wherein the method is capable of detecting testosterone at concentrations of less than

10 ng/dL in the sample.

US '180 does not expressly teach measuring testosterone in samples from a

human female.

Sowers et al. teach that estrogens and their effect on reproductive health and

chronic diseases, including cardiovascular disease and cancers, particularly breast

cancer, have been the overwhelming focus of hormone studies in women. In contrast,

there is relatively little information about the role of androgens in women's health.

However, testosterone products are being increasingly promoted to women in the lay

press as a means of increasing well-being.

Testosterone is the most important circulating and naturally occurring androgen

in both men and women. In women, testosterone is produced primarily through

peripheral conversion of androstenedione (50 percent) with the remainder of production

concentrated in the ovary (25 percent) and adrenal cortex (25 percent). During

pregnancy, the placenta may also serve as a source of the hormone.

In women, abnormally high levels of testosterone have been associated with

hirsutism and polycystic ovary syndrome. Hirsutism is a consequence of increased

production of testosterone or testosterone precursors (dehydroepiandrosterone, 3*-

androstanediol, or androst-4-ene-3,17-dione) and depression of sex hormone binding

globulin. Circulating levels of free to total testosterone in hirsute women are double

QUESTMS-00002970

those of nonhirsute women. Polycystic ovary syndrome is related to ovulatory
dysfunction and is a common cause of female infertility.

Testosterone concentrations have been evaluated for their associations with
chronic diseases. Serum levels of testosterone have been suspected in the etiology of
breast cancer of postmenopausal women. Zeleniuch-Jacquotte et al. reported an
increased risk of breast cancer with increasing concentrations of serum total
testosterone (unadjusted p for trend < 0.05). However, this trend was no longer
significant after adjustment for total estradiol concentrations and the percent of sex
hormone binding globulin-bound estradiol. Nonetheless, those authors speculated that
testosterone or its metabolites might still play a role in breast cancer etiology by altering
the availability of estrogens, by competitively binding with sex hormone binding globulin,
and/or by acting as an estrogen precursor. Likewise, androgen concentrations have
been associated with insulin levels and diabetes mellitus. However, a temporal
sequence between higher levels of androgen and increased insulin levels has not been
firmly established, as higher androgen concentrations may result in increased insulin
resistance or increased insulin production may stimulate androgen production in the
ovary. Sowers et al. have reported an association of osteoarthritis and serum
testosterone concentrations in women aged 25–45 years.

Numerous studies have examined factors that influence testosterone
concentrations in men, and these may provide an indication of the factors that influence
or are associated with testosterone concentrations in women. In men, older age has
been consistently associated with declining levels of testosterone. Lower testosterone

QUESTMS-00002971

Application/Control Number: 12/946,785                               Page 11
Art Unit: 1654

concentrations were associated with increased body mass. Smoking was also

associated with increased concentrations of serum testosterone in men, whereas

alcohol consumption and moderate physical activity do not appear to be associated with

variation in testosterone concentrations (e.g., abstract).

Testosterone levels. Women were evaluated annually on the anniversary of their

initial assessment (±1 month). At each examination, blood was drawn in days 3–7 of the

follicular phase of the menstrual cycle and after an 8-hour fast. For women not normally

menstruating within 3 months of the examination, blood was drawn after fasting and

indexed to the anniversary date of their first annual examination. Serum was frozen at

−80°C. Total testosterone was assessed with a solid-phase 125I radioimmunoassay

based on a testosterone-specific antibody immobilized to the wall of a polypropylene

tube. The assay precision was ±15.5 percent. Table 1 shows that total testosterone in

pg/mL has a mean concentration of about 209-223 pg/mL and 33 pg/mL for low

concentrations in women (e.g., page 258). Please note that 209 pg/mL x (100 mL/dL) x

(1 ng/1000 pg) is equal to 20.9 pg/dL which is within the detection limit. Further, the

method also includes extraction of testosterone which reads upon concentrating the

sample and thus would potentially encompass lower levels than the testosterone

circulating levels in women.

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to utilize the method of US '180 to measure testosterone in women.

One of ordinary skill in the art at the time the invention was made would have been

motivated to do so because estrogens and their effect on reproductive health and

QUESTMS-00002972

Application/Control Number: 12/946,785                                    Page 12
Art Unit: 1654

chronic diseases, including cardiovascular disease and cancers, particularly breast

cancer, have been the overwhelming focus of hormone studies in women. In contrast,

there is relatively little information about the role of androgens in women's health.

However, testosterone products are being increasingly promoted to women in the lay

press as a means of increasing well-being. One of ordinary skill in the art at the time the

invention was made would have had a reasonable expectation of success because the

method of US '180 was more sensitive than the average values of testosterone in serum

in women and because the method includes concentrating the sample extraction before

testosterone measurement.

    This is a <u>provisional</u> obviousness-type double patenting rejection because the

conflicting claims have not in fact been patented.

### *Conclusion*

9.    No claim is currently allowed.

    The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to MARCELA M. CORDERO GARCIA whose telephone

number is (571)272-2939.  The examiner can normally be reached on M-F 8:30-5:00.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Cecilia J. Tsang can be reached on (571) 272-0562.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

QUESTMS-00002973

Application/Control Number: 12/946,785                                    Page 13
Art Unit: 1654

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/MARCELA M CORDERO GARCIA/
Primary Examiner, Art Unit 1654

MMCG 08/2012

# EXHIBIT   K

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUEST DIAGNOSTICS INVESTMENTS LLC, <br><br> Plaintiff, <br><br> v. <br><br> LABORATORY CORPORATION OF AMERICA HOLDINGS, ESOTERIX, INC., and ENDOCRINE SCIENCES, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  C.A. No. 18-01436-MN |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO QUEST DIAGNOSTICS
INVESTMENTS LLC'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS, ESI, AND THINGS (NOS. 1-64)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the applicable

Local Rules of the United States District Court for the District of Delaware, Defendants

Laboratory Corporation of America Holdings ("LCAH"), Esoterix, Inc. ("Esoterix"), and

Endocrine Sciences, Inc. ("Endocrine") (collectively, "Defendants" or "LabCorp"), by and

through its undersigned counsel, hereby respond and object to Plaintiff Quest Diagnostics

Investments LLC's ("Plaintiff" or "Quest") First Set of Requests for Production of Documents,

ESI, and Things (Nos. 1-64).

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action.

Each response is provided subject to all appropriate objections (including, without limitation,

objections concerning competency, relevancy, materiality, propriety, and admissibility) that

would require the exclusion of any statement contained herein if the statement were made by a

1

witness present and testifying in court.  All such objections and grounds therefore are reserved and may be interposed at the time of trial.

The following responses are based on the facts and information presently known and available to LabCorp.  The responses refer only to those contentions that have been asserted to date, based on the facts now known to LabCorp.  Discovery, investigation, research, and analysis are ongoing in this case and may disclose the existence of additional facts, add meaning to known facts, establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, and changes to these responses.  LabCorp reserves the right to change or supplement these responses as additional facts are discovered, revealed, recalled, or otherwise ascertained.

## **GENERAL OBJECTIONS**

In addition to any specifically stated objections, each of LabCorp's responses herein is subject to and incorporates the following general objections:

A.      LabCorp objects to the location (New York) and manner of response (inspection, copying, and/or photographing). Documents information and things will be produced or made available for inspection in a mutually agreeable place and in a mutually agreeable manner.

B.      LabCorp objects to each of the requests and the definitions to the extent it purports to impose obligations greater or more extensive than those required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or other applicable law.

C.      LabCorp objects to each of the requests and the definitions to the extent it purports to request information that cannot be found in the course of a reasonable search.

-2-

D.      LabCorp objects to each of the requests to the extent it seeks information that is not relevant to any claim or defense raised in this litigation.

E.      LabCorp objects to each of the requests to the extent it seeks information that is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

F.      LabCorp objects to each of the requests and the definitions to the extent they are vague or ambiguous.

G.      LabCorp objects to each of the requests to the extent that it is unreasonably cumulative or duplicative of other discovery requests, or seeks information that is obtainable from some other source that is more convenient, less burdensome, less expensive, or it is as easily accessible to Quest as it is to LabCorp.

H.      LabCorp objects to each of the requests to the extent it is overly broad, fails to reasonably identify the information sought, is unduly burdensome, or is posed for improper purposes, including, without limitation, embarrassment, undue annoyance, harassment, oppression, delay, or to increase the expense of litigation or to the extent it calls for a legal conclusion or opinion.

I.      LabCorp objects to each of the requests to the extent it seeks information for which the burden or expense of obtaining and disclosing outweighs its likely benefit in resolving the issues of this action.

J.      LabCorp objects to each of the requests to the extent it fails to describe with reasonable particularity the documents requested.

K.      LabCorp objects to each of the requests to the extent it seeks documents that are protected from disclosure by the attorney-client privilege, work product immunity, and/or any other privilege, immunity, or exemption.

L.      LabCorp objects to each requests to the extent that it seeks confidential, commercially sensitive, trade secret, and/or proprietary information of a non-party or information covered by a confidentiality agreement, or information that is otherwise protected from disclosure pursuant to Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure or Rule 501 of the Federal Rules of Evidence.  LabCorp will not produce such information unless the non-party agrees to the terms of the protective order entered in this case or consents in writing to the disclosure of that information to Quest or the protection from disclosure is withdrawn or resolved.

M.      LabCorp objects to each of the requests to the extent it seeks documents not in LabCorp's possession, custody, or control.

N.      LabCorp objects to each of the requests to the extent it seeks email or other Electronically Stored Information (ESI) as premature and inconsistent with the Delaware Default Standard for Discovery.  LabCorp further objects to each of the requests to the extent it seeks ESI from sources that are not reasonably accessible because of undue burden or cost.

O.      LabCorp's objection the production of any document, or category of documents, or agreement to provide any responsive documents, is not and shall not be construed as an admission that any such documents or category of documents exists.

P.      LabCorp objects to each of the requests on the grounds that discovery is continuing in this action and LabCorp has not completed its factual investigation. Accordingly, without asserting an obligation to do so, and without waiving its objections, LabCorp reserves the right to amend and/or supplement its responses if and when additional facts or documents are

discovered.   Additionally, as LabCorp's responses are based on facts and documents that LabCorp has identified to date, they do not preclude LabCorp from later relying on facts or documents discovered or generated pursuant to subsequent investigation or discovery.

Q.    LabCorp's responses are made without prejudice to its right to subsequently add to, modify, or otherwise change or amend these responses and objections.

## OBJECTIONS TO DEFINITIONS

A.    LabCorp objects to Quests' definition of "LCAH" as overly broad and unduly burdensome. For the purposes of these requests, reference to "LCAH" shall refer to Laboratory Corporation of America Holdings only.

B.    LabCorp objects to Quests' definition of "Esoterix" as overly broad and unduly burdensome. For the purposes of these requests, reference to "Esoterix" shall refer to Esoterix, Inc. only.

C.    LabCorp objects to Quests' definition of "Endocrine" as overly broad and unduly burdensome. For the purposes of these requests, reference to "Endocrine" shall refer to Endocrine Sciences, Inc. only.

D.    LabCorp objects to Quest's definition of the term "Patents-in-Suit" as overly broad and unduly burdensome. For the purposes of these requests, reference to "Patents-in-Suit" shall refer to the '862, '427, '867, and '868 patents only.

E.    LabCorp objects to Quest's definition of "Accused Testosterone Tests" as vague and ambiguous, overbroad and unduly burdensome. For the purposes of these requests, reference to "Accused Testosterone Tests" shall refer to Esoterix Test Nos. 501475 and 500286 and LabCorp Test Nos. 07001, 500726, and 500159.

F.     LabCorp objects to Quest's definition of "Accused Vitamin D Tests" as vague and ambiguous, overbroad and unduly burdensome. For the purposes of these requests, reference to "Accused Vitamin D Tests" shall refer to Esoterix Test Nos. 500337, 500338, 500342, and 803580 and LabCorp Test No. 504115.

G.     LabCorp objects to Quest's definition of "document" to extent it is broader than the appropriate meaning under the Federal Rules of Civil Procedure.

H.     LabCorp objects to Quest's definition of "thing" to extent it is broader than the appropriate meaning under the Federal Rules of Civil Procedure.

I.     LabCorp objects to Quest's definition of "person" as vague and ambiguous, overbroad and unduly burdensome.  For the purposes of these requests, "person" shall refer to a human being, a corporation, or an association existing under or authorized by the laws of the United States, the laws of any U.S. territory, the laws of any state, or the laws of any foreign country.

J.     LabCorp objects to Quest's definition of "ESI" as inconsistent with the Delaware Default Standard for Discovery.  LabCorp further objects to the definition's inclusion of "meta-data, and other data generated by and/or stored on one or more computer systems and storage media (*e.g.*, hard disks, floppy disks, backup tapes), or any other electronic data, such as voicemail" as vague and ambiguous, overbroad and unduly burdensome, and inconsistent with Paragraph 5 and Schedule A of the Delaware Default Standard for Discovery.  LabCorp further objects to the definition's inclusion of "other electronic communications . . . databases, calendars, telephone logs, contract manager information contained on laptops or other portable devises, and network access information" as vague and ambiguous, overbroad and unduly burdensome, and inconsistent with Paragraph 5 and Schedule A of the Delaware Default Standard for Discovery.

-6-

K.     LabCorp objects to Definition T to the extent it purports to place any burden on LabCorp to request a clarification for any vague and ambiguous term Quest chose to use in its requests.

L.     LabCorp objects to the definition of "related" and all requests incorporating this term as overly broad, vague, ambiguous, and requiring subjective judgment on the part of LabCorp and/or its attorneys.

M.     LabCorp objects to Quest's definition of "thing" as overly broad, vague, ambiguous, and unduly burdensome.

N.     LabCorp objects to the definition of "relate," "refer," "reflect," "concern" or "pertain" and all requests incorporating these terms as overly broad, vague, ambiguous, requiring subjective judgment on the part of LabCorp and/or its attorneys and calling for conclusions or opinions of counsel in violation of the attorney work product doctrine.

## OBJECTIONS TO INSTRUCTIONS

A.     LabCorp objects to the instructions accompanying Quest's requests to the extent that such instructions are not consistent with the provisions of the Federal Rules of Civil Procedure or to the extent that the instructions purport to require LabCorp to take actions or provide information not required or which exceed the scope of the Federal Rules of Civil Procedure or other applicable rules of law.

B.     LabCorp objects to Instruction A as purporting to go beyond the proper scope for requests under Federal Rule of Civil Procedure 34.  LabCorp will interpret the requests to require, at most, a reasonable search for documents and things in LabCorp's actual possession, custody, or control.

C.      LabCorp objects to Instruction B and C to the extent they purports to impose any

obligation beyond that found in Federal Rule of Civil Procedure 34.

D.      LabCorp objects to Instruction D to the extent it purports to impose any obligation

beyond that found in Federal Rule of Civil Procedure 26(b)(5) or Paragraph 1.d of the Delaware

Default Standard for Discovery.

E.      LabCorp objects to Instruction E to the extent it purports to impose any obligation

beyond that found in Federal Rule of Civil Procedure 26(e).

F.      LabCorp objects to Instruction G to the extent it purports to impose a duty to

preserve before litigation was pending or reasonably anticipated, or before a duty to preserve

arose. LabCorp objects further to the extent the Instruction purports to cover irrelevant,

duplicative, or cumulative information, as well as to the extent it purports to cover any

information for which there is or was no duty to preserve.  LabCorp further objects to the extent

it imposes and undue burden and to the extent it is inconsistent with Federal Rule of Civil

Procedure 37.

## RESPONSES TO REQUESTS FOR PRODUCTION

### DOCUMENT REQUEST NO. 1

All documents, ESI, and things that constitute, refer, or relate to any of the Patents-in-

Suit.

### RESPONSE TO DOCUMENT REQUEST NO. 1

In addition to the foregoing general objections, which are expressly incorporated herein,

LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably

overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents,

ESI, and things"); (2) seeks information that is irrelevant to the claims and defenses at issue in

this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the scope of the request of the documents because it asks for documents that "constitute, refer or relate to any of the Patents-in-Suit"; and (4) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged documents that refer to the Patents-in-Suit within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 2**

All documents, ESI, and things, including correspondence and communications with counsel and all opinions, legal or otherwise, provided to or made for, by, or at the direction of LabCorp, relating to the validity, invalidity, infringement, non-infringement, enforceability, non-enforceability, liability, or license (either express or implied) to LabCorp for any of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 2**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; (4) is premature in light of the Default Standard for Discovery; and (5) seeks premature disclosure of validity, invalidity, infringement, non-infringement, enforcement, non-enforceability, liability, or

license opinions under the Scheduling Order.  *See* D.I. 18.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Presently, LabCorp has not identified any opinions of counsel on which it will rely in this case.  LabCorp's investigation is ongoing and it reserves the right to identify an opinion of counsel later in the case.  If and when LabCorp so elects, it will produce responsive, non-privileged opinion(s) of counsel within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 3**

All documents, ESI, and things concerning infringement or non-infringement of any claim of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 3**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; (3) is premature in light of the Default Standard for Discovery; and (4) seeks premature disclosure of expert opinions under the Scheduling Order. *See* D.I. 18.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

## DOCUMENT REQUEST NO. 4

All documents, ESI, and things relating to patent clearances or freedom-to-operate opinions provided to or made for, by, or at the direction of LabCorp concerning, in whole or in part, any of the Patents-in-Suit.

## RESPONSE TO DOCUMENT REQUEST NO. 4

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; and (4) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Presently, LabCorp has not identified any opinions of counsel on which it will rely in this case.  LabCorp's investigation is ongoing and it reserves the right to identify an opinion of counsel later in the case.  If and when LabCorp so elects, it will produce responsive, non-privileged opinion(s) of counsel within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

## DOCUMENT REQUEST NO. 5

All documents, ESI, and things relating to any LabCorp policies or practices concerning patent clearances or freedom-to-operate opinions.

**RESPONSE TO DOCUMENT REQUEST NO. 5**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is vague and ambiguous as to the meaning of the terms "practices" and "patent clearances"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; and (5) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Presently, LabCorp has not identified any opinions of counsel on which it will rely in this case.  LabCorp's investigation is ongoing and it reserves the right to identify an opinion of counsel later in the case.  If and when LabCorp so elects, it will produce responsive, non-privileged documents sufficient to show any LabCorp policies or practices concerning patent clearances or freedom-to-operate opinions within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 6**

All documents, ESI, and things concerning all prior art known to LabCorp regarding the Patents-in-Suit, including any related searches, studies, opinions, or investigations conducted by or on behalf of LabCorp.

**RESPONSE TO DOCUMENT REQUEST NO. 6**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably

overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; (4) is premature in light of the Default Standard for Discovery; and (5) seeks premature disclosure of expert opinions under the Scheduling Order.  *See* D.I. 18.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Schedule Order (D.I. 18), on May 24, 2019, LabCorp will produce its initial invalidity contentions for each asserted claim, as well as the known related invalidating references.

## DOCUMENT REQUEST NO. 7

A complete copy of any standard operating procedures concerning the Accused Testosterone Tests that were in force any time from April 2, 2013 to the present, including any amendments and supplements thereto.

## RESPONSE TO DOCUMENT REQUEST NO. 7

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (2) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s)

-13-

work(s), including standard operating procedures, within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 8**

Documents sufficient to show all steps, operations, calculations and equipment used for each Accused Testosterone Tests between April 2, 2013 and the present.

**RESPONSE TO DOCUMENT REQUEST NO. 8**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents; (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (3) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 9**

A complete copy of any standard operating procedures concerning the Accused Vitamin D Tests that were in force any time from September 17, 2012 to the present, including any amendments and supplements thereto.

**RESPONSE TO DOCUMENT REQUEST NO. 9**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) seeks information that

is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (2) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s), including standard operating procedures, within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 10**

Documents sufficient to show all steps, operations, calculations and equipment used for each Accused Vitamin D Test between September 17, 2012 and the present.

**RESPONSE TO DOCUMENT REQUEST NO. 10**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents; (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (3) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 11**

All documents, ESI, and things relating to LabCorp's first awareness of any of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 11**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (3) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged documents or information sufficient to show its first awareness of any of the Patents-in-Suit within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 12**

All documents, ESI, and things created before September 17, 2018 concerning or constituting any search for publications and documents relating to any of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 12**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things"); (2) seeks information that is irrelevant to the claims and defenses at issue in

-16-

this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the term "search" and "publications and documents relating to"; (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; and (5) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive non-privileged documents or information sufficient to show its first awareness of any of the Patents-in-Suit within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 13**

All documents, ESI, and things concerning any indemnification that is or may be provided to, received by, or granted by LabCorp against or for the infringement of any claims of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 13**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (3) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp incorporates by reference its Initial Disclosures Pursuant to FED. R. CIV. P. 26(a)(1), and specifically Section IV.

**DOCUMENT REQUEST NO. 14**

All documents, ESI, and things concerning any insurance that is or may be provided to, received by, or granted by LabCorp against or for the infringement of any claims of the Patents-in-Suit.

**RESPONSE TO DOCUMENT REQUEST NO. 14**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (3) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp incorporates by reference its Initial Disclosures Pursuant to FED. R. CIV. P. 26(a)(1), and specifically Section IV.

**DOCUMENT REQUEST NO. 15**

All documents, ESI, and things relating to any litigation, investigations, or administrative proceedings regarding LabCorp's performance of the Accused Testosterone Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 15**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is premature in light of the

-18-

Default Standard for Discovery; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

## DOCUMENT REQUEST NO. 16

All documents, ESI, and things relating to any litigation, investigations, or administrative proceedings regarding LabCorp's performance of the Accused Vitamin D Tests.

## RESPONSE TO DOCUMENT REQUEST NO. 16

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is premature in light of the Default Standard for Discovery; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

## DOCUMENT REQUEST NO. 17

All documents, ESI, and things relating to any desire, consideration, or need by LabCorp to obtain or not obtain a license concerning the Patents-in-Suit.

## RESPONSE TO DOCUMENT REQUEST NO. 17

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably

overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is vague and ambiguous as to the terms "desire," "consideration," and "need"; (3) is premature in light of the Default Standard for Discovery; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged documents that refer to the Patents-in-Suit within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 18**

All documents, ESI, and things related to any agreements, including but not limited to licenses, contracts, and/or joint venture agreements, among LabCorp and any other person for the performance of the Accused Testosterone Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 18**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things related to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the terms "agreements" and "performance"; (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; (5) is premature in light of the Default Standard for Discovery; and (6) may seek documents that are protected by third-party confidentiality agreements.

-20-

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp is willing to meet and confer regarding the scope of this Request.

## DOCUMENT REQUEST NO. 19

All documents, ESI, and things related to any agreements, including but not limited to licenses, contracts, and/or joint venture agreements, among LabCorp and any other person for the performance of the Accused Vitamin D Tests.

## RESPONSE TO DOCUMENT REQUEST NO. 19

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things related to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the terms "agreements" and "performance"; (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; (5) is premature in light of the Default Standard for Discovery; and (6) seeks documents that is protected by third-party confidentiality agreements.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp is willing to meet and confer regarding the scope of this Request.

## DOCUMENT REQUEST NO. 20

All documents, ESI, and things concerning marketing or decision whether to market the Accused Testosterone Tests in the United States or any other country.

**RESPONSE TO DOCUMENT REQUEST NO. 20**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the term "marketing or decision whether to market"; (4) is premature in light of the Default Standard for Discovery; and (5) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged marketing documents shared with customers or potential customers regarding the Accused Testosterone Tests in the United States within its possession, custody, or control to the extent it is able to locate such document after a reasonable search.

**DOCUMENT REQUEST NO. 21**

All documents, ESI, and things concerning marketing or decision whether to market the Accused Vitamin D Tests in the United States or any other country.

**RESPONSE TO DOCUMENT REQUEST NO. 21**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses

-22-

at issue in this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the term "marketing or decision whether to market"; (4) is premature in light of the Default Standard for Discovery; and (5) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged marketing documents shared with customers or potential customers regarding the Accused Vitamin D Tests in the United States within its possession, custody, or control to the extent it is able to locate such document after a reasonable search.

## DOCUMENT REQUEST NO. 22

All documents, ESI, and things relating to market share and market potential for the Accused Testosterone Tests in the United States or any other country from April 2, 2013 to the present.

## RESPONSE TO DOCUMENT REQUEST NO. 22

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is vague and ambiguous as to the term "market potential"; (3) is premature in light of the Default Standard for Discovery; and (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp

-23-

responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged documents sufficient to show market share for the Accused Testosterone Tests in the United States within its possession, custody, or control to the extent it is able to locate such document after a reasonable search.

## DOCUMENT REQUEST NO. 23

All documents, ESI, and things relating to market share and market potential for the Accused Vitamin D Tests in the United States or any other country from September 17, 2012 to the present.

## RESPONSE TO DOCUMENT REQUEST NO. 23

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is vague and ambiguous as to the term "market potential"; (3) is premature in light of the Default Standard for Discovery; and (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged documents sufficient to show market share for the Accused Vitamin D Tests in the United States within its possession, custody, or control to the extent it is able to locate such document after a reasonable search.

-24-

**DOCUMENT REQUEST NO. 24**

All documents, ESI, and things relating to the dollar amounts expended or predicted to be expended by LabCorp or any other person for the promotion of the Accused Testosterone Tests in the United States or any other country.

**RESPONSE TO DOCUMENT REQUEST NO. 24**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is vague and ambiguous as to the terms "promotion" and "predicted"; (3) is premature in light of the Default Standard for Discovery; (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp will produce responsive, non-privileged documents sufficient to show costs relating to accused method(s) and/or product(s) within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 25**

All documents, ESI, and things relating to the dollar amounts expended or predicted to be expended by LabCorp or any other person for the promotion of the Accused Vitamin D Tests in the United States or any other country.

**RESPONSE TO DOCUMENT REQUEST NO. 25**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably

overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is vague and ambiguous as to the terms "promotion" and "predicted"; (3) is premature in light of the Default Standard for Discovery; (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp will produce responsive, non-privileged documents sufficient to show costs relating to accused method(s) and/or product(s) within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 26**

All documents, ESI, and things relating to any comparison of the Accused Testosterone Tests to any other product or testing method.

**RESPONSE TO DOCUMENT REQUEST NO. 26**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused

method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

## DOCUMENT REQUEST NO. 27

All documents, ESI, and things relating to any comparison of the Accused Vitamin D Tests to any other product or testing method.

## RESPONSE TO DOCUMENT REQUEST NO. 27

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

## DOCUMENT REQUEST NO. 28

All documents, ESI, and things describing the sales, including LabCorp's net and gross income, associated with the Accused Testosterone Tests from April 2, 2013 to the present.

## RESPONSE TO DOCUMENT REQUEST NO. 28

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably

overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things"); (2) is vague and ambiguous as to the term "associated with"; (3) is premature in light of the Default Standard for Discovery; and (4) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.

### DOCUMENT REQUEST NO. 29

Documents sufficient to show on a periodic basis, preferably monthly or quarterly, the unit sales, revenue, expenses (fixed and variable), and profits for the Accused Testosterone Tests from April 2, 2013 to the present.

### RESPONSE TO DOCUMENT REQUEST NO. 29

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that: (1) it is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents; and (2) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.  LabCorp will also produce responsive, non-privileged documents sufficient to show costs relating to accused method(s) and/or product(s) within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 30**

All documents, ESI, and things describing the sales, including LabCorp's net and gross income, associated with the Accused Vitamin D Tests from September 17, 2012 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 30**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things"); (2) is premature in light of the Default Standard for Discovery; and (3) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 31**

Documents sufficient to show on a periodic basis, preferably monthly or quarterly, the unit sales, revenue, expenses (fixed and variable), and profits for the Accused Vitamin D Tests from September 17, 2012 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 31**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that: (1)  it is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents; and (2) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.  LabCorp will also produce responsive, non-privileged documents sufficient to show costs relating to accused method(s) and/or product(s) within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 32**

All documents, ESI, and things relating to all forms of promotion for or marketing of the Accused Testosterone Tests in the United States or any other country by LabCorp or any other person.

**RESPONSE TO DOCUMENT REQUEST NO. 32**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the term "all forms of promotion for or marketing of"; (4) is premature in light of the Default Standard for Discovery; and (5) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country by LabCorp or any other person."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged marketing documents shared with customers or potential customers

regarding the Accused Testosterone Tests in the United States within its possession, custody, or control to the extent it is able to locate such document after a reasonable search.

**DOCUMENT REQUEST NO. 33**

All documents, ESI, and things relating to all forms of promotion for or marketing of the Accused Vitamin D Tests in the United States or any other country by LabCorp or any other person.

**RESPONSE TO DOCUMENT REQUEST NO. 33**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is vague and ambiguous as to the term "all forms of promotion for or marketing of"; (4) is premature in light of the Default Standard for Discovery; and (5) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country by LabCorp or any other person."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows: Pursuant to the Default Standard for Discovery, LabCorp will produce responsive, non-privileged marketing documents shared with customers or potential customers regarding the Accused Vitamin D Tests in the United States within its possession, custody, or control to the extent it is able to locate such document after a reasonable search.

**DOCUMENT REQUEST NO. 34**

Documents, ESI, and things sufficient to show the volume of the Accused Testosterone Tests performed by LabCorp in the United States.

**RESPONSE TO DOCUMENT REQUEST NO. 34**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "documents, ESI, and things"); (2) is premature in light of the Default Standard for Discovery; and (3) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 35**

Documents, ESI, and things sufficient to show the volume of the Accused Vitamin D Tests performed by LabCorp in the United States.

**RESPONSE TO DOCUMENT REQUEST NO. 35**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "documents, ESI, and things"); (2) is premature in light of the Default Standard for Discovery; and (3) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.

## DOCUMENT REQUEST NO. 36

All documents, ESI, and things relating to any market survey, market analysis, sales projections, or forecast of customer demand with respect to the Accused Testosterone Tests in the United States or any other country, from April 2, 2013 to the present.

## RESPONSE TO DOCUMENT REQUEST NO. 36

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is premature in light of the Default Standard for Discovery; (3) is vague and ambiguous as to the term "forecast of customer demand"; and (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to Default Standard for Discovery, LabCorp will produce any market survey, market analysis, and/or sales projections relating to the Accused Testosterone Tests within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 37**

All documents, ESI, and things relating to any market survey, market analysis, sales projections, or forecast of customer demand with respect to the Accused Vitamin D Tests in the United States or any other country, from September 17, 2012 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 37**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is premature in light of the Default Standard for Discovery; (3) is vague and ambiguous as to the term "forecast of customer demand"; and (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information pertaining to "the United States or any other country."

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to Default Standard for Discovery, LabCorp will produce any market survey, market analysis, and/or sales projections relating to the Accused Vitamin D Tests within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 38**

All documents, ESI, and things relating to LabCorp's decision to employ a mass spectrometry-based testosterone test, including without limitation, meeting minutes, agendas, annual and quarterly reports, executive summaries and reports, strategic or competitive analysis, and financial plans.

**RESPONSE TO DOCUMENT REQUEST NO. 38**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to" and "without limitation"); (2) is vague and ambiguous to the terms "decision to employ," "executive summaries and reports," and "strategic or competitive analysis"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) is premature in light of the Default Standard for Discovery; and (5) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  Pursuant to Default Standard for Discovery, LabCorp will produce documents sufficient to show its decision to offer a mass spectrometry-based testosterone test within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 39**

All documents, ESI, and things relating to LabCorp's decision to employ a mass spectrometry-based vitamin D test, including without limitation, meeting minutes, agendas, annual and quarterly reports, executive summaries and reports, strategic or competitive analysis, and financial plans.

**RESPONSE TO DOCUMENT REQUEST NO. 39**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents,

ESI, and things relating to" and "without limitation"); (2) is vague and ambiguous to the terms "decision to employ," "executive summaries and reports," and "strategic or competitive analysis"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) is premature in light of the Default Standard for Discovery; and (5) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:   Pursuant to Default Standard for Discovery, LabCorp will produce documents sufficient to show its decision to offer a mass spectrometry-based vitamin D test within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

## DOCUMENT REQUEST NO. 40

All documents, ESI, and things relating to LabCorp's plans and strategy for a mass-spectrometry-based testosterone test, including the Accused Testosterone Tests, including without limitation meeting minutes, agendas, annual and quarterly reports, executive summaries and reports, strategic or competitive analysis, and financial plans.

## RESPONSE TO DOCUMENT REQUEST NO. 40

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to" and "without limitation"); (2) is vague and ambiguous to the terms "plans and strategy," "executive summaries and reports," and "strategic or competitive analysis"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not

proportional to the needs of the case; (4) is premature in light of the Default Standard for Discovery; and (5) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp is willing to meet and confer regarding the scope of this Request.

## DOCUMENT REQUEST NO. 41

All documents, ESI, and things relating to LabCorp's plans and strategy for a mass-spectrometry-based vitamin D test, including the Accused Vitamin D Tests, including without limitation meeting minutes, agendas, annual and quarterly reports, executive summaries and reports, strategic or competitive analysis, and financial plans.

## RESPONSE TO DOCUMENT REQUEST NO. 41

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to" and "without limitation"); (2) is vague and ambiguous to the terms "plans and strategy," "executive summaries and reports," and "strategic or competitive analysis"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) is premature in light of the Default Standard for Discovery; and (5) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp is willing to meet and confer regarding the scope of this Request.

**DOCUMENT REQUEST NO. 42**

All documents, ESI, and things relating to LabCorp's knowledge of Quest's or any other entity's activities in the research, development, manufacture, testing, marketing, use, sale, or patenting of mass spectrometry-based testosterone tests from April 2, 2013 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 42**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it requires LabCorp to identify "Quest's or any other entity's activities"; (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is premature in light of the Default Standard for Discovery; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

**DOCUMENT REQUEST NO. 43**

All documents, ESI, and things relating to LabCorp's knowledge of Quest's or any other entity's activities in the research, development, manufacture, testing, marketing, use, sale, or patenting of mass spectrometry-based vitamin D tests from September 17, 2012 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 43**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it requires LabCorp to identify "Quest's or any other entity's activities"; (2) seeks information that is irrelevant to the claims and defenses at issue in

this case and not proportional to the needs of the case; (3) is premature in light of the Default Standard for Discovery; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

## DOCUMENT REQUEST NO. 44

All documents, ESI, and things relating to LabCorp's activities in the research, development, manufacture, testing, marketing, use, sale, or patenting of mass spectrometry-based testosterone tests.

## RESPONSE TO DOCUMENT REQUEST NO. 44

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.  Further, LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.  LabCorp

will also produce responsive, non-privileged documents sufficient to identify any of LabCorp's patents relating to the accused method(s) and/or product(s) within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 45**

All documents, ESI, and things relating to LabCorp's activities in the research, development, manufacture, testing, marketing, use, sale, or patenting of mass spectrometry-based vitamin D tests.

**RESPONSE TO DOCUMENT REQUEST NO. 45**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.  Further, LabCorp has produced documents sufficient to show the revenue and the volume of the accused method(s) and/or product(s) within its possession, custody, or control after a reasonable search.  LabCorp will also produce responsive, non-privileged documents sufficient to identify any of LabCorp's patents relating to the accused method(s) and/or product(s) within its possession, custody, or

control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 46**

All documents, ESI, and things concerning any testing or evaluation of Quest's or any other entity's commercially-available mass spectrometry-based testosterone tests conducted by or on behalf of LabCorp.

**RESPONSE TO DOCUMENT REQUEST NO. 46**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it requires LabCorp to identify "any testing or evaluation of Quest's or any other entity's commercially-available mass spectrometry-based testosterone tests"; (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

**DOCUMENT REQUEST NO. 47**

All documents, ESI, and things concerning any testing or evaluation of Quest's or any other entity's commercially-available mass spectrometry-based vitamin D tests conducted by or on behalf of LabCorp.

**RESPONSE TO DOCUMENT REQUEST NO. 47**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably

overbroad and unduly burdensome as it requires LabCorp to identify "any testing or evaluation of Quest's or any other entity's commercially-available mass spectrometry-based testosterone tests"; (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

## DOCUMENT REQUEST NO. 48

All laboratory notebooks describing the research and development of the Accused Testosterone Tests.

## RESPONSE TO DOCUMENT REQUEST NO. 48

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it:  (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all laboratory notebooks . . ."); and (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 49**

All laboratory notebooks describing the research and development of the Accused Vitamin D Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 49**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it:  (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all laboratory notebooks . . ."); and (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 50**

All documents, ESI, and things relating to any evaluation or comparison of Quest's or any other entity's mass spectrometry-based testosterone tests with the Accused Testosterone Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 50**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case because it requires LabCorp to identify "Quest's or any other's entity's mass

-43-

spectrometry-based testosterone tests"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) is premature in light of the Default Standard for Discovery; (5) is unreasonably cumulative or duplicative of other discovery requests; and (6) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

**DOCUMENT REQUEST NO. 51**

All documents, ESI, and things relating to any evaluation or comparison of Quest's or any other entity's mass spectrometry-based vitamin D tests with the Accused Vitamin D Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 51**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things relating to"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case because it requires LabCorp to identify "Quest's or any other's entity's mass spectrometry-based vitamin D tests"; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) is premature in light of the Default Standard for Discovery; (5) is unreasonably cumulative or duplicative of other discovery requests; and (6) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

-44-

**DOCUMENT REQUEST NO. 52**

Sample test reports for each Accused Testosterone Test for each year or period for which the report was in use from April 2, 2013 to present.

**RESPONSE TO DOCUMENT REQUEST NO. 52**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome; (2) is vague and ambiguous as to the term "test reports"; and (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp is willing to meet and confer regarding the scope of this Request.

**DOCUMENT REQUEST NO. 53**

Sample test reports for each Accused Vitamin D Test for each year or period for which the report was in use from September 17, 2012 to present.

**RESPONSE TO DOCUMENT REQUEST NO. 53**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome; (2) is vague and ambiguous as to the term "test reports"; and (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp is willing to meet and confer regarding the scope of this Request.

**DOCUMENT REQUEST NO. 54**

All documents, ESI, and things LabCorp contemplates introducing at trial, in any hearing, or in support of any submission to the Court.

**RESPONSE TO DOCUMENT REQUEST NO. 54**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it:  (1) is premature in light of the Scheduling Order (*see* D.I. 18); and (2) is premature in light of the Default Standard for Discovery.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:   LabCorp will produce, at the appropriate time, all non-privileged documents in its possession, custody, or control that it intends to introduce at trial, in any hearing, or in support of any submission to the Court.

**DOCUMENT REQUEST NO. 55**

All documents, ESI, and things relied upon or referred to in preparing the Answer to Quest's Complaint in this action, including without limitation all reports, analysis, test results, or other materials.

**RESPONSE TO DOCUMENT REQUEST NO. 55**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things"); (2) is premature in light of the Default Standard for Discovery; and (3) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

-46-

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows:  LabCorp has produced core technical documents related to the accused method(s) and/or product(s) sufficient to show how the accused method(s) and/or product(s) work(s) within its possession, custody, or control after a reasonable search.

**DOCUMENT REQUEST NO. 56**

All documents, ESI, and things forming the basis for or that may refute the Affirmative Defenses and Counterclaims in LabCorp's Answer to Quest's Complaint in this action.

**RESPONSE TO DOCUMENT REQUEST NO. 56**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things"); (2) is premature in light of the Default Standard for Discovery; (3) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges; (4) is unreasonably cumulative or duplicative of other discovery requests; and (5) seeks premature disclosure of validity, invalidity, infringement, non-infringement, enforcement, non-enforceability, liability, or license opinions under the Scheduling Order.  *See* D.I. 18.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request, including at least because the proper scope of this request, if any, is wholly subsumed by other requests.

**DOCUMENT REQUEST NO. 57**

All documents, ESI, and things produced to any other persons in connection with discovery in United States and/or foreign litigations concerning, referring, or relating to the Accused Testosterone Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 57**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is premature in light of the Default Standard for Discovery; and (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information or documents pertaining to "foreign litigations."

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

**DOCUMENT REQUEST NO. 58**

All documents, ESI, and things produced to any other persons in connection with discovery in United States and/or foreign litigations concerning, referring, or relating to the Accused Vitamin D Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 58**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents,

ESI, and things concerning"); (2) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (3) is premature in light of the Default Standard for Discovery; and (4) seeks information that is irrelevant to the claims and defenses at issue in this case as it requires LabCorp to identify information or documents pertaining to "foreign litigations."

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

## DOCUMENT REQUEST NO. 59

Documents, ESI, and things sufficient to show the identity and job titles of employees for all of LabCorp's divisions and/or subsidiaries involved in the research, development, production, analysis, design, manufacture, regulatory approval, sale, distribution, marketing, or market analysis of the Accused Testosterone Tests, including without limitation organizational charts, from April 2, 2013 to the present.

## RESPONSE TO DOCUMENT REQUEST NO. 59

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all of LabCorp's divisions and/or subsidiaries involved in the research, development, production, analysis, design, manufacture, regulatory approval, sale, distribution, marketing, or market analysis of the Accused Testosterone Tests"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) is unreasonably cumulative or duplicative of other discovery requests.

-49-

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows: Pursuant to the Default Standard for Discovery, LabCorp will produce any organizational charts relating to the Accused Testosterone Tests within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 60**

Documents, ESI, and things sufficient to show the identity and job titles of employees for all of LabCorp's divisions and/or subsidiaries involved in the research, development, production, analysis, design, manufacture, regulatory approval, sale, distribution, marketing, or market analysis of the Accused Vitamin D Tests, including without limitation organizational charts, from September 17, 2012 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 60**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all of LabCorp's divisions and/or subsidiaries involved in the research, development, production, analysis, design, manufacture, regulatory approval, sale, distribution, marketing, or market analysis of the Accused Testosterone Tests"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) is unreasonably cumulative or duplicative of other discovery requests.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows: Pursuant to the Default Standard for Discovery, LabCorp will produce any

organizational charts relating to the Accused Vitamin D Tests within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

## DOCUMENT REQUEST NO. 61

All documents, ESI, and things referring or relating to correspondence between LabCorp and Quest referring or relating to mass spectrometry-based testosterone tests, including the Accused Testosterone Tests.

## RESPONSE TO DOCUMENT REQUEST NO. 61

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things referring or relating to"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) seeks documents that are already in Quest's possession custody or control; and (5) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows: Pursuant to the Default Standard for Discovery, LabCorp will produce any correspondence between LabCorp and Quest that refers to the Accused Testosterone Tests within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 62**

All documents, ESI, and things referring or relating to correspondence between LabCorp and Quest referring or relating to mass spectrometry-based vitamin D tests, including the Accused Vitamin D Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 62**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things referring or relating to"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; (4) seeks documents that are already in Quest's possession custody or control; and (5) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Subject to and without waiver of the foregoing general and specific objections, LabCorp responds as follows: Pursuant to the Default Standard for Discovery, LabCorp will produce any correspondence between LabCorp and Quest that refers to the Accused Vitamin D Tests within its possession, custody, or control to the extent it is able to locate such documents after a reasonable search.

**DOCUMENT REQUEST NO. 63**

All documents, ESI, and things referring or relating to correspondence between LabCorp and any third party relating to mass spectrometry-based testosterone tests, including without limitation the Accused Testosterone Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 63**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things referring or relating to" and "any third party relating to mass spectrometry-based testosterone tests"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) seeks documents or information protected by attorney-client privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

**DOCUMENT REQUEST NO. 64**

All documents, ESI, and things referring or relating to correspondence between LabCorp and any third party relating to mass spectrometry-based vitamin D tests, including without limitation the Accused Vitamin D Tests.

**RESPONSE TO DOCUMENT REQUEST NO. 64**

In addition to the foregoing general objections, which are expressly incorporated herein, LabCorp objects to this request on the grounds and to the extent that it: (1) is unreasonably overbroad and unduly burdensome as it seeks a large volume of documents (i.e., "all documents, ESI, and things referring or relating to" and "any third party relating to mass spectrometry-based testosterone tests"); (2) is premature in light of the Default Standard for Discovery; (3) seeks information that is irrelevant to the claims and defenses at issue in this case and not proportional to the needs of the case; and (4) seeks documents or information protected by attorney-client

-53-

privilege, attorney work product, or other similar privileges.

Based on the foregoing general and specific objections, LabCorp will not conduct a search for documents responsive to this request.

Dated:  March 6, 2019

*Of Counsel*:

Edward G. Poplawski*
Olivia M. Kim*
Erik Carlson*
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

Matias Ferrario*
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
mferrario@kilpatricktownsend.com

*Admitted *Pro Hac Vice*

WILSON SONSINI GOODRICH & ROSATI, P.C.

 */s/ Ian R. Liston*
Ian R. Liston (#5507)
Johanna Peuscher-Funk (#6451)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com
jpeuscherfunk@wsgr.com

*Counsel for Defendants Laboratory Corporation of America Holdings; Esoterix, Inc.; and Endocrine Sciences, Inc.*