

222 Delaware Avenue, Suite 800
Wilmington, DE 19801-1600

PHONE 302.304.7600
FAX 866.974.7329

www.wsgr.com

August 27, 2019

**Via Efiling and Hand Delivery**

The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 North King Street, Unit 19, Room 4324
Wilmington, DE 19801

   Re: *Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings, et al.*, C.A. No. 18-1436-MN (D. Del.)

Dear Judge Noreika:

  Defendants Laboratory Corporation of America Holdings; Esoterix, Inc.; and Endocrine Sciences, Inc. (collectively, "LabCorp") respectfully oppose Plaintiff's ("Quest's") request for relief under the protective order (D.I. 62).

## BACKGROUND

  The Court entered a Stipulated Protective Order in this case that limits use of protected information to this case and related litigation. D.I. 25 ¶ 5.1. The Stipulated Protective Order reflects the parties' agreement that one in-house attorney for each side may receive "documents or information designated HIGHLY CONFIDENTIAL INFORMATION." D.I. 25 ¶¶ 6.1(b) and (c). The Stipulated Protective Order includes a patent prosecution bar that applies to technology "relating to the detection of vitamin-D and/or testosterone via mass spectrometry." D.I. 25 ¶ 23.

  On July 18, 2019, LabCorp identified in-house counsel Jack Peterson and attached a Declaration and Confidentiality Undertaking signed by Mr. Peterson. Ex 1. That declaration certified that Mr. Peterson had "received and carefully read" the Order and that he "fully underst[ood] the terms of the Order." Ex. 1. Mr. Peterson recognized that he is "bound by the terms of the Order" and he agreed "to comply with those terms." Ex. 1. In response, Quest objected based on a title Mr. Peterson lists on his LinkedIn page for Sequenom, a subsidiary of LabCorp, that is not a party and that Quest has never alleged is relevant to this case. D.I. 62, Ex. A at 9. The only basis for Quest's objection appeared to be related to prosecution as Quest asked for confirmation that Mr. Peterson would comply with the prosecution bar. D.I. 62, Ex. A at 9.

  After the seven-day objection period had expired (D.I. 25 ¶ 7.1), Quest sent two additional objections on July 31, 2019 and August 12, 2019. D.I. 62, Ex. A at 4, 8. The objections included an untimely statement of additional factual and legal bases. D.I. 62, Ex. A at 1-3. Quest's letter brief includes yet another objection, this one based on Quest's speculation that Mr. Peterson's LinkedIn titles suggest Mr. Peterson "directly advises top-level LabCorp executives about, intellectual property strategies, enforcement, licensing, and product development." D.I. 62 at 2.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

August 27, 2019
Page 2

Quest also incorrectly recites Mr. Peterson's title as "Executive" Vice President. *Compare* D.I. 62 at 2 *with* D.I. 62 Ex. B at 1 ("Associate" Vice President). Quest's objection is primarily based on two inapplicable decisions that Quest cited for the first time in its letter brief. D.I. 62 at 1–3 citing *PhishMe, Inc. v. Wombat Sec. Techs., Inc.,* No. 16-403, 2017 WL 4138961 (D. Del. Sept. 8, 2017) and *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.,* No. 15-53, 2016 WL 2904592 (D. Del. May 18, 2016). As explained below: (1) Quest's new objection has been waived; and (2) would have failed if made in a timely fashion.

1. **Quest's Objection in Its Letter Brief Has Been Waived**

Under the Stipulated Protective Order, a party has seven calendar days to object or "shall be deemed to have waived such objection." D.I. 25 ¶ 7.1. The Stipulated Protective Order requires that any objection "shall be accompanied by a statement of the *factual and legal bases* underlying such objection." D.I. 25 ¶ 7.1 (emphasis added). The "failure to provide the factual and legal bases underlying the objection during the requisite time (*i.e.*, within seven (7) calendar days of receiving notice of the anticipated disclosure to the expert) shall be deemed a waiver its objection." D.I. 25 ¶ 7.1 (emphasis added). Quest's objection is accordingly deemed waived. Quest's only timely objection was based on prosecution activities and one of Mr. Peterson's titles at Sequenom. It did not include a statement of any other factual or legal bases for the objection. D.I. 62 Ex A at 1–3. The objection Quest included in its letter brief is based on two other titles and legal bases that were not provided in a timely manner, i.e. by July 25, 2019. Accordingly, the Court should deny Quest's request for relief.

2. **Even if Quest Had Provided the Objection in Its Letter Brief Along with a Statement of the Factual and Legal Bases Underlying the Objection by July 25, 2019, the Objection Would Have Failed and Should be Overruled**

Quest, as the party opposing disclosure, bears the "burden of proof with respect to the propriety of its objection." D.I. 25 ¶ 7.2. It does not carry its burden. Generally, a lawyer's access to confidential materials should not be determined based simply on whether the lawyer in question is in-house or retained. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Quest's argument based on what Mr. Peterson's titles "suggest" (D.I. 62 at 2) is no reason to deny Mr. Peterson access because *U.S. Steel Corp.* expressly held that it was error to deny access because of in-house counsel's "general position" or a "a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." *Id*. at 1467-68. Accordingly, numerous courts have allowed in-house counsel managing litigation to access highly confidential information. *R.R. Donnelly & Sons Co. v. Quark, Inc.,* No. Civ A 06-32, 2007 WL 61885 (D. Del. Jan. 4, 2007) (allowing plaintiff's "Chief Patent Counsel" to have access); *British Telecommunications PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 392–393 (D. Del. 2019) (collecting cases). Quest has failed to identify any concrete risk of inadvertent disclosure but instead relies on incorrect assumptions.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

August 27, 2019
Page 3

  The cases Quest relies on do not support its objection. In *PhishMe*, the party seeking access for its in-house counsel bore the burden of *modifying the protective order* because the parties had not previously agreed that in-house counsel could receive highly confidential information like Quest and LabCorp have done here. *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403, 2017 WL 4138961, at *2 (D. Del. Sept. 8, 2017); D.I. 25 ¶¶ 6.1(b) and (c). The Court concluded the burden had not been met based on a remarkably different factual scenario. Shane McGee, the in-house counsel in question there, was one of three in-house lawyers for a company of around 200 employees, was responsible for *all* of PhishMe's legal affairs, was a member of the management team of 15 executives, and was "the sole in-house attorney" who provides legal advice to the company's CEO and its board. *Id*. at *5; *see also id*. at *3-*4, *8. Here, LabCorp is a company with nearly 61,000 employees world-wide (Ex. 2) and Mr. Peterson is one of more than 25 in-house counsel for LabCorp. The provisions of the Stipulated Protective Order limiting use to this case and related cases coupled with LabCorp's ability to reassign future tasks that may pose a conflict to another in-house counsel is a sufficient safeguard. *See Boehringer Ingelheim Pharm., Inc. v. Hercon Labs. Corp.*, Civ. A. No. 89–484–CMW, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990) (quoted in *PhishMe* at *7).

  Quest's reliance on *Blackbird Tech* is also misplaced for similar reasons. There, the parties had not already agreed to allow in-house counsel to receive highly confidential information. *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 15-53, 2016 WL 2904592, at *1 (D. Del. May 18, 2016). Additionally, the party seeking access, Blackbird Tech, was a unique type of company: a patent assertion entity with 11 employees that was founded and managed by patent lawyers who also intended to serve as trial counsel in the case. *Id*. at *2-*3. The circumstances here are very different and Quest does not explain why LabCorp should be treated like Blackbird Tech.

  Lastly, the impropriety of Quest's objection is shown by its own conduct. Quest disclosed Dina Mack as its in-house counsel who will receive LabCorp's highly confidential information. Ex. 3. Ms. Mack is Quest's Deputy General Counsel and Chief Litigation Officer who refers to herself as an "executive" who reports "to the Board of Directors on litigation and other matters," advises "senior management on legal, compliance and risk management issues," and reviews and negotiates "a wide variety of agreements," including "IP licensing" agreements. Ex. 4. Ms. Mack was cleared under the protective order without objection. Having secured access for its in-house counsel to facilitate managing this litigation, Quest now improperly seeks to deprive LabCorp of doing the same. The Court should apply the same standard that Quest presumably did when Quest selected its in-house counsel to receive highly confidential information.

  For the foregoing reasons, LabCorp respectfully requests that the Court deny Quest's request for relief.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

August 27, 2019
Page 4

          Sincerely,

          WILSON SONSINI GOODRICH & ROSATI
          Professional Corporation

          */s/ Ian R. Liston*
          Ian R. Liston

cc: all counsel of record