# **EXHIBIT F**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST DIAGNOSTICS INVESTMENTS LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS, ESOTERIX, INC., and ENDOCRINE SCIENCES, INC.,<br><br>    Defendants. | C.A. No. 18-01436-MN |

**DEFENDANTS' CORRECTED INTERROGTORIES (NOS. 2–4)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Laboratory Corporation of American Holdings ("LCAH"), Esoterix, Inc. ("Esoterix"), and Endocrine Sciences, Inc. ("Endocrine") (collectively, "Defendants" or "LabCorp") request that Plaintiff Quest Diagnostics Investments LLC ("Plaintiff" or "Quest") respond to the following interrogatories in writing, under oath, and in accordance with the following instructions and definitions, within thirty (30) days from the date of service.  Quest shall supplement all responses to these Interrogatories as required by the Federal Rules of Civil Procedure.

**DEFINITIONS**

1.   "Quest," "Plaintiff," "you," and "your" means Quest Diagnostics Investments LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and Quest's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or

controlled by Quest, and all predecessors and successors in interest to such entities or to the Asserted Patents, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by Quest.

2. "LabCorp" means Defendants Laboratory Corporation of American Holdings ("LCAH"), Esoterix, Inc. ("Esoterix"), and Endocrine Sciences, Inc. ("Endocrine"), collectively, and its officers, directors, employees, agents, attorneys, parents, subsidiaries, affiliated or predecessor corporations, and any other person or entity acting on its behalf or subject to its control.

3. "LCAH" means Laboratory Corporation of American Holdings and its officers, directors, employees, agents, attorneys, parents, subsidiaries, affiliated or predecessor corporations, and any other person or entity acting on its behalf or subject to its control.

4. "Esoterix" means Esoterix, Inc. and its officers, directors, employees, agents, attorneys, parents, subsidiaries, affiliated or predecessor corporations, and any other person or entity acting on its behalf or subject to its control.

5. "Endocrine" means Endocrine Sciences, Inc. and its officers, directors, employees, agents, attorneys, parents, subsidiaries, affiliated or predecessor corporations, and any other person or entity acting on its behalf or subject to its control.

6. "Asserted Patents" collectively refers to U.S. Patent Nos. 7,972,867 ("the '867 patent"); 7,972,868 ("the '868 patent"); 8,101,427 ("the '427 patent"); 8,409,862 ("the '862 patent"); and any other patents asserted by Quest against LabCorp in this case.

7. The terms "related patent families" and "related patents" refer to the Asserted Patents and all underlying patents and patent applications, including published and unpublished applications, abandoned applications and patents, parents, continuations, continuations-in-part,

-3-

divisionals, reissues, foreign counterparts, and any other patents or patent applications claiming priority or reciting a relation to the Asserted Patents, claiming priority to any application to which one or more of the Asserted Patents claims priority, or to which the Asserted Patents claim priority, whether directly or indirectly, or recite a relation.

8. "Test" refers to any diagnostic test or instrumentality used in carrying out a diagnostic test, including any method, service, offering, product, test apparatus, or system associated with diagnostic test.

9. "Accused LabCorp Tests" refers to anything (e.g., tests, methods, services, offerings, products, test apparatus, or systems) that Plaintiff has accused of infringing one or more of the asserted patents, which LabCorp currently understands to be Esoterix Test Nos. 501475 and 500286 and LCAH Test Nos. 070001, 500726, and 500159 (collectively, the "Accused Testosterone Tests") and Esoterix Test Nos. 500337. 500338, 500342, and 803580 and LCAH Test No. 504115 (collectively, the "Accused Vitamin D Tests").

10. "Accused Testosterone Tests" refers to anything (e.g., tests, methods, services, offerings, products, test apparatus, or systems) relating to testosterone that Plaintiff has accused of infringing one or more of the asserted patents, which LabCorp currently understands to be Esoterix Test Nos. 501475 and 500286 and LCAH Test Nos. 070001, 500726, and 500159.

11. "Accused Vitamin D Tests" refers to anything (e.g., tests, methods, services, offerings, products, test apparatus, or systems) relating to vitamin D that Plaintiff has accused of infringing one or more of the asserted patents, which LabCorp currently understands to be Esoterix Test Nos. 500337. 500338, 500342, and 803580 and LCAH Test No. 504115.

12. The term "Evidentiary Support," as used herein, refers to all documents, communications, things, testimony, witnesses, persons most knowledgeable, and any other evidence that support Quest's factual and legal contentions.

13. "Document" shall include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form.

14. "Communication" means, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means.

15. The term "person" shall refer to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

16. "Infringe" and "infringement" means direct infringement, joint infringement, contributory infringement, infringement by inducement, literal infringement, and infringement by the doctrine of equivalents.

17. "Prior art" means all things, patents, publications, disclosures, sales, or other acts or occurrences included within the broadest meaning of 35 U.S.C. § 102 (or any subpart thereof) and 35 U.S.C. § 103, and all things, patents, publications, disclosures, sales, or other acts or occurrences that any person or entity has identified as "prior art" or relevant to the invalidity of the patent(s) identified in the relevant request.

18. "Relate to," "refer to," "relating to," and "referring to" means relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

19. "Include" and "including" means including without limitation.

20. Use of the singular also includes the plural and vice-versa.

21. The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Interrogatories.

22. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

23. "Identify" or "identity" or "identification" in relation to a person means to state his or her full name and: (a) present business address(es), position and business affiliation, and business telephone number; or, if current information is not known, (b) the last known business and home addresses, position and business affiliation, and business telephone numbers. Once any person has been identified properly, it shall be sufficient thereafter when identifying that same person to state the name only.

24. "Identify" or "identity" or "identification" in relation to an entity means to state the entity's: (a) full name; (b) state of incorporation or formation; (c) current or last known business address; and (d) current or last known telephone number. Once an entity has been identified properly, it shall be sufficient thereafter when identifying that same entity to state the name only.

25. "Identify" or "identity" or "identification" in relation to a document means to state: (a) the date the document was created; (b) the author of the document; (c) the recipient of the document; (d) any person or entity receiving a copy of the document by "cc," "bcc," or otherwise; (e) a basic description of the nature of the document, including, if applicable; (f) the title of the document; and (g) whether the document has been or is being produced in this litigation, the dates or identifier number affixed to the document. Documents to be "identified" include documents in Quest's possession, custody, or control, documents known by Quest to have existed but no longer exist, and other documents of which Quest has knowledge or information.

26. "Identify" or "identity" or "identification" in relation to a Test means to state the name, description, test number, laboratory name, company or person responsible, or any other representative designation.

27. "Identify" or "identity" or "identification" in relation to a communication means: (a) to state the date of the communication; (b) to identify all documents relating to such communications; (c) to describe the content and substance of the communication; (d) to identify the persons who received or were involved in the communication; and (e) to identify the person or persons most knowledgeable about the communication.

28. The term "asserted claims" refers to each and every claim of the Asserted Patents that Quest contends LabCorp infringes.

29. The term "secondary considerations" or "objective indicia" refers to secondary considerations of nonobviousness as the term is used in *Graham v. John Deere Co.*, 338 U.S. 1, 18 (1966), and subsequently developed cases.

30. The terms "license" and "licensee," as used herein, shall include the meaning of sublicense and sublicensee, and any further subordinations thereto.

## INSTRUCTIONS

The following instructions shall apply to each of the Interrogatories herein:

1. In answering the following Interrogatories, furnish all available information, including information in the possession, custody, or control of any of Quest's attorneys, directors, officers, agents, employees, representatives, associates, investigators, affiliates, owners, partnerships, parents or subsidiaries, and persons under Quest's control, who have the best knowledge, not merely information known to Quest based on Quest's own personal knowledge. If you cannot fully respond to the following Interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Interrogatories that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the

contention that the Interrogatories cannot be answered fully and completely; and state what knowledge, information or belief Quest have concerning the unanswered portion of any such Interrogatories.

2.      If Quest's response to a particular Interrogatory is a statement that Quest lacks the ability to comply fully and completely with that Interrogatory, Quest must answer each such Interrogatory to the fullest extent Quest deems possible; specify the portion of each Interrogatory that Quest claims to be unable to answer fully and completely; state the facts upon which Quest relies to support its contention that it is unable to answer the Interrogatory fully and completely; and state what knowledge, information, or belief Quest has concerning the unanswered portion of each such Interrogatory.

3.      Quest's obligation to respond to these Interrogatories is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.  If Quest subsequently obtains information that renders his answers to these Interrogatories incomplete or inaccurate, Quest must amend its answers to make them complete and accurate.

## INTERROGATORIES

**INTERROGATORY NO. 2:**

For each Test identified in response to Interrogatory No. ~~2~~1, on a monthly basis for the time period of September 17, 2012 to the present and on a test code by test code basis, provide the following financial data: (a) gross and net revenues; (b) reimbursements; (c) volume of testing performed by ~~LabCorp~~ Quest or any other entity at ~~LabCorp's~~ Quest's direction; (d) costs; (e) all other expenses; (f) profits, all segregated by classifications made in the normal course of business; (g) identity of documents sufficient to show financial data requested by this

interrogatory; (h) identity of all persons who have knowledge related to the information requested in this interrogatory; and (i) identity of all Evidentiary Support.

**INTERROGATORY NO. 3:**

For each Test identified in response to Interrogatory No. ~~2~~ 1 that Quest contends practice(d) or incorporate(d) the alleged invention(s) claimed in the Asserted Patents, identify the basis for Quest's contention that each identified Test practices or incorporates any of the asserted claims in the Asserted Patents and provide a chart that identifies the complete legal and factual basis, on an element-by-element basis, for how each asserted claim is allegedly found within each identified Test. The response should include, but not be limited to, a specific identification of Evidentiary Support.

**INTERROGATORY NO. 4:**

For any tests identified in response to Interrogatory No. ~~2~~ 1 that Quest does not contend practice the Asserted Patents, or any other Tests for testosterone, or Vitamin D that Quest does not contend practices the Asserted Patents, identify the Test and (a) whether the Test has actually been implemented or proposed as a modification, (b) the costs required to develop each such modification or alternative, (c) the time required to develop each such modification or alternative, (d) the time required to implement each such modification or alternative, (e) the actual or potential compatibility issues raised by each such modification or alternative, (f) how any actual or potential compatibility issues of each such modification or alternative were or would be addressed, (g) any impact (however measured) of each such modification or alternative on the performance of any Test that Quest contends practices the Asserted Patents, (h) the costs that each such modification or alternative added or would add to any Test that Quest contends practices the Asserted Patents, including licensing, and (i) the factual basis for Quest's

contention, if any, that each such modification or alternative is not or would not be available, technically feasible, economically feasible, and acceptable. The response should include, but not be limited to, a specific identification of Evidentiary Support.

Dated: August 16, 2019

*Of Counsel*:

Edward G. Poplawski*
Olivia M. Kim*
Erik Carlson*
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

Matias Ferrario*
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
mferrario@kilpatricktownsend.com

*Admitted *Pro Hac Vice*

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Ian R. Liston
Ian R. Liston (#5507)
Johanna Peuscher-Funk (#6451)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com
jpeuscherfunk@wsgr.com

*Counsel for Defendants Laboratory Corporation of America Holdings; Esoterix, Inc.; and Endocrine Sciences, Inc.*

## CERTIFICATE OF SERVICE

I, Erik J. Carlson, hereby certify that on August 16, 2019, I caused the foregoing **DEFENDANTS' CORRECTED INTERROGTORIES NOS. 2–4** to be served via electronic mail upon the following counsel of record:

Kenneth L. Dorsney
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
kdorsney@morrisjames.com

*Counsel for Plaintiff*
*Quest Diagnostic Investments LLC*

*Of Counsel:*

Adam R. Gahtan
Kevin X. McGann
Eric M. Majchrzak
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
agahtan@fenwick.com
kmcgann@fenwick.com
emajchrzak@fenwick.com

Melanie L. Mayer
Elizabeth B. Hagan
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
mmayer@fenwick.com
ehagan@fenwick.com

*Counsel for Plaintiff*
*Quest Diagnostic Investments LLC*

    */s/ Erik J. Carlson*
    Erik J. Carlson