# EXHIBIT   I



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*November 29, 2018*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *12/946,785*
**FILING DATE:** *November 15, 2010*
**PATENT NUMBER:** *8409862*
**ISSUE DATE:** *April 02, 2013*

Certified by

*Andrew Lawrence*

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

Atty. Dkt. No. 034827-9107

### *IN THE UNITED STATES PATENT AND TRADEMARK OFFICE*

| | |
|---|---|
| Applicant: | Caulfield et al. |
| Title: | DETERMINATION OF TESTOSTERONE BY MASS SPECTROMETRY |
| Appl. No.: | 12/946,785 |
| Appl. Filing Date: | 11/15/2010 |
| Examiner: | Cordero Garcia, Marcela M. |
| Art Unit: | 1654 |
| Confirmation Number: | 1630 |

### REQUEST FOR CONTINUED EXAMINATION (RCE) TRANSMITTAL

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

      This is a Request for Continued Examination (RCE) under 37 C.F.R. § 1.114 of the above-identified application. This RCE and the enclosed items listed below are being filed prior to the earliest of: (1) payment of the issue fee (unless a petition under 37 C.F.R. § 1.313 is granted); (2) abandonment of the application; or (3) the filing of a notice of appeal to the U.S. Court of Appeals for the Federal Circuit under 35 U.S.C. §141, or the commencement of a civil action under 35 U.S.C. §145 or §146 (unless the appeal or civil action is terminated).

1. Submission **required** under 37 C.F.R. §1.114: (check items that apply)

      a. Previously submitted:

4811-9298-0751.1

QUESTMS-00002846

Atty. Dkt. No. 034827-9107

[ ]    Please enter and consider the amendment and/or reply previously filed on __.

[ ]    Please consider the Affidavit(s)/Declaration(s) previously filed on __ but not considered.

[ ]    Please consider the arguments in the Appeal Brief or Reply previously filed on __.

[ ]    Other __.

b.  Enclosed are:

[ X ]    Amendment/Reply (11 pages)

[ X ]    Declaration of Michael P. Caulfield Under 37 CFR 1.131 (5 pages)

[ X ]    Information Disclosure Statement.

[ X ]    Form PTO/SB/08 with copies of 6 listed reference(s).

[ X ]    Terminal Disclaimer over U.S. Patent No. 6,977,143 (1 page)

Miscellaneous:

[ ]    Suspension of action of the above-identified application is requested under 37 C.F.R. § 1.103(c) for a period of __ months.

The filing fee is calculated below:

| | Claims as Amended | | Previously Paid For | | Extra Claims Present | Rate | | Fee Totals |
|---|---|---|---|---|---|---|---|---|
| RCE Fee 1.17(e): | | | | | | $930.00 | = | $930.00 |
| Total Claims: | 24 | - | 27 | = 0 | | x $60.00 | = | $0.00 |
| Independents | 2 | - | 3 | = 0 | | x $250.00 | = | $0.00 |
| First presentation of any Multiple Dependent Claims: | | | | | | + $450.00 | = | $0.00 |

4811-9298-0751.1

QUESTMS-00002847

Atty. Dkt. No. 034827-9107

CLAIMS FEE TOTAL:   =   $930.00

[ ]    Applicant hereby petitions for an extension of time under 37 C.F.R. §1.136(a) for the
total number of months checked below:

| | | | |
|---|---|---:|---:|
| [ ] | Extension for response filed within the first month: | $150.00  0 | $0.00 |
| [ ] | Extension for response filed within the second month: | $560.00 | $0.00 |
| [ ] | Extension for response filed within the third month: | $1,270.00 | $0.00 |
| [ ] | Extension for response filed within the fourth month: | $1,980.00 | $0.00 |
| [ ] | Extension for response filed within the fifth month: | $2,690.00 | $0.00 |
| | EXTENSION FEE SUBTOTAL: | | $0.00 |
| | EXTENSION FEE ALREADY PAID:  - | | $0.00 |
| | EXTENSION FEE TOTAL | | $0.00 |
| | CLAIMS AND EXTENSION FEE TOTAL: | | $930.00 |
| [ ] | Small Entity Fees Apply (subtract ½ of above): | | $0.00 |
| [ ] | Suspension of action requested under 37 C.F.R. § 1.103(c) | | $0.00 |
| [ X ] | Terminal Disclaimer Fee | | $160.00 |
| | Subtotal | | $1,090.00 |
| [ X ] | Less previously paid Terminal Disclaimer Fee | | $160.00 |
| | TOTAL FEE: | | $930.00 |

The above-identified fees of $930.00 are being paid by credit card via EFS-Web.

The Commissioner is hereby authorized to charge any additional fees which may be
required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to
Deposit Account No. 19-0741.  Should no proper payment be enclosed herewith, as by the credit
card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or
incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to
Deposit Account No. 19-0741.

-3-

QUESTMS-00002848

Atty. Dkt. No. 034827-9107

Please direct all correspondence to the undersigned attorney or agent at the address indicated below.

Respectfully submitted,

Date _____3/28/12_____

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:      (858) 847-6776
Facsimile:      (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

4811-9298-0751.1

QUESTMS-00002849

Atty. Dkt. No. 034827-9107

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:        Caulfield et al.

Title:            DETERMINATION OF
                  TESTOSTERONE BY MASS
                  SPECTROMETRY

Appl. No.:        12/946,785

Filing Date:      11/15/2010

Examiner:         Cordero Garcia, M.M.

Art Unit:         1654

Confirmation      1630
Number:

### REQUEST FOR CONTINUED EXAMINATION UNDER 37 C.F.R. § 1.114

Mail Stop RCE
Commissioner for Patents
PO Box 1450
Alexandria, Virginia 22313-1450

Sir:

In response to the Office Action mailed January 13, 2012, please enter the following amendments and consider the following remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this document.

**Remarks/Arguments** begin on page 6 of this document.

Please amend the application as follows:

-1-

4814-2117-6335.1

QUESTMS-00002850

Atty. Dkt. No. 034827-9107

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

    1.-12.  (Canceled)

    13.     (Currently Amended) A method for determining the amount of testosterone in a sample when taken from a female human, comprising:

        (a) purifying testosterone from a sample from a female human, wherein said purifying comprises extracting testosterone from said sample;

        (b) ionizing said purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer; and

        (c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the sample;

        wherein said testosterone is not derivatized prior to mass spectrometry, and wherein the method is capable of detecting testosterone at concentrations of less than 10 ng/dL in the sample.

    14.-15. (Canceled)

    16.     (Currently Amended) The method of claim [15] 13, wherein said extracting comprises subjecting said sample to solid phase extraction (SPE).

    17.     (Currently Amended) The method of claim [15] 13, wherein said extracting comprises subjecting said sample to high turbulence liquid chromatography (HTLC).

    18.     (Currently Amended) The method of claim [15] 13, wherein said extracting comprises subjecting said sample to liquid extraction.

-2-

QUESTMS-00002851

Atty. Dkt. No. 034827-9107

19.     (Currently Amended) The method of claim 13, wherein purifying testosterone <u>further</u> comprises purifying testosterone <u>from said sample</u> by chromatography.

20.     (Previously Presented) The method of claim 19, wherein said chromatography comprises liquid chromatography.

21.     (Previously Presented) The method of claim 19, wherein said chromatography comprises high performance liquid chromatography (HPLC).

22.     (Currently Amended) The method of claim 13, wherein the method is capable of detecting testosterone at concentrations of less than 5 ng/dL in the ~~test~~ sample.

23.     (Currently Amended) The method of claim 13, wherein the method is capable of detecting testosterone at concentrations of less than 1 ng/dL in the ~~test~~ sample.

24.     (Previously Presented) The method of claim 13, wherein the ionizing of step (b) comprises producing a testosterone ion having a mass/charge ratio of $289.1 \pm 0.5$.

25.     (Previously Presented) The method of claim 13, wherein the ionizing of step (b) comprises producing one or more testosterone fragment ions having a mass/charge ratio selected from the group consisting of $109.2 \pm 0.5$ and $96.9 \pm 0.5$.

26.     (Previously Presented) The method of claim 13, wherein the ionizing of step (c) comprises:

producing a testosterone precursor ion having a mass/charge ratio (m/z) of about $289.1 \pm 0.5$;

isolating the precursor ion by mass spectrometry; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having m/z selected from the group consisting of $109.2 \pm 0.5$, and $96.9 \pm 0.5$.

4814-2117-6335.1

QUESTMS-00002852

Atty. Dkt. No. 034827-9107

27.    (Previously Presented) The method of claim 13, wherein said sample comprises urine, blood, plasma, or serum from a female human.

28.    (Previously Presented) The method of claim 13, wherein said sample comprises blood, plasma, or serum from a female human.

29.    (Currently Amended) A method for determining the amount of testosterone in a sample when taken from a female human, comprising:

> (a) purifying testosterone from a sample from a female human by <u>extracting testosterone from said sample by high turbulence liquid chromatography (HTLC) and</u> subjecting ~~said sample~~ <u>the extracted testosterone</u> to <u>high performance</u> liquid chromatography <u>(HPLC);</u>

> (b) ionizing said purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer; and

> (c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the sample<u>;</u>

> <u>wherein the method is capable of detecting testosterone at concentrations of less than 10 ng/dL in the test sample</u>.

30.    (Previously Presented) The method of claim 29, wherein said testosterone is not derivatized prior to mass spectrometry.

31.-33. (Canceled)

34.    (Currently Amended) The method of claim 31, wherein said extracting <u>further</u> comprises subjecting said sample to liquid extraction.

35.    (Canceled)

-4-

QUESTMS-00002853

Atty. Dkt. No. 034827-9107

36.    (Currently Amended) The method of claim [31] 29, wherein the ionizing of step (b) comprises producing a testosterone ion having a mass/charge ratio of 289.1 ± 0.5.

37.    (Currently Amended) The method of claim [31] 29, wherein the ionizing of step (b) comprises producing one or more testosterone fragment ions having a mass/charge ratio selected from the group consisting of 109.2 ± 0.5 and 96.9 ± 0.5.

38.    (Currently Amended) The method of claim [31] 29, wherein the ionizing of step (c) comprises:

producing a testosterone precursor ion having a mass/charge ratio (m/z) of about 289.1 ± 0.5;

isolating the precursor ion by mass spectrometry; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having m/z selected from the group consisting of 109.2 ± 0.5, and 96.9 ± 0.5.

39.    (Currently Amended) The method of claim [31] 29, wherein said sample comprises urine, blood, plasma, or serum from a female human.

40.    (Currently Amended) The method of claim [31] 29, wherein said sample comprises blood, plasma, or serum from a female human.

41.    (New) The method of claim 31, wherein the method is capable of detecting testosterone at concentrations of less than 5 ng/dL in the sample.

42.    (New) The method of claim 31, wherein the method is capable of detecting testosterone at concentrations of less than 1 ng/dL in the sample.

-5-

QUESTMS-00002854

Atty. Dkt. No. 034827-9107

## REMARKS

**Status of the Claims**

This paper amends claims 13, 16-19, 29, 34, and 36-40, adds claims 41-42, and cancels claims 15, 31-33, and 35.  Applicants reserve the right to prosecute canceled subject matter in related applications.  After the amendments set forth above are entered, claims 13, 16-30. and 36-40 are pending and under examination.

Claim 13 has been amended to include the limitation of canceled claim 15; namely that purifying testosterone comprises extracting testosterone from the sample.  Claim 13 has also been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL.  Support for this detection limit is found, e.g., in the Specification at paragraph [0030].

Claims 16-18 have been amended to adjust dependencies necessitated by incorporation of the limitation of claim 15 into claim 13.

Claim 19 has been amended to specify that purifying testosterone _further_ comprises chromatography.  This change was also necessitated by incorporation of the limitation of claim 15 into claim 13.

Claims 22 and 23 have been amended to replace "test sample" with "sample", consistent with the language of the base claim from which they depend.

Claim 29 has been amended to incorporate the limitations of canceled claims 33 and 35; namely, that testosterone is purified by extracting from a sample by high turbulence liquid chromatography (HTLC) (claim 33) and subjecting the extracted testosterone to high performance liquid chromatography (HPLC) (claim 35).  Claim 29 has also been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL.  Support for these detection limits is found, e.g., in the Specification at paragraph [0030].

-6-

QUESTMS-00002855

Atty. Dkt. No. 034827-9107

Claims 36-40 have been amended to adjust dependencies necessitated by cancelation of claim 31 and incorporation of the limitations of canceled claims 33 and 35 into claim 29.

New claims 41 and 42 depend from claim 29 and further specify that the methods are capable of detecting testosterone in the sample at concentrations of less than 5 ng/dL (claim 41), and less than 1 ng/dL (claim 42).  Support for these detection limits is found, e.g., in the Specification at paragraph [0030].

As such, no new matter is introduced by the instant amendments.

A detailed listing of all claims that are, or were, in the application, irrespective of whether the claim(s) remain under examination in the application, is presented, with an appropriate defined status identifier.

**Interview Summary**

Applicant thanks Examiner Cordero for courtesies extended to Applicant's representative in the telephonic interview of March 27, 2012.  During that interview, the prior art-based rejections over Soldin, Ong, and Tiller were discussed.  The substance of the interview is reflected in the claim amendments and arguments presented herein.

**Rejections under 35 U.S.C. § 102 (e)**

Claims 13, 15-16, 18-22, 24-32, and 34-40 stand rejected as allegedly anticipated by Soldin (U.S. Pat. No. 7,473,560).  Applicants respectfully traverse as the present invention was reduced to practice prior to Soldin's earliest filing date.

Applicant herewith submits a declaration under 37 CFR 1.131 executed by inventor Dr. Michael P. Caulfield demonstrating reduction to practice prior to the filing date of the Soldin patent application.  Exhibits 1 and 2 accompanying the declaration are excerpts from a Validation Summary Report demonstrating application of the claimed method for quantitation of testosterone in human serum and plasma samples.

-7-

QUESTMS-00002856

Atty. Dkt. No. 034827-9107

Dr. Caulfield attests that the data shown in Exhibit 2 were collected by the method described in Exhibit 1 prior to April 14, 2003, the filing date of Soldin's earliest patent application.

Thus, Applicant respectfully submits that the subject matter of claims 13, 15-16, 18-22, 24-32, and 34-40 was invented prior to the filing date of Soldin's earliest patent application. As such, Soldin is not prior art against the pending claims. Applicant respectfully requests withdrawal of this rejection.

## Rejections under 35 U.S.C. § 103 (a)

### *Ong et al (50th ASMS Conference Abstract, 2001)*

Claims 13, 15-21, and 27-40 are rejected as allegedly obvious over the Ong Abstract. Claims 15, 31-33, and 35 have been canceled, rendering rejection of those claims moot. Claims 13 and 29, from which all other rejected claims depend, have been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL. Applicants respectfully request reconsideration and withdrawal.

The Ong Abstract is asserted to allegedly teach a mass spectrometric method for determining testosterone in test samples, such as plasma samples, at concentrations of less than 10 ng/dL. Applicant respectfully disagrees.

Ong describes use of testosterone as an internal standard and mass spectrometric detection in an unknown matrix at concentrations of over 14,000 ng/dL. This detection is conducted with a first instrumental configuration involving parallel extraction columns and a single analytical column (i.e., the parallel configuration). Ong Abstract, second to last paragraph. Ong also describes use of a second instrumental configuration involving single extraction column and a single analytical column (i.e., the serial configuration) for the detection of "various analytes" in plasma or tissue samples. Ong Abstract, last paragraph. Ong does not specify analytes that were measured using the serial configuration, but rather generically suggests that for

-8-

QUESTMS-00002857

Atty. Dkt. No. 034827-9107

analyses in biological matrices "in which lower limits of quantitation <u>approaching</u> 0.1 ng/mL are routinely required" (emphasis added) the serial configuration may be used. <u>Ong Abstract</u>, last paragraph.

Thus, even if it is assumed that the cited portion of Ong teaches detection of testosterone in biological samples lower limits of quantitation <u>approaching</u> 0.1 ng/mL (which Applicant does not concede), Ong still does not provide any reasonable expectation that testosterone could be detected in biological samples at levels <u>below</u> 0.1 ng/mL (or 10 ng/dL) as required in the instant claims.

As such, Applicant respectfully requests reconsideration and withdrawal.

*Tiller et al (J. Chromatogr. A, 1997)*

Claims 13, 16-17, 19-21, 25-30, and 35-40 stand rejected over Tiller et al. (J. chromatogr. A, (1997) 771:119-125). Claim 13, from which claims 16-17, 19-21, and 25-28 depend, has been amended to include the limitation of unrejected claim 15; namely that in the claimed methods, purifying testosterone comprises extracting testosterone from the sample. Similarly, claim 29, from which claims 30 and 35-40 depend, has been amended to include the limitation of unrejected claim 33; namely that testosterone is purified by extracting from a sample by high turbulence liquid chromatography (HTLC).

Applicant submits that amendment of claim 13 to include the limitation of previously unrejected claim 15 and amendment of claim 29 to include the limitation of previously unrejected claim 33 renders rejection over Tiller moot and respectfully requests withdrawal.

**Double Patenting Rejections**

Claims 13-28 stand rejected as on the ground of nonstatutory obviousness-type double patenting as allegedly obvious over claims 1-39 of U.S. Patent 6,977,143. The terminal disclaimer submitted with the last response to Office Action had a typographical error indicating

-9-

QUESTMS-00002858

Atty. Dkt. No. 034827-9107

an incorrect patent number.  A new terminal disclaimer correcting this clerical error is submitted herewith.  As such, Applicant respectfully requests withdrawal of the obviousness-type double patenting rejection.

Claims 13 and 15-40 also stand provisionally rejected on the ground of nonstatutory obviousness-type double patenting as allegedly obvious over claims 1-13 of copending Application No. 12/607,905.  Applicant has requested that this provisional rejection be held in abeyance until otherwise allowable subject matter is identified.  Applicant will address any address any provisional double patenting rejections at that time, should this rejection remain.

## CONCLUSION

In the event that any matters remain to be resolved in view of this communication, the Examiner is encouraged to call the undersigned so that a prompt disposition of this application can be achieved.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741.  Should no proper payment be enclosed herewith, as by a check or credit card payment form being in the wrong amount, unsigned, post-dated, otherwise improper or informal or even entirely missing, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.  If any additional extensions of time are needed for timely acceptance of papers submitted herewith, Applicant hereby petitions for such extension under 37 C.F.R. §1.136 and authorizes payment of any such extensions fees to Deposit Account No. 19-0741.

4814-2117-6335.1

QUESTMS-00002859

Atty. Dkt. No. 034827-9107

Respectfully submitted,

Date ___3/28/12_____        By _____

FOLEY & LARDNER LLP                    Barry S. Wilson, Reg. No. 39,431
Customer Number: 30542                 Anthony C. Kuhlmann, Reg. No. 57,147
Telephone:     (858) 847-6722          Attorneys for Applicant
Facsimile:     (858) 792-6773

-11-

4814-2117-6335.1

QUESTMS-00002860

Atty. Dkt. No. 034827-9107

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      Caulfield et al.

Title:            DETERMINATION OF
                  TESTOSTERONE BY MASS
                  SPECTROMETRY

Appl. No.:      12/946,785

Filing Date:    11/15/2010

Examiner:      Cordero Garcia, M.M.

Art Unit:        1614

Conf. No.:      1630

### DECLARATION OF MICHAEL P. CAULFIELD UNDER 37 CFR 1.131

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

I, Michael P. Caulfield, being duly warned, declare as follows:

1.      I was educated in biochemistry and microbiology at Sussex University and Bristol University, both in England, where I received a B.S. degree and a PhD. degree, respectively.

2.      I was a research fellow at Harvard Medical School, Boston Massachusetts and a postdoctoral associate at the Massachusetts Institute of Technology. I have been a Scientific Director in Endocrinology & Metabolism at Quest Diagnostics/Nichols Institute since 1997. I am the author or co-author of over 100 published scientific articles and abstracts in the field of Biochemistry, Endocrinology and Metabolism.

-1-

QUESTMS-00002861

Atty. Dkt. No. 034827-9107

3.      I am a co-inventor of the above-referenced patent application and the subject matter described and claimed therein.

4.      I have read the Office Action dated January 13, 2012 for the above-referenced application, and I understand that April 14, 2003 is the earliest priority date for the Soldin patent cited by the Examiner (i.e., U.S. Patent No. 7,473,560), which allegedly discloses or renders obvious my invention.

5.      Prior to April 14, 2003, the inventors put into practice the method described in the above-referenced application for determining the levels testosterone in a sample when taken from a human.  The method includes purifying testosterone from a sample by subjecting the sample to an extraction column and an analytical column to generate an eluent; ionizing the eluent to produce one or more testosterone ions detectable by a mass spectrometer; and (c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the test sample. In some embodiments, the ionizing comprises producing a testosterone ion having a mass/charge ratio of $289.1 \pm 0.5$; isolating the precursor ion by mass spectrometry; and effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having a mass/charge ratio of $96.9 \pm 0.5$.  In some embodiments the sample comprises serum.  In some embodiments, the extraction column comprises a high turbulence liquid chromatography column.  This invention is reflected in the specification and claims of the above mentioned application.

6.      Exhibits 1 and 2 contain excerpts from a laboratory Validation Summary Report for Total Testosterone (HTLC/MS/MS TSQ Quantum ThermoFinnigan).  Exhibit 1 is a photocopy of p. 4 of the Report, describing the method employed to collect data for validation of the method. Exhibit 2 is a photocopy of p. 18 of the Report with data resulting from execution of the method. The data in Exhibit 2 were collected at the laboratories of Quest Diagnostics Incorporated, San Juan Capistrano, CA.  Exhibits 1 and 2 are true and complete copies of the above-mentioned

-2-

QUESTMS-00002862

Atty. Dkt. No. 034827-9107

Validation Summary Report pages, except that the date has been redacted.  I attest that the
redacted date is earlier than April 14, 2003.

7.      As seen in Exhibit 1, the inventors performed the method by first purifying testosterone
from human plasma and serum with a high turbulence liquid chromatography (HTLC) extraction
column, followed by further purification with a high performance liquid chromatography (HPLC)
analytical column.  Eluent from the analytical column was ionized, and testosterone precursor
ions with m/z of 289.1 ± 0.5 were generated.  These testosterone precursor ions were then
isolated by mass spectrometry and fragmented to generate fragment ions comprising a fragment
ion with m/z of 96.9 ± 0.5.  Quantitation of testosterone present in the plasma and serum samples
was based on the abundance of fragment ions.

8.      As seen in Exhibit 2, the above method was performed on samples of both human plasma
and serum, and the results compared to determine the consistency of the method across both
sample types.

        I hereby declare that all statements made herein of my own knowledge are true and that
all statements made on information and belief are believed to be true; and further, that these
statements are made with the knowledge that willful false statements are so made punishable by
fine or imprisonment, or both, under Section 101 of Title 18 of the United States Code and that
such willful false statements may jeopardize the validity of the application or any patent issuing
thereon.


_March 28th 2012_                     _Michael P Caulfield_
Date                                  Michael P. Caulfield, Ph.D.

Attachments:

- Exhibit 1: True and complete copy of p. 4 of Validation Summary Report for Total
  Testosterone (HTLC/MS/MS TSQ Quantum ThermoFinnigan), dated prior to April 14,
  2003.

-3-

4814-3257-9855.1

QUESTMS-00002863

 Quest Diagnostics

**Nichols Institute**

## II. PRINCIPLE

### 1. Methodology:

The overall design of this assay is to have enhanced specificity, a reduced run-time and sample preparation. To achieve this, two systems have been combined. The first is the High Throughput Liquid Chromatography system (HTLC) by Cohesive Technologies and the second is the Tandem Mass Spectrometer (LC/MS/MS) by ThermoFinnigan.

When operating the HTLC system, the elimination of unwanted sample components occurs in a turbulent flow regime. As the unbound and unwanted debris is swept through the extraction column at high velocity, the components of interest are captured and concentrated on the column. The extraction column is then backflushed and the sample is placed onto an analytical column. The next step is the gradient regime of the HTLC system. The analytical column is in-line and allows chromatographic separation of the components of interest. A gradient/step function of 60% to 100% methanol is used to enhance this step.

The detection is carried out by LC/MS/MS. The precursor ion, protonated molecule of interest, and any other ions of similar mass, are isolated by the first MS (Q1). These ions enter a second chamber (Q2) where they collide with Argon molecules. The collision-induced fragments differ for each molecular ion. Specific fragments produced only by the analyte ion are isolated by the final MS (Q3). The quantitation is based on the abundance of the final fragment ions. The following mass transitions are used:

|  | Positive Mode | |
| Analyte | Precursor Ion | Fragment Ions |
| --- | --- | --- |
| Testosterone | 289.1 m/z | 96.8 & 109.3 m/z |
| $d_5$-Testosterone | 294.1 m/z | 99.8 & 113.3 m/z |

### 2. Intended Use:

Clinical evaluation of serum testosterone, along with serum LH, assists in evaluation of hypogonadal males. Major causes of lowered testosterone in males include hypogonadotropic hypogonadism, testicular failure, hyperprolactinemia, hypopituitarism, some types of liver and kidney diseases, and critical illness.

Increased serum testosterone levels in females may be indicative of polycystic ovary syndrome and adrenal hyperplasia, among other conditions. The clinical manifestations of excess testosterone include infertility, hirsutism, amenorrhea, and obesity.

QUESTMS-00002864



Quest
Diagnostics

Nichols Institute

Figure 4: Specimen Type



Total Testosterone by HTLC/MS/MS Validation Summary

QUESTMS-00002865