IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QUEST DIAGNOSTICS INVESTMENTS LLC,

Plaintiff,

v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS, ESOTERIX, INC., and
ENDOCRINE SCIENCES, INC.,

Defendants.

C.A. No. 1:18-cv-01436 (MN)

**DEMAND FOR JURY TRIAL**

**REDACTED PUBLIC VERSION**

## JOINT APPENDIX OF EXHIBITS TO JOINT CLAIM CONSTRUCTION BRIEF VOLUME III

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: 320.880.6800
kdorsney@morrisjames.com

*Of Counsel:*
Adam R. Gahtan (agahtan@fenwick.com)
Kevin X. McGann (kmcgann@fenwick.com)
Eric M. Majchrzak (emajchrzak@fenwick.com)
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone: 212.430.2600
emajchrzak@fenwick.com

Melanie L. Mayer (mmayer@fenwick.com)
Elizabeth B. Hagan (ehagan@fenwick.com)
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510

*Attorneys for Plaintiff*

WILSON SONSINI GOODRICH & ROSATI, P.C.
Ian R. Liston (#5507)
Johanna Peuscher-Funk (#6451)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
Telephone: 302.304.7600
iliston@wsgr.com
jpeuscherfunk@wsgr.com

*Of Counsel:*
Edward G. Poplawski (epoplawski@wsgr.com)
Oliva M. Kim (okim@wsgr.com)
Erik Carlson (ecarlson@wsgr.com)
Wilson Sonsini Goodrich & Rosati, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: 323.210.2900

Matias Ferrario
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: 336.607.7300
mferrario@kilpatricktownsend.com

*Attorneys for Defendants*

| EXHIBIT | DESCRIPTION | PAGE RANGE |
|---|---|---|
| A | Second Amended Joint Claim Construction Chart | 0001 – 0007 |
| B | U.S. Patent No. 8,409,862 | 0008 – 0022 |
| C | U.S. Patent No. 7,972,867 | 0023 – 0042 |
| D | U.S. Patent No. 8,101,427 | 0043 – 0063 |
| E | U.S. Patent No. 7,972,868 | 0064 – 0077 |
| F | File History for U.S. Patent No. 8,409,862 | 0078 – 0514 |
| G | File History for U.S. Patent No. 7,972,867 | 0515 – 1660 |
| H | File History for U.S. Patent No. 8,101,427 | 1661 – 1906 |
| I | Excerpts from File History for U.S. Patent No. 8,409,862 (Request for Continued Examination, dated March 28, 2012 | 1907 – 1928 |
| J | Excerpts from Merriam-Webster's Collegiate Dictionary (11th ed.) | 1929 – 1933 |
| K | U.S. Patent No. 7,348,137 | 1934 – 1948 |
| L | Exhibit A to Quest Diagnostics Investments LLC's April 12, 2019 Paragraph 4(c) Disclosures | 1949 – 1961 |
| M | Analytical Validation Report for Quantification of Testosterone in Serum by Liquid-Liquid Extraction (LC00000600-653) | 1962 – 2016 |
| N | Declaration of Deborah French, Ph.D., in Support of Defendant LabCorp's Answering Claim Construction Brief | 2017 – 2045 |
| O | Declaration of Leonard J. Chyall, Ph.D. | 2046 – 2067 |
| P | Excerpt from the Rough Transcript of the Deposition of Dr. Robert Fitzgerald | 2068 – 2073 |

11408404/1

MORRIS JAMES LLP

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Kenneth L Dorsney
Kenneth L. Dorsney (#3726)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
Telephone: 302.888.6800
kdorsney@morrisjames.com

OF COUNSEL:

Adam R. Gahtan (admitted *Pro Hac Vice*)
Kevin X. McGann (admitted *Pro Hac Vice*)
Eric M. Majchrzak (admitted *Pro Hac Vice*)
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY  10010-6035
Telephone: 212.921.2001
agahtan@fenwick.com
kmcgann@fenwick.com
emajchrzak@fenwick.com

Melanie L. Mayer (admitted *Pro Hac Vice*)
Elizabeth B. Hagan (admitted *Pro Hac Vice*)
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone: 206.389.4510
mmayer@fenwick.com
ehagan@fenwick.com

*Attorneys for Plaintiff Quest Diagnostics Investments LLC*

Dated:  December 5, 2019

/s/ Ian Liston
Ian R. Liston (#5507)
Johanna Peuscher-Funk (#6451)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
Telephone: 302.304.7600
iliston@wsgr.com
jpeuscherfunk@wsgr.com

OF COUNSEL:

Edward G. Poplawski
Oliva M. Kim
Erik Carlson
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: 323.210.2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

Matias Ferrario
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: 336.607.7300
mferrario@kilpatricktownsend.com

*Attorneys for Defendants Laboratory Corporation of America Holdings, Esoterix, Inc., and Endocrine Sciences, Inc.*

2

## <u>CERTIFICATE OF SERVICE</u>

I, Kenneth L. Dorsney, hereby certify that on December 5, 2019, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed.

I further certify that on the same date the attached document was electronically mailed to the following person(s):

Ian R. Liston
Johanna Peuscher-Funk
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE  19801
iliston@wsgr.com
jpeuscherfunk@wsgr.com

*Attorneys for Defendants*

Edward G. Poplawski
Olivia M. Kim
Erik Carlson
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

*Attorneys for Defendants*

Matias Ferrario
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
mferrario@kilpatricktownsend.com

*Attorneys for Defendants*

Dated: December 5, 2019

*/s/ Kenneth L. Dorsney*
Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Plaintiff*

**Other Documents**

1:18-cv-01436-MN Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings et al

MEDIATION-MPT,PATENT

## U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered by Dorsney, Kenneth on 12/5/2019 at 6:01 PM EST and filed on 12/5/2019

| | |
|---|---|
| **Case Name:** | Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings et al |
| **Case Number:** | 1:18-cv-01436-MN |
| **Filer:** | Quest Diagnostics Investments LLC |
| **Document Number:** | 89 |

**Docket Text:**
**[SEALED] APPENDIX *Joint Claim Construction Appendix Volume III* by Quest Diagnostics Investments LLC. (Attachments: # (1) Exhibit H-P)(Dorsney, Kenneth)**

**1:18-cv-01436-MN Notice has been electronically mailed to:**

Adam Gahtan     agahtan@fenwick.com

Edward G. Poplawski     epoplawski@wsgr.com, labrown@wsgr.com, twilliamsdavis@wsgr.com

Elizabeth B. Hagan     ehagan@fenwick.com, smcphee@fenwick.com

Eric M. Majchrzak     emajchrzak@fenwick.com, mcampion@fenwick.com

Erik J. Carlson     ecarlson@wsgr.com, anavarro@wsgr.com

Ian Robert Liston     IListon@wsgr.com, kkharris@wsgr.com, kramos@wsgr.com, rdean@wsgr.com, twilliamsdavis@wsgr.com

Kenneth Laurence Dorsney     kdorsney@morrisjames.com, ippara@morrisjames.com

Kevin X. McGann     kmcgann@fenwick.com, paola.guerrero@fenwick.com

Matias Ferrario     mferrario@kilpatricktownsend.com

Melanie M. Mayer     mmayer@fenwick.com

Olivia M. Kim      okim@wsgr.com, ctong@wsgr.com

**1:18-cv-01436-MN Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/5/2019] [FileNumber=4038599-0
] [1098118a71e57739f709ad4b4d4d7e55082fd6270088cc9bda5e219db7beea51c87
7d4f09ac32d1359e1a1596be5dc57187e2096f21c26f77d534c961045f07c]]
**Document description:** Exhibit H-P
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/5/2019] [FileNumber=4038599-1
] [18ca3aaee8774eceb93da5a102d0ac32 75328df8379bdc6139e465a8d43c14d5884
234ecfe29bee8e64aa6f391216b0c57981fd0ad539a667c509402fd551572]]

# EXHIBIT H



THE UNITED STATES OF AMERICA

TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*November 29, 2018*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *13/115,916*
**FILING DATE:** *May 25, 2011*
**PATENT NUMBER:** *8101427*
**ISSUE DATE:** *January 24, 2012*

Certified by

*[signature]*

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

QUESTMS-00002353

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Clarke, et al.

Title: METHODS FOR DETECTING
VITAMIN D METABOLITES
BY MASS SPECTROMETRY

Prior Appl. No.: 11/101,166 ; 11/386,215

Prior Appl.
Filing Date: 4/6/2005; 3/21/2006

Examiner: Unknown

Art Unit: Unknown

## CONTINUING PATENT APPLICATION
## TRANSMITTAL LETTER

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith for filing under 37 C.F.R. § 1.53(b) is a:

[ **X** ] Continuation   [  ] Division   [  ] Continuation-In-Part (CIP)

of the above-identified copending prior application in which no patenting, abandonment, or termination of proceedings has occurred.  Priority to the above-identified prior application is hereby claimed under 35 U.S.C. § 120 for this continuing application.  The entire disclosure of the above-identified prior application is considered as being part of the disclosure of the accompanying continuing application and is hereby incorporated by reference therein.

[  ]    Applicant claims small entity status under 37 CFR 1.27.

-1-

DLMR_896058.1

QUESTMS-00002354

Atty. Dkt. No. 034827-3606

Enclosed are:

[ **X** ]   Description, Claim(s), and Abstract (34 pages).

[ **X** ]   Formal drawings (4 sheets, Figures 1-4).

[ **X** ]   Declaration and Power of Attorney from parent Application No. 11/386,215 (4 pages).

[ ]   Assignment of the invention to Quest Diagnostics Investments Incorporated.

[ ]   Assignment Recordation Cover Sheet.

[ ]   Request for application not to be published with certification under 35 USC 122(b)(2)(B)(i).

[ ]   Information Disclosure Statement.

[ ]   Form PTO-1449 with copies of ___ listed reference(s).

[ ]   Preliminary Amendment (___)

[ **X** ]   Application Data Sheet (37 CFR 1.76) (4 pages)

The adjustment to the number of sheets for EFS-Web filing follows:

| Number of Sheets | | EFS-Web Adjustment | Number of Sheets for EFS-Web |
|---|---|---|---|
| 38 | x | 75% | 29 |

The filing fee is calculated below:

| | Number Filed | Included in Basic Fee | Extra | | | Rate | | Fee Totals |
|---|---|---|---|---|---|---|---|---|
| Basic Filing Fee | | | | | | $330.00 | = | $330.00 |
| Search Fee | | | | | | $540.00 | | $540.00 |
| Examination Fee | | | | | | $220.00 | | $220.00 |
| Size Fee | 29 | - | 100 | = 0 | x | $270.00 | | $0.00 |
| Total Claims: | 23 | - | 20 | = 3 | x | $52.00 | = | $156.00 |
| Independents: | 2 | - | 3 | = 0 | x | $220.00 | = | $0.00 |

-2-

QUESTMS-00002355

Atty. Dkt. No. 034827-3606

| | | | |
|---|---|---|---|
| : | | | |
| If any Multiple Dependent Claim(s) present: | + | $390.00 | = | $0.00 |
| Surcharge under 37 CFR 1.16(e) for late filing of Executed Declaration or late payment of filing fee | + | $130.00 | = | $0.00 |
| | | SUBTOTAL: | = | $1246.00 |
| [ ] | Small Entity Fees Apply (subtract ½ of above): | | = | 0 |
| | Basic Filing Fee Reduction for Filing via EFS-Web | | = | $0.00 |
| | TOTAL FILING FEE: | | = | $1246.00 |
| Assignment Recordation Fee: | + | $40.00 | = | $0.00 |
| Processing Fee under 37 CFR 1.17(i) for Late Filing of English Translation of Application: | + | $130.00 | = | $0.00 |
| TOTAL FEE | | | = | $1246.00 |

The above-identified fees of $1246.00 are being paid by credit card via EFS-Web.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Please direct all correspondence to the undersigned attorney or agent at the address indicated below.

Respectfully submitted,

Date _____5/25/11_____

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:    (858) 847-6722
Facsimile:    (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

-3-

DLMR_896058.1

QUESTMS-00002356

## Application Data Sheet

## Application Information

| | |
|---|---|
| **Application Type::** | Regular |
| **Subject Matter::** | Utility |
| **Suggested classification::** | |
| **Suggested Group Art Unit::** | |
| **CD-ROM or CD-R?::** | None |
| **Computer Readable Form (CRF)?::** | No |
| **Title::** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **Attorney Docket Number::** | 034827-3606 |
| **Request for Early Publication?::** | No |
| **Request for Non-Publication?::** | No |
| **Suggested Drawing Figure::** | 1 |
| **Total Drawing Sheets::** | 4 |
| **Small Entity?::** | No |
| **Petition included?::** | No |
| **Secrecy Order in Parent Appl.?::** | No |

## Applicant Information

| | |
|---|---|
| **Applicant Authority Type::** | Inventor |
| **Primary Citizenship Country::** | UK |
| **Status::** | Full Capacity |
| **Given Name::** | Nigel |
| **Family Name::** | Clarke |

Initial 05/25/11

DLMR_896059.1
Joint Appendix 1666

QUESTMS-00002357

| | |
|---|---|
| **City of Residence::** | Oceanside |
| **State or Province of Residence::** | CA |
| **Country of Residence::** | US |
| **Street of mailing address::** | 1689 Avenida Guillermo |
| **City of mailing address::** | Oceanside |
| **State or Province of mailing address::** | CA |
| **Postal or Zip Code of mailing address::** | 92056 |

| | |
|---|---|
| **Applicant Authority Type::** | Inventor |
| **Primary Citizenship Country::** | US |
| **Status::** | Full Capacity |
| **Given Name::** | Brett |
| **Family Name::** | Holmquist |
| **City of Residence::** | Mission Viejo |
| **State or Province of Residence::** | CA |
| **Country of Residence::** | US |
| **Street of mailing address::** | 21858 Bahamas |
| **City of mailing address::** | Mission Viejo |
| **State or Province of mailing address::** | CA |
| **Postal or Zip Code of mailing address::** | 92692 |

| | |
|---|---|
| **Applicant Authority Type::** | Inventor |
| **Primary Citizenship Country::** | KR |
| **Status::** | Full Capacity |
| **Given Name::** | Kwang-Ja |

Initial 05/25/11

DLMR_896059.1

QUESTMS-00002358

| | |
|---|---|
| **Family Name::** | Lee |
| **City of Residence::** | Irvine |
| **State or Province of Residence::** | CA |
| **Country of Residence::** | US |
| **Street of mailing address::** | 10 Apple Way |
| **City of mailing address::** | Irvine |
| **State or Province of mailing address::** | CA |
| **Postal or Zip Code of mailing address::** | 92602 |
| | |
| **Applicant Authority Type::** | Inventor |
| **Primary Citizenship Country::** | US |
| **Status::** | Full Capacity |
| **Given Name::** | Richard E. |
| **Family Name::** | Reitz |
| **City of Residence::** | San Clemente |
| **State or Province of Residence::** | CA |
| **Country of Residence::** | US |
| **Street of mailing address::** | 3710 Calle Fino Clarete |
| **City of mailing address::** | San Clemente |
| **State or Province of mailing address::** | CA |
| **Postal or Zip Code of mailing address::** | 92673 |

**Correspondence Information**

Joint Appendix 1668

DLMR_896059.1

QUESTMS-00002359

**Correspondence Customer Number::**     30542

**E-Mail address::**                     PTOMailSanDiegoNorth@foley.com


**Representative Information**

| Representative Customer Number:: | 30542 | |
|---|---|---|
| | | |


**Domestic Priority Information**

| Application:: | Continuity Type:: | Parent Application:: | Parent Filing Date:: |
|---|---|---|---|
| This Application | Claims priority under 35 USC § 120 to | 11/386,215 | 3/21/2006 |
| This Application | Claims priority under 35 USC § 120 to | 11/101,166 | 4/6/2005 |


**Foreign Priority Information**

| Country:: | Application number:: | Filing Date:: | Priority Claimed:: |
|---|---|---|---|
| | | | |


**Assignee Information**


**Assignee Name::**          Quest Diagnostics Investments Incorporated

Initial 05/25/11

DLMR_896059.1

QUESTMS-00002360

Atty. Dkt. No. 034827-3603

## DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I HEREBY DECLARE:

THAT my residence, post office address, and citizenship are as stated below next to my name;

THAT I believe I am the original, first, and sole inventor (if only one inventor is named below) or an original, first, and joint inventor (if plural inventors are named below or in an attached Declaration) of the subject matter which is claimed and for which a patent is sought on the invention entitled

### METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

(Attorney Docket No. 034827-3603)

the specification of which (check one)

    _____      is attached hereto.

    _X_      was filed on _3/21/2006_ as United States Application Number or PCT International Application Number _11/386,215_ and was amended on _____ (if applicable).

THAT I do not know and do not believe that the same invention was ever known or used by others in the United States of America, or was patented or described in any printed publication in any country, before I (we) invented it;

THAT I do not know and do not believe that the same invention was patented or described in any printed publication in any country, or in public use or on sale in the United States of America, for more than one year prior to the filing date of this United States application;

THAT I do not know and do not believe that the same invention was first patented or made the subject of an inventor's certificate that issued in any country foreign to the United States of America before the filing date of this United States application if the foreign application was filed by me (us), or by my (our) legal representatives or assigns, more than twelve months (six months for design patents) prior to the filing date of this United States application;

THAT I have reviewed and understand the contents of the above-identified specification, including the claim(s), as amended by any amendment specifically referred to above;

Joint Appendix 1670

QUESTMS-0000236

Atty. Dkt. No. 034827-3603

THAT I believe that the above-identified specification contains a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the invention, and sets forth the best mode contemplated by me of carrying out the invention; and

THAT I acknowledge the duty to disclose to the U.S. Patent and Trademark Office all information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, §1.56.

I HEREBY CLAIM foreign priority benefits under Title 35, United States Code §119(a)-(d) or § 365(b) of any foreign application(s) for patent or inventor's certificate, or §365(a) of any PCT international application which designated at least one country other than the United States of America, listed below and have also identified below any foreign application for patent or inventor's certificate or of any PCT international application having a filing date before that of the application on which priority is claimed.

| Prior Foreign Application Number | Country | Foreign Filing Date | Priority Claimed? | Certified Copy Attached? |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

I HEREBY CLAIM the benefit under Title 35, United States Code § 119(e) of any United States provisional application(s) listed below.

| U.S. Provisional Application Number | Filing Date |
|---|---|
| | |
| | |
| | |

I HEREBY CLAIM the benefit under Title 35, United States Code, §120 of any United States application(s), or § 365(c) of any PCT international application designating the United States of America, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of

Page 2 of 4

QUESTMS-0000236

Atty. Dkt. No. 034827-3603

Federal Regulations, § 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application.

| U.S. Parent Application Number | PCT Parent Application Number | Parent Filing Date | Parent Patent Number |
|---|---|---|---|
| 11/101,166 | | 4/6/2005 | |
| | | | |
| | | | |

I HEREBY APPOINT the registered attorneys and agents at Customer Number

## 30542

to have full power to prosecute this application and any continuations, divisions, reissues, and reexaminations thereof, to receive the patent, and to transact all business in the United States Patent and Trademark Office connected therewith.

I request that all correspondence be directed to:

> Barry S. Wilson
> FOLEY & LARDNER LLP
> Customer Number: 30542
>
> Telephone:    (858) 847-6722
> Facsimile:    (858) 792-6773

I UNDERSTAND AND AGREE THAT the foregoing attorneys and agents appointed by me to prosecute this application do not personally represent me or my legal interests, but instead represent the interests of the legal owner(s) of the invention described in this application.

I FURTHER DECLARE THAT all statements made herein of my own knowledge are true, and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Joint Appendix 1672

QUESTMS-00002363

Atty. Dkt. No. 034827-3603

| | |
|---|---|
| Name of first inventor | Nigel Clarke |
| Residence | Oceanside, California |
| Citizenship | UK |
| Post Office Address | 862 Masters Drive<br>Oceanside, California 92057 |
| Inventor's signature | |
| Date | 5/16/06 |

| | |
|---|---|
| Name of second inventor | Brett Holmquist |
| Residence | Mission Viejo, California |
| Citizenship | US |
| Post Office Address | 21858 Bahamas<br>Mission Viejo, California 92692 |
| Inventor's signature | |
| Date | 5/23/84 |

| | |
|---|---|
| Name of third inventor | Gloria Kwangja Lee |
| Residence | Irvine, California |
| Citizenship | US |
| Post Office Address | 10 Apple Valley<br>Irvine, California 92602 |
| Inventor's signature | |
| Date | 5/22/06 |

| | |
|---|---|
| Name of fourth inventor | Richard E. Reitz |
| Residence | San Clemente, California |
| Citizenship | US |
| Post Office Address | 3710 Calle Fino Clarete<br>San Clemente, California 92673 |
| Inventor's signature | |
| Date | 5/23/06 |

Joint Appendix 1673

QUESTMS-00002364

034827-3606

# METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

## CROSS REFERENCE TO RELATED PATENT APPLICATIONS

[0001]   This application claims priority under 35 U.S.C. § 120 to U.S. Application Serial No. 11/101,166 (now U.S. Pat. No. 7,745,226), filed April 6, 2005, and to U.S. Application Serial No. 11/386,215, filed March 21, 2006, incorporated herein by reference in their entirety.

## FIELD OF THE INVENTION

[0002]   The invention relates to the detection of vitamin D metabolites.  In a particular aspect, the invention relates to methods for detecting vitamin D metabolites by mass spectrometry.

## BACKGROUND OF THE INVENTION

[0003]   Vitamin D is an essential nutrient with important physiological roles in the positive regulation of calcium ($Ca^{2+}$) homeostasis.  Vitamin D can be made *de novo* in the skin by exposure to sunlight or it can be absorbed from the diet.  There are two forms of vitamin D; vitamin $D_2$ (ergocalciferol) and vitamin $D_3$ (cholecalciferol).  Vitamin $D_3$ is the form synthesized *de novo* by animals.   It is also a common supplement added to milk products and certain food products produced in the United States.  Both dietary and intrinsically synthesized vitamin $D_3$ must undergo metabolic activation to generate bioactive metabolites.  In humans, the initial step of vitamin $D_3$ activation occurs primarily in the liver and involves hydroxylation to form the intermediate metabolite 25-hydroxyvitamin $D_3$ (25-hydroxycholecalciferol; calcifediol; $25OHD_3$).  Calcifediol is the major form of vitamin $D_3$ in the circulation.  Circulating $25OHD_3$ is then converted by the kidney to 1,25-dihydroxyvitamin $D_3$ (calcitriol; $1,25(OH)_2D_3$), which is generally believed to be the metabolite of vitamin $D_3$ with the highest biological activity.

1

QUESTMS-00002365

034827-3606

[0004]   Vitamin $D_2$ is derived from fungal and plant sources.  Many over-the-counter dietary supplements contain ergocalciferol (vitamin $D_2$) rather than cholecalciferol (vitamin $D_3$). Drisdol, the only high-potency prescription form of vitamin D available in the United States, is formulated with ergocalciferol.  Vitamin $D_2$ undergoes a similar pathway of metabolic activation in humans as vitamin $D_3$, forming the metabolites 25-hydroxyvitamin $D_2$ (25OHD$_2$) and 1,25-dihydroxyvitamin $D_3$ (1,25(OH)$_2$D$_2$).  Vitamin $D_2$ and vitamin $D_3$ have long been assumed to be biologically equivalent in humans, however recent reports suggest that there may be differences in the bioactivity and bioavailability of these two forms of vitamin D (Armas *et. al.*, (2004) J. Clin. Endocrinol. Metab. 89:5387-5391).

[0005]   Measurement of vitamin D, the inactive vitamin D precursor, is rare in clinical settings and has little diagnostic value.  Rather, serum levels of 25-hydroxyvitamin $D_3$ and 25-hydroxyvitamin $D_2$ (total 25-hydroxyvitamin D; "25OHD") are a useful index of vitamin D nutritional status and the efficacy of certain vitamin D analogs.  Therefore, the measurement of 25OHD is commonly used in the diagnosis and management of disorders of calcium metabolism. In this respect, low levels of 25OHD are indicative of vitamin D deficiency associated with diseases such as hypocalcemia, hypophosphatemia, secondary hyperparathyroidism, elevated alkaline phosphatase, osteomalacia in adults and rickets in children.  In patients suspected of vitamin D intoxication, elevated levels of 25OHD distinguishes this disorder from other disorders that cause hypercalcemia.

[0006]   Measurement of 1,25(OH)$_2$D is also used in clinical settings, however, this metabolite has a more limited diagnostic usefulness than 25OHD.  Factors that contribute to limitations of the diagnostic values of 1,25(OH)$_2$D as an index of vitamin D status include the precision of the endogenous regulation of renal production of the metabolite and its short half-life in circulation. However, certain disease states such as kidney failure can be diagnosed by reduced levels of circulating 1,25(OH)$_2$D and elevated levels of 1,25(OH)$_2$D may be indicative of excess parathyroid hormone or may be indicative of certain diseases such as sarcoidosis or certain types of lymphoma.

[0007]   Detection of vitamin D metabolites has been accomplished by radioimmunoassay with antibodies co-specific for 25-hydroxyvitamin $D_3$ and 25-hydroxyvitamin $D_2$.  Because the current immunologically-based assays do not separately resolve 25-hydroxyvitamin $D_3$ and 25-

2

034827-3606

hydroxyvitamin $D_2$, the source of a deficiency in vitamin D nutrition cannot be determined without resorting to other tests. More recently, reports have been published that disclose methods for detecting specific vitamin D metabolites using mass spectrometry. For example Yeung B, *et al.,* J Chromatogr. 1993, 645(1):115-23; Higashi T, et al., Steroids. 2000, 65(5):281-94; Higashi T, *et al.,* Biol Pharm Bull. 2001, 24(7):738-43; and Higashi T, *et al.,* J Pharm Biomed Anal. 2002, 29(5):947-55 disclose methods for detecting various vitamin D metabolites using liquid chromatography and mass spectrometry. These methods require that the metabolites be derivatized prior to detection by mass-spectrometry. Methods to detect underivatized $1,25(OH)_2D_3$ by liquid chromatography / mass-spectrometry are disclosed in Kissmeyer and Sonne, J Chromatogr A. 2001, 935(1-2):93-103.


## SUMMARY OF THE INVENTION


[0008]   The present invention provides methods for detecting the presence or amount of a vitamin D metabolite in a sample by mass spectrometry, including tandem mass spectrometry. Preferably, the methods of the invention do not include derivatizing the vitamin D metabolites prior to the mass spectrometry analysis.

[0009]   In one aspect, the invention provides a method for determining the presence or amount of a vitamin D metabolite in a sample. The method may include: (a) ionizing the vitamin D metabolite, if present in the sample; and (b) detecting the presence or amount of the ion by mass spectrometry and relating presence or amount of the detected ion to the presence or amount of the vitamin D metabolite in the sample. In some preferred embodiments, the ionization step (a) may include (i) ionizing the vitamin D metabolite, if present in the sample, to produce an ion of the vitamin D metabolite; (ii) isolating the ion of step (i) by mass spectrometry to provide a precursor ion; and (iii) effecting a collision between the precursor ion and an inert collision gas to produce at least one fragment ion detectable in a mass spectrometer. Preferably, at least one of the fragment ions is specific for the vitamin D metabolite of interest. In certain embodiments of the invention, the fragment ions to be detected include at least one fragment ion other than that which results solely by a dehydration or deamination of the precursor ion. In some particularly preferred embodiments, the precursor ion is a protonated and dehydrated ion of the vitamin D metabolite. In certain embodiments the vitamin D metabolite is one or more vitamin D

3

QUESTMS-00002367

034827-3606

metabolites selected from the group consisting of 25-hydroxyvitamin $D_3$; 25-hydroxyvitamin $D_2$; 1,25-dihydroxyvitamin $D_2$; and 1,25-dihydroxyvitamin $D_3$.

[0010]   In a related aspect, the invention provides a method for determining the presence or amount of a vitamin D metabolite in a sample by tandem mass spectrometry.  The method may involve (a) generating a protonated and dehydrated precursor ion of the vitamin D metabolite if present in the sample; (b) generating one or more fragment ions of the precursor ion; and (c) detecting the presence or amount of one or more of the ions generated in step (a) or (b) or both and relating the detected ions to the presence or amount of the vitamin D metabolite in the sample.  In certain embodiments, the method is used to detect the presence or amount of two or more vitamin D metabolites in a single assay.  Preferably, the method does not involve derivatizing the samples or the vitamin D metabolites prior to analysis by mass spectrometry.  In certain embodiments the vitamin D metabolite is one or more vitamin D metabolites selected from the group consisting of 25-hydroxyvitamin $D_3$; 25-hydroxyvitamin $D_2$; 1,25-dihydroxyvitamin $D_2$; and 1,25-dihydroxyvitamin $D_3$.

[0011]   In another aspect the invention provides a method for determining the presence or amount of two or more vitamin D metabolites in a sample in a single assay.  The method includes ionizing the vitamin D metabolites, if present in the sample, to generate ions specific for each of the vitamin D metabolites of interest, detecting the presence or amount of the ions by mass spectrometry, and relating the presence or amount of the ions to the presence or amount of the vitamin D metabolites in the sample.  In certain embodiments the mass spectrometry analysis of the method is tandem mass spectrometry.

[0012]   As used herein, the term "vitamin D metabolite" refers to any chemical species that may be found in the circulation of an animal which is formed by a biosynthetic or metabolic pathway for vitamin D or a synthetic vitamin D analog.  Vitamin D metabolites include forms of vitamin D that are generated by a biological organism, such as an animal, or that are generated by biotransformation of a naturally occurring form of vitamin D or a synthetic vitamin D analog.  In certain preferred embodiments, a vitamin D metabolite is formed by the biotransformation of vitamin $D_2$ or vitamin $D_3$.  In particularly preferred embodiments, the vitamin D metabolite is one or more compounds selected from the group consisting of 25-hydroxyvitamin $D_3$, 25-hydroxyvitamin $D_2$, 1,25-dihydroxyvitamin $D_3$ and 1,25-dihydroxyvitamin $D_2$.

4

034827-3606

[0013] As used herein, the term "purification" refers to a procedure that enriches the amount of one or more analytes of interest relative to one or more other components of the sample. Purification, as used herein does not require the isolation of an analyte from all others. In preferred embodiments, a purification step or procedure can be used to remove one or more interfering substances, *e.g.*, one or more substances that would interfere with the operation of the instruments used in the methods or substances that may interfere with the detection of an analyte ion by mass spectrometry.

[0014] As used herein, "biological sample" refers to any sample from a biological source. As used herein, "body fluid" means any fluid that can be isolated from the body of an individual. For example, "body fluid" may include blood, plasma, serum, bile, saliva, urine, tears, perspiration, and the like.

[0015] As used herein, "derivatizing" means reacting two molecules to form a new molecule. Derivatizing agents may include isothiocyanate groups, dinitro-fluorophenyl groups, nitrophenoxycarbonyl groups, and/or phthalaldehyde groups.

[0016] As used herein, "chromatography" refers to a process in which a chemical mixture carried by a liquid or gas is separated into components as a result of differential distribution of the chemical entities as they flow around or over a stationary liquid or solid phase.

[0017] As used herein, "liquid chromatography" (LC) means a process of selective retardation of one or more components of a fluid solution as the fluid uniformly percolates through a column of a finely divided substance, or through capillary passageways. The retardation results from the distribution of the components of the mixture between one or more stationary phases and the bulk fluid, (*i.e.*, mobile phase), as this fluid moves relative to the stationary phase(s). "Liquid chromatography" includes reverse phase liquid chromatography (RPLC), high performance liquid chromatography (HPLC) and high turbulence liquid chromatography (HTLC).

[0018] As used herein, the term "HPLC" or "high performance liquid chromatography" refers to liquid chromatography in which the degree of separation is increased by forcing the mobile phase under pressure through a stationary phase, typically a densely packed column.

[0019] As used herein, the term "gas chromatography" refers to chromatography in which the sample mixture is vaporized and injected into a stream of carrier gas (as nitrogen or helium)

5

QUESTMS-00002369

moving through a column containing a stationary phase composed of a liquid or a particulate solid and is separated into its component compounds according to the affinity of the compounds for the stationary phase

[0020]   As used herein, "mass spectrometry" (MS) refers to an analytical technique to identify compounds by their mass.  MS technology generally includes (1) ionizing the compounds to form charged compounds; and (2) detecting the molecular weight of the charged compound and calculating a mass-to-charge ratio (m/z).  The compound may be ionized and detected by any suitable means.  A "mass spectrometer" generally includes an ionizer and an ion detector.  *See, e.g.*, U.S. Patent Nos. 6,204,500, entitled "Mass Spectrometry From Surfaces;" 6,107,623, entitled "Methods and Apparatus for Tandem Mass Spectrometry;" 6,268,144, entitled "DNA Diagnostics Based On Mass Spectrometry;" 6,124,137, entitled "Surface-Enhanced Photolabile Attachment And Release For Desorption And Detection Of Analytes;" Wright *et al.*, *Prostate Cancer and Prostatic Diseases* **2**:264-76 (1999); and Merchant and Weinberger, *Electrophoresis* **21**:1164-67 (2000).

[0021]   The term "electron ionization" as used herein refers to methods in which an analyte of interest in a gaseous or vapor phase interacts with a flow of electrons.  Impact of the electrons with the analyte produces analyte ions, which may then be subjected to a mass spectrometry technique.

[0022]   The term "chemical ionization" as used herein refers to methods in which a reagent gas (*e.g.* ammonia) is subjected to electron impact, and analyte ions are formed by the interaction of reagent gas ions and analyte molecules.

[0023]   The term "fast atom bombardment" as used herein refers to methods in which a beam of high energy atoms (often Xe or Ar) impacts a non-volatile sample, desorbing and ionizing molecules contained in the sample.  Test samples are dissolved in a viscous liquid matrix such as glycerol, thioglycerol, m-nitrobenzyl alcohol, 18-crown-6 crown ether, 2-nitrophenyloctyl ether, sulfolane, diethanolamine, and triethanolamine.

[0024]   The term "field desorption" as used herein refers to methods in which a non-volatile test sample is placed on an ionization surface, and an intense electric field is used to generate analyte ions.

6

034827-3606

[0025]   The term "ionization" as used herein refers to the process of generating an analyte ion having a net electrical charge equal to one or more electron units.  Negative ions are those having a net negative charge of one or more electron units, while positive ions are those having a net positive charge of one or more electron units.

[0026]   The term "operating in negative ion mode" refers to those mass spectrometry methods where negative ions are detected.  Similarly, "operating in positive ion mode" refers to those mass spectrometry methods where positive ions are detected.

[0027]   The term "desorption" as used herein refers to the removal of an analyte from a surface and/or the entry of an analyte into a gaseous phase.

[0028]   The term "about" as used herein in reference to quantitative measurements, refers to the indicated value plus or minus 10%.


## BRIEF DESCRIPTION OF THE DRAWINGS

[0029]   Figure 1 shows the linearity of the quantification of $25OHD_2$ in serially diluted stock samples using an LC-MS/MS assay.  Details are described in Example 4.

[0030]   Figure 2 shows the linearity of the quantification of $25OHD_3$ in serially diluted stock samples using an LC-MS/MS assay.  Details are described in Example 4.

[0031]   Figure 3 shows the linearity of the quantification by LC-MS/MS of serially diluted samples containing $25OHD_2$ and $25OHD_3$ to final concentrations of 512 ng/mL.  Details are described in Example 4.

[0032]   Figure 4 shows the correlation between detection of total 25-hydroxyvitamin D using an LC-MS/MS assay and a commercially available radioimmunoassay kit.  Details are described in Example 6.


## DETAILED DESCRIPTION OF THE INVENTION

[0033]   Disclosed are methods for detecting the presence or amount of one or more vitamin D metabolites in a sample.  In certain aspects the method involves ionizing the vitamin D

7

QUESTMS-00002371

metabolite(s), detecting the ion(s) by mass spectrometry, and relating the presence or amount of the ion(s) to the presence or amount of the vitamin D metabolite(s) in the sample. The method may include (a) purifying a vitamin D metabolite, if present in the sample, (b) ionizing the purified vitamin D metabolite and (c) detecting the presence or amount of the ion, wherein the presence or amount of the ion is related to the presence or amount of the vitamin D metabolite in the sample. In preferred embodiments, the ionizing step (b) may include (i) ionizing a vitamin D metabolite, if present in the sample, to produce an ion; (ii) isolating the vitamin D metabolite ion by mass spectrometry to provide a precursor ion; and (iii) effecting a collision between the isolated precursor ion and an inert collision gas to produce at least one fragment ion detectable in a mass spectrometer. In certain preferred embodiments the precursor ion is a protonated and dehydrated ion of the vitamin D metabolite.

[0034]   In a related aspect, the invention provides a method for determining the presence or amount of a vitamin D metabolite in a test sample by tandem mass spectrometry. The method may involve (a) generating a protonated and dehydrated precursor ion of the vitamin D metabolite; (b) generating one or more fragment ions of the precursor ion; and (c) detecting the presence or amount of one or more of the ions generated in step (a) or (b) or both and relating the detected ions to the presence or amount of said vitamin D metabolite in the sample.

[0035]   In certain preferred embodiments of the invention, at least one fragment ion is detected, wherein the presence or amount of the precursor and/or at least one fragment ion is related to the presence or amount of the vitamin D metabolite in the sample. Preferably at least one fragment ion is specific for the vitamin D metabolite of interest. In some embodiments, the methods of the invention can be used to detect and quantify two or more vitamin D metabolites in a single assay. In certain embodiments, the vitamin D metabolite is one or more vitamin D metabolites selected from the group consisting of 25-hydroxyvitamin $D_3$; 25-hydroxyvitamin $D_2$; 1,25-dihydroxyvitamin $D_2$; and 1,25- dihydroxyvitamin $D_3$.

[0036]   Suitable samples include any sample that might contain the analyte of interest and/or one or more metabolites or precursors thereof. For example, samples obtained during the manufacture of an analyte can be analyzed to determine the composition and yield of the manufacturing process. In certain embodiments, a sample is a biological sample; that is, a sample obtained from any biological source, such as an animal, a cell culture, an organ culture,

8

QUESTMS-00002372

034827-3606

*etc.* Particularly preferred are samples obtained from a human, such as a blood, plasma, serum, hair, muscle, urine, saliva, tear, cerebrospinal fluid, or other tissue sample. Such samples may be obtained, for example, from a patient seeking diagnosis, prognosis, or treatment of a disease or condition. The vitamin D metabolites may be derivatized prior to mass spectrometry, however, in certain preferred embodiments, sample preparation excludes the use of derivitization.

[0037] Samples may be processed or purified to obtain preparations that are suitable for analysis by mass spectrometry. Such purification will usually include chromatography, such as liquid chromatography, and may also often involve an additional purification procedure that is performed prior to chromatography. Various procedures may be used for this purpose depending on the type of sample or the type of chromatography. Examples include filtration, extraction, precipitation, centrifugation, dilution, combinations thereof and the like. Protein precipitation is one preferred method of preparing a liquid biological sample, such as serum or plasma, for chromatography. Such protein purification methods are well known in the art, for example, Polson *et al., Journal of Chromatography B* **785**:263-275 (2003), describes protein precipitation methods suitable for use in the methods of the invention. Protein precipitation may be used to remove most of the protein from the sample leaving vitamin D metabolites soluble in the supernatant. The samples can be centrifuged to separate the liquid supernatant from the precipitated proteins. The resultant supernatant can then be applied to liquid chromatography and subsequent mass spectrometry analysis. In one embodiment of the invention, the protein precipitation involves adding one volume of the liquid sample (e.g. plasma) to about four volumes of methanol. In certain embodiments, the use of protein precipitation obviates the need for high turbulence liquid chromatography ("HTLC") or on-line extraction prior to HPLC and mass spectrometry. Accordingly in such embodiments, the method involves (1) performing a protein precipitation of the sample of interest; and (2) loading the supernatant directly onto the HPLC-mass spectrometer without using on-line extraction or high turbulence liquid chromatography ("HTLC").

[0038] The purification step may include chromatography, preferably liquid chromatography, more preferably high performance liquid chromatography (HPLC). In some preferred embodiments the chromatography is not gas chromatography. Preferably, the methods of the invention are performed without subjecting the samples, or the vitamin D metabolites of interest, to gas chromatography prior to mass spectrometric analysis.

9

034827-3606

[0039]   Various methods have been described involving the use of HPLC for sample clean-up prior to mass spectrometry analysis.  See, *e.g.*, Taylor *et al.*, *Therapeutic Drug Monitoring* **22**:608-12 (2000) (manual precipitation of blood samples, followed by manual C18 solid phase extraction, injection into an HPLC for chromatography on a C18 analytical column, and MS/MS analysis); and Salm *et al.*, *Clin. Therapeutics* **22** Supl. B:B71-B85 (2000) (manual precipitation of blood samples, followed by manual C18 solid phase extraction, injection into an HPLC for chromatography on a C18 analytical column, and MS/MS analysis).  One of skill in the art can select HPLC instruments and columns that are suitable for use in the invention.  The chromatographic column typically includes a medium (*i.e.*, a packing material) to facilitate separation of chemical moieties (*i.e.*, fractionation).  The medium may include minute particles. The particles include a bonded surface that interacts with the various chemical moieties to facilitate separation of the chemical moieties such as vitamin D metabolites.  One suitable bonded surface is a hydrophobic bonded surface such as an alkyl bonded surface.  Alkyl bonded surfaces may include C-4, C-8, or C-18 bonded alkyl groups, preferably C-18 bonded groups. The chromatographic column includes an inlet port for receiving a sample and an outlet port for discharging an effluent that includes the fractionated sample.  In the method, the sample (or pre-purified sample) is applied to the column at the inlet port, eluted with a solvent or solvent mixture, and discharged at the outlet port.  Different solvent modes may be selected for eluting the analytes of interest.  For example, liquid chromatography may be performed using a gradient mode, an isocratic mode, or a polytyptic (i.e. mixed) mode.  In preferred embodiments, HPLC is performed on a multiplexed analytical HPLC system with a C18 solid phase using isocratic separation with 100% methanol as the mobile phase.

[0040]   Recently, high turbulence liquid chromatography ("HTLC"), also called high throughput liquid chromatography, has been applied for sample preparation prior to analysis by mass spectrometry.  See, *e.g.*, Zimmer *et al.*, *J. Chromatogr.* A **854**:23-35 (1999); see also, U.S. Patents Nos. 5,968,367; 5,919,368; 5,795,469; and 5,772,874.  Traditional HPLC analysis relies on column packings in which laminar flow of the sample through the column is the basis for separation of the analyte of interest from the sample.  The skilled artisan will understand that separation in such columns is a diffusional process.  In contrast, it is believed that turbulent flow, such as that provided by HTLC columns and methods, may enhance the rate of mass transfer, improving the separation characteristics provided.  In some embodiments, high turbulence liquid

10

chromatography (HTLC), alone or in combination with one or more purification methods, may be used to purify the vitamin D metabolite of interest prior to mass spectrometry. In such embodiments samples may be extracted using an HTLC extraction cartridge which captures the analyte, then eluted and chromatographed on a second HTLC column or onto an analytical HPLC column prior to ionization. Because the steps involved in these chromatography procedures can be linked in an automated fashion, the requirement for operator involvement during the purification of the analyte can be minimized. In certain embodiments of the method, samples are subjected to protein precipitation as described above prior to loading on the HTLC column; in alternative embodiments, the samples may be loaded directly onto the HTLC without being subjected to protein precipitation.

[0041] Recently, research has shown that epimerization of the hydroxyl group of the A-ring of vitamin $D_3$ metabolites is an important aspect of vitamin $D_3$ metabolism and bioactivation, and that depending on the cell types involved, 3-C epimers of vitamin $D_3$ metabolites (e.g., 3-epi-$25(OH)D_3$; 3-epi-$24,25(OH)_2D_3$; and 3-epi-$1,25(OH)_2D_3$) are often major metabolic products. *See* Kamao *et al., J. Biol. Chem.,* **279**:15897-15907 (2004). Kamao *et al.,* further provides methods of separating various vitamin D metabolites, including 3-C epimers, using Chiral HPLC. Accordingly, the invention also provides methods of detecting the presence, absence and/or amount of a specific epimer of one or more vitamin D metabolites, preferably vitamin $D_3$ metabolites, in a sample by (1) separating one or more specific vitamin D metabolites by chiral chromatography, preferably chiral HPLC; and (2) detecting the presence and/or amount of one or more vitamin D metabolites using mass spectrometry methods as described herein. The chiral chromatography procedures described in Kamao *et al.,* are suitable for the methods of the invention, however, one of ordinary skill in the art understands that there are numerous other chiral chromatography methods that would also be suitable. In preferred embodiments the method includes, separating $25(OH)D_3$ from 3-epi-$25(OH)D_3$, if present in a sample, using chiral chromatography; and detecting the presence and/or amount of the $25(OH)D_3$ and the 3-epi-$25(OH)D_3$ in the sample using mass spectrometry. In related embodiments, the method includes separating $1\alpha,25(OH)_2D_3$ from 3-epi-$1\alpha,25(OH)_2D_3$, if present in a sample, using chiral chromatography; and detecting the presence and/or amount of the $1\alpha,25(OH)_2D_3$ and the 3-epi-$1\alpha,25(OH)_2D_3$ in the sample using mass spectrometry. In certain embodiments of the invention, chiral chromatography is used in conjunction with the HTLC methods described above.

11

034827-3606

[0042]   Mass spectrometry is performed using a mass spectrometer which includes an ion source for ionizing the fractionated sample and creating charged molecules for further analysis.  For example ionization of the sample may be performed by electrospray ionization (ESI), atmospheric pressure chemical ionization (APCI), photoinonization, electron ionization, fast atom bombardment (FAB)/liquid secondary ionization (LSIMS), matrix assisted laser desorption ionization (MALDI), field ionization, field desorption, thermospray/plasmaspray ionization, and particle beam ionization.  The skilled artisan will understand that the choice of ionization method can be determined based on the analyte to be measured, type of sample, the type of detector, the choice of positive versus negative mode, *etc.*

[0043]   After the sample has been ionized, the positively charged or negatively charged ions thereby created may be analyzed to determine a mass-to-charge ratio (*i.e.*, m/z).  Suitable analyzers for determining mass-to-charge ratios include quadropole analyzers, ion traps analyzers, and time-of-flight analyzers.  The ions may be detected using several detection modes.  For example, selected ions may be detected (*i.e.*, using a selective ion monitoring mode (SIM)), or alternatively, ions may be detected using a scanning mode, e.g., multiple reaction monitoring (MRM) or selected reaction monitoring (SRM).  Preferably, the mass-to-charge ratio is determined using a quadropole analyzer.  For example, in a "quadrupole" or "quadrupole ion trap" instrument, ions in an oscillating radio frequency field experience a force proportional to the DC potential applied between electrodes, the amplitude of the RF signal, and m/z.  The voltage and amplitude can be selected so that only ions having a particular m/z travel the length of the quadrupole, while all other ions are deflected.  Thus, quadrupole instruments can act as both a "mass filter" and as a "mass detector" for the ions injected into the instrument.

[0044]   One can often enhance the resolution of the MS technique by employing "tandem mass spectrometry," or "MS/MS."  In this technique, a precursor ion (also called a parent ion) generated from a molecule of interest can be filtered in an MS instrument, and the precursor ion is subsequently fragmented to yield one or more fragment ions (also called daughter ions or product ions) that are then analyzed in a second MS procedure.  By careful selection of precursor ions, only ions produced by certain analytes are passed to the fragmentation chamber, where collision with atoms of an inert gas to produce the daughter ions.  Because both the precursor and fragment ions are produced in a reproducible fashion under a given set of ionization/fragmentation conditions, the MS/MS technique can provide an extremely powerful

12

QUESTMS-00002376

034827-3606

analytical tool. For example, the combination of filtration/fragmentation can be used to eliminate interfering substances, and can be particularly useful in complex samples, such as biological samples.

[0045]  Additionally, recent advances in technology, such as matrix-assisted laser desorption ionization coupled with time-of-flight analyzers ("MALDI-TOF") permit the analysis of analytes at femtomole levels in very short ion pulses. Mass spectrometers that combine time-of-flight analyzers with tandem MS are also well known to the artisan. Additionally, multiple mass spectrometry steps can be combined in methods known as "MS/MS$^n$." Various other combinations may be employed, such as MS/MS/TOF, MALDI/MS/MS/TOF, or SELDI/MS/MS/TOF mass spectrometry.

[0046]  The mass spectrometer typically provides the user with an ion scan; that is, the relative abundance of each ion with a particular m/z over a given range (*e.g.*, 100 to 1000 amu). The results of an analyte assay, that is, a mass spectrum, can be related to the amount of the analyte in the original sample by numerous methods known in the art. For example, given that sampling and analysis parameters are carefully controlled, the relative abundance of a given ion can be compared to a table that converts that relative abundance to an absolute amount of the original molecule. Alternatively, molecular standards can be run with the samples, and a standard curve constructed based on ions generated from those standards. Using such a standard curve, the relative abundance of a given ion can be converted into an absolute amount of the original molecule. In certain preferred embodiments, an internal standard is used to generate a standard curve for calculating the quantity of the vitamin D metabolite. Methods of generating and using such standard curves are well known in the art and one of ordinary skill is capable of selecting an appropriate internal standard. For example, an isotope of a vitamin D metabolite may be used as an internal standard, in preferred embodiments the vitamin D metabolite is a deuterated vitamin D metabolite, for example $^6$D-25OHD$_3$. Numerous other methods for relating the presence or amount of an ion to the presence or amount of the original molecule will be well known to those of ordinary skill in the art.

[0047]  One or more steps of the methods of the invention can be performed using automated machines. In certain embodiments, one or more purification steps are performed on line, and

13

QUESTMS-00002377

more preferably all of the purification and mass spectrometry steps may be performed in an on-line fashion.

**[0048]**   In particularly preferred embodiments vitamin D metabolites are detected and/or quantified using LC-MS/MS as follows.  The samples are subjected to liquid chromatography, preferably HPLC, the flow of liquid solvent from the chromatographic column enters the heated nebulizer interface of a LC-MS/MS analyzer and the solvent/analyte mixture is converted to vapor in the heated tubing of the interface.  The analytes (i.e. vitamin D metabolites), contained in the nebulized solvent, are ionized by the corona discharge needle of the interface, which applies a large voltage to the nebulized solvent/analyte mixture.  The ions, i.e. precursor ions, pass through the orifice of the instrument and enter the first quadrupole.  Quadrupoles 1 and 3 (Q1 and Q3) are mass filters, allowing selection of ions (i.e., "precursor" and "fragment" ions) based on their mass to charge ratio (m/z).  Quadrupole 2 (Q2) is the collision cell, where ions are fragmented.  The first quadrupole of the mass spectrometer (Q1) selects for molecules with the mass to charge ratios of the specific vitamin D metabolites to be analyzed.  Precursor ions with the correct m/z ratios of the precursor ions of specific vitamin D metabolites are allowed to pass into the collision chamber (Q2), while unwanted ions with any other m/z collide with the sides of the quadrupole and are eliminated.  Precursor ions entering Q2 collide with neutral Argon gas molecules and fragment.  This process is called Collision Activated Dissociation (CAD).  The fragment ions generated are passed into quadrupole 3 (Q3), where the fragment ions of the desired vitamin D metabolites are selected while other ions are eliminated.

**[0049]**   The methods of the invention may involve MS/MS performed in either positive or negative ion mode.  Using standard methods well known in the art, one of ordinary skill is capable of identifying one or more fragment ions of a particular precursor ion of a vitamin D metabolite that can be used for selection in quadrupole 3 (Q3).  Preferably, at least one fragment ion of the method is specific for the particular vitamin D metabolite of which detection is desired.  A specific fragment ion for a particular vitamin D metabolite is one that will not be formed in significant amounts by other molecules with similar molecular structures.  In contrast a non-specific fragment ion is one that is formed by related molecules other than the desired analyte.  Therefore, detection of non-specific fragment ions alone is not reliable for distinguishing the desired vitamin D metabolite from other molecules that form the same or similar fragment ions.  Specific fragment ions of a particular vitamin D metabolite can be

14

034827-3606

identified by testing various molecular standards (e.g. vitamin D metabolites other than the metabolite to be detected) to determine whether fragment ions formed by the vitamin D metabolite of interest are also formed by other molecules with similar structures or features. In certain particularly preferred embodiments, a specific fragment ion is identified by testing at least one molecular standard that forms a precursor ion with the same m/z as the vitamin D metabolite to be detected.

[0050]   If the precursor ion of a vitamin D metabolite of interest includes an alcohol or amine group, fragment ions are commonly formed that represent a dehydration or deamination of the precursor ion, respectfully. In the case of precursor ions that include an alcohol group, such fragment ions formed by dehydration are caused by a loss of one or more water molecules from the precursor ion (i.e., where the difference in m/z between the precursor ion and fragment ion is about 18 for the loss of one water molecule, or about 36 for the loss of two water molecules, etc.). In the case of precursor ions that include an amine group, such fragment ions formed by deamination are caused by a loss of one or more ammonia molecules (i.e. where the difference in m/z between the precursor ion and fragment ion is about 17 for the loss of one ammonia molecule, or about 34 for the loss of two ammonia molecules, etc.). Likewise, precursor ions that include one or more alcohol and amine groups commonly form fragment ions that represent the loss of one or more water molecules and/or one or more ammonia molecules (e.g., where the difference in m/z between the precursor ion and fragment ion is about 35 for the loss of one water molecule and the loss of one ammonia molecule). Generally, the fragment ions that represent dehydrations or deaminations of the precursor ion are not specific fragment ions for a particular analyte. For example, MS/MS performed to detect $25OHD_2$ by selecting for a precursor ion at 413 m/z (i.e. the protonated and hydrated ion) and detecting a fragment ion of 395 m/z (representing a dehydration of the 413 m/z precursor ion) would not be able to distinguish $25OHD_2$ from $1\alpha(OH)D_2$ which would form the same precursor and fragment ions. Therefore a 395 m/z fragment ion is not a specific fragment ion for $25OHD_2$ or $1\alpha(OH)D_2$. Accordingly, in preferred embodiments of the invention, MS/MS is performed such that at least one fragment ion of a vitamin D metabolite is detected that does not represent only a loss of one or more water molecules and/or a loss of one or more ammonia molecules from the precursor ion.

15

DLMR_895309.1

QUESTMS-00002379

034827-3606

[0051]  As ions collide with the detector they produce a pulse of electrons that are converted to a digital signal.  The acquired data is relayed to a computer, which plots counts of the ions collected versus time.  The resulting mass chromatograms are similar to chromatograms generated in traditional HPLC methods.  The areas under the peaks corresponding to particular ions, or the amplitude of such peaks, are measured and the area or amplitude is correlated to the amount of the analyte (vitamin D metabolite) of interest.  In certain embodiments, the area under the curves, or amplitude of the peaks, for fragment ion(s) and/or precursor ions are measured to determine the amount of a vitamin D metabolite.  As described above, the relative abundance of a given ion can be converted into an absolute amount of the original analyte, i.e., vitamin D metabolite, using calibration standard curves based on peaks of one or more ions of an internal molecular standard, such as $^6$D-25OHD$_3$.

[0052]  In certain aspects of the invention, the quantity of various ions is determined by measuring the area under the curve or the amplitude of the peak and a ratio of the quantities of the ions is calculated and monitored (i.e. "daughter ion ratio monitoring").  In certain embodiments of the method, the ratio(s) of the quantity of a precursor ion and the quantity of one or more fragment ions of a vitamin D metabolite can be calculated and compared to the ratio(s) of a molecular standard of the vitamin D metabolite similarly measured.  In embodiments where more than one fragment ion of a vitamin D metabolite is monitored, the ratio(s) for different fragment ions may be determined instead of, or in addition to, the ratio of the fragment ion(s) compared to the precursor ion.  In embodiments where such ratios are monitored, if there is a substantial difference in an ion ratio in the sample as compared to the molecular standard, it is likely that a molecule in the sample is interfering with the results.  To the contrary, if the ion ratios in the sample and the molecular standard are similar, then there is increased confidence that there is no interference.  Accordingly, monitoring such ratios in the samples and comparing the ratios to those of authentic molecular standards may be used to increase the accuracy of the method.

[0053]  In certain aspects of the invention, MS/MS is performed in positive ion mode with the first quadruple (Q1) tuned to select for precursor ions with a mass charge ratio corresponding to protonated and dehydrated ions of vitamin D metabolites.  The mass/charge ratio (m/z) for the protonated and dehydrated precursor vitamin D metabolite ions is about 383.16 m/z for 25-hydroxyvitamin D$_3$ and about 395.30 m/z for 25-hydroxyvitamin D$_2$.  In embodiments where the

16

QUESTMS-00002380

034827-3606

samples are spiked with hexadeuterated 25OHD$_3$ ($^6$D-25OHD$_3$) for use as an internal standard, the mass/charge ratio (m/z) of the protonated and dehydrated $^6$D-25OHD$_3$ precursor ion is about 389.20. In certain preferred embodiments of the invention, the mass/charge ratio (m/z) for the 25-hydroxyvitamin D$_3$ precursor ion is about 383.16 and the m/z for at least one 25-hydroxyvitamin D$_3$ fragment ion is about 211.35. In related embodiments, the m/z for the 25-hydroxyvitamin D$_2$ precursor ion is about 395.30 and the 25-hydroxyvitamin D$_2$ fragment ion(s) include one or more ions selected from the group consisting of ions with mass/charge ratios (m/z) of about 179.10, about 209.20 and about 251.30. In embodiments where the samples are spiked with $^6$D-25OHD$_3$ for use as an internal standard the mass/charge ratio (m/z) for the protonated and dehydrated $^6$D-25OHD$_3$ precursor ion is about 389.20 and the fragment ion(s) may include a fragment ion with a m/z of about 211.30.

[0054]  In other aspects, MS/MS is performed in positive ion mode with the first quadruple (Q1) tuned to select for precursor ions with a mass charge ratio corresponding to protonated and hydrated ions of vitamin D metabolites. The mass/charge ratio (m/z) for the protonated and hydrated precursor vitamin D metabolite ions are about 401 m/z for 25-hydroxyvitamin D$_3$ and about 413 m/z for 25-hydroxyvitamin D$_2$. In certain preferred embodiments of the invention, the mass/charge ratio (m/z) for the 25-hydroxyvitamin D$_3$ precursor ion is about 401 and the 25-hydroxyvitamin D$_3$ fragment ion(s) include one or more ions selected from the group consisting of ions with mass/charge ratios (m/z) of about 365 and about 383 m/z; more preferably the fragment ions include an ion with a m/z of about 365. In related embodiments, the m/z for the protonated and hydrated 25-hydroxyvitamin D$_2$ precursor ion is about 413 m/z, and the 25-hydroxyvitamin D$_2$ fragment ion(s) include one or more ions with mass/charge ratios (m/z) of about 377 and about 395; more preferably the fragment ions include an ion with a mass charge ratio of about 377.

[0055]  In particularly preferred embodiments of the invention, the presence or absence or amount of two or more vitamin D metabolites in a sample are detected in a single assay using the above described MS/MS methods.

[0056]  Mass spectrometry instruments can vary slightly in determining the mass of a given analyte. Thus, the term "about" in the context of mass of an ion or the m/z of an ion refers to +/- 0.5 atomic mass unit.

17

QUESTMS-00002381

034827-3606

[0057]   The following examples serve to illustrate the invention. These examples are in no way intended to limit the scope of the invention.


EXAMPLES


**Example 1**:   Determination of 25-hydroxyvitamin D$_3$ and 25-hydroxyvitamin D$_2$ by LC-MS/MS

[0058]   Using a Perkin-Elmer MultiProbe II (S/N 432400) robotic liquid handler, human serum samples were first extracted using a protein precipitation method by adding 42.5 μl of serum to170 μl of methanol (1:4 ratio of serum:methanol) in a 96-well plate format.  For validation-related experiments, the methanol was spiked with hexadeuterated 25OHD$_3$ ($^6$D-25OHD$_3$) as an internal standard.  The 96 well plates were centrifuged to remove precipitated protein, leaving the vitamin D metabolites in the supernatant.  The supernatants were then transferred to an HPLC autosampler for loading to the LC-MS/MS analyzer.

[0059]   LC-MS/MS was performed using a Thermo Finnigan LC-MS/MS analyzer (Thermo Finnigan Quantum TSQ (S/N:  TQU00655)) with an atmospheric pressure chemical ionization (APCI) source as the detector.  An autosampler was used to inject 50 μL of extracted sample supernatant onto an HPLC column.  Liquid chromatography was performed with a Cohesive Technologies Aria TX-4 (S/N:  SJCTX409) LC system with Waters Symmetry C18 5μm 4.6x50mm columns using 100% methanol as the mobile phase.  After the analytes eluted and the detector window completed acquisition, the system was washed with 85% Mobile phase A and then re-equilibrated with Mobile phase B for a run time of 5 minutes.  Mobile phase A was 0.1% formic acid in HPLC-grade water and mobile phase B was 100% methanol.

[0060]   The flow of liquid solvent exiting the HPLC column entered the heated nebulizer interface of the Thermo Finnigan LC-MS/MS analyzer.  The solvent/analyte mixture was first converted to vapor in the heated tubing of the interface.  The analytes, contained in the nebulized solvent, were ionized (a positive charge added) by the corona discharge needle of the interface, which applies a large voltage to the nebulized solvent/analyte mixture. The ions pass through the orifice of the instrument and enter the first quadrupole.  Quadrupoles 1 and 3 (Q1 and Q3) are mass filters, allowing selection of ions based on their mass to charge ratio (m/z). Quadrupole 2 (Q2) is the collision cell, where ions are fragmented.

18

QUESTMS-00002382

034827-3606

[0061]   The first quadrupole of the mass spectrometer (Q1) selected for molecules with the mass to charge ratios of (protonated and dehydrated) $25OHD_2$, $25OHD_3$ and $^6D-25OHD_3$. Ions with these m/z ratios (see table below) were allowed to pass into the collision chamber (Q2), while unwanted ions with any other m/z collide with the sides of the quadrupole and are eliminated. Ions entering Q2 collide with neutral Argon gas molecules and fragment.  The fragment ions generated are passed into quadrupole 3 (Q3), where the fragment ions of $25OHD_2$, $25OHD_3$ and $^6D-25OHD_3$ were selected (see table below) and other ions are eliminated.  The following mass transitions were used for detection and quantitation during validation:

**Table 1.  Mass transitions for selected vitamin D metabolites**

| Compound | Precursor Ion (m/z) | Fragment Ions (m/z) |
|---|---|---|
| $25OHD_2$ | 395.30 | 179.10, 251.30, 209.20 |
| $25OHD_3$ | 383.16 | 211.35 |
| $^6D-25OHD_3$ | 389.20 | 211.30 |

[0062]   As ions collide with the detector they produce a pulse of electrons that are converted to a digital signal.  The acquired data is relayed to a computer, which plots counts of the ions collected versus time.  The resulting mass chromatograms are similar to chromatograms generated in traditional HPLC methods.

[0063]   Area ratios of the analyte and internal standard (Hexadeuterated 25-Hydroxyvitamin D3, $^6D-25OHD_3$) peaks were used to construct calibration curves, which were then used to calculate analyte concentrations.  Using the calibration curves, the concentrations of $25OHD_2$ and 25OHD3 were quantitated in the patient samples.

**Example 2**:   Intra-assay and Inter-assay Precision.

[0064]   Stock solutions of $25OHD_2$ and $25OHD_3$ were added to pooled serum to produce a Low Pool (20-25 ng/mL of each metabolite), a Medium Pool (45-55 ng/mL of each metabolite) and a High Pool (100-110 ng/mL).  Pooled patient serum was used for the Medium and Low Pools, and stripped serum from Golden West Biologicals, Product #SP1070, was used for the Low Pool.  Twenty aliquots from each of the Low, Medium and High Pools were analyzed in a single

19

QUESTMS-00002383

034827-3606

assay using the LC-MS/MS protocols described in Example 1.  The following precision values were determined:

**Table 2.  Intra-Assay Variation: 25-Hydroxyvitamin $D_2$ (25OH$D_2$)**

|  | Low 092804-L | Medium 092804-M | High 092804-H |
|---|---|---|---|
| 1 | 26.5 | 46.4 | 103.3 |
| 2 | 23.2 | 51.1 | 96.7 |
| 3 | 23.1 | 52.4 | 107.8 |
| 4 | 21.6 | 50.3 | 104.5 |
| 5 | 26.3 | 47.5 | 96.2 |
| 6 | 25.1 | 54.4 | 98.5 |
| 7 | 25.9 | 54.6 | 100.0 |
| 8 | 21.9 | 50.1 | 110.1 |
| 9 | 23.4 | 50.8 | 97.6 |
| 10 | 23.5 | 53.2 | 105.1 |
| 11 | 22.2 | 52.9 | 105.9 |
| 12 | 24.0 | 54.6 | 94.5 |
| 13 | 26.2 | 49.4 | 93.4 |
| 14 | 24.1 | 59.0 | 113.0 |
| 15 | 25.8 | 52.9 | 112.4 |
| 16 | 23.9 | 59.2 | 113.4 |
| 17 | 29.5 | 52.4 | 107.7 |
| 18 | 24.2 | 50.0 | 115.5 |
| 19 | 19.8 | 53.5 | 114.9 |
| 20 | 26.3 | 60.2 | 126.6 |
| **Average (ng/mL)** | **24.3** | **52.7** | **105.9** |
| **Std Dev** | **2.2** | **3.6** | **8.6** |
| **CV (%)** | **9.0** | **6.9** | **8.1** |

20

QUESTMS-00002384

034827-3606

## Table 3.  Intra-Assay Variation: 25-Hydroxyvitamin $D_3$ (25OH$D_3$)

|  | Low<br>092804-L | Medium<br>092804-M | High<br>092804-H |
|---|---|---|---|
| 1 | 22.7 | 43.6 | 99.1 |
| 2 | 22.4 | 45.3 | 93.5 |
| 3 | 22.4 | 50.7 | 98.2 |
| 4 | 21.0 | 40.1 | 95.9 |
| 5 | 21.8 | 41.5 | 82.0 |
| 6 | 20.8 | 42.2 | 97.4 |
| 7 | 22.9 | 50.1 | 96.0 |
| 8 | 19.0 | 42.0 | 106.7 |
| 9 | 21.8 | 44.2 | 96.6 |
| 10 | 23.4 | 49.5 | 94.9 |
| 11 | 21.8 | 46.5 | 97.9 |
| 12 | 20.7 | 49.9 | 87.1 |
| 13 | 25.4 | 44.7 | 85.5 |
| 14 | 24.5 | 48.0 | 101.5 |
| 15 | 25.1 | 45.8 | 101.5 |
| 16 | 22.5 | 52.0 | 104.7 |
| 17 | 29.2 | 45.9 | 107.7 |
| 18 | 19.5 | 49.3 | 107.6 |
| 19 | 18.1 | 49.6 | 109.4 |
| 20 | 24.8 | 49.3 | 116.1 |
| Average (ng/mL) | 22.5 | 46.5 | 99.0 |
| Std Dev | 2.5 | 3.5 | 8.4 |
| CV (%) | 11.2 | 7.5 | 8.5 |

21

QUESTMS-00002385

034827-3606

[0065]   Each of the Low, Medium and High Pools described above were also analyzed to
determine inter-assay precision.  Four aliquots from each pool were analyzed over five different
assays using the LC-MS/MS protocols described in Example 1.  The following precision values
were determined:

**Table 4.  Inter-Assay Variation: 25-Hydroxyvitamin $D_2$ (25OHD$_2$)**

|  | Low 092804-L | Medium 092804-M | High 092804-H |
|---|---|---|---|
| 1 | 26.5 | 46.4 | 103.3 |
| 2 | 23.2 | 51.1 | 96.7 |
| 3 | 23.1 | 52.4 | 107.8 |
| 4 | 21.6 | 50.3 | 104.5 |
| 5 | 26.3 | 47.5 | 96.2 |
| 6 | 25.1 | 54.4 | 98.5 |
| 7 | 25.9 | 54.6 | 100.0 |
| 8 | 21.9 | 50.1 | 110.1 |
| 9 | 23.4 | 50.8 | 97.6 |
| 10 | 23.5 | 53.2 | 105.1 |
| 11 | 22.2 | 52.9 | 105.9 |
| 12 | 24.0 | 54.6 | 94.5 |
| 13 | 26.2 | 49.4 | 93.4 |
| 14 | 24.1 | 59.0 | 113.0 |
| 15 | 25.8 | 52.9 | 112.4 |
| 16 | 23.9 | 59.2 | 113.4 |
| 17 | 29.5 | 52.4 | 107.7 |
| 18 | 24.2 | 50.0 | 115.5 |
| 19 | 19.8 | 53.5 | 114.9 |
| 20 | 26.3 | 60.2 | 126.6 |
| Average (ng/mL) | 24.3 | 52.7 | 105.9 |
| Std Dev | 2.2 | 3.6 | 8.6 |
| CV (%) | 9.0 | 6.9 | 8.1 |

22

QUESTMS-00002386

Case 1:18-cv-01436-MN Document 352 Filed 09/25/19 Page 42 of 355 PageID #: 8201

034827-3606

**Table 5. Inter-Assay Variation: 25-Hydroxyvitamin D$_3$ (25OHD$_3$)**

|  | Low 092804-L | Medium 092804-M | High 092804-H |
|---|---|---|---|
| **1** | 22.7 | 43.6 | 99.1 |
| **2** | 22.4 | 45.3 | 93.5 |
| **3** | 22.4 | 50.7 | 98.2 |
| **4** | 21.0 | 40.1 | 95.9 |
| **5** | 21.8 | 41.5 | 82.0 |
| **6** | 20.8 | 42.2 | 97.4 |
| **7** | 22.9 | 50.1 | 96.0 |
| **8** | 19.0 | 42.0 | 106.7 |
| **9** | 21.8 | 44.2 | 96.6 |
| **10** | 23.4 | 49.5 | 94.9 |
| **11** | 21.8 | 46.5 | 97.9 |
| **12** | 20.7 | 49.9 | 87.1 |
| **13** | 25.4 | 44.7 | 85.5 |
| **14** | 24.5 | 48.0 | 101.5 |
| **15** | 25.1 | 45.8 | 101.5 |
| **16** | 22.5 | 52.0 | 104.7 |
| **17** | 29.2 | 45.9 | 107.7 |
| **18** | 19.5 | 49.3 | 107.6 |
| **19** | 18.1 | 49.6 | 109.4 |
| **20** | 24.8 | 49.3 | 116.1 |
| **Average (ng/mL)** | **22.5** | **46.5** | **99.0** |
| **Std Dev** | **2.5** | **3.5** | **8.4** |
| **CV (%)** | **11.2** | **7.5** | **8.5** |

23

DLMR_895309.1

QUESTMS-00002387

034827-3606

**Example 3**:  Analytical Sensitivity: Limit of Detection and Limit of Quantitation Studies.

[0066]  To determine the limit of detection of the assay, blank diluent was analyzed 17 times within a single run using the LC-MS/MS protocols described in Example 1.  The mean and standard deviation were then calculated.   The limit of detection was determined as 2 SD above the mean of the blank peak area ratio based on a back calculation of peak area ratio against the calibration curve.  The limits of detection were as follows:

$$25OHD_2: \quad 3.0 \text{ ng/mL}$$
$$25OHD_3: \quad 3.5 \text{ ng/mL}$$

[0067]  To determine the limit of quantitation, stock solutions of $25OHD_2$ and $25OHD_3$ were used to generate standard curves with the following concentrations: 0, 2, 4, 8, 16, 32, 64 and 128 ng/mL.  The diluted samples of the standard curve were analyzed in quadruplicate over five assays using the LC-MS/MS assay described in Example 1.  The results of the study were as follows:

**Table 6.  Limit of Quantitation Study Results: 25-Hydroxyvitamin $D_2$ ($25OHD_2$)**

|  | #1 | #2 | #3 | #4 | #5 | Summary | |
|---|---|---|---|---|---|---|---|
| **0 ng/mL** | -1.2 | -1.3 | -0.5 | -1.2 | -1.1 | Average (ng/mL) | -1.0 |
| | -1.1 | -1.4 | -0.9 | -1.3 | -0.7 | Standard Deviation | 0.6 |
| | -1.1 | -1.5 | -0.8 | NA | -2.6 | C of V (%) | 59.0 |
| | 0.4 | -1.7 | -0.6 | -0.5 | -0.6 | Accuracy (%) | N/A |
| **2 ng/mL** | 3.1 | 2.3 | 2.0 | 2.1 | 3.3 | Average (ng/mL) | 1.9 |
| | 2.1 | 2.7 | 2.1 | 2.4 | 1.9 | Standard Deviation | 0.6 |
| | 1.1 | 1.9 | 1.9 | 0.9 | 1.3 | C of V (%) | 33.7 |
| | 1.2 | 1.1 | 2.1 | 1.8 | 1.4 | Accuracy (%) | 103.9 |
| **4 ng/mL** | 3.5 | 3.9 | 5.0 | 4.5 | 4.8 | Average (ng/mL) | 3.9 |
| | 4.0 | 3.0 | 3.8 | 3.8 | 4.7 | Standard Deviation | 0.7 |
| | 3.6 | 2.9 | 2.8 | 3.1 | 2.0* | C of V (%) | 17.1 |
| | 4.1 | 4.6 | 4.5 | 4.4 | 3.7 | Accuracy (%) | 101.7 |

24

034827-3606

| | | | | | | |
|---|---|---|---|---|---|---|
| **8 ng/mL** | 10.2 | 9.1 | 9.1 | 8.8 | 9.8 | Average (ng/mL) | 8.6 |
| | 7.8 | 8.1 | 7.9 | 8.4 | 9.0 | Standard Deviation | 0.8 |
| | 8.6 | 8.3 | 7.4 | 8.4 | 7.5 | C of V (%) | 9.3 |
| | 10.2 | 8.4 | 8.0 | 8.1 | 8.6 | Accuracy (%) | 93.2 |
| **16 ng/mL** | 16.0 | 14.8 | 14.4 | 16.7 | 18.3 | Average (ng/mL) | 16.0 |
| | 15.5 | 15.6 | 15.3 | 16.7 | 16.8 | Standard Deviation | 1.1 |
| | 16.6 | 16.7 | 16.8 | 15.8 | 15.2 | C of V (%) | 7.1 |
| | 14.1 | 17.6 | 16.1 | 16.7 | 14.1 | Accuracy (%) | 100.1 |
| **32 ng/mL** | 31.3 | **39.9\*** | 29.9 | 33.2 | 32.7 | Average (ng/mL) | 31.8 |
| | 31.7 | 30.5 | 32.4 | 34.0 | 32.5 | Standard Deviation | 1.9 |
| | 29.5 | 31.2 | 30.2 | 35.7 | 28.7 | C of V (%) | 6.0 |
| | 32.9 | 34.7 | 32.4 | 30.8 | 29.2 | Accuracy (%) | 100.7 |
| **64 ng/mL** | 66.5 | 62.2 | 68.5 | 62.6 | 68.8 | Average (ng/mL) | 64.6 |
| | 66.6 | 67.8 | 67.3 | 58.9 | 61.5 | Standard Deviation | 3.2 |
| | 64.4 | 61.4 | 63.7 | 63.5 | 61.3 | C of V (%) | 4.9 |
| | 63.7 | 60.7 | 65.4 | 70.8 | 65.9 | Accuracy (%) | 99.1 |
| **128 ng/mL** | 125.1 | 128.2 | 123.4 | 127.8 | 124.1 | Average (ng/mL) | 126.9 |
| | 127.6 | 134.4 | 127.3 | 128.4 | 132.1 | Standard Deviation | 3.5 |
| | 128.9 | 124.5 | 128.5 | 126.5 | 131.7 | C of V (%) | 2.8 |
| | 126.1 | 119.7 | 127.9 | 121.2 | 125.0 | Accuracy (%) | 100.8 |

**Table 7. Limit of Quantitation Study Results: 25-Hydroxyvitamin D$_3$ (25OHD$_3$)**

| | Day #1 (11/19/04-1) | Day #2 (11/19/04-2) | Day #3 (11/22/04-1) | Day #4 (11/23/04-1) | Day #5 (11/23/04-2) | **Summary** | |
|---|---|---|---|---|---|---|---|
| **0 ng/mL** | -0.5 | -0.9 | -0.3 | 0.2 | -0.6 | Average (ng/mL) | -0.7 |
| | -0.7 | -1.3 | 0.3 | -1.1 | -1.0 | Standard Deviation | 0.6 |
| | 0.0 | -1.0 | -1.1 | -1.3 | 0.6 | C of V (%) | 86.4 |
| | -0.3 | -1.5 | -1.1 | -0.8 | -1.0 | Accuracy (%) | N/A |
| **2 ng/mL** | 2.6 | 1.5 | 2.4 | 2.5 | 1.7 | Average (ng/mL) | 1.9 |
| | 1.7 | 0.9 | 3.2 | 2.2 | 1.9 | Standard Deviation | 0.6 |
| | 1.8 | 1.8 | 2.0 | 1.1 | 2.2 | C of V (%) | 31.4 |
| | 1.3 | 2.4 | 1.5 | 1.1 | 2.5 | Accuracy (%) | 104.7 |

25

DLMR_895309.1

QUESTMS-00002389

| | | | | | | |
|---|---|---|---|---|---|---|
| **4 ng/mL** | 3.9 | 3.5 | 4.8 | 4.0 | 3.4 | Average (ng/mL) | 3.8 |
| | 3.0 | 4.1 | 3.1 | 3.9 | 3.8 | Standard Deviation | 0.8 |
| | 4.5 | 3.7 | 2.9 | 3.5 | 2.4 | C of V (%) | 19.7 |
| | 4.0 | 5.2 | 3.8 | 3.8 | 5.5 | Accuracy (%) | 104.1 |
| **8 ng/mL** | 10.3 | 9.3 | 7.2 | 8.4 | 8.6 | Average (ng/mL) | 8.7 |
| | 10.6 | 8.5 | 7.2 | 10.0 | 9.6 | Standard Deviation | 1.1 |
| | 7.4 | 10.3 | 9.0 | 9.4 | 8.4 | C of V (%) | 13.1 |
| | 9.3 | 7.7 | 8.5 | 7.6 | 6.8 | Accuracy (%) | 91.9 |
| **16 ng/mL** | 15.9 | 15.6 | 16.2 | 18.6 | 17.1 | Average (ng/mL) | 16.0 |
| | 13.8 | 16.3 | 14.0 | 17.2 | 15.3 | Standard Deviation | 1.4 |
| | 15.6 | 16.1 | 15.1 | 18.8 | 16.1 | C of V (%) | 8.5 |
| | 14.8 | 17.2 | 17.0 | 14.3 | 15.3 | Accuracy (%) | 99.9 |
| **32 ng/mL** | 31.1 | 35.8 | 29.6 | 32.8 | 28.0 | Average (ng/mL) | 31.7 |
| | 30.8 | 29.9 | 31.8 | 33.0 | 32.8 | Standard Deviation | 1.9 |
| | 31.6 | 30.9 | 29.5 | 35.7 | 31.2 | C of V (%) | 6.2 |
| | 31.0 | 34.2 | 31.8 | 30.6 | 31.7 | Accuracy (%) | 101.0 |
| **64 ng/mL** | 65.9 | 64.6 | 64.4 | 64.8 | 67.8 | Average (ng/mL) | 64.8 |
| | 67.4 | 62.9 | 62.4 | 60.7 | 57.2 | Standard Deviation | 3.1 |
| | 68.9 | 64.2 | 62.1 | 64.0 | 64.7 | C of V (%) | 4.8 |
| | 63.2 | 64.2 | 66.8 | 67.7 | 71.1 | Accuracy (%) | 98.8 |
| **128 ng/mL** | 128.9 | 124.5 | 126.4 | 125.3 | 122.8 | Average (ng/mL) | 127.1 |
| | 129.7 | 135.7 | 128.3 | 125.9 | 128.7 | Standard Deviation | 4.7 |
| | 125.5 | 123.3 | 127.2 | 127.7 | 135.4 | C of V (%) | 3.7 |
| | 121.3 | 121.8 | 137.8 | 121.4 | 124.1 | Accuracy (%) | 100.7 |

**Example 4**:  Assay Reportable Range and Linearity.

[0068]  To establish the linearity of the vitamin D metabolite LC-MS/MS assay, a MultiProbe automated liquid handler robot independently constructed two standard curves by serially diluting a stock solution containing 128 ng/mL $25OHD_2$ and 128 ng/mL $25OHD_3$ in 25OHD with a solution of 5% Bovine Serum Albumin Fraction V dissolved in 0.01M PBS.  The standard

26

034827-3606

curve samples were analyzed using the LC-MS/MS protocols described in Example 1. This process routinely produced standard curves with $R^2$ values of 0.99 or higher for each analyte for the range of 4 – 128 ng/mL.

[0069]   To determine whether patient samples can also be diluted in a linear fashion, a total of eight samples were serially diluted with 25OHD diluent. Two samples were patient pools (Medium and High Control Pools), three were patient samples with high $25OHD_2$ values and three were patient samples with high $25OHD_3$ values. All samples were analyzed using the LC-MS/MS protocols described in Example 1. As shown in figure 1 and figure 2, each sample diluted in a linear fashion ($R^2 > 0.98$), demonstrating the linear range of the assay.

[0070]   Additionally, solutions of $25OHD_2$ and $25HOD_3$ at 512 ng/mL in 5% Bovine Serum Albumin Fraction V dissolved in 0.01M PBS were prepared and then serially diluted to 8 ng/mL. Each sample was extracted and run in duplicate using the LC-MS/MS protocols described in Example 1. As shown in figure 3, each of these curves was linear ($R^2 > 0.99$).

**Example 5**:  Accuracy of LC-MS/MS Vitamin D Assay.

[0071]   The stock solutions of $25OHD_2$ and $25OHD_3$ were quantified based upon the absorbance of the concentrated (10-50 µg/mL) stock solutions in the ultraviolet spectrum. The *cis*-triene chromophore present in all vitamin D compounds has a peak absorbance of 264 nm, which is dependent upon the analyte concentration. The molar extinction coefficient of 18.3 $mM^{-1}cm^{-1}$ was determined using purified, dessicated ergocalciferol and cholecalciferol and was used to determine the concentration of stock solutions for $25OHD_2$ and $25OHD_3$.

[0072]   To determine the ability to recover vitamin D metabolites from spiked serum samples, three patient pools with known levels of $25OHD_2$, $25OHD_3$ were spiked with two levels of $25OHD_2$, $25OHD_3$ and both $25OHD_2$ and $25OHD_3$ together. Each sample was extracted and run in duplicate using the LC-MS/MS protocols described in Example 1. The recovery was calculated by dividing the expected result by the observed result.

27

QUESTMS-00002391

034827-3606

**Table 8. Recovery of 25-hydroxylated vitamin D metabolites from spiked samples.**

|  | $25OHD_2$ (ng/mL) | $25OHD_3$ (ng/mL) | $25OHD_2$ (% Recovery) | $25OHD_3$ (% Recovery) |
|---|---|---|---|---|
| Pool#1 | 58 | 51 | - | - |
| Pool#1+ 20 ng/mL $25OHD_2$ | 75 | 52 | **104** | - |
| Pool#1+ 20 ng/mL $25OHD_3$ | 52 | 68 | - | **105** |
| Pool#1+ 20 ng/mL of both | 72 | 68 | **109** | **105** |
| Pool#1+ 50 ng/mL $25OHD_2$ | 104 | 50 | **105** | - |
| Pool#1+ 50 ng/mL $25OHD_3$ | 56 | 109 | - | **93** |
| Pool#1+ 50 ng/mL of both | 104 | 110 | **104** | **92** |

|  | $25OHD_2$ (ng/mL) | $25OHD_3$ (ng/mL) | $25OHD_2$ (% Recovery) | $25OHD_3$ (% Recovery) |
|---|---|---|---|---|
| Pool#2 | 53 | 47 | - | - |
| Pool#2+ 20 ng/mL $25OHD_2$ | 76 | 51 | **97** | - |
| Pool#2+ 20 ng/mL $25OHD_3$ | 52 | 66 | - | **101** |
| Pool#2+ 20 ng/mL of both | 70 | 65 | **105** | **103** |
| Pool#2+ 50 ng/mL $25OHD_2$ | 107 | 53 | **96** | - |
| Pool#2+ 50 ng/mL $25OHD_3$ | 57 | 109 | - | **88** |
| Pool#2+ 50 ng/mL of both | 100 | 105 | **103** | **92** |

|  | $25OHD_2$ (ng/mL) | $25OHD_3$ (ng/mL) | $25OHD_2$ (% Recovery) | $25OHD_3$ (% Recovery) |
|---|---|---|---|---|
| Pool#3 | 53 | 47 | - | - |
| Pool#3+ 20 ng/mL $25OHD_2$ | 69 | 44 | **106** | - |
| Pool#3+ 20 ng/mL $25OHD_3$ | 55 | 75 | - | **90** |
| Pool#3+ 20 ng/mL of both | 74 | 69 | **98** | **97** |
| Pool#3+ 50 ng/mL $25OHD_2$ | 96 | 48 | **107** | - |
| Pool#3+ 50 ng/mL $25OHD_3$ | 53 | 114 | - | **85** |
| Pool#3+ 50 ng/mL of both | 105 | 113 | **98** | **85** |

QUESTMS-00002392

034827-3606

**Example 6**:  Comparison LC-MS/MS vitamin D metabolite assay and RIA procedures.

[0073]   A total of 1,057 patient samples were assayed using the LC-MS/MS methods described in Example 1 and a vitamin D radioimmunoassay commercially available from DiaSorin.  Figure 4 shows the correlation between detection of total 25-hydroxyvitamin D using the LC-MS/MS assay and a commercially available radioimmunoassay kit; the $R^2$ value was 0.5082 with a slope of 0.9684.

**Example 7**:  Selectivity of the LC-MS/MS assay.

[0074]   Samples containing various commercially available vitamin D metabolites and analogues at a concentration of 100 ng/mL were prepared.  The samples were extracted and run in duplicate using the LC-MS/MS methods described in Example 1.  None of the tested compounds exhibited detectable cross reactivity in the $25OHD_2$ and $25OHD_3$ assays.

**Table 9. Cross-Reactivity of the LC-MS/MS method with various vitamin D analogues and metabolites.**

| | Compound Mass (Da) | Cross-Reactivity ($25OHD_2$) | Cross-Reactivity ($25OHD_3$) |
|---|---|---|---|
| 25-Hydroxyvitamin $D_2$ ($25OHD_2$) | 412 | **(100%)** | **ND** |
| 25-Hydroxyvitamin $D_3$ ($25OHD_3$) | 400 | **ND** | **(100%)** |
| Internal Standard ($^6D$-$25OHD_3$) | 406 | **ND** | **ND** |
| Vitamin $D_2$ (Ergocalciferol) | 396 | **ND** | **ND** |
| Vitamin $D_3$ (Cholecalciferol) | 384 | **ND** | **ND** |
| $1\alpha,25(OH)_2D_2$ | 428 | **ND** | **ND** |
| $1\alpha,25(OH)_2D_3$ | 416 | **ND** | **ND** |
| $25,26(OH)_2D_3$ | 416 | **ND** | **ND** |
| $1\alpha(OH)D_2$ (Doxercalciferol) | 412 | **ND** | **ND** |
| $1\alpha(OH)D_3$ (Alfacalcidiol) | 400 | **ND** | **ND** |

[0075]   The contents of the articles, patents, and patent applications, and all other documents and electronically available information mentioned or cited herein, are hereby incorporated by reference in their entirety to the same extent as if each individual publication was specifically and individually indicated to be incorporated by reference.  Applicants reserve the right to physically incorporate into this application any and all materials and information from any such articles, patents, patent applications, or other physical and electronic documents.

29

Joint Appendix 1702

QUESTMS-00002393

034827-3606

[0076]   The inventions illustratively described herein may suitably be practiced in the absence of any element or elements, limitation or limitations, not specifically disclosed herein.  Thus, for example, the terms "comprising", "including," containing", etc. shall be read expansively and without limitation.  Additionally, the terms and expressions employed herein have been used as terms of description and not of limitation, and there is no intention in the use of such terms and expressions of excluding any equivalents of the features shown and described or portions thereof, but it is recognized that various modifications are possible within the scope of the invention claimed.  Thus, it should be understood that although the present invention has been specifically disclosed by preferred embodiments and optional features, modification and variation of the inventions embodied therein herein disclosed may be resorted to by those skilled in the art, and that such modifications and variations are considered to be within the scope of this invention.

[0077]   The invention has been described broadly and generically herein.  Each of the narrower species and subgeneric groupings falling within the generic disclosure also form part of the invention.  This includes the generic description of the invention with a proviso or negative limitation removing any subject matter from the genus, regardless of whether or not the excised material is specifically recited herein.

[0078]   Other embodiments are within the following claims.  In addition, where features or aspects of the invention are described in terms of Markush groups, those skilled in the art will recognize that the invention is also thereby described in terms of any individual member or subgroup of members of the Markush group.

DLMR_895309.1

QUESTMS-00002394

034827-3606

THAT WHICH IS CLAIMED IS:

1.      A method for determining the amount of a vitamin D metabolite in a sample by tandem mass spectrometry, comprising:

      (a) generating a protonated and dehydrated precursor ion of said vitamin D metabolite;

      (b) generating one or more fragment ions of said precursor ion; and

      (c) detecting the presence or amount of one or more of said ions generated in step (a) or (b) or both and relating the detected ions to the amount of said vitamin D metabolite in said sample.

2.      The method of claim 1, wherein said sample is subjected to a purification step prior to ionization.

3.      The method of claim 2, wherein said purification step comprises chromatography.

4.      The method of claim 3, wherein said chromatography comprises liquid chromatography.

5.      The method of claim 3, wherein said chromatography comprises high performance liquid chromatography (HPLC).

6.      The method of claim 2, wherein said purification step comprises protein precipitation.

7.      The method of claim 6, wherein said purification step does not include high turbulence liquid chromatography (HTLC).

8.      The method of claim 2, wherein said purification step comprises chiral chromatography.

9.      The method of claim 1, wherein said sample or said vitamin D metabolite is not subjected to gas-chromatography prior to said ionization step.

10.     The method of claim 1, wherein said vitamin D metabolite is one or more vitamin D metabolites selected from the group consisting of 25-hydroxyvitamin $D_3$, 25-hydroxyvitamin $D_2$, 1,25-dihydroxyvitamin $D_3$ and 1,25-dihydroxyvitamin $D_2$.

11.     The method of claim 1, wherein said vitamin D metabolite is 25-hydroxyvitamin $D_3$.

31

QUESTMS-00002395

12.     The method of claim 1, wherein said vitamin D metabolite is 25-hydroxyvitamin $D_2$.

13.     The method of claim 1, wherein said vitamin D metabolite is 1,25-dihydroxyvitamin $D_2$.

14.     A method for determining the amounts of two or more vitamin D metabolites in a sample in a single assay, said method comprising:

        (a)     ionizing two or more vitamin D metabolites to generate protonated and dehydrated precursor ions specific for each of said two or more vitamin D metabolites;

        (b)     generating one or more fragment ions of each of said precursor ions; and

        (c)     detecting the amount of one or more of said ions generated in step (a) or (b) or both and relating the detected ions to the amounts of said two or more vitamin D metabolites in said sample.

15.     The method of claim 14, wherein said sample is subjected to a purification step prior to said ionization step.

16.     The method of claim 15, wherein said purification step comprises chromatography.

17.     The method of claim 16, wherein said chromatography comprises liquid chromatography.

18.     The method of claim 16, wherein said chromatography comprises high performance liquid chromatography (HPLC).

19.     The method of claim 15, wherein said purification step comprises protein precipitation and does not include high turbulence liquid chromatography.

20.     The method of claim 14, wherein said sample or said two or more vitamin D metabolites are not subjected to gas-chromatography prior to said ionization step.

21.     The method of claim 14, wherein said vitamin D metabolites comprise 25-hydroxyvitamin $D_3$ and 25-hydroxyvitamin $D_2$.

32

034827-3606

22.     The method of claim 14, wherein said two or more vitamin D metabolites comprise one or more vitamin D metabolites selected from the group consisting of 25-hydroxyvitamin $D_3$, 25-hydroxyvitamin $D_2$, 1,25-dihydroxyvitamin $D_3$ and 1,25-dihydroxyvitamin $D_2$.

23.     The method of claim 14, wherein said two or more vitamin D metabolites comprise 1,25-dihydroxyvitamin $D_3$ and 1,25-dihydroxyvitamin $D_2$.

33

QUESTMS-00002397

034827-3606

# ABSTRACT OF THE INVENTION

Provided are methods of detecting the presence or amount of a vitamin D metabolite in a sample using mass spectrometry.  The methods generally comprise ionizing a vitamin D metabolite in a sample and detecting the amount of the ion to determine the presence or amount of the vitamin D metabolite in the sample.  Also provided are methods to detect the presence or amount of two or more vitamin D metabolites in a single assay.

34

**FIGURE 1**



**FIGURE 2**



**FIGURE 3**



DLMR_895309.1

QUESTMS-00002401

# FIGURE 4



QUESTMS-00002402

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Attorney Docket Number:** | 034827-3606 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility application filing | 1011 | 1 | 330 | 330 |
| Utility Search Fee | 1111 | 1 | 540 | 540 |
| Utility Examination Fee | 1311 | 1 | 220 | 220 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 1202 | 3 | 52 | 156 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |

QUESTMS-00002403

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | 1246 |

QUESTMS-00002404

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10170001 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel  Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 25-MAY-2011 |
| **Filing Date:** | |
| **Time Stamp:** | 20:26:29 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1246 |
| RAM confirmation Number | 8117 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

QUESTMS-00002405

| 1 | Transmittal of New Application | 034827-3606_Transmittal.pdf | 134030<br>b2eba61264f91320e2dcc5ea8ad727dccb7dcd40 | no | 3 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 2 | Application Data Sheet | 034827-3606_ADS.pdf | 116829<br>ff9c924e53426646e8d863f6c6d08ccc45d4d19d | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

This is not an USPTO supplied ADS fillable form

| 3 | Oath or Declaration filed | 034827-3606_Decl.pdf | 253906<br>e6ceedd95beb0389144e481d622d881d14c120a0 | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | | 034827-3606_Spec.pdf | 2587613<br>9a34877e283440cc0f7b89fdb94232cb055ef545 | yes | 38 |
|---|---|---|---|---|---|

| **Multipart Description/PDF files in .zip description** | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Specification | 1 | 30 |
| Claims | 31 | 33 |
| Abstract | 34 | 34 |
| Drawings-only black and white line drawings | 35 | 38 |

**Warnings:**

**Information:**

| 5 | Fee Worksheet (PTO-875) | fee-info.pdf | 36779<br>e1fec27bc0966f14dc3944d7915ab29ea62049c7 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 3129157 |
|---|---|---|

QUESTMS-00002406

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002407

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:    Clarke, et al.

Title:    METHODS FOR DETECTING
VITAMIN D METABOLITES
BY MASS SPECTROMETRY

Prior Appl. No.:    11/101,166 ; 11/386,215

Prior Appl.
Filing Date:    4/6/2005; 3/21/2006

Examiner:    Unknown

Art Unit:    Unknown

## CONTINUING PATENT APPLICATION
## TRANSMITTAL LETTER

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith for filing under 37 C.F.R. § 1.53(b) is a:

[ **X** ] Continuation    [ ] Division    [ ] Continuation-In-Part (CIP)

of the above-identified copending prior application in which no patenting, abandonment, or termination of proceedings has occurred. Priority to the above-identified prior application is hereby claimed under 35 U.S.C. § 120 for this continuing application. The entire disclosure of the above-identified prior application is considered as being part of the disclosure of the accompanying continuing application and is hereby incorporated by reference therein.

[ ]    Applicant claims small entity status under 37 CFR 1.27.

-1-

DLMR_896058.1

QUESTMS-00002408

Atty. Dkt. No. 034827-3606

Enclosed are:

[ **X** ]   Description, Claim(s), and Abstract (34 pages).

[ **X** ]   Formal drawings (4 sheets, Figures 1-4).

[ **X** ]   Declaration and Power of Attorney from parent Application No. 11/386,215 (4 pages).

[ ]   Assignment of the invention to Quest Diagnostics Investments Incorporated.

[ ]   Assignment Recordation Cover Sheet.

[ ]   Request for application not to be published with certification under 35 USC 122(b)(2)(B)(i).

[ ]   Information Disclosure Statement.

[ ]   Form PTO-1449 with copies of ___ listed reference(s).

[ ]   Preliminary Amendment (___)

[ **X** ]   Application Data Sheet (37 CFR 1.76) (4 pages)

The adjustment to the number of sheets for EFS-Web filing follows:

| Number of Sheets | | EFS-Web Adjustment | Number of Sheets for EFS-Web |
|---|---|---|---|
| 38 | x | 75% | 29 |

The filing fee is calculated below:

| | Number Filed | | Included in Basic Fee | Extra | | | Rate | | Fee Totals |
|---|---|---|---|---|---|---|---|---|---|
| Basic Filing Fee | | | | | | | $330.00 | = | $330.00 |
| Search Fee | | | | | | | $540.00 | | $540.00 |
| Examination Fee | | | | | | | $220.00 | | $220.00 |
| Size Fee | 29 | - | 100 | = 0 | | x | $270.00 | | $0.00 |
| Total Claims: | 23 | - | 20 | = 3 | | x | $52.00 | = | $156.00 |
| Independents : | 2 | - | 3 | = 0 | | x | $220.00 | = | $0.00 |

-2-

QUESTMS-00002409

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| If any Multiple Dependent Claim(s) present: | + | $390.00 | = | $0.00 |
| Surcharge under 37 CFR 1.16(e) for late filing of Executed Declaration or late payment of filing fee | + | $130.00 | = | $0.00 |
|  |  | SUBTOTAL: | = | $1246.00 |
| [ ] | Small Entity Fees Apply (subtract ½ of above): | = | 0 |
|  | Basic Filing Fee Reduction for Filing via EFS-Web | = | $0.00 |
|  | TOTAL FILING FEE: | = | $1246.00 |
| Assignment Recordation Fee: | + | $40.00 | = | $0.00 |
| Processing Fee under 37 CFR 1.17(i) for Late Filing of English Translation of Application: | + | $130.00 | = | $0.00 |
| TOTAL FEE |  |  | = | $1246.00 |

The above-identified fees of $1246.00 are being paid by credit card via EFS-Web.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Please direct all correspondence to the undersigned attorney or agent at the address indicated below.

Respectfully submitted,

Date ___5/25/11___      By ___[signature]___

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:    (858) 847-6722
Facsimile:    (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

-3-



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | 1629 | 1246 | 034827-3606 | 23 | 2 |

**CONFIRMATION NO. 4404**

30542
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

**FILING RECEIPT**

||||||||||||||||||||||||||||||||||
*OC000000048071914*

Date Mailed: 06/08/2011

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

Nigel Clarke, Oceanside, CA;
Brett Holmquist, Mission Viejo, CA;
Gloria Kwangja Lee, Irvine, CA;
Richard E. Reitz, San Clemente, CA;

**Assignment For Published Patent Application**

Quest Diagnostics Investments Incorporated

**Power of Attorney:** The patent practitioners associated with Customer Number 30542

**Domestic Priority data as claimed by applicant**

This application is a CON of 11/101,166 04/06/2005 PAT 7,745,226 *
and is a CON of 11/386,215 03/21/2006
(*)Data provided by applicant is not consistent with PTO records.

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

**If Required, Foreign Filing License Granted:** 06/06/2011

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/115,916**

**Projected Publication Date:** 09/15/2011

**Non-Publication Request:** No

**Early Publication Request:** No

page 1 of 3

QUESTMS-00002411

**Title**

METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

**Preliminary Class**

514

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

QUESTMS-00002412

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign Assets Control, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

QUESTMS-00002413

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 13/115,916 |

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE($) | FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 330 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 540 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 220 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 23 minus 20 = | * 3 | | | OR | x 52 = | 156 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 minus 3 = | * | | | | x 220 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1246 |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

QUESTMS-00002414

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | **Application Number** | 13/115,916 |
| | | | **Filing Date** | 5/25/2011 |
| | | | **First Named Inventor** | Nigel Clarke |
| *(use as many sheets as necessary)* | | | Art Unit | 1629 |
| | | | Examiner Name | Not Yet Assigned |
| Sheet | 1 | of 8 | Attorney Docket Number | 034827-3606 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Figures Appear |
|---|---|---|---|---|---|
| | A1 | 2003/0171605 | 09-11-2003 | REDDY ET AL. | |
| | A2 | 2004/0235193 | 11-25-2004 | SOLDIN | |
| | A3 | 2006/0054807 | 03-16-2006 | PICARD ET AL. | |
| | A4 | 2006/0094125 | 05-04-2006 | SINGH ET AL | |
| | A5 | 2006/0228808 | 10-12-2006 | CLARKE ET AL | |
| | A6 | 2006/0228809 | 10-12-2006 | CLARKE ET AL | |
| | A7 | 2007/0139956 | 06-21-2007 | SUGIMOTO ET AL | |
| | A8 | 2008/0241955 | 10-02-2008 | PURKAYASTHA ET AL. | |
| | A9 | 2009/0137056 | 05-28-2009 | HOLMQUIST ET AL | |
| | A10 | 5,772,874 | 06-30-1998 | QUINN ET AL. | |
| | A11 | 5,795,469 | 08-18-1998 | QUINN ET AL. | |
| | A12 | 5,919,368 | 07-06-1999 | QUINN ET AL. | |
| | A13 | 5,968,367 | 10-19-1999 | QUINN ET AL. | |
| | A14 | 6,107,623 | 08-22-2000 | BATEMAN ET AL. | |
| | A15 | 6,124,137 | 09-26-2000 | HUTCHENS ET AL. | |
| | A16 | 6,204,500 | 03-20-2001 | WHITEHOUSE ET AL. | |
| | A17 | 6,268,144 | 07-31-2001 | KOSTER | |
| | A18 | 6,787,660 | 09-07-2004 | ARMBRUSTER ET AL. | |
| | A19 | 6,977,143 | 12-20-2005 | CAULFIELD ET AL. | |
| | A20 | 7,087,395 | 08-08-2006 | GARRITY ET AL. | |
| | A21 | 7,321,116 | 01-22-2008 | PICARD ET AL. | |
| | A22 | 7,348,137 | 03-25-2008 | CAULFIELD ET AL. | |
| | A23 | 7,473,560 | 01-06-2009 | SOLDIN | |
| | A24 | 7,618,827 | 11-17-2009 | STEVEN | |
| | A25 | 7,745,226 | 06-29-2010 | CLARKE ET AL. | |

**UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS**

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document — Serial Number-Kind Code[2] (if known) | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

QUESTMS-00002415

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | **Complete if Known** | |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| *(use as many sheets as necessary)* | | | Art Unit | 1629 |
| | | | Examiner Name | Not Yet Assigned |
| Sheet | 2 | of 8 | Attorney Docket Number | 034827-3606 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[2] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | A26 | WO-2007/039193 | 04-12-2007 | ROCHE DIAGNOSTICS GMBH | | |
| | A27 | WO-2007/139956 | 12-06-2007 | LABORATORY CORPORATION OF AMERICA HOLDINGS | | |
| | A28 | WO-2008/097246 | 08-14-2008 | SCHROEDER ET AL | | |
| | A29 | WO-95/33279 | 12-07-1995 | DERRICK ET AL | | |
| | A30 | WO-96/18618 | 06-20-1996 | BAYER AKTIENGESELLSCHAFT; NIHON BAYER AGROCHEM K.K. | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A31 | Armas et. al, Vitamin D2 Is Much Less Effective than Vitamin D3 in Humans, J. Clin. Endocrinol. Metab. 89:5387-5391 (2004). | |
| | A32 | Aronov et al, Metabolic profiling of major vitamin D metabolites using Diels-Alder derivatization and ultra-performance liquid chromatography-tandem mass spectrometry, Anal Bioanal Chem, 2008, 391:1917-1930 | |
| | A33 | Ascalone et al, Stereospecific determination of amisulpride, a new benzamide derivative, in human plasma and urine by automated solid-phase extraction and liquid chromatography on a chiral column. application to pharmacokinetics, Journal of Chromatography B., 676:95-105, 1996. | |
| | A34 | Bartolucci, et al., Liquid chromatography tandem mass spectrometric quantitation of sulfamethazine and its metabolites: direct analysis of swine urine by triple quadrupole and by ion trap mass spectrometry, Rapid Commun. Mass Spectrom. 14:967-73 (2000). | |
| | A35 | Busch, A Glossary for Mass Spectrometry, Mass Spectrometry, 17(65):526-534, 2002 | |
| | A36 | Capote et al, Identification and determination of fat-soluble vitamins and metabolites in human serum by liquid chromatography/triple quadrupole mass spectrometry with multiple reaction monitoring, Rapid Commun. Mass. Spectrom., 21:1745-1754, 2007. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

Joint Appendix 1725

QUESTMS-00002416

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid
OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/115,916 |
| | Filing Date | 5/25/2011 |
| | First Named Inventor | Nigel Clarke |
| | Art Unit | 1629 |
| *(use as many sheets as necessary)* | Examiner Name | Not Yet Assigned |
| Sheet | 3 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A37 | Coldwell et al, Mass Fragmentographic Assay for 25-Hydroxyvitamin D in Plasma Without Derivatization: Enhanced Sensitivity for Metabolites of Vitamins D2 and D3 After Pre-column Dehydration, Journal of Mass Spectrometry, 30:348-356, (1995). | |
| | A38 | Coldwell et al, Stable isotope-labeled vitamin D, metabolites and chemical analogs: synthesis and use in mass spectrometric studies, Steroids, 55: 418-432, 1990. | |
| | A39 | Coldwell et al., Measurement of Vitamins D2 and D3 and Seven Major Metabolites in a Single Sample of Human Plasma Using Gas Chromatography/Mass Spectrometry, Biomedical and Environmental Mass Spectrometry, 16:81-85 (1988). | |
| | A40 | Extended Search Report dated 02/02/2009 in EP application 06749272 (034827-3605) | |
| | A41 | Extended Search Report dated 12/22/2010 in EP application 08853843 (054769-9997) | |
| | A42 | Guo et al, Steroid profiles using liquid chromatography-Tandem mass spectrometry with atmospheric pressure photoionization source, Arch Pathol Lab Med., 128: 469-475, 2004. | |
| | A43 | Higashi et al, Characterization of new conjugated metabolites in bile of rats administered 24,25-dihydroxyvitamin D3 and 25-hydroxyvitamin D3, Steroids, 65(5):281-94 (2000) | |
| | A44 | Higashi et al, Characterization of urinary metabolites of vitamin D3 in man under physiological conditions using liquid chromatography-tandem mass spectrometry, J Pharm Biomed Anal. 29(5):947-55 (2002) | |
| | A45 | Higashi et al, Liquid chromatography-tandem mass spectrometric method for the determination of salivary 25-hydroxyvitamin D3: a noninvasive tool for the assessment of vitamin D status, Anal. Bioanal Chem, 2008, 391:229-238 | |
| | A46 | Higashi et al, Simultaneous Determination of 25-Hydroxyvitamin D2 and 25-Hydroxyvitamin D3 in Human Plasma by Liquid Chromatography-Tandem Mass Spectrometry Employing Derivatization with a Cookson-Type Reagent, Biol Pharm Bull., 24(7):738-43, (2001). | |
| | A47 | International Preliminary Report on Patentability dated 10/9/2007 in application PCT/US2006/012539 (034827-3604) | |
| | A48 | International Preliminary Report on Patentability dated 6/01/2010 in application PCT/US2008/084709 (054769-9992) | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

QUESTMS-00002417

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office:  U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
| --- | --- | --- | --- | --- |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | | Examiner Name | Not Yet Assigned |
| Sheet | 4 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
| --- | --- | --- | --- |
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A49 | International Search Report and Written Opinion dated 1/26/2011 in application PCT/US2010/056461 (034827-0381) | |
| | A50 | International Search Report and Written Opinion dated 1/27/2011 in application PCT/US2010/057627 (034827-0741) | |
| | A51 | International Search Report and Written Opinion dated 2/7/2011 in application PCT/US2010/059765 (034827-1052) | |
| | A52 | International Search Report and Written Opinion dated 2/8/2011 in application PCT/US2010/059746 (034827-0771) | |
| | A53 | International Search Report dated 02/24/2009 in application PCT/US2008/084709 (054769-9992) | |
| | A54 | International Search Report dated 1/14/2011 in PCT/US2010/056886 (095276-0201) | |
| | A55 | International Search Report dated 1/4/2007 in application PCT/US2006/012539 (034827-3604) | |
| | A56 | International Search Report dated 2/11/2011 in application PCT/US2010/059771 (034827-1022) | |
| | A57 | Interview Summary dated 01/28/2009 in application 11/101,166 (054769-9993) | |
| | A58 | Jemal, High-throughput quantitative bioanalysis by LC/MS/MS, Biomedical Chromatography, 14:422-429, 2000. | |
| | A59 | Jones et al, Biological activity of l,25-Dihydroxyvitamin D2 in the Chick, Biochemistry, 15(3): 713-716, 1976. | |
| | A60 | Jones et al, Current understanding of the molecular actions of Vitamin D, Physiological Reviews, 78(4): 1193-1231, 1998. | |

| Examiner Signature | | Date Considered | |
| --- | --- | --- | --- |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

QUESTMS-00002418

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| (use as many sheets as necessary) | | | Examiner Name | Not Yet Assigned |
| Sheet | 5 | of 8 | Attorney Docket Number | 034827-3606 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A61 | Jones et al, Vitamin Ds: Metabolites and Analogs, Chapter 2 in Modern Chromatographic Analysis of Vitamins, Third Edition, 2002, 79 pgs. | |
| | A62 | Kamao et al, C-3 Epimerization of Vitamin D3 metabolites and further metabolism of C-3 epimers, The Journal of Biological Chemistry, 279 (16):15897-15907, (2004). | |
| | A63 | Kissmeyer et al, Sensitive analysis of 1a,25-dihydroxyvitamin D3 in biological fluids by liquid chromatography-tandem mass spectrometry, J Chromatogr A., 935(1-2):93-103 (2001) | |
| | A64 | Kobayashi et al, Tandem immunoaffinity chromatography for plasma 1a,25-dihydroxyvitamin D3 utilizing two antibodies having different specificities: A novel and powerful pretreatment tool for 1a,25-dihydroxyvitamin D3 radioreceptor assays, J.Steroid Biochem. Molec. Biol., 54(5/6): 217-226, 1995. | |
| | A65 | KOBAYASHI, et al, Production of a group-specific antibody to 1 alpha,25-dihydroxyvitamin D and its derivatives having the 1 alpha,3 beta-dihydroxylated A-ring structure, Steroids, (1994), 59(7):404-11 | |
| | A66 | Maunsell et al, Routine Isotope-Dilution Liquid Chromatography-Tandem Mass Spectrometry Assay for Simultaneous Measurement of the 25-Hydroxy Metabolites of Vitamins D2 and D3, Clinical Chemistry, 51:9 1683-1690, (2005). | |
| | A67 | Merchant et al, Recent advancements in surface-enhanced laser desorption/ionization-time of flight-mass spectrometry, Electrophoresis 21:1164-1177 (2000). | |
| | A68 | Miller et al, Genetic causes of rickets, Current Opinions in Pediatrics, 11:333-339, 1999. | |
| | A69 | Odrzywolska et al, Convergent Synthesis, Chiral HPLC, and Vitamin D Receptor Affinity of Analogs of 1,25-Dihydroxycholecalciferol, Chirality, 11:249-255, (1999). | |
| | A70 | Office Action dated 09/29/2009 for EP Application No. 06749272.8 (034827-3605) | |
| | A71 | Polson et al, Optimization of protein precipitation based upon effectiveness of protein removal and ionization effect in liquid chromatography-tandem mass spectrometry, Journal of Chromatography B, 785:263-275 (2003). | |
| | A72 | Robb et al, Atmospheric Pressure Photoionization: An Ionization Method for Liquid Chromatography-Mass Spectrometry, Anal. Chem., 72(15): 3653-3659 (2000). | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | | Examiner Name | Not Yet Assigned |
| Sheet | 6 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A73 | Salm et al, The Quantification of Sirolimus by High-Performance Liquid Chromatography-Tandem Mass Spectrometry and Microparticle Enzyme Immunoassay in Renal Transplant Recipients, Clin. Therapeutics 22 Supl. B:B71-B85 (2000) | |
| | A74 | Singh et al, C-3 epimers can account for a significant proportion of total circulating 25-hydroxyvitamin D in infants, complicating accurate measurement and interpretation of vitamin D status, The Journal of Clinical Endocrinology & Metabolism, 91(8): 3055-3061, 2006. | |
| | A75 | Taylor et al, Simultaneous Quantification of Tacrolimus and Sirolimus in Human Blood, by High-Performance Liquid Chromatography - Tandem Mass Spectrometry, Therapeutic Drug Monitoring 22:608-12 (2000) | |
| | A76 | Tsugawa et al, Determination of 25-hydroxyvitamin D in human plasma using high-performance liquid chromatography-tandem mass spectrometry, Anal. Chem., 77:3001-3007, 2005. | |
| | A77 | US Notice of Allowance dated 12/15/2009 in application 11/101,166 (054769-9993) | |
| | A78 | US Notice of Allowance dated 3/2/2011 in application 11/386,215 (034827-3603) | |
| | A79 | US Notice of Allowance dated 3/3/2011 in application 11/946,765 (054769-9991) | |
| | A80 | US Notice of Allowance dated 5/20/2011 in application 12/630,790 (034827-0740) | |
| | A81 | US Notice of Allowance dated 8/19/2009 for U.S. App. No. 11/101,166 (054769-9993) | |
| | A82 | US Office Action dated 04/12/2010 in application 11/386,215 (034827-3603) | |
| | A83 | US Office Action dated 1/6/2011 in application 12/630,790 (034827-0740) | |
| | A84 | US Office Action dated 10/08/2008 in application 11/101,166 (054769-9993) | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional) 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

Joint Appendix 1729

QUESTMS-0000242C

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | | Examiner Name | Not Yet Assigned |
| Sheet | 7 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A85 | US Office Action dated 10/5/2010 in application 11/386,215 (034827-3603) | |
| | A86 | US Office Action dated 12/17/2010 in application 11/946,765 (054769-9991) | |
| | A87 | US Office Action dated 12/17/2010 in application 12/630,796 (054769-9993) | |
| | A88 | US Office Action dated 6/24/2010 in application 11/946,765 (054769-9991) | |
| | A89 | US Office Action dated 6/28/2010 in application 12/630,790 (034827-0740) | |
| | A90 | US Office Action dated 7/7/2010 in application 12/630,796 (054769-9993) | |
| | A91 | Vieth et al, Age-related changes in the 25-hydroxyvitamin D versus parathyroid hormone relationship suggest a different reason why older adults require more Vitamin D, The Journal of Clinical Endocrinology & Metabolism, 88(1): 185-191, 2003. | |
| | A92 | Vieth, Vitamin D supplementation, 25-hydroxyvitamin D concentrations, and safety, Am J Clin Nutr, 69:842-856, 1999. | |
| | A93 | Vogeser et al, Candidate reference method for the quantification of circulating 25-Hydroxyvitamin D3 by liquid chromatography-tandem mass spectrometry, Clinical Chemistry, 50(8): 1415-1417, (2004). | |
| | A94 | Vreeken et al, On-line post-column Diels-Alder derivatization for the determination of vitamin D3 and its metabolites by liquid chromatography/thermospray mass spectrometry, Biological Mass Spectrometry, 22:621-632, (1993). | |
| | A95 | Watson et al, Analysis of Vitamin D and its metabolites using thermospray liquid chromatography/Mass spectrometry, Biomedical Chromatography, 5:153-160, 1991. | |
| | A96 | Wharton et al, Rickets. The Lancet, 362: 1389-1400, 2003. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| *(use as many sheets as necessary)* | | | Art Unit | 1629 |
| | | | Examiner Name | Not Yet Assigned |
| Sheet | 8 | of 8 | Attorney Docket Number | 034827-3606 |

| | | **NON PATENT LITERATURE DOCUMENTS** | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A97 | Wright et al, Proteinchip surface enhanced laser desorption/ionization (SELDI) mass spectrometry: a novel protein biochip technology for detection of prostate cancer biomarkers in complex protein mixtures, Prostate Cancer and Prostatic Diseases, 2:264-76, (1999). | |
| | A98 | Yeung et al, Characterization of the Metabolic Pathway of 1,25-Dihydroxy-16-Ene Vitamin D3 in Rat Kidney By On-Line High Performance Liquid Chromatography-Electrospray Tandem Mass Spectrometry, Biochemical Pharmacology, Vol. 49, No. 8, pp.1099-1110, (1995). | |
| | A99 | Yeung et al, Characterization of vitamin D3 metabolites using continuous-flow fast atom bombardment tandem mass spectrometry and high performance liquid chromatography, Chromatogr, 645(1):115-123 (1993) | |
| | A100 | YEUNG, et al, The role of mass spectrometry in vitamin D research, Mass Spec Reviews, (1995), 14(3):179-194 | |
| | A101 | Zimmer et al, Comparison of turbulent-flow chromatography with automated solid-phase extraction in 96-well plates and liquid-liquid extraction used as plasma sample preparation techniques for liquid chromatography-tandem mass spectrometry, J. Chromatogr. A 854:23-35 (1999) | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

QUESTMS-00002422

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10297877 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Alison Lalonde |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 14-JUN-2011 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 19:50:22 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | IDS_3606.pdf | 1281217<br>4583f4f70d77a8995adbbc85ec61def013c7d3da | yes | 10 |

QUESTMS-00002423

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Transmittal Letter | 1 | 2 |
| Information Disclosure Statement (IDS) Form (SB08) | 3 | 10 |

| Warnings: | |
|---|---|
| Information: | |

| Total Files Size (in bytes): | 1281217 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002424

Atty. Dkt. No. 034827-3606

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:        Clarke, et al.

Title:            METHODS FOR DETECTING
                  VITAMIN D METABOLITES
                  BY MASS SPECTROMETRY

Appl. No.:        13/115,916

Filing Date:      05/25/2011

Examiner:         Not Yet Assigned

Art Unit:         1629

Confirmation      4404
Number:

### INFORMATION DISCLOSURE STATEMENT
### UNDER 37 CFR §1.56

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

  Submitted herewith on Form PTO/SB/08 is a listing of the documents cited by or

submitted to the U.S. PTO in parent application Serial Nos. 11/101,166 filed on 4/6/2005 and

11/386,215 filed on 3/21/2006.  As provided in 37 CFR §1.98(d), copies of the documents are

not being provided since they were previously submitted to the United States Patent &

Trademark Office in the above-identified parent application.

  The submission of any document herewith, which is not a statutory bar, is not intended as

an admission that such document constitutes prior art against the claims of the present

application or that such document is considered material to patentability as defined in 37 CFR

§1.56(b).  Applicants do not waive any rights to take any action which would be appropriate to

QUESTMS-00002425

Case 1:18-cv-01436-MN   Document 352   Filed 09/25/19   Page 81 of 355 PageID #: 4050

Atty. Dkt. No. 034827-3606

antedate or otherwise remove as a competent reference any document which is determined to be a *prima facie* art reference against the claims of the present application.

## TIMING OF THE DISCLOSURE

The listed documents are being submitted in compliance with 37 CFR §1.97(b), before the mailing date of the first Office Action on the merits.

## RELEVANCE OF EACH DOCUMENT

All of the documents are in English.

Applicants respectfully request that each listed document be considered by the Examiner and be made of record in the present application and that an initialed copy of Form PTO/SB/08 be returned in accordance with MPEP §609.

Although Applicant believes that no fee is required, the Commissioner is hereby authorized to charge any additional fees which may be due to Deposit Account No. 19-0741.

Respectfully submitted,

Date ___6/13/11___                                By _____

FOLEY & LARDNER LLP                   Barry S. Wilson, Reg. No. 39,431
Customer Number: 30542                 Anthony C. Kuhlmann, Reg. No. 57,147
Telephone:   (858) 847-6776            Attorneys for Applicant
Facsimile:    (858) 792-6773

QUESTMS-00002426

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

30542        7590        08/04/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/04/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

QUESTMS-00002427

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/115,916 | CLARKE ET AL. |
| | **Examiner** | **Art Unit** | |
| | MONIQUE COLE | 1773 | |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>25 May 2011</u>.

2a)☐ This action is **FINAL**.  2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-23</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-23</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

QUESTMS-00002428

Application/Control Number: 13/115,916                                    Page 2
Art Unit: 1773

## DETAILED ACTION

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created
doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the
unjustified or improper timewise extension of the "right to exclude" granted by a patent
and to prevent possible harassment by multiple assignees.   A nonstatutory
obviousness-type double patenting rejection is appropriate where the conflicting claims
are not identical, but at least one examined application claim is not patentably distinct
from the reference claim(s) because the examined application claim is either anticipated
by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140
F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29
USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.
1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422
F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163
USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)
may be used to overcome an actual or provisional rejection based on a nonstatutory
double patenting ground provided the conflicting application or patent either is shown to
be commonly owned with this application, or claims an invention made as a result of
activities undertaken within the scope of a joint research agreement.

QUESTMS-00002429

Application/Control Number: 13/115,916                              Page 3
Art Unit: 1773

Effective January 1, 1994, a registered attorney or agent of record may sign a

terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with

37 CFR 3.73(b).

Claims 1-23 are rejected on the ground of nonstatutory obviousness-type double

patenting as being unpatentable over claims 1-23 of U.S. Patent No. 7,745,226 ("the

'226 patent"). Although the conflicting claims are not identical, they are not patentably

distinct from each other.

The '226 patent is directed to determining the presence or amount of vitamin D

metabolites (vitamin $D_2$, vitamin $D_3$, or both) *via* tandem mass spectrometry, wherein

purification (which embraces all forms of purification, including immunopurification and

HPLC) is performed prior to ionization. The instant application claims are broad enough

to read on the mass/charge ratios recited in the '226 patent. Since the present

application method is similar to that of the '226 patent, it would be obvious to expect

similar mass to charge ratios (m/z) to be obtained.

It is noted that the '226 patent recites an additional step of "effecting a collision

between the isolated precursor ion and an inert collision gas to produce at least one

fragment ion detectable in a mass spectrometer". However, those of ordinary skill in

the art understand this step to be a requisite component of performing tandem mass

spectrometry. Thus, this limitation is considered to be incorporated into the present

claims.

Claims 1-23 are rejected on the ground of nonstatutory obviousness-type double

patenting as being unpatentable over claims 1-8, 10-16, 19-28 and 31 of U.S. Patent

QUESTMS-00002430

Application/Control Number: 13/115,916                                   Page 4
Art Unit: 1773

No. 7,972,867 ("the '867 patent").  Although the conflicting claims are not identical, they

are not patentably distinct from each other.

The '867 patent is directed to generating a protonated and dehydrated precursor

ion of 25-hydroxyvitamin $D_3$; generating one or more fragment ions of the precursor ion;

and detecting the presence or amount of one or more ions and relating the presence of

the detected ions to the amount of 25-hydroxyvitamin $D_3$ in the sample.   The instant

application claims are broad enough to encompass the scope of the '867 patent claims.

The present patent claims embrace vitamin D metabolites 25-hydroxyvitamin $D_3$, 25-

hydroxyvitamin $D_2$, 1,25-hydroxyvitamin $D_3$, and 1,25-hydroxyvitamin $D_2$.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to MONIQUE COLE whose telephone number is (571)272-

1463.  The examiner can normally be reached on MON - THUR (9-5).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jill Warden can be reached on 571-272-1267.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

QUESTMS-00002431

Application/Control Number: 13/115,916                                  Page 5
Art Unit: 1773

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Jill Warden/                                    Monique  Cole
Supervisory Patent Examiner, Art Unit 1773       Examiner
                                                 Art Unit 1773

QUESTMS-00002432

| **Search Notes** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 13115916 | CLARKE ET AL. |
| | **Examiner** | **Art Unit** |
| | MONIQUE COLE | 1773 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 436 | 173, 131 | 7/2011 | MC |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| | | |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

QUESTMS-00002433



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

CONFIRMATION NO. 4404

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | 436 | 1773 | 034827-3606 |
| | RULE | | | |

**APPLICANTS**
Nigel Clarke, Oceanside, CA;
Brett Holmquist, Mission Viejo, CA;
Gloria Kwangja Lee, Irvine, CA;
Richard E. Reitz, San Clemente, CA;

** CONTINUING DATA ***************************
This application is a CON of 11/101,166 04/06/2005 PAT 7,745,226     *
    and is a CON of 11/386,215 03/21/2006 PAT 7,972,867
    (*)Data provided by applicant is not consistent with PTO records.

** FOREIGN APPLICATIONS ***************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
    06/06/2011

| Foreign Priority claimed | ☐ Yes ☑ No | | ☐ Met after Allowance | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☑ No | | | | | | |
| Verified and Acknowledged | /MONIQUE T COLE/ Examiner's Signature | MC Initials | | CA | 4 | 23 | 2 |

**ADDRESS**
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278
UNITED STATES

**TITLE**
METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

| FILING FEE RECEIVED | FEES: Authority has been given in Paper | ☐ All Fees |
|---|---|---|
| 1246 | No._____ to charge/credit DEPOSIT ACCOUNT | ☐ 1.16 Fees (Filing) |
| | No._____ for following: | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

QUESTMS-00002434

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | **Application Number** | 13/115,916 |
| | **Filing Date** | 5/25/2011 |
| | **First Named Inventor** | Nigel Clarke |
| | **Art Unit** | 1629 |
| *(use as many sheets as necessary)* | Examiner Name | Not Yet Assigned |
| Sheet | 1 | of | 8 | Attorney Docket Number | 034827-3606 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | 2003/0171605 | 09-11-2003 | REDDY ET AL. | |
| | A2 | 2004/0235193 | 11-25-2004 | SOLDIN | |
| | A3 | 2006/0054807 | 03-16-2006 | PICARD ET AL. | |
| | A4 | 2006/0094125 | 05-04-2006 | SINGH ET AL | |
| | A5 | 2006/0228808 | 10-12-2006 | CLARKE ET AL | |
| | A6 | 2006/0228809 | 10-12-2006 | CLARKE ET AL | |
| | A7 | 2007/0139956 | 06-21-2007 | SUGIMOTO ET AL | |
| | A8 | 2008/0241955 | 10-02-2008 | PURKAYASTHA ET AL. | |
| | A9 | 2009/0137056 | 05-28-2009 | HOLMQUIST ET AL | |
| | A10 | 5,772,874 | 06-30-1998 | QUINN ET AL. | |
| | A11 | 5,795,469 | 08-18-1998 | QUINN ET AL. | |
| | A12 | 5,919,368 | 07-06-1999 | QUINN ET AL. | |
| | A13 | 5,968,367 | 10-19-1999 | QUINN ET AL. | |
| | A14 | 6,107,623 | 08-22-2000 | BATEMAN ET AL. | |
| | A15 | 6,124,137 | 09-26-2000 | HUTCHENS ET AL. | |
| | A16 | 6,204,500 | 03-20-2001 | WHITEHOUSE ET AL. | |
| | A17 | 6,268,144 | 07-31-2001 | KOSTER | |
| | A18 | 6,787,660 | 09-07-2004 | ARMBRUSTER ET AL. | |
| | A19 | 6,977,143 | 12-20-2005 | CAULFIELD ET AL. | |
| | A20 | 7,087,395 | 08-08-2006 | GARRITY ET AL. | |
| | A21 | 7,321,116 | 01-22-2008 | PICARD ET AL. | |
| | A22 | 7,348,137 | 03-25-2008 | CAULFIELD ET AL. | |
| | A23 | 7,473,560 | 01-06-2009 | SOLDIN | |
| | A24 | 7,618,827 | 11-17-2009 | STEVEN | |
| | A25 | 7,745,226 | 06-29-2010 | CLARKE ET AL. | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document — Serial Number-Kind Code[2] (if known) | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Application Number | 13/115,916 |
| | | Filing Date | 5/25/2011 |
| | | First Named Inventor | Nigel Clarke |
| *(use as many sheets as necessary)* | | Art Unit | 1629 |
| | | Examiner Name | Not Yet Assigned |
| Sheet | 2 | of | 8 | Attorney Docket Number | 034827-3606 |

| FOREIGN PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
| | A26 | WO-2007/039193 | 04-12-2007 | ROCHE DIAGNOSTICS GMBH | | |
| | A27 | WO-2007/139956 | 12-06-2007 | LABORATORY CORPORATION OF AMERICA HOLDINGS | | |
| | A28 | WO-2008/097246 | 08-14-2008 | SCHROEDER ET AL | | |
| | A29 | WO-95/33279 | 12-07-1995 | DERRICK ET AL | | |
| | A30 | WO-96/18618 | 06-20-1996 | BAYER AKTIENGESELLSCHAFT; NIHON BAYER AGROCHEM K.K. | | |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A31 | Armas et. al, Vitamin D2 Is Much Less Effective than Vitamin D3 in Humans, J. Clin. Endocrinol. Metab. 89:5387-5391 (2004). | |
| | A32 | Aronov et al, Metabolic profiling of major vitamin D metabolites using Diels-Alder derivatization and ultra-performance liquid chromatography-tandem mass spectrometry, Anal Bioanal Chem, 2008, 391:1917-1930 | |
| | A33 | Ascalone et al, Stereospecific determination of amisulpride, a new benzamide derivative, in human plasma and urine by automated solid-phase extraction and liquid chromatography on a chiral column. application to pharmacokinetics, Journal of Chromatography B., 676:95-105, 1996. | |
| | A34 | Bartolucci, et al., Liquid chromatography tandem mass spectrometric quantitation of sulfamethazine and its metabolites: direct analysis of swine urine by triple quadrupole and by ion trap mass spectrometry, Rapid Commun. Mass Spectrom, 14:967-73 (2000). | |
| | A35 | Busch, A Glossary for Mass Spectrometry, Mass Spectrometry, 17(65):526-534, 2002 | |
| | A36 | Capote et al, Identification and determination of fat-soluble vitamins and metabolites in human serum by liquid chromatography/triple quadrupole mass spectrometry with multiple reaction monitoring, Rapid Commun. Mass. Spectrom., 21:1745-1754, 2007. | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002436

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/115,916 |
| | Filing Date | 5/25/2011 |
| | First Named Inventor | Nigel Clarke |
| *(use as many sheets as necessary)* | Art Unit | 1629 |
| | Examiner Name | Not Yet Assigned |
| Sheet | 3 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A37 | Coldwell et al, Mass Fragmentographic Assay for 25-Hydroxyvitamin D in Plasma Without Derivatization: Enhanced Sensitivity for Metabolites of Vitamins D2 and D3 After Pre-column Dehydration, Journal of Mass Spectrometry, 30:348-356, (1995). | |
| | A38 | Coldwell et al, Stable isotope-labeled vitamin D, metabolites and chemical analogs: synthesis and use in mass spectrometric studies, Steroids, 55: 418-432, 1990. | |
| | A39 | Coldwell et al., Measurement of Vitamins D2 and D3 and Seven Major Metabolites in a Single Sample of Human Plasma Using Gas Chromatography/Mass Spectrometry, Biomedical and Environmental Mass Spectrometry, 16:81-85 (1988). | |
| | A40 | Extended Search Report dated 02/02/2009 in EP application 06749272 (034827-3605) | |
| | A41 | Extended Search Report dated 12/22/2010 in EP application 08853843 (054769-9997) | |
| | A42 | Guo et al, Steroid profiles using liquid chromatography-Tandem mass spectrometry with atmospheric pressure photoionization source, Arch Pathol Lab Med., 128: 469-475, 2004. | |
| | A43 | Higashi et al, Characterization of new conjugated metabolites in bile of rats administered 24,25-dihydroxyvitamin D3 and 25-hydroxyvitamin D3, Steroids, 65(5):281-94 (2000) | |
| | A44 | Higashi et al, Characterization of urinary metabolites of vitamin D3 in man under physiological conditions using liquid chromatography-tandem mass spectrometry, J Pharm Biomed Anal. 29(5):947-55 (2002) | |
| | A45 | Higashi et al, Liquid chromatography-tandem mass spectrometric method for the determination of salivary 25-hydroxyvitamin D3: a noninvasive tool for the assessment of vitamin D status, Anal. Bioanal Chem, 2008, 391:229-238 | |
| | A46 | Higashi et al, Simultaneous Determination of 25-Hydroxyvitamin D2 and 25-Hydroxyvitamin D3 in Human Plasma by Liquid Chromatography-Tandem Mass Spectrometry Employing Derivatization with a Cookson-Type Reagent, Biol Pharm Bull., 24(7):738-43, (2001). | |
| | A47 | International Preliminary Report on Patentability dated 10/9/2007 in application PCT/US2006/012539 (034827-3604) | |
| | A48 | International Preliminary Report on Patentability dated 6/01/2010 in application PCT/US2008/084709 (054769-9992) | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450**.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

Receipt date: 06/14/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid
OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | | Examiner Name | Not Yet Assigned |
| Sheet | 4 | of 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A49 | International Search Report and Written Opinion dated 1/26/2011 in application PCT/US2010/056461 (034827-0381) | |
| | A50 | International Search Report and Written Opinion dated 1/27/2011 in application PCT/US2010/057627 (034827-0741) | |
| | A51 | International Search Report and Written Opinion dated 2/7/2011 in application PCT/US2010/059765 (034827-1052) | |
| | A52 | International Search Report and Written Opinion dated 2/8/2011 in application PCT/US2010/059746 (034827-0771) | |
| | A53 | International Search Report dated 02/24/2009 in application PCT/US2008/084709 (054769-9992) | |
| | A54 | International Search Report dated 1/14/2011 in PCT/US2010/056886 (095276-0201) | |
| | A55 | International Search Report dated 1/4/2007 in application PCT/US2006/012539 (034827-3604) | |
| | A56 | International Search Report dated 2/11/2011 in application PCT/US2010/059771 (034827-1022) | |
| | A57 | Interview Summary dated 01/28/2009 in application 11/101,166 (054769-9993) | |
| | A58 | Jemal, High-throughput quantitative bioanalysis by LC/MS/MS, Biomedical Chromatography, 14:422-429, 2000. | |
| | A59 | Jones et al, Biological activity of I,25-Dihydroxyvitamin D2 in the Chick, Biochemistry, 15(3): 713-716, 1976. | |
| | A60 | Jones et al, Current understanding of the molecular actions of Vitamin D, Physiological Reviews, 78(4): 1193-1231, 1998. | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002438

Receipt date: 06/14/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | | Examiner Name | Not Yet Assigned |
| Sheet | 5 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A61 | Jones et al, Vitamin Ds: Metabolites and Analogs, Chapter 2 in Modern Chromatographic Analysis of Vitamins, Third Edition, 2002, 79 pgs. | |
| | A62 | Kamao et al, C-3 Epimerization of Vitamin D3 metabolites and further metabolism of C-3 epimers, The Journal of Biological Chemistry, 279 (16):15897-15907, (2004). | |
| | A63 | Kissmeyer et al, Sensitive analysis of 1a,25-dihydroxyvitamin D3 in biological fluids by liquid chromatography-tandem mass spectrometry, J Chromatogr A., 935(1-2):93-103 (2001) | |
| | A64 | Kobayashi et al, Tandem immunoaffinity chromatography for plasma 1a,25-dihydroxyvitamin D3 utilizing two antibodies having different specificities: A novel and powerful pretreatment tool for 1a,25-dihydroxyvitamin D3 radioreceptor assays, J.Steroid Biochem. Molec. Biol., 54(5/6): 217-226, 1995. | |
| | A65 | KOBAYASHI, et al, Production of a group-specific antibody to 1 alpha,25-dihydroxyvitamin D and its derivatives having the 1 alpha,3 beta-dihydroxylated A-ring structure, Steroids, (1994), 59(7):404-11 | |
| | A66 | Maunsell et al, Routine Isotope-Dilution Liquid Chromatography-Tandem Mass Spectrometry Assay for Simultaneous Measurement of the 25-Hydroxy Metabolites of Vitamins D2 and D3, Clinical Chemistry, 51:9 1683-1690, (2005). | |
| | A67 | Merchant et al, Recent advancements in surface-enhanced laser desorption/ionization-time of flight-mass spectrometry, Electrophoresis 21:1164-1177 (2000). | |
| | A68 | Miller et al, Genetic causes of rickets, Current Opinions in Pediatrics, 11:333-339, 1999. | |
| | A69 | Odrzywolska et al, Convergent Synthesis, Chiral HPLC, and Vitamin D Receptor Affinity of Analogs of 1,25-Dihydroxycholecalciferol, Chirality, 11:249-255, (1999). | |
| | A70 | Office Action dated 09/29/2009 for EP Application No. 06749272.8 (034827-3605) | |
| | A71 | Polson et al, Optimization of protein precipitation based upon effectiveness of protein removal and ionization effect in liquid chromatography-tandem mass spectrometry, Journal of Chromatography B, 785:263-275 (2003). | |
| | A72 | Robb et al, Atmospheric Pressure Photoionization: An Ionization Method for Liquid Chromatography-Mass Spectrometry, Anal. Chem., 72(15): 3653-3659 (2000). | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002439

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| (use as many sheets as necessary) | | | Art Unit | 1629 |
| | | | Examiner Name | Not Yet Assigned |
| Sheet | 6 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A73 | Salm et al, The Quantification of Sirolimus by High-Performance Liquid Chromatography-Tandem Mass Spectrometry and Microparticle Enzyme Immunoassay in Renal Transplant Recipients, Clin. Therapeutics 22 Supl. B:B71-B85 (2000) | |
| | A74 | Singh et al, C-3 epimers can account for a significant proportion of total circulating 25-hydroxyvitamin D in infants, complicating accurate measurement and interpretation of vitamin D status, The Journal of Clinical Endocrinology & Metabolism, 91(8): 3055-3061, 2006. | |
| | A75 | Taylor et al, Simultaneous Quantification of Tacrolimus and Sirolimus in Human Blood, by High-Performance Liquid Chromatography - Tandem Mass Spectrometry, Therapeutic Drug Monitoring 22:608-12 (2000) | |
| | A76 | Tsugawa et al, Determination of 25-hydroxyvitamin D in human plasma using high-performance liquid chromatography-tandem mass spectrometry, Anal. Chem., 77:3001-3007, 2005. | |
| | A77 | US Notice of Allowance dated 12/15/2009 in application 11/101,166 (054769-9993) | |
| | A78 | US Notice of Allowance dated 3/2/2011 in application 11/386,215 (034827-3603) | |
| | A79 | US Notice of Allowance dated 3/3/2011 in application 11/946,765 (054769-9991) | |
| | A80 | US Notice of Allowance dated 5/20/2011 in application 12/630,790 (034827-0740) | |
| | A81 | US Notice of Allowance dated 8/19/2009 for U.S. App. No. 11/101,166 (054769-9993) | |
| | A82 | US Office Action dated 04/12/2010 in application 11/386,215 (034827-3603) | |
| | A83 | US Office Action dated 1/6/2011 in application 12/630,790 (034827-0740) | |
| | A84 | US Office Action dated 10/08/2008 in application 11/101,166 (054769-9993) | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional) 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-0000244C

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Application Number | 13/115,916 |
| | | Filing Date | 5/25/2011 |
| | | First Named Inventor | Nigel Clarke |
| | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | Examiner Name | Not Yet Assigned |
| Sheet | 7 | of | 8 | Attorney Docket Number | 034827-3606 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A85 | US Office Action dated 10/5/2010 in application 11/386,215 (034827-3603) | |
| | A86 | US Office Action dated 12/17/2010 in application 11/946,765 (054769-9991) | |
| | A87 | US Office Action dated 12/17/2010 in application 12/630,796 (054769-9993) | |
| | A88 | US Office Action dated 6/24/2010 in application 11/946,765 (054769-9991) | |
| | A89 | US Office Action dated 6/28/2010 in application 12/630,790 (034827-0740) | |
| | A90 | US Office Action dated 7/7/2010 in application 12/630,796 (054769-9993) | |
| | A91 | Vieth et al, Age-related changes in the 25-hydroxyvitamin D versus parathyroid hormone relationship suggest a different reason why older adults require more Vitamin D, The Journal of Clinical Endocrinology & Metabolism, 88(1): 185-191, 2003. | |
| | A92 | Vieth, Vitamin D supplementation, 25-hydroxyvitamin D concentrations, and safety, Am J Clin Nutr, 69:842-856, 1999. | |
| | A93 | Vogeser et al, Candidate reference method for the quantification of circulating 25-Hydroxyvitamin D3 by liquid chromatography-tandem mass spectrometry, Clinical Chemistry, 50(8): 1415-1417, (2004). | |
| | A94 | Vreeken et al, On-line post-column Diels-Alder derivatization for the determination of vitamin D3 and its metabolites by liquid chromatography/thermospray mass spectrometry, Biological Mass Spectrometry, 22:621-632, (1993). | |
| | A95 | Watson et al, Analysis of Vitamin D and its metabolites using thermospray liquid chromatography/Mass spectrometry, Biomedical Chromatography, 5:153-160, 1991. | |
| | A96 | Wharton et al, Rickets. The Lancet, 362: 1389-1400, 2003. | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1629 |
| *(use as many sheets as necessary)* | | | Examiner Name | Not Yet Assigned |
| Sheet | 8 | of 8 | Attorney Docket Number | 034827-3606 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A97 | Wright et al, Proteinchip surface enhanced laser desorption/ionization (SELDI) mass spectrometry: a novel protein biochip technology for detection of prostate cancer biomarkers in complex protein mixtures, Prostate Cancer and Prostatic Diseases, 2:264-76, (1999). | |
| | A98 | Yeung et al, Characterization of the Metabolic Pathway of 1,25-Dihydroxy-16-Ene Vitamin D3 in Rat Kidney By On-Line High Performance Liquid Chromatography-Electrospray Tandem Mass Spectrometry, Biochemical Pharmacology, Vol. 49, No. 8, pp.1099-1110, (1995). | |
| | A99 | Yeung et al, Characterization of vitamin D3 metabolites using continuous-flow fast atom bombardment tandem mass spectrometry and high performance liquid chromatography, Chromatogr, 645(1):115-123 (1993) | |
| | A100 | YEUNG, et al, The role of mass spectrometry in vitamin D research, Mass Spec Reviews, (1995), 14(3):179-194 | |
| | A101 | Zimmer et al, Comparison of turbulent-flow chromatography with automated solid-phase extraction in 96-well plates and liquid-liquid extraction used as plasma sample preparation techniques for liquid chromatography-tandem mass spectrometry, J. Chromatogr. A 854:23-35 (1999) | |
| | | | |

| Examiner Signature | /Monique Cole/ | Date Considered | 07/31/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional) 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_896934.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002442

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Clarke, et al. |
| Title: | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| Appl. No.: | 13/115,916 |
| Filing Date: | 5/25/2011 |
| Examiner: | Monique T. Cole |
| Art Unit: | 1773 |
| Conf. No.: | 4404 |

### AMENDMENT AND REPLY UNDER 37 CFR 1.111

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

This communication is responsive to the Non-Final Office Action dated August 4, 2011,

concerning the above-referenced patent application.

**Remarks/Arguments** begin on page 2 of this document.

-1-

QUESTMS-00002443

Atty. Dkt. No. 034827-3606

## **REMARKS**

By the present communication, no claims are amended, added, or canceled.  Claims 1-23, as originally filed, are pending and under examination.

**Non-statutory Double Patenting**

All pending claims stand rejected, on the ground of non-statutory obviousness-type double patenting, over claims 1-23 of U.S. Patent No. 7,745,226 and over claims 1-8, 10-16, 19-28, and 31 of U.S. Patent No. 7,972,867.  Submitted concurrently herewith are Terminal Disclaimers over each of the two above-identified U.S. patents.  Applicants respectfully submit that are traversed in view of these Terminal Disclaimers and the rejections should be withdrawn.

## **CONCLUSION**

Applicants submit that the present application is now in condition for immediate allowance.  Favorable consideration of the application is respectfully requested.  In the event any matters remain to be resolved in view of this communication, the Examiner is encouraged to contact the undersigned so that they can be resolved without additional action and response thereto.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741.  Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.  If any extensions of time are needed for timely acceptance of

-2-

QUESTMS-00002444

Atty. Dkt. No. 034827-3606

papers submitted herewith, Applicant hereby petitions for such extension under 37 C.F.R. §1.136
and authorizes payment of any such extensions fees to Deposit Account No. 19-0741.

Respectfully submitted,

Date ___8/24/11___          By _____

FOLEY & LARDNER LLP          Barry S. Wilson, Reg. No. 39,431
Customer Number: 30542       Anthony C. Kuhlmann, Reg. No. 57,147
Telephone:   (858) 847-6722  Attorneys for Applicant
Facsimile:   (858) 792-6773

-3-

DLMR_929315.1

QUESTMS-00002445

PTO/SB/26 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 034827-3606 |
|---|---|

In re Application of: Nigel Clarke, Brett Holmquist, Kwang-Ja Lee and Richard E. Reitz

Application No.: 13/115,916

Filed: 5/25/2011

For: METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

The owner*, Quest Diagnostics Investments Incorporated , of 100 percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term prior patent No. 7,745,226 as the term of said prior patent is defined in 35 U.S.C. 154 and 173, and as the term of said prior patent is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of the prior patent, "as the term of said prior patent is presently shortened by any terminal disclaimer," in the event that said prior patent later:
expires for failure to pay a maintenance fee;
is held unenforceable;
is found invalid by a court of competent jurisdiction;
is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
has all claims canceled by a reexamination certificate;
is reissued; or
is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. [ ] For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. [✓] The undersigned is an attorney or agent of record. Reg. No. 57,147

Signature _____ Date 8/24/11

Anthony C. Kuhlmann
Typed or printed name

(858) 847-6776
Telephone Number

[✓] Terminal disclaimer fee under 37 CFR 1.20(d) included.

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this certification. See MPEP § 324.

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

QUESTMS-00002446

PTO/SB/26 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A "PRIOR" PATENT | Docket Number (Optional) 034827-3606 |
|---|---|

In re Application of: Nigel Clarke, Brett Holmquist, Kwang-Ja Lee and Richard E. Reitz

Application No.: 13/115,916

Filed: 5/25/2011

For: METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

The owner*, _Quest Diagnostics Investments Incorporated_____, of _____100_____ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term **prior patent** No. _7,972,867_____ as the term of said prior patent is defined in 35 U.S.C. 154 and 173, and as the term of said **prior patent** is presently shortened by any terminal disclaimer. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the **prior patent** are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of the **prior patent**, "as the term of said **prior patent** is presently shortened by any terminal disclaimer," in the event that said **prior patent** later:
    expires for failure to pay a maintenance fee;
    is held unenforceable;
    is found invalid by a court of competent jurisdiction;
    is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321;
    has all claims canceled by a reexamination certificate;
    is reissued; or
    is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. [ ]  For submissions on behalf of a business/organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the business/organization.

   I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. [✓]  The undersigned is an attorney or agent of record.  Reg. No. 57,147

_____
Signature                                                        Date  8/24/11

Anthony C. Kuhlmann
Typed or printed name

(858) 847-6776
Telephone Number

[✓]  Terminal disclaimer fee under 37 CFR 1.20(d) included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this certification. See MPEP § 324.

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

QUESTMS-00002447

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Clarke, et al.

Title:     METHODS FOR DETECTING
VITAMIN D METABOLITES BY
MASS SPECTROMETRY

Appl. No.:     13/115,916

Filing Date:     5/25/2011

Examiner:     Cole, Monique T.

Art Unit:     1773

Confirmation No.:     4404

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 CFR §1.56

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Submitted herewith on Form PTO/SB/08 is a listing of documents known to Applicants in order to comply with Applicants' duty of disclosure pursuant to 37 CFR §1.56.

A copy of each non-U.S. patent document and each non-patent document is being submitted to comply with the provisions of 37 CFR §1.97 and §1.98.

The submission of any document herewith, which is not a statutory bar, is not intended as an admission that such document constitutes prior art against the claims of the present application or that such document is considered material to patentability as defined in 37 CFR §1.56(b). Applicants do not waive any rights to take any action which would be appropriate to antedate or otherwise remove as a competent reference any document which is determined to be a *prima facie* art reference against the claims of the present application.

DLMR_923995.1

-1-

QUESTMS-00002448

Atty. Dkt. No. 034827-3606

## TIMING OF THE DISCLOSURE

The listed documents are being submitted in compliance with 37 CFR §1.97(b), within three (3) months of the filing date of the application.

## RELEVANCE OF EACH DOCUMENT

All of the documents are in English.

Applicants respectfully request that each listed document be considered by the Examiner and be made of record in the present application and that an initialed copy of Form PTO/SB/08 be returned in accordance with MPEP §609.

Although Applicant believes that no fee is required, the Commissioner is hereby authorized to charge any additional fees which may be due to Deposit Account No. 19-0741.

Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Respectfully submitted,

Date ___8/24/11___                By _____

FOLEY & LARDNER LLP              Barry S. Wilson, Reg. No. 39,431
Customer Number: 30542           Anthony C. Kuhlmann, Reg. No. 57,147
Telephone:    (858) 847-6776     Attorneys for Applicant
Facsimile:    (858) 792-6773

DLMR_923995.1                          -2-

QUESTMS-00002449

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(use as many sheets as necessary)* | Application Number | 13/115,916 |
| | Filing Date | 5/25/2011 |
| | First Named Inventor | Nigel Clarke |
| | Art Unit | 1773 |
| | Examiner Name | Cole, Monique T. |
| Sheet   1   of   1 | Attorney Docket Number | 034827-3606 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A1 | US Notice of Allowance dated 7/6/2011 in application 12/630,796 (054769-9993) | |
| | A2 | US Notice of Allowance dated 8/4/2011 in application 13/115,935 (034827-0742) | |
| | A3 | US Office Action dated 6/29/2011 in application 13/115,935(034827-0742) | |
| | A4 | US Office Action dated 7/21/2011 in application 13/165,685 (054769-9973) | |
| | A5 | US Office Action dated 7/29/2011 in application 13/117,997 (054769-9990) | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is used by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

QUESTMS-00002450



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 30542 | 7590 | 07/06/2011 |

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 07/06/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/630,796 | 12/03/2009 | Brett Holmquist | 054769-9993 | 1419 |

TITLE OF INVENTION: METHODS FOR DETECTING DIHYDROXYVITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/06/2011 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. **PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 3

PTOL-85 (Rev. 02/11)

QUESTMS-00002451

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** Mail **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or Fax **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 30542 | 7590 | 07/06/2011 |

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/630,796 | 12/03/2009 | Brett Holmquist | 054769-9993 | 1419 |

TITLE OF INVENTION: METHODS FOR DETECTING DIHYDROXYVITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 10/06/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COLE, MONIQUE T | 1773 | 436-173000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
   (1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
   (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
   ☐ Issue Fee
   ☐ Publication Fee (No small entity discount permitted)
   ☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
   ☐ A check is enclosed.
   ☐ Payment by credit card. Form PTO-2038 is attached.
   ☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
   ☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.   ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Joint Appendix 1761

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

QUESTMS-00002452



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/630,796 | 12/03/2009 | Brett Holmquist | 054769-9993 | 1419 |

30542        7590        07/06/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 07/06/2011

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

QUESTMS-00002453

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

QUESTMS-00002454

| **Notice of Allowability** | **Application No.** | **Applicant(s)** | |
|---|---|---|---|
| | 12/630,796 | HOLMQUIST ET AL. | |
| | **Examiner** | **Art Unit** | |
| | MONIQUE COLE | 1773 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _the RCE filed 6/8/2011_.

2. ☒ The allowed claim(s) is/are _70-93_.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
           International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .
    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
        Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date _20110615_
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☒ Interview Summary (PTO-413),
    Paper No./Mail Date _20110615_ .
7. ☒ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____ .

| | /Jill Warden/ |
|---|---|
| | Supervisory Patent Examiner, Art Unit 1773 |

QUESTMS-00002455

| **Examiner-Initiated Interview Summary** | Application No. | Applicant(s) |
| | 12/630,796 | HOLMQUIST ET AL. |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

**All Participants:**

(1) *MONIQUE COLE*.

(2) *Mr. Kuhlmann*.

**Status of Application:** *Allowed*

(3) _____.

(4) _____.

**Date of Interview:** *15 June 2011*          **Time:** *1:00 pm*

**Type of Interview:**
☒ Telephonic
☐ Video Conference
☐ Personal (Copy given to: ☐ Applicant     ☐ Applicant's representative)

Exhibit Shown or Demonstrated:   ☐ Yes     ☐ No
   If Yes, provide a brief description: ____.

**Part I.**

Rejection(s) discussed:
*of record*

Claims discussed:
*of record*

Prior art documents discussed:
*of record*

**Part II.**

SUBSTANCE OF INTERVIEW DESCRIBING THE GENERAL NATURE OF WHAT WAS DISCUSSED:
*At the Examiner's suggestion, Mr. Kuhlmann agreed to cancel claims 1-4 and 9-13 in order to place the application in condition for allowance.*

**Part III.**

☒ It is not necessary for applicant to provide a separate record of the substance of the interview, since the interview directly resulted in the allowance of the application. The examiner will provide a written summary of the substance of the interview in the Notice of Allowability.
☐ It is not necessary for applicant to provide a separate record of the substance of the interview, since the interview did not result in resolution of all issues.  A brief summary by the examiner appears in Part II above.

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

(Applicant/Applicant's Representative Signature – if appropriate)

QUESTMS-00002456

Case 1:18-cv-01436-MN   Document 75   Filed 12/12/19   Page 112 of 355 PageID #: 8268

Application/Control Number: 12/630,796                                      Page 2
Art Unit: 1773

### EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Mr. Kuhlmann on June 15, 2011.

The application has been amended as follows:

Please cancel claims 1-4and 9-13.


Any inquiry concerning this communication or earlier communications from the examiner should be directed to MONIQUE COLE whose telephone number is (571)272-1463.  The examiner can normally be reached on MON - THUR (9-5).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jill Warden can be reached on 571-272-1267.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

QUESTMS-00002457

Case 1:18-cv-01426-MN   Document 73-2   Filed 09/25/19   Page 107 of 246 PageID #: 4082

Application/Control Number: 12/630,796                                        Page 3
Art Unit: 1773

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Jill Warden/                                          Monique  Cole
Supervisory Patent Examiner, Art Unit 1773             Examiner
                                                       Art Unit 1773

QUESTMS-00002458



THE UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 30542 | 7590 | 08/04/2011 |

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 08/04/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,935 | 05/25/2011 | Brett Holmquist | 034827-0742 | 4443 |

TITLE OF INVENTION: VITAMIN D METABOLITE DETERMINATION UTILIZING MASS SPECTROMETRY FOLLOWING DERIVATIZATION

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 11/04/2011 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Joint Appendix 1768
PTOL-85 (Rev. 02/11)

QUESTMS-00002459

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**

or **Fax**

**Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**

(571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

30542    7590    08/04/2011

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,935 | 05/25/2011 | Brett Holmquist | 034827-0742 | 4443 |

TITLE OF INVENTION: VITAMIN D METABOLITE DETERMINATION UTILIZING MASS SPECTROMETRY FOLLOWING DERIVATIZATION

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 11/04/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COLE, MONIQUE T | 1773 | 436-173000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Joint Appendix 1769

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

QUESTMS-00002460



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,935 | 05/25/2011 | Brett Holmquist | 034827-0742 | 4443 |

30542          7590          08/04/2011

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 08/04/2011

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

QUESTMS-00002461

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

QUESTMS-00002462

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 13/115,935 | HOLMQUIST ET AL. | |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the response filed 7/13/2011*.

2. ☒ The allowed claim(s) is/are <u>84-164</u>.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All    b) ☐ Some*   c) ☐ None    of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
          International Bureau (PCT Rule 17.2(a)).
     * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
       Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.
7. ☒ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

**Notice of Allowability**
Joint Appendix 1772
Part of Paper No./Mail Date 20110730

QUESTMS-00002463

Application/Control Number: 13/115,935                                    Page 2
Art Unit: 1773

### *Terminal Disclaimer*

The terminal disclaimer filed on July 13, 2011, disclaiming the terminal portion of any patent granted on this application which would extend beyond the expiration date of USP 7,977,117 has been reviewed and is accepted. The terminal disclaimer has been recorded.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MONIQUE COLE whose telephone number is (571)272-1463. The examiner can normally be reached on MON - THUR (9-5).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jill Warden can be reached on 571-272-1267. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Jill Warden/                                     Monique  Cole
Supervisory Patent Examiner, Art Unit 1773        Examiner
                                                  Art Unit 1773

QUESTMS-00002464

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,935 | 05/25/2011 | Brett Holmquist | 034827-0742 | 4443 |

30542          7590          06/29/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/29/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

QUESTMS-00002465

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 13/115,935 | HOLMQUIST ET AL. |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>25 May 2011</u>.
2a) ☐ This action is **FINAL**.      2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>68-151</u> is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☒ Claim(s) <u>84-107 and 128-151</u> is/are allowed.
6) ☒ Claim(s) <u>68-83 and 108-127</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All    b) ☐ Some * c) ☐ None of:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date <u>06/14/11</u>

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

QUESTMS-00002466

Application/Control Number: 13/115,935                                          Page 2
Art Unit: 1773

## DETAILED ACTION

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 67-83 are rejected under 35 U.S.C. 102(b) as being anticipated by

Aronov *et al*. "Metabolic profiling of major vitamin D metabolites using Diels-Alder

derivatization and ultra-performance liquid chromatography-tandem mass spectrometry"

("Aronov").

Aronov discloses a method for the quantification of 1α,25-dihydroxyvitamin $D_3$,

1α,25-dihydroxyvitamin $D_2$, 25-hydroxyvitamin $D_3$ and 25-hydroxyvitamin $D_2$ (collectively

"vitamin D metabolites") *via* ultra-performance liquid chromatography (a variant of high-

performance liquid chromatography) and tandem mass spectrometry.  *See* abstract.

Aronov disclose that each of the vitamin D metabolites is derivatized with 4-phenyl-1,2-

4-triazoline-3,5-dione (PTAD).   The methodology includes the use of a solid-phase

extraction column and a HPLC analytical column.  *See* pages 1919 - 1920.   Table 1

discloses the mass spectrometry conditions of which the precursor ion (m/z) and

product ion (m/z) corresponds to instant claims 12, 13, 15 and 16.  *See* page 1920.

QUESTMS-00002467

Application/Control Number: 13/115,935                                    Page 3
Art Unit: 1773

## *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.   A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

QUESTMS-00002468

Application/Control Number: 13/115,935                                          Page 4
Art Unit: 1773

     Claims 108-126 are provisionally rejected on the ground of nonstatutory

obviousness-type double patenting as being unpatentable over claims 87-100 of

copending Application No. 12/630,790 ("the '790 application").  Although the conflicting

claims are not identical, they are not patentably distinct from each other because the

scope of the '790 application overlaps with that of the instant application.

     The '790 application is directed to a method for determining the amount of one or

more dihydroxyvitamin D metabolites in a sample by tandem mass spectrometry having

the same steps as that of the claims in the present application.  However, claim 87 of

the '790 application does not recite specific vitamin D metabolites, whereas instant

claim 108 recites vitamin D metabolites $D_2$ and $D_3$.  One of ordinary skill in the art would

have recognized that "vitamin D metabolites" would be inclusive of vitamin D

metabolites $D_2$ and $D_3$, particularly in light of the fact that claims 92 and 95 of the '790

application recite such.  This is a <u>provisional</u> obviousness-type double patenting

rejection because the conflicting claims have not in fact been patented.

### Allowable Subject Matter

     Claims 84-107 and 128-151 are allowed.

### Response to Arguments

     Applicant's arguments filed May 25, 2011 with respect to claim 68 and its

dependent claims have been fully considered but they are not persuasive. Applicant has

argued that claim 68 includes previously allowable subject matter.  However, the

QUESTMS-00002469

Application/Control Number: 13/115,935                                    Page 5
Art Unit: 1773

previously allowable subject matter (turbulent flow liquid chromatography column) is not

present in the claims.   Accordingly, the previous rejection of the claims from the Final

rejection of the '790 application is being reinstated.

     Applicant's arguments with respect to independent claims 84, 108 and 128 (and

their dependent claims) have been fully considered and are persuasive.


     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to MONIQUE COLE whose telephone number is (571)272-

1463.  The examiner can normally be reached on MON - THUR (9-5).

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jill Warden can be reached on 571-272-1267.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Jill Warden/                                              Monique  Cole
Supervisory Patent Examiner, Art Unit 1773                 Examiner
                                                           Art Unit 1773

QUESTMS-00002470

| Notice of References Cited | Application/Control No.<br>13/115,935 | Applicant(s)/Patent Under Reexamination<br>HOLMQUIST ET AL. | |
|---|---|---|---|
| | Examiner<br>MONIQUE COLE | Art Unit<br>1773 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| * | U | Aronov et al. "Metabolic profiling of major vitamin D metabolites using Diels-Alder derivatization and ultra-performance liquid chromatography-tandem mass spectrometry" (previously cited) |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/165,685 | 06/21/2011 | Brett Holmquist | 054769-9973 | 4343 |

30542          7590          07/21/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/21/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

QUESTMS-00002472

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 13/165,685 | HOLMQUIST ET AL. |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *21 June 2011*.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) *1-24* is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) *1-24* is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

### Attachment(s)
1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

QUESTMS-00002473

Application/Control Number: 13/165,685                                    Page 2
Art Unit: 1773

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 1-8 are rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.  In prosecution of related application 12/630,796, Applicant pointed to Examples 3-5, in particular, to support the newly added claim limitation that the ionized dihydroxyvitamin D metabolites are not dehydrated prior to ionization.

The Examiner has reviewed the noted support in the specification, and is not convinced of the support for the present claim amendments.  While it appears that examples 3-5 do not dehydrate the metabolites prior to ionization, it is not clear that these examples are representative of the present invention (i.e., there is no express exclusion of hydrated metabolites).   It is requested that Applicant further clarify the support or remove the language from the claims.

QUESTMS-00002474

Application/Control Number: 13/165,685                                        Page 3
Art Unit: 1773

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 9–14 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.  Claim 9 recites the limitation "1α,25(OH)$_2$**D$_2$**" in the

determining and relating steps.  There is insufficient antecedent basis for this limitation

in the claim.

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees.   A nonstatutory

obviousness-type double patenting rejection is appropriate where the conflicting claims

are not identical, but at least one examined application claim is not patentably distinct

from the reference claim(s) because the examined application claim is either anticipated

by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140

F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29

USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.

1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422

F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163

USPQ 644 (CCPA 1969).

QUESTMS-00002475

Application/Control Number: 13/165,685                                   Page 4
Art Unit: 1773

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent either is shown to be commonly owned with this application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims 9-24 are provisionally rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 70-77 of copending Application No. 12/630,796 ("the '796 application") in view of Coldwell et al. "The Measurement of Vitamins $D_2$ and $D_3$ and Seven Major Metabolites in a Single Sample of Human Plasma Using Gas Chromatography/Mass Spectrometry, 1988 ("Coldwell"). The claims of the '796 application parallel those of the present application except that the '796 application claims are directed to $1\alpha,25(OH)_2\underline{D_2}$ rather than $1\alpha,25(OH)_2\underline{D_3}$ as is presently claimed. Coldwell teaches that it is well known and appreciated in the art to use mass spectrometry techniques to measure both vitamins $D_2$ and $D_3$ and their metabolites. *See* Title and Introduction. Accordingly, it would have been obvious to skilled artisan to use the method claimed in the '796 application for the measurement of either of $1\alpha,25(OH)_2\underline{D_2}$ or $1\alpha,25(OH)_2\underline{D_3}$.

This is a <u>provisional</u> obviousness-type double patenting rejection.

QUESTMS-00002476

Application/Control Number: 13/165,685                                   Page 5
Art Unit: 1773

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MONIQUE COLE whose telephone number is (571)272-1463.  The examiner can normally be reached on MON - THUR (9-5).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jill Warden can be reached on 571-272-1267.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Jill Warden/                                    Monique  Cole
Supervisory Patent Examiner, Art Unit 1773       Examiner
                                                 Art Unit 1773

QUESTMS-00002477

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/117,997 | 05/27/2011 | Brett Holmquist | 054769-9990 | 8738 |

30542          7590          07/29/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/29/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

QUESTMS-00002478

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 13/117,997 | HOLMQUIST ET AL. |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>27 May 2011</u>.

2a)☐ This action is **FINAL**.     2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-40</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-40</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

QUESTMS-00002479

Application/Control Number: 13/117,997                                     Page 2
Art Unit: 1773

## DETAILED ACTION

### Claim Rejections - 35 USC § 112

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 36-38 recite the limitation "$1\alpha,25(OH)_2D_2$". There is insufficient antecedent basis for this limitation in the claims.

Claim 36 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. Claim 35 expressly precludes derivatization of the vitamin D metabolite, yet claim 36 requires derivatization. Further clarification is required.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 1-34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Higashi et al. "*Simultaneous Determination of 25-Hydroxyvitamin $D_2$ and 25-Hydroxyvitamin $D_3$ in Human Plasma by Liquid Chromatography-Tandem Mass*

QUESTMS-00002480

*Spectrometry Employing Derivatization with a Cookson-Type Reagent*" ("Higashi") in view of USP 6,787,660 to Armbruster et al. ("Armbruster").

Higashi teaches the individual and simultaneous determination of vitamin $D_2$ and vitamin $D_3$ after being derivatized with PTAD utilizing atmospheric pressure chemical ionization (APCI). The method is clearly directed to biological samples obtained from human subjects. The disclosed methodology also involves tandem mass spectrometry. *See* Abstract; page 738, last paragraph of the introduction; and page 739, 1st full paragraph.

Higashi differs from the instant claims in that it does not require immunopurifying the vitamin D metabolites. It should be noted that, at page 738, the third full paragraph, Higashi discloses that it is conventionally known to purify the sample volumes with HPLC prior to quantification. However, in the practice of the methodology therein, Higashi actually utilizes commercially purchased vitamin D.

Armbruster is assigned to Immunodiagnostik, a commercial supplier of vitamin D metabolites. Armbruster notes that its product is available for routine diagnostic use and in research (col. 5, lines 47-54). Armbruster teaches that to detect vitamin D derivatives anti-vitamin D binding protein antibodies are used (col. 6, lines 52-63) and may be combined with microparticles (col. 6, line 64 – col. 7, line 7). This method facilitates non-radioactive detection of vitamin D derivatives without extensive safety measures being required. Moreover, the competitive method is "*suitable for routine investigations, . . . , for diagnostics is general, and in research*." *See* col. 7, lines 8-14.

QUESTMS-00002481

Application/Control Number: 13/117,997                                    Page 4
Art Unit: 1773

In the instances where the skilled artisan were using HPLC instead of and/or in addition to APCI, it would have been obvious to one of ordinary skill in the art to modify the Higashi methodology by the inclusion of immunopurification *via* anti-vitamin D antibodies to ensure a purified initial product for further research. Certainly, a commercial supplier of vitamin D derivatives would perform a quality control process such as that detailed by Armbruster to ensure the purity of the commercial product.

With respect to the claims reciting specific mass/charge ratios, it is the Examiner's position that the practice of the combined methodology of Higashi/Armbruster would generate ions having similar mass/charge ratios, absent any evidence to the contrary.

### *Double Patenting*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees.   A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir.

QUESTMS-00002482

Application/Control Number: 13/117,997                                    Page 5
Art Unit: 1773

1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422

F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163

USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on a nonstatutory

double patenting ground provided the conflicting application or patent either is shown to

be commonly owned with this application, or claims an invention made as a result of

activities undertaken within the scope of a joint research agreement.

Effective January 1, 1994, a registered attorney or agent of record may sign a

terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with

37 CFR 3.73(b).

Claims 35, 39 and 40 are provisionally rejected on the ground of nonstatutory

obviousness-type double patenting as being unpatentable over claims 1, 10, 18 and 19

of copending Application No. 11/946,765 ("the '765 application").[1]  Although the

conflicting claims are not identical, they are not patentably distinct from each other

because the scope of the present application and the noted claims of the '765

application are the same.  The independent claim of the '765 application does not

expressly recite that the vitamin D metabolite is D3 or the specific mass/charge ratios.

However, claims 10, 18 and 19 recite these limitations.  Thus, it would have been

obvious to the skilled artisan to arrive at the subject matter of the presently claimed

invention.

---

[1] 11/946,765 will be U.S. Patent 7,972,868 on July 5, 2011.

QUESTMS-00002483

Application/Control Number: 13/117,997                                    Page 6
Art Unit: 1773

This is a <u>provisional</u> obviousness-type double patenting rejection because the
conflicting claims have not in fact been patented.


Any inquiry concerning this communication or earlier communications from the
examiner should be directed to MONIQUE COLE whose telephone number is (571)272-
1463.  The examiner can normally be reached on MON - THUR (9-5).

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Jill Warden can be reached on 571-272-1267.  The fax phone number for
the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system.  Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR only.
For more information about the PAIR system, see http://pair-direct.uspto.gov. Should
you have questions on access to the Private PAIR system, contact the Electronic
Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a
USPTO Customer Service Representative or access to the automated information
system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Jill Warden/                                        Monique  Cole
Supervisory Patent Examiner, Art Unit 1773           Examiner
                                                     Art Unit 1773

QUESTMS-00002484

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 13/117,997 | HOLMQUIST ET AL. |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | MONIQUE COLE | 1773 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,787,660 | 09-2004 | Armbruster et al. | 552/653 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| * | U | Higashi et al. "Simultaneous Determination of 25-Hydroxyvitamin D2 and 25-Hydroxyvitamin D3 in Human Plasma by Liquid Chromatography-Tandem Mass Spectrometry Employing Derivatization with a Cookson-Type Reagent" |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

QUESTMS-00002485

# Electronic Patent Application Fee Transmittal

| **Application Number:** | 13115916 |
|---|---|
| **Filing Date:** | 25-May-2011 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Attorney Docket Number:** | 034827-3606 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

QUESTMS-00002486

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Statutory or terminal disclaimer | 1814 | 2 | 140 | 280 |
| **Total in USD ($)** | | | | **280** |

QUESTMS-00002487

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 10808033 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 24-AUG-2011 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 20:05:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 280 |
| RAM confirmation Number | 7844 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | Joint Appendix File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

QUESTMS-00002488

| 1 | Miscellaneous Incoming Letter | 034827-3606_Transmittal.pdf | 85255<br><br>76980e0a9db520b623df316cff5212eb3a2eec8 | no | 3 |

**Warnings:**

**Information:**

| 2 | | 034827-3606_Resp.pdf | 73705<br><br>44f75f22565ccf3bc51323d44aff732f0ededbaa | yes | 3 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | **Document Description** | | **Start** | **End** | |
| | Amendment/Req. Reconsideration-After Non-Final Reject | | 1 | 1 | |
| | Applicant Arguments/Remarks Made in an Amendment | | 2 | 3 | |

**Warnings:**

**Information:**

| 3 | Statutory disclaimers per MPEP 1490. | 034827-3606_TD-226.pdf | 73565<br><br>8ac4eab81ac76c9dbb0817d68053f53ddf8422f9 | no | 1 |

**Warnings:**

**Information:**

| 4 | Statutory disclaimers per MPEP 1490. | 034827-3606_TD-867.pdf | 73496<br><br>24945531b03cef7ee90915a7eae7f823e09ea113 | no | 1 |

**Warnings:**

**Information:**

| 5 | | 034827-3606_IDS.pdf | 134201<br><br>f6223646b6c99d3d528b5afc1ff70a9bf67ac587 | yes | 3 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | **Document Description** | | **Start** | **End** | |
| | Transmittal Letter | | 1 | 2 | |
| | Information Disclosure Statement (IDS) Form (SB08) | | 3 | 3 | |

**Warnings:**

**Information:**

| 6 | Non Patent Literature | USNtcAllw_7-6-11.pdf | 396815<br><br>f0ada5058cf191bc9a974d0f4157d2b7de2721cf | no | 8 |

**Warnings:**

**Information:**

QUESTMS-00002489

| 7 | Non Patent Literature | USNtcAllw_8-4-11.pdf | 359129 | no | 6 |
| | | | 782df3f5b009613cef2692708585988e69e3 8d65 | | |

**Warnings:**

**Information:**

| 8 | Non Patent Literature | USOA_6-29-11.pdf | 242402 | no | 7 |
| | | | 1d7be8b12ffe2546a5e96db4995c92c62e5 aba56 | | |

**Warnings:**

**Information:**

| 9 | Non Patent Literature | USOA_7-21-11.pdf | 215449 | no | 6 |
| | | | ef8b11154ffa59fba8e69c4d8839c37814a0f 92e | | |

**Warnings:**

**Information:**

| 10 | Non Patent Literature | USOA_7-29-11.pdf | 277916 | no | 8 |
| | | | f36a9bebeb824d924399ca8d968a24fe63c 5a71d | | |

**Warnings:**

**Information:**

| 11 | Fee Worksheet (SB06) | fee-info.pdf | 30543 | no | 2 |
| | | | bb6481bf09d2ae4a003ac6d5c31108a7b0 66005 | | |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 1962476 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002490

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      Clarke, et al.

Title:          METHODS FOR DETECTING
                VITAMIN D METABOLITES
                BY MASS SPECTROMETRY

Appl. No.:      13/115,916

Filing Date:    5/25/2011

Examiner:       COLE, Monique T.

Art Unit:       1773

Confirmation    4404
Number:

## AMENDMENT TRANSMITTAL

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith is an amendment in the above-identified application.

[   ]   Small Entity status under 37 C.F.R. § 1.9 and § 1.27 has been established by a previous assertion of Small Entity status.

[ **X** ]   Information Disclosure Statement and Form PTO/SB08 are enclosed.

[ X ]   Terminal Disclaimers over U.S. Patent Nos. 7,745,226 and 7,972,867 are enclosed.

DLMR_929320.1                               -1-

QUESTMS-00002491

Atty. Dkt. No. 034827-3606

[ ]    The fee required for additional claims is calculated below:

| | Claims As Amended | | Previously Paid For | | Extra Claims Present | | Rate | | Additional Claims Fee |
|---|---|---|---|---|---|---|---|---|---|
| Total Claims: | 23 | - | 23 | = | 0 | x | $52.00 | = | $0.00 |
| Independent Claims: | 2 | - | 3 | = | 0 | x | $220.00 | = | $0.00 |
| First presentation of any Multiple Dependent Claims: | | | | | | + | $390.00 | = | $0.00 |
| | | | | | | | CLAIMS FEE TOTAL | = | $0.00 |

[ ]    Applicant hereby petitions for an extension of time under 37 C.F.R. §1.136(a) for the total number of months checked below:

| | | | |
|---|---|---|---|
| [ ] | Extension for response filed within the first month: | $130.00 | $0.00 |
| [ ] | Extension for response filed within the second month: | $490.00 | $0.00 |
| [ ] | Extension for response filed within the third month: | $1,110.00 | $0.00 |
| [ ] | Extension for response filed within the fourth month: | $1,730.00 | $0.00 |
| [ ] | Extension for response filed within the fifth month: | $2,350.00 | $0.00 |
| | EXTENSION FEE TOTAL: | | $0.00 |
| [ X ] | Statutory Disclaimer Fees under 37 C.F.R. 1.20(d): | $140.00 | $280.00 |
| | CLAIMS, EXTENSION AND DISCLAIMER FEE TOTAL: | | $280.00 |
| [ ] | Small Entity Fees Apply (subtract ½ of above): | | $0.00 |
| | Extension Fees Previously Paid: | | $0.00 |
| | TOTAL FEE: | | $280.00 |

The above-identified fees of $280.00 are being paid by credit card via EFS-Web.

DLMR_929320.1

-2-

QUESTMS-00002492

Atty. Dkt. No. 034827-3606

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741.  Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

If any extensions of time are needed for timely acceptance of papers submitted herewith, applicant hereby petitions for such extension under 37 C.F.R. §1.136 and authorizes payment of any such extensions fees to Deposit Account No. 19-0741.

Please direct all correspondence to the undersigned attorney or agent at the address indicated below.

Respectfully submitted,

Date ___8/24/11___                                 By _____

FOLEY & LARDNER LLP                          Barry S. Wilson, Reg. No. 39,431
Customer Number: 30542                          Anthony C. Kuhlmann, Reg. No. 57,147
Telephone:    (858) 847-6722                      Attorneys for Applicant
Facsimile:    (858) 792-6773

QUESTMS-00002493

| *Application Number* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 13/115,916 | CLARKE ET AL. |
| | | |

| **Document Code - DISQ** | **Internal Document – DO NOT MAIL** |
|---|---|

| **TERMINAL DISCLAIMER** | ☒ APPROVED | ☐ DISAPPROVED |
|---|---|---|
| **Date Filed : 8/24/11** | **This patent is subject to a Terminal Disclaimer** | |

**Approved/Disapproved by:**

Felicia D. Roberts - 2 TDs approved with this filing date:

1. 7,745,226
2. 7,972,867

U.S. Patent and Trademark Office

QUESTMS-00002494



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 |

**CONFIRMATION NO. 4404**

30542
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

**PUBLICATION NOTICE**



*OC000000049847046*

**Title:** METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

**Publication No.** US-2011-0220785-A1
**Publication Date:** 09/15/2011

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

QUESTMS-00002495



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

30542          7590          09/16/2011

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 09/16/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

TITLE OF INVENTION: METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/16/2011 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

QUESTMS-00002496

PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** _Mail_   **Mail Stop ISSUE FEE**
                                                                                **Commissioner for Patents**
                                                                                **P.O. Box 1450**
                                                                                **Alexandria, Virginia 22313-1450**
                                                    _or Fax_   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

30542       7590      09/16/2011

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

TITLE OF INVENTION: METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/16/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COLE, MONIQUE T | 1773 | 436-173000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
  ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
  ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered attorney or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                          (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent):   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
  ☐ Issue Fee
  ☐ Publication Fee (No small entity discount permitted)
  ☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
  ☐ A check is enclosed.
  ☐ Payment by credit card. Form PTO-2038 is attached.
  ☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
  ☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.          ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Joint Appendix 1806

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.       OMB 0651-0033       U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

30542      7590      09/16/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 09/16/2011

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

QUESTMS-00002498

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

QUESTMS-00002499

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 13/115,916 | CLARKE ET AL. | |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the response filed 8/24/2011.*

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-23.*

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All   b) ☐ Some*   c) ☐ None   of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

6. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
       1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.
   (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
       Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

7. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Attachment(s)
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____.
7. ☐ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____.

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

QUESTMS-00002500

Receipt date: 08/24/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/115,916 |
| | Filing Date | 5/25/2011 |
| | First Named Inventor | Nigel Clarke |
| | Art Unit | 1773 |
| *(use as many sheets as necessary)* | Examiner Name | Cole, Monique T. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 034827-3606 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A1 | US Notice of Allowance dated 7/6/2011 in application 12/630,796 (054769-9993) | |
| | A2 | US Notice of Allowance dated 8/4/2011 in application 13/115,935 (034827-0742) | |
| | A3 | US Office Action dated 6/29/2011 in application 13/115,935(034827-0742) | |
| | A4 | US Office Action dated 7/21/2011 in application 13/165,685 (054769-9973) | |
| | A5 | US Office Action dated 7/29/2011 in application 13/117,997 (054769-9990) | |

## ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

| Examiner Signature | /Monique Cole/ | Date Considered | 09/01/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_923996.1

QUESTMS-00002501

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Issue Classification** | 13115916 | CLARKE ET AL. |
| | Examiner | Art Unit |
| | MONIQUE COLE | 1773 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | |
|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | NON-CLAIMED |

| CLASS | SUBCLASS | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 436 | 173 | G | 0 | 1 | N | 24 / 00 (2006.01.01) | | |

### CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | |
|---|---|---|---|---|---|---|---|
| 436 | 131 | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

☒ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☒ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |

| /MONIQUE COLE/ Examiner.Art Unit 1773 | 9/1/2011 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 23 | |
| /JILL WARDEN/ Supervisory Patent Examiner.Art Unit 1773 | 09/11/2011 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

U.S. Patent and Trademark Office

Part of Paper No.  20110901

Joint Appendix 1811

QUESTMS-00002502

| **_Search Notes_** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 13115916 | CLARKE ET AL. |
| | **Examiner** | **Art Unit** |
| | MONIQUE COLE | 1773 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 436 | 173, 131 | 7/2011 | MC |
| | updated | 9/2011 | MC |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| | | |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 436 | 173, 131 | 9/2011 | MC |

| | |
|---|---|
| | |

QUESTMS-00002503

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Clarke, et al. |
| Title: | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| Appl. No.: | 13/115,916 |
| Filing Date: | 5/25/2011 |
| Examiner: | Monique T. Cole |
| Art Unit: | 1773 |
| Conf. No.: | 4404 |

<u>AMENDMENT UNDER 37 C.F.R. § 1.312</u>

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450
Sir:

Applicant acknowledges receipt of a Notice of Allowance in the above-captioned application.  Prior to payment of the issue fee, please amend the application as follows:

**Amendments to the Claims** may be found in the **Listing of Claims**, which begin on page 2 of this document.

**Remarks/Arguments** begin on page 5 of this document.

-1-

QUESTMS-00002504

Atty. Dkt. No. 034827-3606

**Amendments to the Claims**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims**

1.     (Original) A method for determining the amount of a vitamin D metabolite in a sample by tandem mass spectrometry, comprising:

(a) generating a protonated and dehydrated precursor ion of said vitamin D metabolite;

(b) generating one or more fragment ions of said precursor ion; and

(c) detecting the presence or amount of one or more of said ions generated in step (a) or (b) or both and relating the detected ions to the amount of said vitamin D metabolite in said sample.

2.     (Original) The method of claim 1, wherein said sample is subjected to a purification step prior to  ionization.

3.     (Original) The method of claim 2, wherein said purification step comprises chromatography.

4.     (Original) The method of claim 3, wherein said chromatography comprises liquid chromatography.

5.     (Original) The method of claim 3, wherein said chromatography comprises high performance liquid chromatography (HPLC).

6.     (Original) The method of claim 2, wherein said purification step comprises protein precipitation.

7.     (Original) The method of claim 6, wherein said purification step does not include high turbulence liquid chromatography (HTLC).

-2-

QUESTMS-00002505

8.      (Original) The method of claim 2, wherein said purification step comprises chiral chromatography.

9.      (Original) The method of claim 1, wherein said sample or said vitamin D metabolite is not subjected to gas-chromatography prior to said ionization step.

10.     (Canceled)

11.     (Original) The method of claim 1, wherein said vitamin D metabolite is 25-hydroxyvitamin D3.

12.     (Original) The method of claim 1, wherein said vitamin D metabolite is 25-hydroxyvitamin D2.

13.     (Original) The method of claim 1, wherein said vitamin D metabolite is 1,25-dihydroxyvitamin D2.

14.     (Original) A method for determining the amounts of two or more vitamin D metabolites in a sample in a single assay, said method comprising:

(a)      ionizing two or more vitamin D metabolites to generate protonated and dehydrated precursor ions specific for each of said two or more vitamin D metabolites;

(b)      generating one or more fragment ions of each of said precursor ions; and

(c)      detecting the amount of one or more of said ions generated in step (a) or (b) or both and relating the detected ions to the amounts of said two or more vitamin D metabolites in said sample.

15.     (Original) The method of claim 14, wherein said sample is subjected to a purification step prior to said ionization step.

16.     (Original) The method of claim 15, wherein said purification step comprises chromatography.

-3-

QUESTMS-00002506

17.    (Original) The method of claim 16, wherein said chromatography comprises liquid chromatography.

18.    (Original) The method of claim 16, wherein said chromatography comprises high performance liquid chromatography (HPLC).

19.    (Original) The method of claim 15, wherein said purification step comprises protein precipitation and does not include high turbulence liquid chromatography.

20.    (Original) The method of claim 14, wherein said sample or said two or more vitamin D metabolites are not subjected to gas-chromatography prior to said ionization step.

21.    (Original) The method of claim 14, wherein said vitamin D metabolites comprise 25-hydroxyvitamin D3 and 25-hydroxyvitamin D2.

22.    (Original) The method of claim 14, wherein said two or more vitamin D metabolites comprise one or more vitamin D metabolites selected from the group consisting of 25-hydroxyvitamin D3, 25-hydroxyvitamin D2, 1,25-dihydroxyvitamin D3 and 1,25-dihydroxyvitamin D2.

23.    (Original) The method of claim 14, wherein said two or more vitamin D metabolites comprise 1,25-dihydroxyvitamin D3 and 1,25-dihydroxyvitamin D2.

24.    (New) The method of claim 1, wherein said vitamin D metabolite is 1,25-dihydroxyvitamin D3.

-4-

QUESTMS-00002507

Atty. Dkt. No. 034827-3606

## REMARKS

By the present communication, claim 24 is newly added and claim 10 is canceled. No new matter is introduced by the addition of claim 24. Claim 24 depends from claim 1 and specifies that the vitamin D metabolite is 1,25-dihydroxyvitamin D3, one of the vitamin D metabolites listed in the original claim 10 (now canceled). Support for claim 24 may be found, for example, in the Markush Group of vitamin D metabolites listed original claim 10 and throughout the Specification.

After amending the claims as set forth above, Claims 1-9 and 11-24 are pending. A detailed listing of all claims that are in the application is presented herewith beginning on page 2, along with an appropriate defined status identifier.

New claim 24 is drawn to a single vitamin D metabolite originally recited in the Markush group listed in claim 10. Claims drawn to each of the other individual members of the Markush group are found in dependent claims 11-13. With the cancelation of claim 10, new claim 24 is needed to provide coverage of each individual member of the allowed Markush Group. New claim 24 requires no additional search or examination and is patentable because the specific vitamin D metabolite was a member of the Markush Group in claim 10, a claim that has already been searched, examined, and allowed.

## CONCLUSION

In view of the above amendments and remarks, reconsideration and favorable action on all claims are respectfully requested. In the event any matters remain to be resolved in view of this communication, the Examiner is encouraged to contact the undersigned so that a prompt disposition of this application can be achieved.

-5-

Atty. Dkt. No. 034827-3606

It is believed that no fees are due in connection with this Rule 312 amendment. In the event this is not correct, the undersigned authorizes the Commissioner to charge Deposit Account No. 19-0741.

Respectfully submitted,

Date _____9/22/11_____

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:    (858) 847-6722
Facsimile:    (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

-6-

DLMR_933357.1

QUESTMS-00002509

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11018877 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel  Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 22-SEP-2011 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 17:33:54 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 034827-3606_Amend.pdf | 176338<br>29edbc04f175adf9bccc53bb98f04296806ab8f6 | yes | 6 |

QUESTMS-00002510

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment after Notice of Allowance (Rule 312) | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 6 |

| | |
|---|---|
| Warnings: | |
| Information: | |
| **Total Files Size (in bytes):** | 176338 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002511

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

30542            7590            10/17/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/17/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

QUESTMS-00002512

| **Response to Rule 312 Communication** | **Application No.** | **Applicant(s)** |
|---|---|---|
| | 13/115,916 | CLARKE ET AL. |
| | **Examiner** | **Art Unit** |
| | MONIQUE COLE | 1773 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☒ The amendment filed on *9/22/2011* under 37 CFR 1.312 has been considered, and has been:

   a) ☒  entered.

   b) ☐  entered as directed to matters of form not affecting the scope of the invention.

   c) ☐  disapproved because the amendment was filed after the payment of the issue fee.
         Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1)
         and the required fee to withdraw the application from issue.

   d) ☐  disapproved.  See explanation below.

   e) ☐  entered  in part. See explanation below.

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

/Monique  Cole/
Examiner, Art Unit 1773

QUESTMS-00002513

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Clarke, et al. |
| Title: | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| Appl. No.: | 13/115,916 |
| Filing Date: | 5/25/2011 |
| Examiner: | Monique T. Cole |
| Art Unit: | 1773 |
| Conf. No.: | 4404 |

### AMENDMENT UNDER 37 C.F.R. § 1.312

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Applicant acknowledges receipt of a Notice of Allowance in the above-captioned application. Prior to payment of the issue fee, please amend the application as follows:

**Amendments to the Claims** may be found in the **Listing of Claims**, which begin on page 2 of this document.

**Remarks/Arguments** begin on page 5 of this document.

-1-

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:    Clarke, et al.

Title:    METHODS FOR DETECTING VITAMIN D
METABOLITES BY MASS SPECTROMETRY

Appl. No.:    13/115,916

Filing Date:    5/25/2011

Examiner:    Monique T. Cole

Art Unit:    1773

Conf. No.:    4404

### AMENDMENT UNDER 37 CFR 1.312

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Applicant acknowledges receipt of a Notice of Allowance in the above-captioned application. Prior to payment of the issue fee, please amend the application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this document.

**Remarks/Arguments** begin on page 5 of this document.

-1-

Case 1:18-cv-01436-MN Document 735-2 Filed 10/21/19 Page 165 of 246 PageID #: 4127

Atty. Dkt. No. 034827-3606

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

    1.    (Currently Amended) A method for determining the amount of a vitamin D metabolite in a sample by tandem mass spectrometry, comprising:

    (a) generating a protonated and dehydrated precursor ion of said vitamin D metabolite;

    (b) generating one or more fragment ions of said precursor ion; and

    (c) detecting the ~~presence or~~ amount of one or more of said ions generated in step (a) or (b) or both and relating the detected ions to the amount of said vitamin D metabolite in said sample.

    2.    (Original) The method of claim 1, wherein said sample is subjected to a purification step prior to ionization.

    3.    (Original) The method of claim 2, wherein said purification step comprises chromatography.

    4.    (Original) The method of claim 3, wherein said chromatography comprises liquid chromatography.

    5.    (Original) The method of claim 3, wherein said chromatography comprises high performance liquid chromatography (HPLC).

    6.    (Original) The method of claim 2, wherein said purification step comprises protein precipitation.

    7.    (Original) The method of claim 6, wherein said purification step does not include high turbulence liquid chromatography (HTLC).

    8.    (Original) The method of claim 2, wherein said purification step comprises chiral chromatography.

-2-

QUESTMS-00002516

Atty. Dkt. No. 034827-3606

9.      (Original) The method of claim 1, wherein said sample or said vitamin D metabolite is not subjected to gas-chromatography prior to said ionization step.

10.      (Canceled)

11.      (Original) The method of claim 1, wherein said vitamin D metabolite is 25-hydroxyvitamin D3.

12.      (Original) The method of claim 1, wherein said vitamin D metabolite is 25-hydroxyvitamin D2.

13.      (Original) The method of claim 1, wherein said vitamin D metabolite is 1,25-dihydroxyvitamin D2.

14.      (Original) A method for determining the amounts of two or more vitamin D metabolites in a sample in a single assay, said method comprising:

(a)      ionizing two or more vitamin D metabolites to generate protonated and dehydrated precursor ions specific for each of said two or more vitamin D metabolites;

(b)      generating one or more fragment ions of each of said precursor ions; and

(c)      detecting the amount of one or more of said ions generated in step (a) or (b) or both and relating the detected ions to the amounts of said two or more vitamin D metabolites in said sample.

15.      (Original) The method of claim 14, wherein said sample is subjected to a purification step prior to said ionization step.

16.      (Original) The method of claim 15, wherein said purification step comprises chromatography.

17.      (Original) The method of claim 16, wherein said chromatography comprises liquid chromatography.

-3-

QUESTMS-00002517

Atty. Dkt. No. 034827-3606

18.     (Original) The method of claim 16, wherein said chromatography comprises high performance liquid chromatography (HPLC).

19.     (Original) The method of claim 15, wherein said purification step comprises protein precipitation and does not include high turbulence liquid chromatography.

20.     (Original) The method of claim 14, wherein said sample or said two or more vitamin D metabolites are not subjected to gas-chromatography prior to said ionization step.

21.     (Original) The method of claim 14, wherein said vitamin D metabolites comprise 25-hydroxyvitamin D3 and 25-hydroxyvitamin D2.

22.     (Original) The method of claim 14, wherein said two or more vitamin D metabolites comprise one or more vitamin D metabolites selected from the group consisting of 25-hydroxyvitamin D3, 25-hydroxyvitamin D2, 1,25-dihydroxyvitamin D3 and 1,25-dihydroxyvitamin D2.

23.     (Original) The method of claim 14, wherein said two or more vitamin D metabolites comprise 1,25-dihydroxyvitamin D3 and 1,25-dihydroxyvitamin D2.

24.     (Previously Presented) The method of claim 1, wherein said vitamin D metabolite is 1,25-dihydroxyvitamin D3.

-4-

QUESTMS-00002518

Atty. Dkt. No. 034827-3606

## REMARKS

By the present communication, claim 1 is amended, and no claims are canceled or added. No new matter is introduced by the present amendment. Claim 1 is amended to remove the words "or presence", making the claim consistent with the preamble. The amended claim requires no additional search or examination and is patentable because the amendment does not change the scope of a claim that has already been searched, examined, and allowed.

After amending the claims as set forth above, claims 1-9 and 11-24 are now pending in this application. A detailed listing of all claims that are in the application is presented herewith beginning on page 2, along with an appropriate defined status identifier.

It is believed that no fees are due in connection with this Rule 312 amendment. In the event this is not correct, the undersigned authorizes the Commissioner to charge Deposit Account No. 19-0741.

## CONCLUSION

In view of the above amendments and remarks, reconsideration and favorable action on all claims are respectfully requested. In the event any matters remain to be resolved in view of this communication, the Examiner is encouraged to contact the undersigned so that a prompt disposition of this application can be achieved.

Respectfully submitted,

Date _____11/7/11_____

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:    (858) 847-6776
Facsimile:    (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for the Applicants

-5-

4830-9159-5021.1

QUESTMS-00002519

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11348714 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 07-NOV-2011 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 18:59:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 034827-3606_Amend-312.pdf | 161090<br>f3d50de878c684b22276feefad93da9c11c2ed7f | yes | 5 |

QUESTMS-00002520

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment after Notice of Allowance (Rule 312) | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 5 |

| Warnings: | |
|---|---|
| Information: | |
| **Total Files Size (in bytes):** | 161090 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002521

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/115,916 |
| | Filing Date | 5/25/2011 |
| Date Submitted: November 7, 2011 | First Named Inventor | Nigel Clarke |
| | Art Unit | 1773 |
| *(use as many sheets as necessary)* | Examiner Name | COLE, Monique T. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 034827-3606 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document — Serial Number-Kind Code[2] *(if known)* | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A1 | US Notice of Allowance dated 8/24/2011 in application 13/165,685 (054769-9973) | |
| | A2 | Examination Report dated 9/20/2011 for EP Application No. 08 853 843.4 (054769-9997) | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

QUESTMS-00002522



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

30542    7590    08/24/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
| --- |
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1773 | |

DATE MAILED: 08/24/2011

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 13/165,685 | 06/21/2011 | Brett Holmquist | 054769-9973 | 4343 |

TITLE OF INVENTION: METHODS FOR DETECTING DIHYDROXYVITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 11/25/2011 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

QUESTMS-00002523

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: Mail**    **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax**    **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

| CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address) | Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission. |
|---|---|

30542    7590    08/24/2011

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/165,685 | 06/21/2011 | Brett Holmquist | 054769-9973 | 4343 |

TITLE OF INVENTION: METHODS FOR DETECTING DIHYDROXYVITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 11/25/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COLE, MONIQUE T | 1773 | 436-173000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE          (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.      ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____      Date _____

Typed or printed name _____      Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

QUESTMS-00002524



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/165,685 | 06/21/2011 | Brett Holmquist | 054769-9973 | 4343 |

30542      7590      08/24/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 08/24/2011

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 0 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 0 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 02/11)

QUESTMS-00002525

# Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

QUESTMS-00002526

| *Notice of Allowability* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 13/165,685 | HOLMQUIST ET AL. | |
| | Examiner | Art Unit | |
| | MONIQUE COLE | 1773 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the response of 7/27/2011*.

2. ☒ The allowed claim(s) is/are *1-24*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
            International Bureau (PCT Rule 17.2(a)).
    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached
        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .
    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
        Paper No./Mail Date _____ .
    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Notice of Draftperson's Patent Drawing Review (PTO-948)
3. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date _____
4. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material

5. ☐ Notice of Informal Patent Application
6. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .
7. ☐ Examiner's Amendment/Comment
8. ☐ Examiner's Statement of Reasons for Allowance
9. ☐ Other _____ .

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/165,685 |
| | Filing Date | 6/21/2011 |
| | First Named Inventor | Brett Holmquist |
| | Art Unit | 1773 |
| *(use as many sheets as necessary)* | Examiner Name | COLE, Monique T. |
| Sheet | 1 | of | 8 | Attorney Docket Number | 054769-9973 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | 2003/0171605 | 09-11-2003 | REDDY ET AL. | |
| | A2 | 2004/0235193 | 11-25-2004 | SOLDIN | |
| | A3 | 2006/0054807 | 03-16-2006 | PICARD ET AL. | |
| | A4 | 2006/0094125 | 05-04-2006 | SINGH ET AL | |
| | A5 | 2006/0228808 | 10-12-2006 | CLARKE ET AL | |
| | A6 | 2006/0228809 | 10-12-2006 | CLARKE ET AL | |
| | A7 | 2007/0139956 | 06-21-2007 | SUGIMOTO ET AL | |
| | A8 | 2008/0241955 | 10-02-2008 | PURKAYASTHA ET AL. | |
| | A9 | 2009/0137056 | 05-28-2009 | HOLMQUIST ET AL | |
| | A10 | 5,772,874 | 06-30-1998 | QUINN ET AL. | |
| | A11 | 5,795,469 | 08-18-1998 | QUINN ET AL. | |
| | A12 | 5,919,368 | 07-06-1999 | QUINN ET AL. | |
| | A13 | 5,968,367 | 10-19-1999 | QUINN ET AL. | |
| | A14 | 6,107,623 | 08-22-2000 | BATEMAN ET AL. | |
| | A15 | 6,124,137 | 09-26-2000 | HUTCHENS ET AL. | |
| | A16 | 6,204,500 | 03-20-2001 | WHITEHOUSE ET AL. | |
| | A17 | 6,268,144 | 07-31-2001 | KOSTER | |
| | A18 | 6,787,660 | 09-07-2004 | ARMBRUSTER ET AL. | |
| | A19 | 6,977,143 | 12-20-2005 | CAULFIELD ET AL. | |
| | A20 | 7,087,395 | 08-08-2006 | GARRITY ET AL. | |
| | A21 | 7,321,116 | 01-22-2008 | PICARD ET AL. | |
| | A22 | 7,348,137 | 03-25-2008 | CAULFIELD ET AL. | |
| | A23 | 7,473,560 | 01-06-2009 | SOLDIN | |
| | A24 | 7,618,827 | 11-17-2009 | STEVEN | |
| | A25 | 7,745,226 | 06-29-2010 | CLARKE ET AL. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | A26 | WO-2007/039193 | 04-12-2007 | ROCHE DIAGNOSTICS GMBH | | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEPE 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_920292.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002528

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application Number | 13/165,685 |
| | Filing Date | 6/21/2011 |
| | First Named Inventor | Brett Holmquist |
| | Art Unit | 1773 |
| (use as many sheets as necessary) | Examiner Name | COLE, Monique T. |
| Sheet 2 of 8 | Attorney Docket Number | 054769-9973 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | A27 | WO-2007/139956 | 12-06-2007 | LABORATORY CORPORATION OF AMERICA HOLDINGS | | |
| | A28 | WO-2008/097246 | 08-14-2008 | SCHROEDER ET AL | | |
| | A29 | WO-95/33279 | 12-07-1995 | DERRICK ET AL | | |
| | A30 | WO-96/18618 | 06-20-1996 | BAYER AKTIENGESELLSCHAFT; NIHON BAYER AGROCHEM K.K. | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A31 | Armas et. al, Vitamin D2 Is Much Less Effective than Vitamin D3 in Humans, J. Clin. Endocrinol. Metab. 89:5387-5391 (2004). | |
| | A32 | Aronov et al, Metabolic profiling of major vitamin D metabolites using Diels-Alder derivatization and ultra-performance liquid chromatography-tandem mass spectrometry, Anal Bioanal Chem, 2008, 391:1917-1930 | |
| | A33 | Ascalone et al, Stereospecific determination of amisulpride, a new benzamide derivative, in human plasma and urine by automated solid-phase extraction and liquid chromatography on a chiral column. application to pharmacokinetics, Journal of Chromatography B., 676:95-105, 1996. | |
| | A34 | Bartolucci, et al., Liquid chromatography tandem mass spectrometric quantitation of sulfamethazine and its metabolites: direct analysis of swine urine by triple quadrupole and by ion trap mass spectrometry, Rapid Commun. Mass Spectrom, 14:967-73 (2000). | |
| | A35 | Busch, A Glossary for Mass Spectrometry, Mass Spectrometry, 17(65):526-534, 2002 | |
| | A36 | Capote et al, Identification and determination of fat-soluble vitamins and metabolites in human serum by liquid chromatography/triple quadrupole mass spectrometry with multiple reaction monitoring, Rapid Commun. Mass Spectrom., 21:1745-1754, 2007. | |
| | A37 | Coldwell et al, Mass Fragmentographic Assay for 25-Hydroxyvitamin D in Plasma Without Derivatization: Enhanced Sensitivity for Metabolites of Vitamins D2 and D3 After Pre-column Dehydration, Journal of Mass Spectrometry, 30:348-356, (1995). | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3) 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2

DLMR_920292.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002529

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/165,685 |
| | | | Filing Date | 6/21/2011 |
| | | | First Named Inventor | Brett Holmquist |
| | | | Art Unit | 1773 |
| *(use as many sheets as necessary)* | | | Examiner Name | COLE, Monique T. |
| Sheet | 3 | of 8 | Attorney Docket Number | 054769-9973 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A38 | Coldwell et al, Stable isotope-labeled vitamin D, metabolites and chemical analogs: synthesis and use in mass spectrometric studies, Steroids, 55: 418-432, 1990. | |
| | A39 | Coldwell et al., Measurement of Vitamins D2 and D3 and Seven Major Metabolites in a Single Sample of Human Plasma Using Gas Chromatography/Mass Spectrometry, Biomedical and Environmental Mass Spectrometry, 16:81-85 (1988). | |
| | A40 | Extended Search Report dated 02/02/2009 in EP application 06749272 (034827-3605) | |
| | A41 | Extended Search Report dated 12/22/2010 in EP application 08853843 (054769-9997) | |
| | A42 | Guo et al, Steroid profiles using liquid chromatography-Tandem mass spectrometry with atmospheric pressure photoionization source, Arch Pathol Lab Med., 128: 469-475, 2004. | |
| | A43 | Higashi et al, Characterization of new conjugated metabolites in bile of rats administered 24,25-dihydroxyvitamin D3 and 25-hydroxyvitamin D3, Steroids, 65(5):281-94 (2000) | |
| | A44 | Higashi et al, Characterization of urinary metabolites of vitamin D3 in man under physiological conditions using liquid chromatography-tandem mass spectrometry, J Pharm Biomed Anal. 29(5):947-55 (2002) | |
| | A45 | Higashi et al, Liquid chromatography-tandem mass spectrometric method for the determination of salivary 25-hydroxyvitamin D3: a noninvasive tool for the assessment of vitamin D status, Anal. Bioanal Chem, 2008, 391:229-238 | |
| | A46 | Higashi et al, Simultaneous Determination of 25-Hydroxyvitamin D2 and 25-Hydroxyvitamin D3 in Human Plasma by Liquid Chromatography-Tandem Mass Spectrometry Employing Derivatization with a Cookson-Type Reagent, Biol Pharm Bull., 24(7):738-43, (2001). | |
| | A47 | International Preliminary Report on Patentability dated 10/9/2007 in application PCT/US2006/012539 (034827-3604) | |
| | A48 | International Preliminary Report on Patentability dated 6/01/2010 in application PCT/US2008/084709 (054769-9992) | |
| | A49 | International Search Report and Written Opinion dated 1/26/2011 in application PCT/US2010/056461 (034827-0381) | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

DLMR_920292.1    ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002530

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/165,685 |
| | Filing Date | 6/21/2011 |
| | First Named Inventor | Brett Holmquist |
| | Art Unit | 1773 |
| *(use as many sheets as necessary)* | Examiner Name | COLE, Monique T. |
| Sheet 4 of 8 | Attorney Docket Number | 054769-9973 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A50 | International Search Report and Written Opinion dated 1/27/2011 in application PCT/US2010/057627 (034827-0741) | |
| | A51 | International Search Report and Written Opinion dated 2/7/2011 in application PCT/US2010/059765 (034827-1052) | |
| | A52 | International Search Report and Written Opinion dated 2/8/2011 in application PCT/US2010/059746 (034827-0771) | |
| | A53 | International Search Report dated 02/24/2009 in application PCT/US2008/084709 (054769-9992) | |
| | A54 | International Search Report dated 1/14/2011 in PCT/US2010/056886 (095276-0201) | |
| | A55 | International Search Report dated 1/4/2007 in application PCT/US2006/012539 (034827-3604) | |
| | A56 | International Search Report dated 2/11/2011 in application PCT/US2010/059771 (034827-1022) | |
| | A57 | Interview Summary dated 01/28/2009 in application 11/101,166 (054769-9993) | |
| | A58 | Jemal, High-throughput quantitative bioanalysis by LC/MS/MS, Biomedical Chromatography, 14:422-429, 2000. | |
| | A59 | Jones et al, Biological activity of 1,25-Dihydroxyvitamin D2 in the Chick, Biochemistry, 15(3): 713-716, 1976. | |
| | A60 | Jones et al, Current understanding of the molecular actions of Vitamin D, Physiological Reviews, 78(4): 1193-1231, 1998. | |
| | A61 | Jones et al, Vitamin Ds: Metabolites and Analogs, Chapter 2 in Modern Chromatographic Analysis of Vitamins, Third Edition, 2002, 79 pgs. | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901 04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_920292.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002531

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/165,685 |
| | | | Filing Date | 6/21/2011 |
| | | | First Named Inventor | Brett Holmquist |
| *(use as many sheets as necessary)* | | | Art Unit | 1773 |
| | | | Examiner Name | COLE, Monique T. |
| Sheet | 5 | of 8 | Attorney Docket Number | 054769-9973 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A62 | Kamao et al, C-3 Epimerization of Vitamin D3 metabolites and further metabolism of C-3 epimers, The Journal of Biological Chemistry, 279 (16):15897-15907, (2004). | |
| | A63 | Kissmeyer et al, Sensitive analysis of 1a,25-dihydroxyvitamin D3 in biological fluids by liquid chromatography-tandem mass spectrometry, J Chromatogr A., 935(1-2):93-103 (2001) | |
| | A64 | Kobayashi et al, Tandem immunoaffinity chromatography for plasma 1a,25-dihydroxyvitamin D3 utilizing two antibodies having different specificities: A novel and powerful pretreatment tool for 1a,25-dihydroxyvitamin D3 radioreceptor assays, J.Steroid Biochem. Molec. Biol., 54(5/6): 217-226, 1995. | |
| | A65 | KOBAYASHI, et al, Production of a group-specific antibody to 1 alpha,25-dihydroxyvitamin D and its derivatives having the 1 alpha,3 beta-dihydroxylated A-ring structure, Steroids, (1994), 59(7):404-11 | |
| | A66 | Letter from Vicki G. Norton, Ph.D. Partner, Duane Morris LLP, September 4, 2008 (originally cited in an Information Disclosure Statement on October 15, 2008 for U.S. Patent Application No. 10/977,121 ) | |
| | A67 | Maunsell et al, Routine Isotope-Dilution Liquid Chromatography-Tandem Mass Spectrometry Assay for Simultaneous Measurement of the 25-Hydroxy Metabolites of Vitamins D2 and D3, Clinical Chemistry, 51:9 1683-1690, (2005). | |
| | A68 | Merchant et al, Recent advancements in surface-enhanced laser desorption/ionization-time of flight-mass spectrometry, Electrophoresis 21:1164-1177 (2000). | |
| | A69 | Miller et al, Genetic causes of rickets, Current Opinions in Pediatrics, 11:333-339, 1999. | |
| | A70 | Odrzywolska et al, Convergent Synthesis, Chiral HPLC, and Vitamin D Receptor Affinity of Analogs of 1,25-Dihydroxycholecalciferol, Chirality, 11:249-255, (1999). | |
| | A71 | Office Action dated 09/29/2009 for EP Application No. 06749272.8 (034827-3605) | |
| | A72 | Polson et al, Optimization of protein precipitation based upon effectiveness of protein removal and ionization effect in liquid chromatography-tandem mass spectrometry, Journal of Chromatography B, 785:263-275 (2003). | |
| | A73 | Robb et al, Atmospheric Pressure Photoionization: An Ionization Method for Liquid Chromatography-Mass Spectrometry, Anal. Chem., 72(15): 3653-3659 (2000). | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_920292.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002532

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/165,685 |
| | | | Filing Date | 6/21/2011 |
| | | | First Named Inventor | Brett Holmquist |
| | | | Art Unit | 1773 |
| *(use as many sheets as necessary)* | | | Examiner Name | COLE, Monique T. |
| Sheet | 6 | of | 8 | Attorney Docket Number | 054769-9973 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A74 | Salm et al, The Quantification of Sirolimus by High-Performance Liquid Chromatography-Tandem Mass Spectrometry and Microparticle Enzyme Immunoassay in Renal Transplant Recipients, Clin. Therapeutics 22 Supl. B:B71-B85 (2000). | |
| | A75 | Singh et al, C-3 epimers can account for a significant proportion of total circulating 25-hydroxyvitamin D in infants, complicating accurate measurement and interpretation of vitamin D status, The Journal of Clinical Endocrinology & Metabolism, 91(8): 3055-3061, 2006. | |
| | A76 | Taylor et al, Simultaneous Quantification of Tacrolimus and Sirolimus in Human Blood, by High-Performance Liquid Chromatography - Tandem Mass Spectrometry, Therapeutic Drug Monitoring 22:608-12 (2000) | |
| | A77 | Tsugawa et al, Determination of 25-hydroxyvitamin D in human plasma using high-performance liquid chromatography-tandem mass spectrometry, Anal. Chem., 77:3001-3007, 2005. | |
| | A78 | US Notice of Allowance dated 12/15/2009 in application 11/101,166 (054769-9993) | |
| | A79 | US Notice of Allowance dated 3/2/2011 in application 11/386,215 (034827-3603) | |
| | A80 | US Notice of Allowance dated 3/3/2011 in application 11/946,765 (054769-9991) | |
| | A81 | US Notice of Allowance dated 5/20/2011 in application 12/630,790 (034827-0740) | |
| | A82 | US Notice of Allowance dated 7/6/2011 in application 12/630,796 (054769-9993) | |
| | A83 | US Notice of Allowance dated 8/19/2009 for U.S. App. No. 11/101,166 (054769-9993) | |
| | A84 | US Office Action dated 04/12/2010 in application 11/386,215 (034827-3603) | |
| | A85 | US Office Action dated 1/6/2011 in application 12/630,790 (034827-0740) | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

DLMR_920292.1

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./**

QUESTMS-00002533

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/165,685 |
| | | | Filing Date | 6/21/2011 |
| | | | First Named Inventor | Brett Holmquist |
| | | | Art Unit | 1773 |
| *(use as many sheets as necessary)* | | | Examiner Name | COLE, Monique T. |
| Sheet | 7 | of | 8 | Attorney Docket Number | 054769-9973 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A86 | US Office Action dated 10/08/2008 in application 11/101,166 (054769-9993) | |
| | A87 | US Office Action dated 10/5/2010 in application 11/386,215 (034827-3603) | |
| | A88 | US Office Action dated 12/17/2010 in application 11/946,765 (054769-9991) | |
| | A89 | US Office Action dated 12/17/2010 in application 12/630,796 (054769-9993) | |
| | A90 | US Office Action dated 6/24/2010 in application 11/946,765 (054769-9991) | |
| | A91 | US Office Action dated 6/28/2010 in application 12/630,790 (034827-0740) | |
| | A92 | US Office Action dated 6/29/2011 in application 13/115,935(034827-0742) | |
| | A93 | US Office Action dated 7/7/2010 in application 12/630,796 (054769-9993) | |
| | A94 | US Office Action on 034827-0740 DTD 6/28/2010 | |
| | A95 | Vieth et al, Age-related changes in the 25-hydroxyvitamin D versus parathyroid hormone relationship suggest a different reason why older adults require more Vitamin D, The Journal of Clinical Endocrinology & Metabolism, 88(1): 185-191, 2003. | |
| | A96 | Vieth, Vitamin D supplementation, 25-hydroxyvitamin D concentrations, and safety, Am J Clin Nutr, 69:842-856, 1999. | |
| | A97 | Vogeser et al, Candidate reference method for the quantification of circulating 25-Hydroxyvitamin D3 by liquid chromatography-tandem mass spectrometry, Clinical Chemistry, 50(8): 1415-1417, (2004). | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

DLMR_920292.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002534

Receipt date: 07/19/2011

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 13/165,685 |
| | | | Filing Date | 6/21/2011 |
| | | | First Named Inventor | Brett Holmquist |
| | | | Art Unit | 1773 |
| *(use as many sheets as necessary)* | | | Examiner Name | COLE, Monique T. |
| Sheet | 8 | of 8 | Attorney Docket Number | 054769-9973 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | A98 | Vreeken et al, On-line post-column Diels-Alder derivatization for the determination of vitamin D3 and its metabolites by liquid chromatography/thermospray mass spectrometry, Biological Mass Spectrometry, 22:621-632, (1993). | |
| | A99 | Watson et al, Analysis of Vitamin D and its metabolites using thermospray liquid chromatography/Mass spectrometry, Biomedical Chromatography, 5:153-160, 1991. | |
| | A100 | Wharton et al, Rickets. The Lancet, 362: 1389-1400, 2003. | |
| | A101 | Wright et al, Proteinchip surface enhanced laser desorption/ionization (SELDI) mass spectrometry: a novel protein biochip technology for detection of prostate cancer biomarkers in complex protein mixtures, Prostate Cancer and Prostatic Diseases, 2:264-76, (1999). | |
| | A102 | Yeung et al, Characterization of the Metabolic Pathway of 1,25-Dihydroxy-16-Ene Vitamin D3 in Rat Kidney By On-Line High Performance Liquid Chromatography-Electrospray Tandem Mass Spectrometry, Biochemical Pharmacology, Vol. 49, No. 8, pp.1099-1110, (1995). | |
| | A103 | Yeung et al, Characterization of vitamin D3 metabolites using continuous-flow fast atom bombardment tandem mass spectrometry and high performance liquid chromatography, Chromatogr. 645(1):115-123 (1993) | |
| | A104 | YEUNG, et al, The role of mass spectrometry in vitamin D research, Mass Spec Reviews, (1995), 14(3):179-194 | |
| | A105 | Zimmer et al, Comparison of turbulent-flow chromatography with automated solid-phase extraction in 96-well plates and liquid-liquid extraction used as plasma sample preparation techniques for liquid chromatography-tandem mass spectrometry, J. Chromatogr. A 854:23-35 (1999) | |

| Examiner Signature | /Monique Cole/ | Date Considered | 08/12/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2*

DLMR_920292.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002535

| **Issue Classification** | **Application/Control No.** | | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|---|
| | 13165685 | | HOLMQUIST ET AL. |
| | **Examiner** | | **Art Unit** |
| | MONIQUE COLE | | 1773 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | | | | | | | | | NON-CLAIMED | | | | | | |
| 436 | 173 | G | 0 | 1 | N | 24 / 00 (2006.01 01) | | | | | | | | | | | |

| CROSS REFERENCE(S) | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

☒ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☒ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 17 | | | | | | | | | | | | |
| | 2 | | 18 | | | | | | | | | | | | |
| | 3 | | 19 | | | | | | | | | | | | |
| | 4 | | 20 | | | | | | | | | | | | |
| | 5 | | 21 | | | | | | | | | | | | |
| | 6 | | 22 | | | | | | | | | | | | |
| | 7 | | 23 | | | | | | | | | | | | |
| | 8 | | 24 | | | | | | | | | | | | |
| | 9 | | | | | | | | | | | | | | |
| | 10 | | | | | | | | | | | | | | |
| | 11 | | | | | | | | | | | | | | |
| | 12 | | | | | | | | | | | | | | |
| | 13 | | | | | | | | | | | | | | |
| | 14 | | | | | | | | | | | | | | |
| | 15 | | | | | | | | | | | | | | |
| | 16 | | | | | | | | | | | | | | |

| /MONIQUE COLE/ Examiner.Art Unit 1773 | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | 8/12/2011 (Date) | 24 | |
| /JILL WARDEN/ Supervisory Patent Examiner.Art Unit 1773 | 08/15/2011 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

U.S. Patent and Trademark Office

Part of Paper No. 20110812

QUESTMS-00002536

| **Search Notes** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 13165685 | HOLMQUIST ET AL. |
| | **Examiner** | **Art Unit** |
| | MONIQUE COLE | 1773 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 436 | 173 | 7/2011 | MC |
| | updated | 8/2011 | MC |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| | | |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 436 | 173 | 8/2011 | MC |

| | |
|---|---|
| | |

QUESTMS-00002537



| | | |
|---|---|---|
| Europäisches Patentamt | | European Patent Office |
| European Patent Office | | 80298 MUNICH |
| Office européen des brevets | | GERMANY |
| | | Tel: +49 89 2399 0 |
| | | Fax: +49 89 2399 4465 |

VJP Düsseldorf
Erhalten / Received

**2 6. Sep. 2011**

Frist / Due Date:

Dokter, Eric-Michael
Viering, Jentschura & Partner
Grillparzerstrasse 14
81675 München
ALLEMAGNE

Formalities Officer
Name: Reis Passinhas, Dora
Tel: +49 89 2399 - 8792
or call
+31 (0)70 340 45 00

Substantive Examiner
Name: Bayer, Martin
Tel: +49 89 2399 - 8347

VJP München
Erhalten / Received

**2 1. Sep. 2011**

Frist / Due Date:



| Application No. | Ref. | Date |
|---|---|---|
| 08 853 843.4 - 2401 | P 44436 | 20.09.2011 |

| Applicant |
|---|
| Quest Diagnostics Investments Incorporated |

## Communication pursuant to Article 94(3) EPC

The examination of the above-identified application has revealed that it does not meet the requirements of the European Patent Convention for the reasons enclosed herewith. If the deficiencies indicated are not rectified the application may be refused pursuant to Article 97(2) EPC.

You are invited to file your observations and insofar as the deficiencies are such as to be rectifiable, to correct the indicated deficiencies within a period

**of   4   months**

from the notification of this communication, this period being computed in accordance with Rules 126(2) and 131(2) and (4) EPC. One set of amendments to the description, claims and drawings is to be filed within the said period on separate sheets (R. 50(1) EPC).

If filing amendments, you must identify them and indicate the basis for them in the application as filed. Failure to meet either requirement may lead to a communication from the Examining Division requesting that you correct this deficiency (R. 137(4) EPC).

**Failure to comply with this invitation in due time will result in the application being deemed to be withdrawn (Art. 94(4) EPC).**

**The notification of this communication starts the 24-month period according to Rule 36(1)(a) EPC for filing a voluntary divisional application divided from this application or from any sequential application. For further information see Guidelines for Examination, A-IV, 1.1.1.2 and 1.1.1.4.**

PB LF: 20.01.2012
VF: 20.11.2011              WV: 20.10.2011

LF TA: 20.09.2013              enot.pe
VF: 20.03.2013

Joint Appendix 1847

QUESTMS-00002538

Date 20.09.2011                 Sheet 2                 Application No.: 08 853 843.4



Bayer, Martin
Primary Examiner
**For the Examining Division**

Enclosure(s):        3  page/s reasons (Form 2906)

QUESTMS-00002539

| Datum<br>Date<br>Date | 20.09.2011 | Blatt<br>Sheet<br>Feuille | 1 | Anmelde-Nr:<br>Application No: 08 853 843.4<br>Demande n°: |
|---|---|---|---|---|

The examination is being carried out on the **following application documents**

**Description, Pages**

| 1-28 | as published |
|---|---|

**Claims, Numbers**

| 1-14 | received on | 18-07-2011 | with letter of | 18-07-2011 |
|---|---|---|---|---|

Reference is made to the following documents; the numbering will be adhered to in the rest of the procedure.

| D1 | YEAUNG B., VOUROS P.: "Role of mass spectrometry in vitamin D research", MASS SPECTROMETRY REVIEWS, vol. 14, no. 3, May 1995 (1995-05), pages 179-194, |
|---|---|
| D2 | KOBAYASHI NORIHIRO ET AL: "Tandem immunoaffinity chromatography for plasma 1-alpha,25-dihydroxyvitamin D-3 utilizing two antibodies having different specificities: A novel and powerful pretreatment tool for 1-alpha,25-dihydroxyvitamin D-3 radioreceptor assays",JOURNAL OF STEROID BIOCHEMISTRY AND MOLECULAR BIOLOGY, vol. 54, no. 5-6, 1995, pages 217-226 |
| D3 | KOBAYASHI N ET AL: "PRODUCTION OF A GROUP-SPECIFIC ANTIBODY TO 1ALPHA,25-DIHYDROXYVITAMIN D AND ITS DERIVATIVES HAVING THE 1ALPHA,3BETA-DIHYDROXYLATED A-RING STRUCTURE", STEROIDS, ELSEVIER SCIENCE PUBLISHERS, NEW YORK, NY, US, vol. 59, no. 7, 1 July 1994 (1994-07-01), pages 404-411 |

If not otherwise indicated, reference is made to the passages cited in the European supplementary search report.

| Datum<br>Date  20.09.2011<br>Date | Blatt<br>Sheet  2<br>Feuille | Anmelde-Nr:<br>Application No: 08 853 843.4<br>Demande n°: |

The application provides methods of detecting the presence or amount of a dihydroxyvitamin D metabolite in a sample using mass spectrometry. The methods generally comprise ionizing a dihydroxyvitamin D metabolite in a sample. The methods further include immunopurifying the dihydroxyvitamin D metabolites prior to mass spectrometry.

1.    Amendments (Article 123 EPC)

The entire set of the amended claims 1-14 filed with letter of 18.07.2011 is allowable under Article 123(2) EPC.

2.    Novelty (Article 54 EPC)

Document D1 discloses the mass spectrometric analysis of dihydroxyvitamin D metabolites. The spectra of derivatized dihydroxyvitamin D $(1,25(OH)_2D_3$-PTAD) are disclosed comprising the ions and fragments thereof with m/z values of 574, 314 and 298.

In the present wording of claim 1 the term "optionally" is not a limiting feature. Expressions of this kind have no limiting effect on the scope of a claim; that is to say, the feature following any such expression is to be regarded as entirely optional (Guidelines C-III, 4.9).

Hence, the present claims are novel over D1, since the claims feature a different ionization method, i.e. APCI.

3.    Inventive Step (Article 56 EPC) and Enablement (Article 83 EPC)

The argumentation of the applicant in view of the inventiveness of the added feature APCI cannot be followed. The APCI method is only mentioned in paragraph 57 as an equally preferred alternative of e.g. ESI or FAB. Thus, said feature is regarded as a mere arbitrary selection that cannot warrant acknowledgement of an inventive activity since paragraph 57 clearly states that "the skilled artisan will understand that the choice of ionization method can be determined based on the <u>analyte</u> to be measured, <u>type of sample</u>, the <u>type of detector</u>, the choice of positive versus negative mode, etc. (emphasis added)".

QUESTMS-00002541

| Datum<br>Date<br>Date | 20.09.2011 | Blatt<br>Sheet<br>Feuille | 3 | Anmelde-Nr:<br>Application No:<br>Demande n°: | 08 853 843.4 |
|---|---|---|---|---|---|

The argumentation of the applicant in view of example 1 cannot support inventive step, in that the particular conditions (specific analyte, type of sample, the type of detector), and method steps (such as HPLC and derivatization with PTAD) recited in said example do not at all form part of the independent claims, but are of paramount importance for a functional, sensitive method.

Whether particular method steps in conjunction with a particular kind of sample and reagent combination can provide a superior sensitivity over the prior art and can therefore be regarded as an inventive contribution remains to be shown.

4.    Concluding Remarks

The applicant is invited to file new claims which take account of the above objections.

The attention of the applicant is drawn to the fact that the application may not be amended in such a way that it contains subject-matter which extends beyond the content of the application as filed (Article 123(2) EPC).

In order to facilitate the examination of the conformity of the amended application with the requirements of Article 123(2) EPC, the applicant is requested to clearly identify the amendments carried out, irrespective of whether they concern amendments by addition, replacement or deletion, and indicate the passages of the application as filed on which these amendments are based.

If the applicant regards it as appropriate these indications could be submitted in handwritten form on a copy of the relevant parts of the application as filed.

EPO Form 2906 01.91TRI

QUESTMS-00002542

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13115916 |
| **Filing Date:** | 25-May-2011 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Filer:** | Anthony Charles Kuhlmann/Cynthia Ortiz |
| **Attorney Docket Number:** | 034827-3606 |
| Filed as Large Entity | |

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

QUESTMS-00002543

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **180** |

QUESTMS-00002544

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11362630 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Cynthia Ortiz |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 08-NOV-2011 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 20:43:41 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 180 |
| RAM confirmation Number | 6187 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

QUESTMS-00002545

| | | | 84487 | | |
|---|---|---|---|---|---|
| 1 | Transmittal Letter | 0348273606IDSTrans.PDF | 751bce79018a46e06f857c85943f9c17ab8387c0 | no | 3 |

| **Warnings:** |
|---|

| **Information:** |
|---|

| | | | 72840 | | |
|---|---|---|---|---|---|
| 2 | Information Disclosure Statement (IDS) Form (SB08) | 0348273606IDSSB08.PDF | d3e0b3c4368ef82ba848c0f72a139a1267fc2c4d | no | 1 |

| **Warnings:** |
|---|

| **Information:** |
|---|

| This is not an USPTO supplied IDS fillable form |
|---|

| | | | 1190948 | | |
|---|---|---|---|---|---|
| 3 | Non Patent Literature | 054769-9973_NOA_08242011.PDF | a5a206df6489e696abd9e7e37387e35f9d7428f5 | no | 15 |

| **Warnings:** |
|---|

| **Information:** |
|---|

| | | | 188425 | | |
|---|---|---|---|---|---|
| 4 | Non Patent Literature | EPExamReport09202011.PDF | d0f6b885aed1e58fede0baee353240c952adcd74 | no | 5 |

| **Warnings:** |
|---|

| **Information:** |
|---|

| | | | 30588 | | |
|---|---|---|---|---|---|
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 82f4a4b230105c690bbaab51f540a1fb7ebbc578 | no | 2 |

| **Warnings:** |
|---|

| **Information:** |
|---|

| | **Total Files Size (in bytes):** | 1567288 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002546

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Clarke, et al.

Title:        METHODS FOR DETECTING
              VITAMIN D METABOLITES
              BY MASS SPECTROMETRY

Appl. No.:     13/115,916

Filing Date:   5/25/2011

Examiner:     COLE, Monique T.

Art Unit:      1773

Confirmation   4404
Number:

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 CFR §1.56

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Submitted herewith on Form PTO/SB/08 is a listing of documents known to Applicants in order to comply with Applicants' duty of disclosure pursuant to 37 CFR §1.56.

A copy of each non-patent document is being submitted to comply with the provisions of 37 CFR §1.97 and §1.98.

The submission of any document herewith, which is not a statutory bar, is not intended as an admission that such document constitutes prior art against the claims of the present application or that such document is considered material to patentability as defined in 37 CFR §1.56(b). Applicants do not waive any rights to take any action which would be appropriate to

4835-6700-1101.1

-1-

QUESTMS-00002547

Atty. Dkt. No. 034827-3606

antedate or otherwise remove as a competent reference any document which is determined to be a *prima facie* art reference against the claims of the present application.

## TIMING OF THE DISCLOSURE

The listed documents are being submitted in compliance with 37 CFR §1.97(d), before payment of the issue fee.

## RELEVANCE OF EACH DOCUMENT

All of the documents are in English.

Applicants respectfully request that each listed document be considered by the Examiner and be made of record in the present application and that an initialed copy of Form PTO/SB/08 be returned in accordance with MPEP §609.

## STATEMENT

The undersigned hereby states in accordance with 37 CFR §1.97(e)(2) that no item of information contained in this information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application and, to the knowledge of the undersigned, after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR §1.56(c) more than three months prior to the filing of the information disclosure statement.

## FEE

Fees in the amount of $180.00 to cover the fee associated with an information disclosure statement under 37 CFR §1.97(d) are being paid by credit card via EFS-Web.

4835-6700-1101.1

-2-

QUESTMS-00002548

Atty. Dkt. No. 034827-3606

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this submission under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Respectfully submitted,

Date _____ 11/8/11 _____          By _____

FOLEY & LARDNER LLP                    Anthony C. Kuhlmann
Customer Number: 30542                 Attorney for Applicant
Telephone:    (858) 847-6776           Registration No. 57,147
Facsimile:    (858) 792-6773

4835-6700-1101.1                       -3-

QUESTMS-00002549

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

30542        7590        11/17/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/17/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

QUESTMS-00002550

| | **Application No.** | **Applicant(s)** |
|---|---|---|
| **Response to Rule 312 Communication** | 13/115,916 | CLARKE ET AL. |
| | **Examiner** | **Art Unit** |
| | MONIQUE COLE | 1773 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☒ The amendment filed on <u>07 November 2011</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☒ entered.

   b) ☐ entered as directed to matters of form not affecting the scope of the invention.

   c) ☐ disapproved because the amendment was filed after the payment of the issue fee.

   Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1) and the required fee to withdraw the application from issue.

   d) ☐ disapproved. See explanation below.

   e) ☐ entered in part. See explanation below.

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

/Monique Cole/
Examiner, Art Unit 1773

QUESTMS-00002551

Case 1:18-cv-01436-MN Document 73-2 Filed 09/25/19 Page 207 of 355 PageID #: 4176

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | **Complete if Known** | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 13/115,916 |
| | | | | Filing Date | 5/25/2011 |
| Date Submitted: November 7, 2011 | | | | First Named Inventor | Nigel Clarke |
| | | | | Art Unit | 1773 |
| *(use as many sheets as necessary)* | | | | Examiner Name | COLE, Monique T. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 034827-3606 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document — Serial Number-Kind Code[2] *(if known)* | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A1 | US Notice of Allowance dated 8/24/2011 in application 13/165,685 (054769-9973) | |
| | A2 | Examination Report dated 9/20/2011 for EP Application No. 08 853 843.4 (054769-9997) | |
| | | | |

| Examiner Signature | /Monique Cole/ | Date Considered | 11/14/2011 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

4837-0095-6685.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.C./

QUESTMS-00002552

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:    Clarke, et al.

Title:    METHODS FOR DETECTING VITAMIN D
METABOLITES BY MASS SPECTROMETRY

Appl. No.:    13/115,916

Filing Date:    5/25/2011

Examiner:    Monique T. Cole

Art Unit:    1773

Conf. No.:    4404

<u>AMENDMENT UNDER 37 CFR 1.312</u>

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Applicant acknowledges receipt of a Notice of Allowance in the above-captioned

application. Prior to payment of the issue fee, please amend the application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2

of this document.

**Remarks/Arguments** begin on page 5 of this document.

-1-

4830-9159-5021.1

QUESTMS-00002553

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | **Complete if Known** | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: December 14, 2011 *(use as many sheets as necessary)* | | | Application Number | 13/115,916 |
| | | | Filing Date | 5/25/2011 |
| | | | First Named Inventor | Nigel Clarke |
| | | | Art Unit | 1773 |
| | | | Examiner Name | COLE, Monique T. |
| Sheet | 1 | of 1 | Attorney Docket Number | 034827-3606 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document Serial Number-Kind Code[2] (if known) | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | A1 | International Search Report dated 12/1/2011 in application EP 11184151.6 (034827-3607) | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

4826-4494-7214.1

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

QUESTMS-00002554



European Patent Office
80298 MUNICH
GERMANY
Tel. +49 (0)89 2399 - 0
Fax +49 (0)89 2399 - 4465

Viering, Jentschura & Partner
Kennedydamm 55/Roßstr.
40476 Düsseldorf
ALLEMAGNE

For any questions about
this communication:
Tel.:+31 (0)70 340 45 00

VJP Düsseldorf
Erhalten / Received

0 1. Dez. 2011

Frist / Due Date:                    Date

                                     01.12.11

| Reference | Application No./Patent No. |
|-----------|----------------------------|
| P48047 | 11184151.6 - 2404 |

Applicant/Proprietor
Quest Diagnostics Investments Incorporated

*WN: 01-01-2012*
*enot. pe*

## Communication

The extended European search report is enclosed.

The extended European search report includes, pursuant to Rule 62 EPC, the European search report (R. 61 EPC) or the partial European search report/ declaration of no search (R. 63 EPC) and the European search opinion.

Copies of documents cited in the European search report are attached.

☑   0 additional set(s) of copies of such documents is (are) enclosed as well.

The following have been approved:

☑   Abstract          ☑   Title

☐   The Abstract was modified and the definitive text is attached to this communication.

The following figure(s) will be published together with the abstract: none

**Refund of search fee**

If applicable under Article 9 Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent later.



EPO Form 1507N   08.10                    Joint Appendix 1864

QUESTMS-00002555


Europäisches
Patentamt
European
Patent Office
Office européen
des brevets

## EUROPEAN SEARCH REPORT

Application Number

EP 11 18 4151

### DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
|---|---|---|---|
| X | KISSMEYER A-M ET AL: "Sensitive analysis of 1alpha,25-dihydroxyvitamin D3 in biological fluids by liquid chromatography-tandem mass spectrometry", JOURNAL OF CHROMATOGRAPHY, ELSEVIER SCIENCE PUBLISHERS B.V. AMSTERDAM, NL, vol. 935, no. 1-2, 23 November 2001 (2001-11-23), pages 93-103, XP004322066, ISSN: 0021-9673 * abstract, page 95, right-hand column, line 27 - page 96, figure 2* | 1-14 | INV. G01N33/82 G01N33/68 |
| Y | JONES, G., ET AL: "Biological Activity of 1,25-Dihydroxyvitamin D2 in the Chick", BIOCHEMISTRY, vol. 15, no. 3, 1976, pages 713-716, XP002507929, *the whole document, especially figure 2* | 1,3-6,8, 10-13 | |
| X | TSUGAWA N ET AL: "DETERMINATION OF 25-HYDROXYVITAMIN D IN HUMAN PLASMA USING HIGH-PERFORMANCE LIQUID CHROMATOGRAPHY-TANDEM MASS SPECTROMETRY", ANALYTICAL CHEMISTRY, AMERICAN CHEMICAL SOCIETY. COLUMBUS, US, [Online] vol. 77, 2 April 2005 (2005-04-02), pages 3001-3007, XP008075265, ISSN: 0003-2700 | 1-14 | TECHNICAL FIELDS SEARCHED (IPC) G01N C07C |
| Y | *abstract, page 3002, right-hand column, line 26 - page 3003, left-hand column, line 45* | 1-14 | |

-/--

The present search report has been drawn up for all claims

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| Munich | 16 November 2011 | Lindberg, Pia |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another
     document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or
     after the filing date
D : document cited in the application
L : document cited for other reasons
...........................................................................
& : member of the same patent family, corresponding
     document

EPO FORM 1503 03.82 (P04C01)

2

QUESTMS-00002556



Europäisches
Patentamt

European
Patent Office

Office européen
des brevets

**EUROPEAN SEARCH REPORT**

Application Number

EP 11 18 4151

| | DOCUMENTS CONSIDERED TO BE RELEVANT | | | |
|---|---|---|---|
| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (IPC) |
| Y | WATSON D ET AL: "ANALYSIS OF VITAMIN D AND ITS METABOLITES USING THERMOSPRAY LIQUID CHROMATOGRAPHY/MASS SPECTROMETRY", BIOMEDICAL CHROMATOGRAPHY, vol. 5, 1 January 1991 (1991-01-01), pages 153-160, XP008075295, * figure 1 * | 1-14 | |
| | | | TECHNICAL FIELDS SEARCHED (IPC) |

The present search report has been drawn up for all claims

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| Munich | 16 November 2011 | Lindberg, Pia |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons

& : member of the same patent family, corresponding document

EPO FORM 1503 03.82 (P04C01)

QUESTMS-00002557

| Datum<br>Date<br>Date | cf Form 1507 | Blatt<br>Sheet<br>Feuille | 1 | Anmelde-Nr:<br>Application No: 11 184 151.6<br>Demande n°: |
|---|---|---|---|---|

The search opinion is given for the **following application documents**

### Description, Pages

1-35                        as originally filed

### Claims, Numbers

1-14                        as originally filed

### Drawings, Sheets

1/4-4/4                     as originally filed

Reference is made to the following documents; the numbering will be adhered to in the rest of the procedure.

D1      KISSMEYER A-M ET AL: "Sensitive analysis of 1alpha,25-
         dihydroxyvitamin D3 in biological fluids by liquid chromatography-tandem
         mass spectrometry",
         JOURNAL OF CHROMATOGRAPHY, ELSEVIER SCIENCE
         PUBLISHERS B.V. AMSTERDAM, NL,
         vol. 935, no. 1-2, 23 November 2001 (2001-11-23), pages 93-103,
         XP004322066,
         ISSN: 0021-9673

D2      JONES, G., ET AL: "Biological Activity of 1,25-Dihydroxyvitamin D2 in the
         Chick",
         BIOCHEMISTRY,
         vol. 15, no. 3, 1976, pages 713-716, XP002507929,

D3      TSUGAWA N ET AL: "DETERMINATION OF 25-HYDROXYVITAMIN D
         IN HUMAN PLASMA USING HIGH-PERFORMANCE LIQUID
         CHROMATOGRAPHY-TANDEM MASS SPECTROMETRY",
         ANALYTICAL CHEMISTRY, AMERICAN CHEMICAL SOCIETY.
         COLUMBUS, US, [Online]
         vol. 77, 2 April 2005 (2005-04-02), pages 3001-3007, XP008075265,
         ISSN: 0003-2700

QUESTMS-00002558

| Datum<br>Date<br>Date | cf Form 1507 | Blatt<br>Sheet 2<br>Feuille | Anmelde-Nr:<br>Application No: 11 184 151.6<br>Demande n°: |
|---|---|---|---|

D4    WATSON D ET AL: "ANALYSIS OF VITAMIN D AND ITS METABOLITES
USING THERMOSPRAY LIQUID CHROMATOGRAPHY/MASS
SPECTROMETRY",
BIOMEDICAL CHROMATOGRAPHY,
vol. 5, 1 January 1991 (1991-01-01), pages 153-160, XP008075295,

## 1    Subject-matter of the application

1.1    The present application relates to a method for determining the amount of
vitamin D metabolites in samples by applying HPLC-MS/MS. Especially the
application claims the measurement of 25-hydroxyvitamin $D_3$ (25(OH)D3), 25-
hydroxyvitamin $D_2$ (25(OH)D2), 1,25-dihydroxyvitamin $D_3$ (1,25(OH)2D3) and
1,25-dihydroxyvitamin $D_2$ (1,25(OH)2D2).

## 2    Double patenting

2.1    The present application is a divisional application of its parent application with
the application number EP06749272 and refers to the same subject-matter as
the parent application. However, the parent and the divisional application may
not claim the same subject-matter (see Guidelines, C-IV, 7.4). This means not
only that they must not contain claims of substantially identical scope, but also
that one application must not claim subject-matter claimed in the other, even
in different words. The difference between the claimed subject-matter of the
two applications must be clearly distinguishable (see Guidelines, C-VI, 9.1.6).

If the Applicant considers the subject-matter of the present application to differ
from the parent application, the Applicant is requested to identify the
difference of the presently claimed subject-matter and to indicate the
passages of the description as filed on which the claimed subject-matter is
based. Further the already claimed subject-matter of the parent application
should be excised from the present application.

## 3    Art. 123(2) and 76(1) EPC

3.1    **Claim 14** states that "..*wherein said sample comprises plasma or serum*". It is
not apparent which part of the description provides a basis for the wording that
the sample comprises plasma or serum and possibly something else, Art. 123
(2), 76(1) EPC.

QUESTMS-00002559

| Datum Date Date | cf Form 1507 | Blatt Sheet Feuille | 3 | Anmelde-Nr: Application No: 11 184 151.6 Demande n°: |
|---|---|---|---|---|

Based on paragraph [0035] of the description the "sample is a biological sample" and "particularly preferred are samples obtained from a human, such as blood, plasma..". Thus based on the description the sample is plasma or serum.

4       **Clarity**

4.1     **Claim 1** is not considered clear insofar as the step c) refers to the detection of "the presence or amount of one or more of said ions generated in step (a) or (b) or both". The preamble of claim 1 only refers to a method for determining the amount of vitamin D metabolite, Art. 84 EPC.

4.2     **Claims 11** and **12** referring to methods of detection of 1,25-dihydroxyvitamin $D_2$ alone or in a single assay together with 1,25-dihydroxyvitamin $D_3$ are not supported by the description. The only reference to 1,25-dihydroxyvitamin $D_2$ and $D_3$ is made in the description of the application in connection with cross reactivity in the 25OHD2 and 25OHD3 assays (see example 7). The application documents do not disclose any examples of measuring 1,25-dihydroxyvitamin $D_2$ or $D_3$ itself in a sample. The requirements of Art. 84 EPC are thus not fulfilled. See also item 5.4. below.

5       **Novelty and Inventive step**

The application does not fulfil the requirements of Art. 54 and 56 EPC with respect to novelty and inventive step for the following reasons;

5.1     **Document D1** refers to the HPLC-MS/MS analysis of 1,25-dihydroxyvitamin $D_3$ in biological fluids by generating protonated and dehydrated precursor ions, see abstract, page 95, right-hand column, line 27 - page 96 and figure 2. Due to the disclosure of D2, the subject-matter of claims 1-8 and 10-14 is not novel and the subject-matter of claim 9 is not considered inventive over D1, Art. 54 and 56 EPC.

5.2     **Document D2** discloses the analysis of 1,25-dihydroxyvitamin $D_2$ in sample by applying chromatographic separation and mass spectrometry, see D2 the whole document, especially figure 2. As the use of tandem mass spectrometry in the analysis of vitamin D metabolites is known from the prior art (exemplified in documents D1 and D3), the modification of the analysis method of D2 to contain MS/MS analysis is considered obvious. Thus the subject-matter of claims 1, 3-6, 8 and 10-13 is not considered inventive over D2 combined with D1 or D3, Art. 56 EPC.

QUESTMS-00002560

| Datum<br>Date<br>Date | cf Form 1507 | Blatt<br>Sheet<br>Feuille | 4 | Anmelde-Nr:<br>Application No: 11 184 151.6<br>Demande n°: |
|---|---|---|---|---|

5.3 **Document D3** discloses a method for determining in a single assay 25-hydroxyvitamin $D_2$ and 25-hydroxyvitamin $D_3$ in a human plasma sample by applying HPLC-MS/MS in multiple reaction monitoring mode. The assay detects the precursor/product ion for 25OHD2 ($m/z$ 413,4/355,4) and 25OHD3 ($m/z$ 401,4/257,0), the $m/z$ representing the protonated and hydrated precursor vitamin D metabolite ions, see D3 abstract and page 3002, right-hand column, line 26 - page 3003, left-hand column, line 45.

The measurement of hydrated or dehydrated ionized analyte molecules is merely one of several straightforward possibilities well known in the art. As also shown in **document D4**, the spectrum of 25-hydroxyvitamin $D_3$ obtained from HPLC-MS run discloses hydrated and dehydrated precursor ions as well as ammonium adduct ions. Depending on which precursor ion mass is selected for further fragmentation, different daughter masses are obtained.

Therefore the subject-matter of claims 1-14 is not considered inventive over the disclosure of D3 alone or in combination with D4, Art. 56 EPC.

5.4 Furthermore it is noted that as already objected above under item 4.2, based on the application documents as filed, no examples have been provided for a method of measuring 1,25-dihydroxyvitamin $D_3$ and/or 1,25-dihydroxyvitamin $D_2$ in a sample by applying (tandem) mass spectrometry. The subject-matter of claims 11 (partially) and 12 thus does not fulfil the requirements of Art. 56 EPC, since the technical problem underlying these claims has not been solved.

6 **Further remarks**

6.1 Reference to documents in the description in form of "which is hereby incorporated by reference" should be deleted from the description as the European application should be self contained (see the Guidelines C-II, 4.19).

QUESTMS-00002561

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13115916 |
| **Filing Date:** | 25-May-2011 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Filer:** | Anthony Charles Kuhlmann/Cynthia Ortiz |
| **Attorney Docket Number:** | 034827-3606 |
| Filed as Large Entity | |

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

QUESTMS-00002562

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **180** |

QUESTMS-00002563

# Electronic Acknowledgement Receipt

| EFS ID: | 11621648 |
|---|---|
| Application Number: | 13115916 |
| International Application Number: | |
| Confirmation Number: | 4404 |
| Title of Invention: | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| First Named Inventor/Applicant Name: | Nigel  Clarke |
| Customer Number: | 30542 |
| Filer: | Anthony Charles Kuhlmann/Cynthia Ortiz |
| Filer Authorized By: | Anthony Charles Kuhlmann |
| Attorney Docket Number: | 034827-3606 |
| Receipt Date: | 14-DEC-2011 |
| Filing Date: | 25-MAY-2011 |
| Time Stamp: | 19:37:37 |
| Application Type: | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 180 |
| RAM confirmation Number | 8075 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

QUESTMS-00002564

| 1 | Transmittal Letter | 034827-3606IDSTrans.PDF | 90537<br><br>79c6c0a1b4193039462554ef06cd0451420d17e5 | no | 3 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 2 | Information Disclosure Statement (IDS) Form (SB08) | 034827-3606IDSSB08.PDF | 71225<br><br>3ef7d84649e708f4b9a2e8a573bb7493331cbbbe | no | 1 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| This is not an USPTO supplied IDS fillable form |
|---|

| 3 | Non Patent Literature | 034827-3607_ESR_12-1-2011.PDF | 295267<br><br>41c56d97d757314e22c5d27dc75a9941ca9a7746 | no | 7 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 4 | Fee Worksheet (SB06) | fee-info.pdf | 30587<br><br>39e682610e309f5d64102f0cfe1efa1524f68d50 | no | 2 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| | | **Total Files Size (in bytes):** | 487616 | | |
|---|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002565

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:      Clarke, et al.

Title:          METHODS FOR DETECTING
                VITAMIN D METABOLITES
                BY MASS SPECTROMETRY

Appl. No.:      13/115,916

Filing Date:    5/25/2011

Examiner:       COLE, Monique T.

Art Unit:       1773

Confirmation    4404
Number:

## INFORMATION DISCLOSURE STATEMENT
## UNDER 37 CFR §1.56

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Submitted herewith on Form PTO/SB/08 is a listing of a document known to Applicants in order to comply with Applicants' duty of disclosure pursuant to 37 CFR §1.56.

A copy of each non-U.S. patent document and each non-patent document is being submitted to comply with the provisions of 37 CFR §1.97 and §1.98.

The submission of any document herewith, which is not a statutory bar, is not intended as an admission that such document constitutes prior art against the claims of the present application or that such document is considered material to patentability as defined in 37 CFR §1.56(b). Applicants do not waive any rights to take any action which would be appropriate to

4824-6092-2126.1

-1-

QUESTMS-00002566

Atty. Dkt. No. 034827-3606

antedate or otherwise remove as a competent reference any document which is determined to be a *prima facie* art reference against the claims of the present application.

## TIMING OF THE DISCLOSURE

The listed document is being submitted in compliance with 37 CFR §1.97(d), before payment of the issue fee.

## RELEVANCE OF EACH DOCUMENT

All of the documents are in English.

Applicants respectfully request that each listed document be considered by the Examiner and be made of record in the present application and that an initialed copy of Form PTO/SB/08 be returned in accordance with MPEP §609.

## STATEMENT

The undersigned hereby states in accordance with 37 CFR §1.704(d) that each item of information contained in the information disclosure statement was first cited in any communication from a patent office in a counterpart foreign or international application or from the Office, and that this communication was not received by any individual designated in 37 CFR §1.56(c) more than thirty days prior to the filing of the information disclosure statement.

The undersigned hereby states in accordance with 37 CFR §1.97(e)(1) that each item of information contained in this information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three (3) months prior to filing of this Statement.

4824-6092-2126.1

QUESTMS-00002567

Atty. Dkt. No. 034827-3606

## FEE

Fees in the amount of $180.00 to cover the fee associated with an information disclosure statement under 37 CFR §1.97(d) are being paid by credit card via EFS-Web.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this submission under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Respectfully submitted,

Date _12/14/11_

By _[signature]_

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone: (858) 847-6776
Facsimile: (858) 792-6773

Anthony C. Kuhlmann
Attorney for Applicant
Registration No. 57,147

Joint Appendix 1877

QUESTMS-00002568

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** **Mail**    Mail Stop ISSUE FEE
                                                     Commissioner for Patents
                                                     P.O. Box 1450
                                                     Alexandria, Virginia 22313-1450
        **or Fax**    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

    30542      7590      09/16/2011

**FOLEY & LARDNER LLP**
**P.O. BOX 80278**
**SAN DIEGO, CA 92138-0278**

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

                                                  (Depositor's name)

                                                  (Signature)

                                                  (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

TITLE OF INVENTION: METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $~~1540~~ 1740 | $300 | $0 | $~~1840~~ $2040 | 12/16/2011 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COLE, MONIQUE T | 1773 | 436-173000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1   Foley & Lardner LLP

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                                   (B) RESIDENCE (CITY and STATE OR COUNTRY)

Quest Diagnostics Investments Incorporated         Wilmington, Delaware

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual   ☒ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s):** (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. XXXXXXXXXXXXXXXX   Via EFS-Web
☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number 19-0741 (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.    ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____     Date \_\_\_\_12/15/11\_\_\_\_

Typed or printed name    Anthony C. Kuhlmann     Registration No. ~~31,192~~ 57,147

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 02/11) Approved for use through 08/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

QUESTMS-00002569

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13115916 |
| **Filing Date:** | 25-May-2011 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Attorney Docket Number:** | 034827-3606 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1740 | 1740 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

QUESTMS-00002570

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | **Total in USD ($)** | | | **2040** |

QUESTMS-00002571

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11632744 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 15-DEC-2011 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 19:45:25 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 2040 |
| RAM confirmation Number | 7085 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

QUESTMS-00002572

| 1 | | 034827-3606_IFT.pdf | 125896<br><br>96cd921fea37671078256792832aaf56b49de20 | yes | 2 |
|---|---|---|---|---|---|

| **Multipart  Description/PDF files in .zip description** | | | |
|---|---|---|---|
| **Document Description** | | **Start** | **End** |
| Miscellaneous Incoming Letter | | 1 | 1 |
| Issue Fee Payment (PTO-85B) | | 2 | 2 |

| **Warnings:** |
|---|
| **Information:** |

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32278<br><br>a03ba8ab345640dc831553c316ae6384fac2878f | no | 2 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|
| **Information:** |

| **Total Files Size (in bytes):** | 158174 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002573

Atty. Dkt. No. 034827-3606

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Clarke, et al. |
| Title: | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| Appl. No.: | 13/115,916 |
| Filing Date: | 5/25/2011 |
| Examiner: | COLE, Monique T. |
| Art Unit: | 1773 |
| Confirmation Number: | 4404 |

### ISSUE FEE TRANSMITTAL

Mail Stop Issue Fee
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Enclosed herewith please find Issue Fee Transmittal Form PTOL-85(B).

Fees in the amount of $2,040.00 for payment of the Issue Fee and the Publication Fee are being paid by credit card via EFS-Web.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

Respectfully submitted,

Date 12/15/11

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:    (858) 847-6776
Facsimile:    (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann,    Reg. No. 57,147
Attorneys for Applicant

4848-7127-1182.1

QUESTMS-00002574



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | 1773 | 1546 | 034827-3606 | 23 | 2 |

**CONFIRMATION NO. 4404**

30542
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

**CORRECTED FILING RECEIPT**


*OC000000051513305*

Date Mailed: 12/19/2011

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**
  Nigel Clarke, Oceanside, CA;
  Brett Holmquist, Mission Viejo, CA;
  Gloria Kwangja Lee, Irvine, CA;
  Richard E. Reitz, San Clemente, CA;
**Assignment For Published Patent Application**
  Quest Diagnostics Investments Incorporated
**Power of Attorney:** The patent practitioners associated with Customer Number 30542

**Domestic Priority data as claimed by applicant**
  This application is a CON of 11/386,215 03/21/2006 PAT 7972867
  which is a CIP of 11/101,166 04/06/2005 PAT 7745226

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

**If Required, Foreign Filing License Granted:** 06/06/2011

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/115,916**

**Projected Publication Date:** Not Applicable

**Non-Publication Request:** No

**Early Publication Request:** No

page 1 of 3

QUESTMS-00002575

**Title**

METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

**Preliminary Class**

436

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

Joint Appendix 1885

QUESTMS-00002576

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage, facilitate, and accelerate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

page 3 of 3

Joint Appendix 1886

QUESTMS-00002577

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 05/25/2011 | Nigel Clarke | 034827-3606 | 4404 |

30542          7590          12/23/2011
FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| COLE, MONIQUE T |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/23/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

QUESTMS-00002578

UNITED STATES DEPARTMENT OF COMMERCE
**U.S. Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450

| APPLICATION NO./ CONTROL NO. | FILING DATE | FIRST NAMED INVENTOR / PATENT IN REEXAMINATION | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 13/115,916 | 25 May 2011 | CLARKE ET AL. | 034827-3606 |

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

| EXAMINER |
|---|
| MONIQUE COLE |

| ART UNIT | PAPER |
|---|---|
| 1773 | 20111219 |

DATE MAILED:

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner for Patents

Attached please find an initialed 114 from 14 December 2011.

/Jill Warden/
Supervisory Patent Examiner, Art Unit 1773

PTO-90C (Rev.04-03)

QUESTMS-00002579

PTO/SB/08 (09-06)
Approved for use through 03/31/2007. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 13/115,916 |
| | Filing Date | 5/25/2011 |
| Date Submitted: December 14, 2011 | First Named Inventor | Nigel Clarke |
| | Art Unit | 1773 |
| *(use as many sheets as necessary)* | Examiner Name | COLE, Monique T. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 034827-3606 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number / Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document / Serial Number-Kind Code[2] (if known) | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| /M.C./ | A1 | International Search Report dated 12/1/2011 in application EP 11184151.6 (034827-3607) | |
| | | | |

| Examiner Signature | /Monique Cole/ | Date Considered | /Monique Cole/ |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. 3 Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). 4 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 5 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 6 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

4826-4494-7214.1

Joint Appendix 1889

QUESTMS-00002580



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

Bib Data Sheet

**CONFIRMATION NO. 4404**

| SERIAL NUMBER 13/115,916 | FILING OR 371(c) DATE 05/25/2011 RULE | CLASS 436 | GROUP ART UNIT 1773 | ATTORNEY DOCKET NO. 034827-3606 |
|---|---|---|---|---|

**APPLICANTS**
    Nigel Clarke, Oceanside, CA;
    Brett Holmquist, Mission Viejo, CA;
    Gloria Kwangja Lee, Irvine, CA;
    Richard E. Reitz, San Clemente, CA;

** CONTINUING DATA ***************************

** FOREIGN APPLICATIONS ********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 06/06/2011

| Foreign Priority claimed ☐ yes ☒ no 35 USC 119 (a-d) conditions met ☐ yes ☒ no ☐ Met after Allowance Verified and Acknowledged _____ Examiner's Signature _____ Initials | STATE OR COUNTRY CA | SHEETS DRAWING 4 | TOTAL CLAIMS 23 | INDEPENDENT CLAIMS 2 |
|---|---|---|---|---|

**ADDRESS**
30542

**TITLE**
METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY

| FILING FEE RECEIVED 1246 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

QUESTMS-00002581

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/115,916 | 01/24/2012 | 8101427 | 034827-3606 | 4404 |

30542          7590          01/04/2012

FOLEY & LARDNER LLP
P.O. BOX 80278
SAN DIEGO, CA 92138-0278

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Nigel Clarke, Oceanside, CA;
Brett Holmquist, Mission Viejo, CA;
Gloria Kwangja Lee, Irvine, CA;
Richard E. Reitz, San Clemente, CA;

QUESTMS-00002582

Atty. Dkt. No. 034827-3606

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:         Clarke, et al.

Title:             METHODS FOR DETECTING
                   VITAMIN D METABOLITES
                   BY MASS SPECTROMETRY

Patent. No.:       8,101,427

Issue Date:        1/24/2012

Examiner:          COLE, Monique T.

Art Unit:          1773

Confirmation       4404
Number:

### REQUEST FOR CERTIFICATE OF CORRECTION FOR PTO MISTAKE PURSUANT TO 37 C.F.R. § 1.322(a)

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

Enclosed, is a Certificate of Correction, Form PTO-1050, for United States Patent Number 8,101,427 issued January 24, 2012. The following Patent Office printing errors appear in the issued patent:

### ON THE FRONT PAGE OF THE PATENT

Please correct the following:

In Item (75), the third inventor's name "Kwang-Ja Lee" should read --Gloria Kwang-Ja Lee

-1-

4819-8183-8095.1

QUESTMS-00002583

Related U.S. Application Data is missing. After Item (22), please insert the following paragraph:

--This application claims priority under 35 U.S.C. § 120 to U.S. application Ser. No. 11/101,166 (now U.S. Pat. No. 7,745,226), filed Apr. 6, 2005, and to U.S. application Ser. No. 11/386,215, filed Mar. 21, 2006, incorporated herein by reference in their entirety--

## IN THE CLAIMS

Please correct the following:

Claim 23, line 25 "D3" should read $D_3$.

Applicant submits that the above changes would not constitute new matter, and correction thereof would not require reexamination.

Pursuant to 37 C.F.R. §1.322, Applicant requests that the enclosed Certificate of Correction be approved.

Although Applicant believes that no fee is required for this Request, the Commissioner is hereby authorized to charge any additional fees which may be required for this Request to Deposit Account No. 19-0741.

Respectfully submitted,

Date   3/28/12

By

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:     (858) 847-6776
Facsimile:     (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

-2-

4819-8183-8095.1

QUESTMS-00002584

MODIFIED PTO/SB/44 (04-05)
Approved for use through 04/30/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.
(Also Form PTO-1050)

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.            :   8,101,427

APPLICATION NO.    :   13/115,916

DATED                    :   1/24/2012

INVENTOR(S)          :   Nigel Clarke; Brett Holmquist; Kwang-Ja Lee; Richard E. Reitz

It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

(75)  "Kwang-Ja Lee" should read –Gloria Kwang-Ja Lee--

(62) --This application claims priority under 35 U.S.C. § 120 to U.S. application Ser. No. 11/101,166 (now U.S. Pat. No. 7,745,226), filed Apr. 6, 2005, and to U.S. application Ser. No. 11/386,215, filed Mar. 21, 2006, incorporated herein by reference in their entirety--

## IN THE CLAIMS

Claim 23, line 25 "D3" should read $D_3$

MAILING ADDRESS OF SENDER (Please do not use customer number below):

P.O. Box 80278
San Diego, California  92138-0278

This collection of information is required by 37 CFR 1.322, 1.323, and 1.324. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1.0 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer,
U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Attention Certificate of Corrections Branch, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

4820-5097-8575.1

QUESTMS-00002585

MODIFIED PTO/SB/44 (04-05)
Approved for use through 04/30/2007.  OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.
(Also Form PTO-1050)

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.              :     8,101,427

APPLICATION NO.    :     13/115,916

DATED                      :     1/24/2012

INVENTOR(S)           :     Nigel Clarke; Brett Holmquist; Kwang-Ja Lee; Richard E. Reitz

It is certified that an error appears or errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

(75) "Kwang-Ja Lee" should read –Gloria Kwang-Ja Lee--

(62) --This application claims priority under 35 U.S.C. § 120 to U.S. application Ser. No. 11/101,166 (now U.S. Pat. No. 7,745,226), filed Apr. 6, 2005, and to U.S. application Ser. No. 11/386,215, filed Mar. 21, 2006, incorporated herein by reference in their entirety--

## IN THE CLAIMS

Claim 23, line 25 "D3" should read $D_3$

MAILING ADDRESS OF SENDER (Please do not use customer number below):

P.O. Box 80278
San Diego, California  92138-0278

This collection of information is required by 37 CFR 1.322, 1.323, and 1.324. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1.0 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer,
U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Attention Certificate of Corrections Branch, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

4820-5097-8575.1

QUESTMS-00002586

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 12440941 |
| **Application Number:** | 13115916 |
| **International Application Number:** | |
| **Confirmation Number:** | 4404 |
| **Title of Invention:** | METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY |
| **First Named Inventor/Applicant Name:** | Nigel Clarke |
| **Customer Number:** | 30542 |
| **Filer:** | Anthony Charles Kuhlmann/Mercedes Dipasupil |
| **Filer Authorized By:** | Anthony Charles Kuhlmann |
| **Attorney Docket Number:** | 034827-3606 |
| **Receipt Date:** | 30-MAR-2012 |
| **Filing Date:** | 25-MAY-2011 |
| **Time Stamp:** | 20:52:31 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Certificate of Correction | 034827-3606_Cert-of-CorrTrans.pdf | 135648 <br> 96ba6f62e2ce521d8d106cfa7375d71a71a9386b | no | 4 |

| | |
|---|---|
| Warnings: | |
| Information: | |

Joint Appendix 1896

QUESTMS-00002587

Total Files Size (in bytes): 135848

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

QUESTMS-00002588

## SPE RESPONSE FOR CERTIFICATE OF CORRECTION

DATE            : _____April 5, 2012_____

TO SPE OF       : ART UNIT ____1773____

SUBJECT         : Request for Certificate of Correction for Appl. No.: **13115916**____ Patent No.: _**8101427**__

CofC  mailroom date: **Mar. 30,**

**2012**_____

Please respond to this request for a certificate of correction within 7 days.

### FOR IFW FILES:

Please review the requested changes/corrections as shown in the **COCIN** document(s) in the IFW application image.  No new matter should be introduced, nor should the scope or meaning of the claims be changed.

Please complete the response (see below) and forward the completed response to scanning using document code **COCX**.

### FOR PAPER FILES:

Please review the requested changes/corrections as shown in the attached certificate of correction.  Please complete this form (see below) and forward it with the file to:

**Certificates of Correction Branch (CofC)**
**Randolph Square – 9D10-A**
**Palm Location 7580**

Note: _____          _____

_____          **Certificates of Correction Branch**

**703-756-1814** _____

### Thank You For Your Assistance

**The request for issuing the above-identified correction(s) is hereby:**
Note your decision on the appropriate box.

❏ **Approved**              **All** changes apply.

❏ **Approved in Part**      Specify below which changes **do not** apply.

❏ **Denied**                State the reasons for denial below.

**Comments:** _____

_____

_____

_____

_____

PTOL-306 (REV. 7/03)                    **U.S. DEPARTMENT OF COMMERCE Patent and Trademark Office**

QUESTMS-00002589

**SPE RESPONSE FOR CERTIFICATE OF CORRECTION**

| SPE | Art Unit |
|-----|----------|

QUESTMS-00002590



### UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | PATENT NUMBER | GROUP ART UNIT | FILE WRAPPER LOCATION |
|---|---|---|---|
| 13/115,916 | 8101427 | 1773 | 9200 |



OC000000056402737

## Correspondence Address/Fee Address Change

The following fields have been set to Customer Number 23524 on 09/06/2012
  • Correspondence Address

The address of record for Customer Number 23524 is:

23524
FOLEY & LARDNER LLP
150 EAST GILMAN STREET
P.O. BOX 1497
MADISON, WI 53701-1497

PART 1 - ATTORNEY/APPLICANT COPY
page 1 of 1

Joint Appendix 1900

QUESTMS-00002591

SPE RESPONSE FOR CERTIFICATE OF CORRECTION

**Paper No.**:20130306

**DATE**          : March 6, 2013

**TO SPE OF** : ART UNIT 1773

**SUBJECT**     : Request for Certificate of Correction on Patent No.: 8,101,427

A response is requested with respect to the accompanying request for a certificate of correction.

Please complete this form and return with file, within **7** days to:
**Certificates of Correction Branch - PK 3-910**
Palm location **7590** - Tel. No. 305-8201

With respect to the change(s) requested, correcting Office and/or Applicant's errors, <u>should the patent read as shown in the certificate of correction</u>?  No new matter should be introduced, nor should the scope or meaning of the claims be changed.

**Thank You For Your Assistance**                    _____
                                                                                    **Certificates of Correction Branch**

---

**The request for issuing the above-identified correction(s) is hereby:**
Note your decision on the appropriate box.

☐ **Approved**                              **All** changes apply.

☒ **Approved in Part**                Specify below which changes **do not** apply.

☐ **Denied**                               State the reasons for denial below.

**Comments:**

The continuity data is correct in the patent and does not need to be corrected.

**SPE:** /Jill Warden/              **Art Unit** 1773

PTOL-306 (Rev. 7/03)                                     U.S. DEPARTMENT OF COMMERCE Patent and Trademark Office

QUESTMS-00002592



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
ASSISTANT SECRETARY OF COMMERCE AND
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Date: March 9, 2013

Patent No.      : 8,101,427 B2
Application No.: 13/115,916
Issued          : January 24, 2012
Inventor        : Clarke, et al.
Title           : **METHODS FOR DETECTING VITAMIN D METABOLITES BY MASS SPECTROMETRY**

RE: Certificate of Correction

Consideration has been given your request for the issuance of a certificate of correction, for the above-identified patent under the provision of Rule 1.322 or R1.323.

Respecting the alleged error, on the title page item (62), the continuity data is correct in the patent and does not need to be corrected. Therefore, no correction(s) is in order here under United States Codes (U.S.C.) 254 or 255 the Code of Federal Regulation (C.F.R.) R1.322 or R.1 323.

In view of the foregoing, your request is hereby denied.

A certificate of correction will be issued to correct the remaining errors noted in your request.

Further correspondence concerning this matter should be filed and directed to Decisions and Certificates of Correction Branch. Any response must be filed within a four week period.

Valerie Jackson
Decisions & Certificates
 of Correction Branch
(571) 272-3423

Foley & Lardner LLP
P.O. Box 80278
San Diego, CA  92138-0278

vj

QUESTMS-00002593

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.            : 8,101,427 B2                                    Page 1 of 1
APPLICATION NO.   : 13/115916
DATED                    : January 24, 2012
INVENTOR(S)          : Nigel Clarke et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the title page item (75) "Kwang-Ja Lee" should read --Gloria Kwang-Ja Lee--

**IN THE CLAIMS**
Claim 23, line 25 "D3" should read --$D_3$--

Signed and Sealed this
Ninth Day of April, 2013

Teresa Stanek Rea
*Acting Director of the United States Patent and Trademark Office*

Joint Appendix 1903

QUESTMS-00002594

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   : 8,101,427 B2                          Page 1 of 1
APPLICATION NO.   : 13/115916
DATED   : January 24, 2012
INVENTOR(S)   : Nigel Clarke et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the title page item (75) "Kwang-Ja Lee" should read --Gloria Kwang-Ja Lee--

**IN THE CLAIMS**
Claim 23, Column 22, line 25 "D3" should read --$D_3$--

This certificate supersedes the Certificate of Correction issued April 9, 2013.

Signed and Sealed this
Thirtieth Day of April, 2013

Teresa Stanek Rea
*Acting Director of the United States Patent and Trademark Office*

QUESTMS-00002595



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | PATENT NUMBER | GROUP ART UNIT | FILE WRAPPER LOCATION |
|---|---|---|---|
| 13/115,916 | 8101427 | 1773 | 9200 |

OC000000006124781

## Correspondence Address/Fee Address Change

**The following fields have been set to Customer Number 109855 on 01/15/2014**
- **Correspondence Address**
- **Maintenance Fee Address**

**The address of record for Customer Number 109855 is:**

**109855**
**Quest Diagnostics**
**1311 Calle Batido**
**San Clemente, CA 92673**

PART 1 - ATTORNEY/APPLICANT COPY
page 1 of 1

QUESTMS-00002596

AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court __District of Delaware__ on the following

☐ Trademarks or  ☑ Patents.  ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED<br>9/17/2018 | U.S. DISTRICT COURT<br>District of Delaware |
|---|---|---|
| PLAINTIFF<br><br>QUEST DIAGNOSTICS INVESTMENTS LLC | | DEFENDANT<br><br>LABORATORY CORPORATION OF AMERICA<br>HOLDINGS, ESOTERIX, INC. and ENDOCRINE<br>SCIENCES, INC. |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1  8,409,862 B2 | 4/2/2013 | Quest Diagnostics Investments LLC |
| 2  8,101,427 B2 | 1/24/2012 | Quest Diagnostics Investments LLC |
| 3  7,972,867 B2 | 7/5/2011 | Quest Diagnostics Investments LLC |
| 4  7,972,868 B2 | 7/5/2011 | Quest Diagnsotics Investments LLC |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment  ☐ Answer  ☐ Cross Bill  ☐ Other Pleading | |
|---|---|---|
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1---Upon initiation of action, mail this copy to Director    Copy 3---Upon termination of action, mail this copy to Director
Copy 2---Upon filing document adding patent(s), mail this copy to Director    Copy 4---Case file copy

Joint Appendix 1906

QUESTMS-00002597

Case 1:18-cv-01436-MN   Document 95   Filed 12/13/19   Page 253 of 355 PageID #: 8509

# EXHIBIT   I



## THE UNITED STATES OF AMERICA

### TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

*November 29, 2018*

**THIS IS TO CERTIFY THAT ANNEXED IS A TRUE COPY FROM THE RECORDS OF THIS OFFICE OF THE FILE WRAPPER AND CONTENTS OF:**

**APPLICATION NUMBER:** *12/946,785*
**FILING DATE:** *November 15, 2010*
**PATENT NUMBER:** *8409862*
**ISSUE DATE:** *April 02, 2013*



Certified by

*Andrew Lauren*

Under Secretary of Commerce
for Intellectual Property
and Director of the United States
Patent and Trademark Office

Joint Appendix 1908

QUESTMS-00002598

Atty. Dkt. No. 034827-9107

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Caulfield et al. |
| Title: | DETERMINATION OF TESTOSTERONE BY MASS SPECTROMETRY |
| Appl. No.: | 12/946,785 |
| Appl. Filing Date: | 11/15/2010 |
| Examiner: | Cordero Garcia, Marcela M. |
| Art Unit: | 1654 |
| Confirmation Number: | 1630 |

### REQUEST FOR CONTINUED EXAMINATION (RCE) TRANSMITTAL

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

This is a Request for Continued Examination (RCE) under 37 C.F.R. § 1.114 of the above-identified application. This RCE and the enclosed items listed below are being filed prior to the earliest of: (1) payment of the issue fee (unless a petition under 37 C.F.R. § 1.313 is granted); (2) abandonment of the application; or (3) the filing of a notice of appeal to the U.S. Court of Appeals for the Federal Circuit under 35 U.S.C. §141, or the commencement of a civil action under 35 U.S.C. §145 or §146 (unless the appeal or civil action is terminated).

1. <u>Submission **required** under 37 C.F.R. §1.114</u>: (check items that apply)

    a. Previously submitted:

-1-

QUESTMS-00002846

Atty. Dkt. No. 034827-9107

[ ]    Please enter and consider the amendment and/or reply previously filed on __.

[ ]    Please consider the Affidavit(s)/Declaration(s) previously filed on __ but not considered.

[ ]    Please consider the arguments in the Appeal Brief or Reply previously filed on __.

[ ]    Other __.

b.  Enclosed are:

[ X ]    Amendment/Reply (11 pages)

[ X ]    Declaration of Michael P. Caulfield Under 37 CFR 1.131 (5 pages)

[ X ]    Information Disclosure Statement.

[ X ]    Form PTO/SB/08 with copies of 6 listed reference(s).

[ X ]    Terminal Disclaimer over U.S. Patent No. 6,977,143 (1 page)

Miscellaneous:

[ ]    Suspension of action of the above-identified application is requested under 37 C.F.R. § 1.103(c) for a period of __ months.

The filing fee is calculated below:

| | Claims as Amended | | Previously Paid For | | Extra Claims Present | Rate | | Fee Totals |
|---|---|---|---|---|---|---|---|---|
| RCE Fee 1.17(e): | | | | | | $930.00 | = | $930.00 |
| Total Claims: | 24 | - | 27 | = 0 | | x $60.00 | = | $0.00 |
| Independents | 2 | - | 3 | = 0 | | x $250.00 | = | $0.00 |
| First presentation of any Multiple Dependent Claims: | | | | + | | $450.00 | = | $0.00 |

-2-

QUESTMS-00002847

Atty. Dkt. No. 034827-9107

| | | | |
|---|---|---|---|
| | CLAIMS FEE TOTAL: | = | $930.00 |

[ ]      Applicant hereby petitions for an extension of time under 37 C.F.R. §1.136(a) for the total number of months checked below:

| | | | |
|---|---|---|---|
| [ ] | Extension for response filed within the first month: | $150.00   0 | $0.00 |
| [ ] | Extension for response filed within the second month: | $560.00 | $0.00 |
| [ ] | Extension for response filed within the third month: | $1,270.00 | $0.00 |
| [ ] | Extension for response filed within the fourth month: | $1,980.00 | $0.00 |
| [ ] | Extension for response filed within the fifth month: | $2,690.00 | $0.00 |
| | EXTENSION FEE SUBTOTAL: | | $0.00 |
| | EXTENSION FEE ALREADY PAID: - | | $0.00 |
| | EXTENSION FEE TOTAL | | $0.00 |
| | CLAIMS AND EXTENSION FEE TOTAL: | | $930.00 |
| [ ] | Small Entity Fees Apply (subtract ½ of above): | | $0.00 |
| [ ] | Suspension of action requested under 37 C.F.R. § 1.103(c) | | $0.00 |
| [ X ] | Terminal Disclaimer Fee | | $160.00 |
| | Subtotal | | $1,090.00 |
| [ X ] | Less previously paid Terminal Disclaimer Fee | | $160.00 |
| | TOTAL FEE: | | $930.00 |

The above-identified fees of $930.00 are being paid by credit card via EFS-Web.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741. Should no proper payment be enclosed herewith, as by the credit card payment instructions in EFS-Web being incorrect or absent, resulting in a rejected or incorrect credit card transaction, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.

-3-

QUESTMS-00002848

Atty. Dkt. No. 034827-9107

Please direct all correspondence to the undersigned attorney or agent at the address indicated below.

Respectfully submitted,

Date _____3/28/12_____

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone: (858) 847-6776
Facsimile: (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

4811-9298-0751.1

Joint Appendix 1912

QUESTMS-00002849

Atty. Dkt. No. 034827-9107

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:       Caulfield et al.

Title:           DETERMINATION OF
                 TESTOSTERONE BY MASS
                 SPECTROMETRY

Appl. No.:       12/946,785

Filing Date:     11/15/2010

Examiner:        Cordero Garcia, M.M.

Art Unit:        1654

Confirmation     1630
Number:

### REQUEST FOR CONTINUED EXAMINATION UNDER 37 C.F.R. § 1.114

Mail Stop RCE
Commissioner for Patents
PO Box 1450
Alexandria, Virginia 22313-1450

Sir:

In response to the Office Action mailed January 13, 2012, please enter the following amendments and consider the following remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this document.

**Remarks/Arguments** begin on page 6 of this document.

Please amend the application as follows:

-1-

4814-2117-6335.1

QUESTMS-00002850

**Amendments to the Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

     1.-12.  (Canceled)

     13.     (Currently Amended) A method for determining the amount of testosterone in a sample when taken from a female human, comprising:

          (a) purifying testosterone from a sample from a female human, wherein said purifying comprises extracting testosterone from said sample;

          (b) ionizing said purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer; and

          (c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the sample;

          wherein said testosterone is not derivatized prior to mass spectrometry, and wherein the method is capable of detecting testosterone at concentrations of less than 10 ng/dL in the sample.

     14.-15. (Canceled)

     16.     (Currently Amended) The method of claim [15] 13, wherein said extracting comprises subjecting said sample to solid phase extraction (SPE).

     17.     (Currently Amended) The method of claim [15] 13, wherein said extracting comprises subjecting said sample to high turbulence liquid chromatography (HTLC).

     18.     (Currently Amended) The method of claim [15] 13, wherein said extracting comprises subjecting said sample to liquid extraction.

-2-

4814-2117-6335.1

QUESTMS-00002851

Atty. Dkt. No. 034827-9107

19.    (Currently Amended) The method of claim 13, wherein purifying testosterone further comprises purifying testosterone from said sample by chromatography.

20.    (Previously Presented) The method of claim 19, wherein said chromatography comprises liquid chromatography.

21.    (Previously Presented) The method of claim 19, wherein said chromatography comprises high performance liquid chromatography (HPLC).

22.    (Currently Amended) The method of claim 13, wherein the method is capable of detecting testosterone at concentrations of less than 5 ng/dL in the test sample.

23.    (Currently Amended) The method of claim 13, wherein the method is capable of detecting testosterone at concentrations of less than 1 ng/dL in the test sample.

24.    (Previously Presented) The method of claim 13, wherein the ionizing of step (b) comprises producing a testosterone ion having a mass/charge ratio of $289.1 \pm 0.5$.

25.    (Previously Presented) The method of claim 13, wherein the ionizing of step (b) comprises producing one or more testosterone fragment ions having a mass/charge ratio selected from the group consisting of $109.2 \pm 0.5$ and $96.9 \pm 0.5$.

26.    (Previously Presented) The method of claim 13, wherein the ionizing of step (c) comprises:

> producing a testosterone precursor ion having a mass/charge ratio (m/z) of about $289.1 \pm 0.5$;
>
> isolating the precursor ion by mass spectrometry; and
>
> effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having m/z selected from the group consisting of $109.2 \pm 0.5$, and $96.9 \pm 0.5$.

-3-

4814-2117-6335.1

QUESTMS-00002852

Atty. Dkt. No. 034827-9107

27.     (Previously Presented) The method of claim 13, wherein said sample comprises urine, blood, plasma, or serum from a female human.

28.     (Previously Presented) The method of claim 13, wherein said sample comprises blood, plasma, or serum from a female human.

29.     (Currently Amended) A method for determining the amount of testosterone in a sample when taken from a female human, comprising:

(a) purifying testosterone from a sample from a female human by extracting testosterone from said sample by high turbulence liquid chromatography (HTLC) and subjecting said sample the extracted testosterone to high performance liquid chromatography (HPLC);

(b) ionizing said purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer; and

(c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the sample;

wherein the method is capable of detecting testosterone at concentrations of less than 10 ng/dL in the test sample.

30.     (Previously Presented) The method of claim 29, wherein said testosterone is not derivatized prior to mass spectrometry.

31.-33. (Canceled)

34.     (Currently Amended) The method of claim 31, wherein said extracting further comprises subjecting said sample to liquid extraction.

35.     (Canceled)

-4-

4814-2117-6335.1

QUESTMS-00002853

Atty. Dkt. No. 034827-9107

36.     (Currently Amended) The method of claim [31] 29, wherein the ionizing of step (b) comprises producing a testosterone ion having a mass/charge ratio of 289.1 ± 0.5.

37.     (Currently Amended) The method of claim [31] 29, wherein the ionizing of step (b) comprises producing one or more testosterone fragment ions having a mass/charge ratio selected from the group consisting of 109.2 ± 0.5 and 96.9 ± 0.5.

38.     (Currently Amended) The method of claim [31] 29, wherein the ionizing of step (c) comprises:

producing a testosterone precursor ion having a mass/charge ratio (m/z) of about 289.1 ± 0.5;

isolating the precursor ion by mass spectrometry; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having m/z selected from the group consisting of 109.2 ± 0.5, and 96.9 ± 0.5.

39.     (Currently Amended) The method of claim [31] 29, wherein said sample comprises urine, blood, plasma, or serum from a female human.

40.     (Currently Amended) The method of claim [31] 29, wherein said sample comprises blood, plasma, or serum from a female human.

41.     (New) The method of claim 31, wherein the method is capable of detecting testosterone at concentrations of less than 5 ng/dL in the sample.

42.     (New) The method of claim 31, wherein the method is capable of detecting testosterone at concentrations of less than 1 ng/dL in the sample.

-5-

QUESTMS-00002854

Case 1:18-cv-01436-MN   Document 73-3   Filed 09/25/19   Page 264 of 355 PageID #: 8520

Atty. Dkt. No. 034827-9107

## REMARKS

**Status of the Claims**

This paper amends claims 13, 16-19, 29, 34, and 36-40, adds claims 41-42, and cancels claims 15, 31-33, and 35.  Applicants reserve the right to prosecute canceled subject matter in related applications.  After the amendments set forth above are entered, claims 13, 16-30. and 36-40 are pending and under examination.

Claim 13 has been amended to include the limitation of canceled claim 15; namely that purifying testosterone comprises extracting testosterone from the sample.  Claim 13 has also been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL.  Support for this detection limit is found, e.g., in the Specification at paragraph [0030].

Claims 16-18 have been amended to adjust dependencies necessitated by incorporation of the limitation of claim 15 into claim 13.

Claim 19 has been amended to specify that purifying testosterone _further_ comprises chromatography.  This change was also necessitated by incorporation of the limitation of claim 15 into claim 13.

Claims 22 and 23 have been amended to replace "test sample" with "sample", consistent with the language of the base claim from which they depend.

Claim 29 has been amended to incorporate the limitations of canceled claims 33 and 35; namely, that testosterone is purified by extracting from a sample by high turbulence liquid chromatography (HTLC) (claim 33) and subjecting the extracted testosterone to high performance liquid chromatography (HPLC) (claim 35).  Claim 29 has also been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL.  Support for these detection limits is found, e.g., in the Specification at paragraph [0030].

-6-

QUESTMS-00002855

Atty. Dkt. No. 034827-9107

Claims 36-40 have been amended to adjust dependencies necessitated by cancelation of claim 31 and incorporation of the limitations of canceled claims 33 and 35 into claim 29.

New claims 41 and 42 depend from claim 29 and further specify that the methods are capable of detecting testosterone in the sample at concentrations of less than 5 ng/dL (claim 41), and less than 1 ng/dL (claim 42). Support for these detection limits is found, e.g., in the Specification at paragraph [0030].

As such, no new matter is introduced by the instant amendments.

A detailed listing of all claims that are, or were, in the application, irrespective of whether the claim(s) remain under examination in the application, is presented, with an appropriate defined status identifier.

**Interview Summary**

Applicant thanks Examiner Cordero for courtesies extended to Applicant's representative in the telephonic interview of March 27, 2012. During that interview, the prior art-based rejections over Soldin, Ong, and Tiller were discussed. The substance of the interview is reflected in the claim amendments and arguments presented herein.

**Rejections under 35 U.S.C. § 102 (e)**

Claims 13, 15-16, 18-22, 24-32, and 34-40 stand rejected as allegedly anticipated by Soldin (U.S. Pat. No. 7,473,560). Applicants respectfully traverse as the present invention was reduced to practice prior to Soldin's earliest filing date.

Applicant herewith submits a declaration under 37 CFR 1.131 executed by inventor Dr. Michael P. Caulfield demonstrating reduction to practice prior to the filing date of the Soldin patent application. Exhibits 1 and 2 accompanying the declaration are excerpts from a Validation Summary Report demonstrating application of the claimed method for quantitation of testosterone in human serum and plasma samples.

-7-

4814-2117-6335.1

QUESTMS-00002856

Atty. Dkt. No. 034827-9107

Dr. Caulfield attests that the data shown in Exhibit 2 were collected by the method described in Exhibit 1 prior to April 14, 2003, the filing date of Soldin's earliest patent application.

Thus, Applicant respectfully submits that the subject matter of claims 13, 15-16, 18-22, 24-32, and 34-40 was invented prior to the filing date of Soldin's earliest patent application. As such, Soldin is not prior art against the pending claims. Applicant respectfully requests withdrawal of this rejection.

## Rejections under 35 U.S.C. § 103 (a)

### *Ong et al (50th ASMS Conference Abstract, 2001)*

Claims 13, 15-21, and 27-40 are rejected as allegedly obvious over the Ong Abstract. Claims 15, 31-33, and 35 have been canceled, rendering rejection of those claims moot. Claims 13 and 29, from which all other rejected claims depend, have been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL. Applicants respectfully request reconsideration and withdrawal.

The Ong Abstract is asserted to allegedly teach a mass spectrometric method for determining testosterone in test samples, such as plasma samples, at concentrations of less than 10 ng/dL. Applicant respectfully disagrees.

Ong describes use of testosterone as an internal standard and mass spectrometric detection in an unknown matrix at concentrations of over 14,000 ng/dL. This detection is conducted with a first instrumental configuration involving parallel extraction columns and a single analytical column (i.e., the parallel configuration). Ong Abstract, second to last paragraph. Ong also describes use of a second instrumental configuration involving single extraction column and a single analytical column (i.e., the serial configuration) for the detection of "various analytes" in plasma or tissue samples. Ong Abstract, last paragraph. Ong does not specify analytes that were measured using the serial configuration, but rather generically suggests that for

-8-

QUESTMS-00002857

Atty. Dkt. No. 034827-9107

analyses in biological matrices "in which lower limits of quantitation <u>approaching</u> 0.1 ng/mL are routinely required" (emphasis added) the serial configuration may be used.  <u>Ong Abstract</u>, last paragraph.

Thus, even if it is assumed that the cited portion of Ong teaches detection of testosterone in biological samples lower limits of quantitation <u>approaching</u> 0.1 ng/mL (which Applicant does not concede), Ong still does not provide any reasonable expectation that testosterone could be detected in biological samples at levels <u>below</u> 0.1 ng/mL (or 10 ng/dL) as required in the instant claims.

As such, Applicant respectfully requests reconsideration and withdrawal.

<u>*Tiller et al (J. Chromatogr. A, 1997)*</u>

Claims 13, 16-17, 19-21, 25-30, and 35-40 stand rejected over Tiller et al. (J. chromatogr. A, (1997) 771:119-125).  Claim 13, from which claims 16-17, 19-21, and 25-28 depend, has been amended to include the limitation of unrejected claim 15; namely that in the claimed methods, purifying testosterone comprises extracting testosterone from the sample.  Similarly, claim 29, from which claims 30 and 35-40 depend, has been amended to include the limitation of unrejected claim 33; namely that testosterone is purified by extracting from a sample by high turbulence liquid chromatography (HTLC).

Applicant submits that amendment of claim 13 to include the limitation of previously unrejected claim 15 and amendment of claim 29 to include the limitation of previously unrejected claim 33 renders rejection over Tiller moot and respectfully requests withdrawal.

**Double Patenting Rejections**

Claims 13-28 stand rejected as on the ground of nonstatutory obviousness-type double patenting as allegedly obvious over claims 1-39 of U.S. Patent 6,977,143.  The terminal disclaimer submitted with the last response to Office Action had a typographical error indicating

-9-

Atty. Dkt. No. 034827-9107

an incorrect patent number.  A new terminal disclaimer correcting this clerical error is submitted herewith.  As such, Applicant respectfully requests withdrawal of the obviousness-type double patenting rejection.

Claims 13 and 15-40 also stand provisionally rejected on the ground of nonstatutory obviousness-type double patenting as allegedly obvious over claims 1-13 of copending Application No. 12/607,905.  Applicant has requested that this provisional rejection be held in abeyance until otherwise allowable subject matter is identified.  Applicant will address any address any provisional double patenting rejections at that time, should this rejection remain.

## CONCLUSION

In the event that any matters remain to be resolved in view of this communication, the Examiner is encouraged to call the undersigned so that a prompt disposition of this application can be achieved.

The Commissioner is hereby authorized to charge any additional fees which may be required regarding this application under 37 C.F.R. §§ 1.16-1.17, or credit any overpayment, to Deposit Account No. 19-0741.  Should no proper payment be enclosed herewith, as by a check or credit card payment form being in the wrong amount, unsigned, post-dated, otherwise improper or informal or even entirely missing, the Commissioner is authorized to charge the unpaid amount to Deposit Account No. 19-0741.  If any additional extensions of time are needed for timely acceptance of papers submitted herewith, Applicant hereby petitions for such extension under 37 C.F.R. §1.136 and authorizes payment of any such extensions fees to Deposit Account No. 19-0741.

-10-

QUESTMS-00002859

Atty. Dkt. No. 034827-9107

Respectfully submitted,

Date ___3/28/12_____

By _____

FOLEY & LARDNER LLP
Customer Number: 30542
Telephone:    (858) 847-6722
Facsimile:    (858) 792-6773

Barry S. Wilson, Reg. No. 39,431
Anthony C. Kuhlmann, Reg. No. 57,147
Attorneys for Applicant

-11-

Atty. Dkt. No. 034827-9107

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant: | Caulfield et al. |
| Title: | DETERMINATION OF TESTOSTERONE BY MASS SPECTROMETRY |
| Appl. No.: | 12/946,785 |
| Filing Date: | 11/15/2010 |
| Examiner: | Cordero Garcia, M.M. |
| Art Unit: | 1614 |
| Conf. No.: | 1630 |

### DECLARATION OF MICHAEL P. CAULFIELD UNDER 37 CFR 1.131

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

I, Michael P. Caulfield, being duly warned, declare as follows:

1.    I was educated in biochemistry and microbiology at Sussex University and Bristol University, both in England, where I received a B.S. degree and a PhD. degree, respectively.

2.    I was a research fellow at Harvard Medical School, Boston Massachusetts and a postdoctoral associate at the Massachusetts Institute of Technology. I have been a Scientific Director in Endocrinology & Metabolism at Quest Diagnostics/Nichols Institute since 1997. I am the author or co-author of over 100 published scientific articles and abstracts in the field of Biochemistry, Endocrinology and Metabolism.

-1-

4814-3257-9855.1

Atty. Dkt. No. 034827-9107

3.      I am a co-inventor of the above-referenced patent application and the subject matter described and claimed therein.

4.      I have read the Office Action dated January 13, 2012 for the above-referenced application, and I understand that April 14, 2003 is the earliest priority date for the Soldin patent cited by the Examiner (i.e., U.S. Patent No. 7,473,560), which allegedly discloses or renders obvious my invention.

5.      Prior to April 14, 2003, the inventors put into practice the method described in the above-referenced application for determining the levels testosterone in a sample when taken from a human. The method includes purifying testosterone from a sample by subjecting the sample to an extraction column and an analytical column to generate an eluent; ionizing the eluent to produce one or more testosterone ions detectable by a mass spectrometer; and (c) detecting the amount of one or more of the testosterone ion(s) by a mass spectrometer, wherein the amount of one or more of the testosterone ion(s) is related to the amount of testosterone in the test sample. In some embodiments, the ionizing comprises producing a testosterone ion having a mass/charge ratio of $289.1 \pm 0.5$; isolating the precursor ion by mass spectrometry; and effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having a mass/charge ratio of $96.9 \pm 0.5$. In some embodiments the sample comprises serum. In some embodiments, the extraction column comprises a high turbulence liquid chromatography column. This invention is reflected in the specification and claims of the above mentioned application.

6.      Exhibits 1 and 2 contain excerpts from a laboratory Validation Summary Report for Total Testosterone (HTLC/MS/MS TSQ Quantum ThermoFinnigan). Exhibit 1 is a photocopy of p. 4 of the Report, describing the method employed to collect data for validation of the method. Exhibit 2 is a photocopy of p. 18 of the Report with data resulting from execution of the method. The data in Exhibit 2 were collected at the laboratories of Quest Diagnostics Incorporated, San Juan Capistrano, CA. Exhibits 1 and 2 are true and complete copies of the above-mentioned

4814-3257-9855.1

-2-

QUESTMS-00002862

Atty. Dkt. No. 034827-9107

Validation Summary Report pages, except that the date has been redacted.  I attest that the redacted date is earlier than April 14, 2003.

7.     As seen in Exhibit 1, the inventors performed the method by first purifying testosterone from human plasma and serum with a high turbulence liquid chromatography (HTLC) extraction column, followed by further purification with a high performance liquid chromatography (HPLC) analytical column.  Eluent from the analytical column was ionized, and testosterone precursor ions with m/z of 289.1 ± 0.5 were generated.  These testosterone precursor ions were then isolated by mass spectrometry and fragmented to generate fragment ions comprising a fragment ion with m/z of 96.9 ± 0.5.  Quantitation of testosterone present in the plasma and serum samples was based on the abundance of fragment ions.

8.     As seen in Exhibit 2, the above method was performed on samples of both human plasma and serum, and the results compared to determine the consistency of the method across both sample types.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements are so made punishable by fine or imprisonment, or both, under Section 101 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

_March 28th 2012_
Date

_Michael P Caulfield_
Michael P. Caulfield, Ph.D.

Attachments:
- Exhibit 1: True and complete copy of p. 4 of Validation Summary Report for Total Testosterone (HTLC/MS/MS TSQ Quantum ThermoFinnigan), dated prior to April 14, 2003.

-3-

4814-3257-9855.1

QUESTMS-00002863



**Quest Diagnostics**

**Nichols Institute**

## II. PRINCIPLE

### 1. Methodology:

The overall design of this assay is to have enhanced specificity, a reduced run-time and sample preparation. To achieve this, two systems have been combined. The first is the High Throughput Liquid Chromatography system (HTLC) by Cohesive Technologies and the second is the Tandem Mass Spectrometer (LC/MS/MS) by ThermoFinnigan.

When operating the HTLC system, the elimination of unwanted sample components occurs in a turbulent flow regime. As the unbound and unwanted debris is swept through the extraction column at high velocity, the components of interest are captured and concentrated on the column. The extraction column is then backflushed and the sample is placed onto an analytical column. The next step is the gradient regime of the HTLC system. The analytical column is in-line and allows chromatographic separation of the components of interest. A gradient/step function of 60% to 100% methanol is used to enhance this step.

The detection is carried out by LC/MS/MS. The precursor ion, protonated molecule of interest, and any other ions of similar mass, are isolated by the first MS (Q1). These ions enter a second chamber (Q2) where they collide with Argon molecules. The collision-induced fragments differ for each molecular ion. Specific fragments produced only by the analyte ion are isolated by the final MS (Q3). The quantitation is based on the abundance of the final fragment ions. The following mass transitions are used:

| | Positive Mode | |
|---|---|---|
| Analyte | Precursor Ion | Fragment Ions |
| Testosterone | 289.1 m/z | 96.8 & 109.3 m/z |
| $d_3$-Testosterone | 294.1 m/z | 99.8 & 113.3 m/z |

### 2. Intended Use:

Clinical evaluation of serum testosterone, along with serum LH, assists in evaluation of hypogonadal males. Major causes of lowered testosterone in males include hypogonadotropic hypogonadism, testicular failure, hyperprolactinemia, hypopituitarism, some types of liver and kidney diseases, and critical illness.

Increased serum testosterone levels in females may be indicative of polycystic ovary syndrome and adrenal hyperplasia, among other conditions. The clinical manifestations of excess testosterone include infertility, hirsutism, amenorrhea, and obesity.

Total Testosterone by HTLC/MS/MS Validation Summary

QUESTMS-00002864



Nichols Institute

Figure 4: Specimen Type



Total Testosterone HTLC/MS/MS
Serum vs. Plasma

$y = 1.0936x - 36.573$
$R^2 = 0.902$

- Total Testosterone by HTLC/MS/MS Validation Summary

QUESTMS-00002865

# EXHIBIT J

# Merriam-Webster's Collegiate Dictionary

## Eleventh Edition

Joint Appendix 1930

# Merriam-Webster's Collegiate® Dictionary

## ELEVENTH EDITION



## Merriam-Webster, Incorporated
### Springfield, Massachusetts, U.S.A.



## A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster*™ is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 2012 by Merriam-Webster, Incorporated

Library of Congress Cataloging in Publication Data

Merriam-Webster's collegiate dictionary. — Eleventh ed.
    p.    cm.
    Includes index.
ISBN 978-0-87779-807-1  (Laminated unindexed : alk. paper)
ISBN 978-0-87779-808-8  (Jacketed hardcover unindexed : alk. paper)
ISBN 978-0-87779-809-5  (Jacketed hardcover with digital download : alk. paper)
ISBN 978-0-87779-810-1  (Leatherlook with digital download : alk. paper)
ISBN 978-0-87779-813-2  (Canadian)
ISBN 978-0-87779-814-9  (International)
    1. English language—Dictionaries. I. Title: Collegiate dictionary. II. Merriam-Webster, Inc.

PE1628.M36    2003
423—dc21

2003003674
CIP

Merriam-Webster's Collegiate® Dictionary, Eleventh Edition, principal copyright 2003

COLLEGIATE is a registered trademark of Merriam-Webster, Incorporated

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

Made in the United States of America

16th Printing Quad Graphics Versailles KY January 2012

Joint Appendix 1932

any of the four parts into which a plane ... dinate axes lying in that plane **b** : a shape of ... something is divided by two real or imaginary ... th other at right angles — **qua·dran·tal**

*²r* *n* [NL *Quadrant-, Quadrans* (*Muralis*) ... rs in the constellation Draco from which th' ... *J* (1876) : any of a group of meteors that ...

**ri·phon·ic** *n* \,kwä-drə-ˈfä-nik\ *adj* [irreg. ... *nephonic*)] (1969) : of, relating to, or us- ... ransmission, recording, or reproduction of ... or **quad·ri·phon·ics** \-niks\ *n pl but sing*

[alter. of *¹quadrate*] (1683) : **¹** : **²**QUAD **2** ... for ecological or population studies ... **adj** [ME, fr. L *quadratus*, pp. of *quadrare* ... are square; akin to L *quattuor* four] (14c) ... nately square **2** of a heraldic cross : ex- ... unction of the arms — see CROSS illustra ... stituting a bony or cartilaginous element ... vhich the lower jaw is articulated in most

roximately square or cubical area, space, ...

*lj* (1668) : involving terms of the second ... \ *— equations*) — **quadratic** *n* — **qua-** ...

omogeneous polynomial (as $x^2 + 5xy + y^2$) ...

\-, char-, -tyŭr-, -tŭr\ *n* (1591)  **1** : a con ... tial bodies (as the moon and the sun) have ... egrees as seen from the earth **2** : the posi ... I in area to a given area ... *al\, ad\* (ca. 1656)  **1** consisting of or last- ... urring or being done every four years — ... **\-ni·al·ly** \-nē-ə-lē\ *adv* ... *-ni·ums or* **-nia** \-nē-ə\ [L, *quadrienni* ... *-ar* Annum] (1754) : a period of ...

*-r comb form* [L, akin to L *quadror* four] ... trive to divide, fr. *part-, pars* part] (15c)  **1** ... fo four parts  **2** : shared or participated in ... —: an *agreement*) ... *plé-jik\ n [quadriplegia, fr. NL] (1921) : one ... both arms and both legs — **quad·ri·ple·gia**

(of as a noun)  **2** : to characterize by naming an attribute : DESCRIBE ... ⟨cannot ∼ it as ... either glad or sorry —T. S. Eliot⟩  **3 a** : to fit by ... training, skill, or ability for a special purpose  **b** (1) : to declare com- ... petent or adequate : CERTIFY  (2) : to invest with legal capacity : LI- ... CENSE ∼ *vi*  **1** : to be or become fit (as for an office) : meet the re- ... quired standard  **2** : to acquire legal or competent power or capacity

**qual·i·ta·tive** \'kwä-lə-,tā-tiv\ *adj* (1607) : of, relating to, or involving ... quality or kind — **qual·i·ta·tive·ly** *adv*

**qualitative analysis** *n* (1842) : chemical analysis designed to identify ... the components of a substance or mixture

**¹qual·i·ty** \'kwä-lə-tē\, *n, pl* **-ties** [ME *qualite*, fr. AF *qualité*, fr. L ... *qualitat-, qualitas*, fr. *qualis* of what kind; akin to L *qui* who — more at ... WHO] (14c)  **1 a** : peculiar and essential character : NATURE ⟨her ethe- ... real ∼ —Gay Talese⟩  **b** : an inherent feature : PROPERTY ⟨had a ∼ ... of stridence, dissonance —Roald Dahl⟩  **c** : CAPACITY, ROLE ⟨in the ... ∼ of reader and companion —Joseph Conrad⟩  **2 a** : degree of excel- ... lence : GRADE ⟨the ∼ of competing air service —*Current Biog.*⟩  **b** ... : superiority in kind ⟨merchandise of ∼⟩  **3 a** : social status : RANK ... **b** : ARISTOCRACY  **4 a** : a distinguishing attribute : CHARACTERISTIC ... ⟨possesses many fine *qualities*⟩  **b** *archaic* : an acquired skill : ACCOM- ... PLISHMENT  **5** : the character in a logical proposition of being affirma- ... tive or negative  **6** : vividness of hue  **7 a** : TIMBRE  **b** : the identify- ... ing character of a vowel sound determined chiefly by the resonance of ... the vocal chambers in uttering it  **8** : the attribute of an elementary ... sensation that makes it fundamentally unlike any other sensation

SYN QUALITY, PROPERTY, CHARACTER, ATTRIBUTE mean an intelligi- ... ble feature by which a thing may be identified. QUALITY is a general ... term applicable to any trait or characteristic whether individual or ge- ... neric ⟨material with a jelly-like quality⟩. PROPERTY implies a charac- ... tic that belongs to a thing's essential nature and may be used to de- ... scribe a type or species ⟨the *property* of not conducting heat⟩. CHAR- ... ACTER applies to a peculiar and distinctive quality of a thing or a class ... ⟨remarks of an unseemly *character*⟩. ATTRIBUTE implies a quality as- ... cribed to a thing or a being ⟨the *attributes* of a military hero⟩.

**²quality** *adj* (1936) : being of high quality

**quality assurance** *n* (1973) : a program for the systematic monitoring ... and evaluation of the various aspects of a project, service, or facility to ... ensure that standards of quality are being met

**quality circle** *n* (1979) : a group of employees who volunteer to meet ... regularly to discuss and propose solutions to problems (as of quality or ... productivity) in the workplace

**quality control** *n* (1935) : an aggregate of activities (as design analysis ... and inspection for defects) designed to ensure adequate quality esp. in ... manufactured products — **quality controller** *n*

**quality point** *n* (1948) : GRADE POINT

**quality point average** *n* (ca. 1972) : GRADE POINT AVERAGE

**qualm** \'kwäm *also* 'kwóm or 'kválm\ *n* [origin unknown (ca. 1530)  **1** ... : a sudden attack of illness, faintness, or nausea  **2** : a sudden access of ... usu. disturbing emotion (as doubt or fear)  **3** : a feeling of uneasiness ... about a point esp. of conscience or propriety — **qualmy** *adj*

SYN QUALM, SCRUPLE, COMPUNCTION, DEMUR mean a misgiving ... about what one is doing or going to do. QUALM implies an uneasy fear ... that one is not following one's conscience or better judgment ⟨no ... *qualms* about plagiarizing⟩. SCRUPLE implies doubt of the rightness of ... an act on grounds of principle ⟨no *scruples* against buying stolen ... goods⟩. COMPUNCTION implies a spontaneous feeling of responsibility ... or compassion for a potential victim ⟨had *compunctions* about lying⟩. ... DEMUR implies hesitation caused by objection to an outside sugges- ... tion or influence ⟨accepted her decision without *demur*⟩.

**qualm·ish** \'kwä-mish *also* 'kwó- or 'kvál-\ *adj* (1548)  **1** : feeling ... qualms : NAUSEATED  **b** : overly scrupulous : SQUEAMISH  **2** : of, re- ... lating to, or producing qualms — **qualm·ish·ly** *adv* — **qualm·ish- ... ness** *n*

**quamash** *var of* CAMAS

**quan·da·ry** \'kwän-d(ə-)rē\, *n, pl* **-ries** [origin unknown] (1579) : a state ... of perplexity or doubt

**quan·go** \'kwan̩-,gō\, *n, pl* **quangos** [*quasi*-nongovernmental organiza- ... tion] (1973) *Brit* : a partly autonomous regulatory agency; *esp* : one in ... Britain organized outside the civil service but financed and appointed ... by the government

**quant** \'kwänt\, *n* [short for *quantitative (analyst)*] (1979) : an expert at ... analyzing and managing quantitative data

**quan·tal** \'kwän(t)-ᵊl\ *adj* (1933)  **1** [L *quanti* how many, pl. of *quantus*] ... : of, relating to, or having only two experimental alternatives (as dead ... or alive, all or none)  **2** [*quantum*] : of or relating to a quantum

**quan·ti·fi·ca·tion** \,kwän-tə-fə-ˈkā-shən\ *n* (ca. 1840) : the operation of ... quantifying — **quan·ti·fi·ca·tion·al** \-shnəl, -shə-nᵊl\ *adj* — **quan·ti- ... fi·ca·tion·al·ly** *adv*

**quan·ti·fi·er** \'kwän-tə-,fī(-ə)r\ *n* (1876) : one that quantifies: **a** : a ... prefixed operator that binds the variables in a logical formula by speci- ... fying their quantity  **b** : a limiting noun modifier (as *five* in "the five ... young men") expressive of quantity and characterized by occurrence ... before the descriptive adjectives in a noun phrase

**quan·ti·fy** \-,fī\ *vt* **-fied; -fy·ing** [ML *quantificare*, fr. L *quantus* how ... much] (ca. 1840)  **1 a** (1) : to limit by a quantifier  (2) : to bind by ... prefixing a quantifier  **b** (1) : to make explicit the logical quantity of  **2** ... : to determine, express, or measure the quantity of — **quan·ti·fi·able ... ** \,kwän-tə-ˈfī-ə-bəl\ *adj*

**quan·ti·ta·te** \'kwän-tə-,tāt\ *vt* **-tat·ed; -tat·ing** [back-formation fr. ... *quantitative*] (1927)  **1** : to measure or estimate the quantity of; *esp* : to ... measure or determine precisely  **2** : to express in quantitative terms — ... **quan·ti·ta·tion** \,kwän-tə-ˈtā-shən\ *n*

**quan·ti·ta·tive** \'kwän-tə-,tā-tiv\ *adj* [ML *quantitativus*, fr. L *quantitat-, ... quantitas* quantity] (1581)  **1** : of, relating to, or expressible in terms of

# EXHIBIT K

US007348137B2

(12) **United States Patent**
Caulfield et al.

(10) Patent No.: **US 7,348,137 B2**
(45) Date of Patent: \*Mar. 25, 2008

(54) **DETERMINATION OF TESTOSTERONE BY MASS SPECTROMETRY**

(75) Inventors: **Michael P. Caulfield**, San Clemente, CA (US); **Darren A Carns**, Rancho Santa Margarita, CA (US); **Richard E Reitz**, San Clemente, CA (US)

(73) Assignee: **Quest Diagnostics Investments Incorporated**, Wilmington, DE (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/247,409**

(22) Filed: **Oct. 11, 2005**

(65) **Prior Publication Data**

US 2006/0040256 A1 Feb. 23, 2006

**Related U.S. Application Data**

(63) Continuation of application No. 10/726,919, filed on Dec. 2, 2003, now Pat. No. 6,977,143.

(60) Provisional application No. 60/501,255, filed on Sep. 8, 2003.

(51) **Int. Cl.**
*C12Q 1/00* (2006.01)
*G01N 33/00* (2006.01)

(52) **U.S. Cl.** .......................................... **435/4**; 436/128

(58) **Field of Classification Search** ...................... None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,772,874 A | 6/1998 | Quinn et al. | |
| 5,795,469 A | 8/1998 | Quinn et al. | |
| 5,919,368 A | 7/1999 | Quinn et al. | |
| 5,968,367 A | 10/1999 | Quinn et al. | |
| 6,107,623 A | 8/2000 | Bateman et al. | |
| 6,124,137 A | 9/2000 | Hutchens et al. | |
| 6,204,500 B1 | 3/2001 | Whitehouse et al. | |
| 6,268,144 B1 | 7/2001 | Koster | |
| 6,410,913 B1 | 6/2002 | Brekenfeld et al. | |
| 6,855,703 B1 \* | 2/2005 | Hill et al. ................... | 514/170 |
| 2004/0235193 A1 | 11/2004 | Soldin | |

OTHER PUBLICATIONS

Williams et al. Electrospray Collision-induced Dissociation of Testosterone and Testosterone Hydroxy Analogs. J Mass Spectrom. 1999. vol. 34, pp. 206-216.\*

Carignan et al., "High-performance liquid chromatographic analysis of estradiol valerate-testosterone enanthate in oily formulations" *J Chrom* 301(1):292-96 (1984).

Choi et al., "Rapid HPLC-Electrospray Tandem Mass Spectrometric Assay for Urinary Testosterone and Dihydrotestosterone Glucuronides from Patients with Benign Prostate Hyperplasia." Clin. Chem. 49: 322-5 (2003).

Choi et al., "Determination of Four Anabolic Steroid Metabolites by Gas Chromatography/Mass Spectrometry with Negative Ion Chemical Ionization and Tandem Mass Spectrometry" *Rapid Commun. Mass Spectrom* 12, 1749-55 (1998).

Dorgan et al., "Measurement of steroid sex hormones in serum: a comparison of radioimmunoassay and mass spectrometry." Steroids 67: 151-8 (2002).

Draisci et al., Quantitation of anabolic hormones and their metabolites in bovine serum and urine by liquid chromatography—tandem mass spectrometry. Journal of Chromatography, 870: 511-522, 2000.

Furuta et al., "Simultaneous Measurements of Endogenous and Deuterium-Labelled Tracer Variants of Androstenedione and Testosterone by Capillary Gas Chromatography-Mass Spectrometry." *J Chrom, Biomed Appl* vol. 525: 15-23, (1990).

Giraudi et al., "Effect of Tracer Binding to Serum Proteins on the Reliability of a Direct Free Testosterone Assay." Steriods 52: 423-4 (1988).

Griffiths et al., Derivatisation for the characterization of neutral oxosteroids by electrospray and matrix-assisted laser desorption/ionization tandem mass spectrometry: the Girard P derivative. Rapid Communications in Mass Spectrometry, 17:924-935, 2003.

Lewis et al., DOT/FAA/AM-00/20 A Novel method for the determination of Sildenafil (Viagra®) and its metabolite (UK-103,320) in postmortem specimens using LC/MS/MS and LC/MS/MS/MS. National Technical Information Service, 2000, 3 cover pages and pp. 1-12.

Marcus and Durnford, "A Simple Enzyme-Linked Immunosorbent Assay for Testosterone." Steroids 46: 975-86 (1985).

Merchant and Weinberger, "Recent advancements in surface-enhanced laser desorption/ionization-time of flight-mass spectrometry." *Electrophoresis* 21: 1164-67 (2000).

Minut et al., "Urinary 5α-androstanediol and 5β-androstanediol measurement by gas chromatography after solid-phase extraction and high-performance liquid chromatography." *Int'l J Biol. Markers*, vol. 14(3), 154-59 (1999).

Ooi and Donnelly, "More on the Analog Free-Testosterone Assay." Clin. Chem. 45: 714-715 (1999).

Robb et al., "Atmospheric pressure photoionization: An ionization method for liquid chromatography-mass spectrometry." *Anal. Chem.* 72(15): 3653-3659 (2000).

(Continued)

*Primary Examiner*—Cecilia J. Tsang
*Assistant Examiner*—Marcela Cordero Garcia
(74) *Attorney, Agent, or Firm*—Foley & Lardner, LLP

(57) **ABSTRACT**

Provided are methods for determining the presence or amount of testosterone in a test sample, comprising ionizing all or a portion of the testosterone present in the sample to produce one or more testosterone ions that are detectable in a mass spectrometer. All or a portion of the testosterone present in the sample is ionized to produce one or more testosterone ions, which may be isolated and fragmented to produce precursor ions. A separately detectable internal testosterone standard can be provided in the sample. In a preferred embodiment, the reference is 2,2,4,6,6-d$_5$ testosterone.

**50 Claims, No Drawings**

US 7,348,137 B2

Page 2

OTHER PUBLICATIONS

Ropero-Miller et al., Simultaneous quantitation of opioids in blood by GC-EL-MS analysis following deproteination detautomerization of keto analytes, solid-phase extraction, and trimethylsilyl derivatization. Journal of Analytical Toxicology, 26: 524-528, 2002.

B. Starcevic, et al., "Liquid Chromatography—tandem Mass Spectrometry Assay For Human Serum Testosterone And Trideuterated Testosterone," *Journal of Chromatographyl B* 792:197-204 (2003).

Tiller et al., Drug quantitation on a benchtop liquid chromatography-tandem mass spectrometry system. Journal of Chromatography. 771: 119-125, 1997.

Winters et al., "The analog free testosterone assay: are the results in men clinically useful?" Clin. Chem. 44:2178-2182, (1998).

Wright et al., "Proteinchip surface enhanced laser desorption/ ionization (SELDI) mass spectrometry: a novel protein biochip technology for detection of prostate cancer biomarkers in complex protein mixtures." *Prostate Cancer and Prostatic Diseases* 2: 264-76 (1999).

Zimmer et al., "Comparison of turbulent-flow chromatography with automated solid-phase extraction in 96-well plates and liquid-liquid extraction used as plasma sample preparation techniques for liquid chromatography-tandem mass spectrometry." *J. Chromatogr. A* 854: 23-35 (1999).

* cited by examiner

US 7,348,137 B2

**1**

# DETERMINATION OF TESTOSTERONE BY MASS SPECTROMETRY

## CROSS-REFERENCE TO RELATED PATENT APPLICATIONS

This application claims priority to U.S. Application Ser. No. 60/501,255, filed Sep. 8, 2003, and to U.S. application Ser. No. 10/726,919 filed Dec. 2, 2003, both of which are incorporated herein by reference in their entirety including all figures and tables.

## FIELD OF THE INVENTION

The present invention relates to methods for analyzing testosterone and for detecting testosterone in samples by mass spectrometry.

## BACKGROUND OF THE INVENTION

The following description of the background of the invention is provided simply as an aid in understanding the invention and is not admitted to describe or constitute prior art to the invention.

Testosterone (4 androsten $17\beta$-ol-3-one) is a C19 steroid hormone with a molecular weight of 288.4 daltons. Testosterone is the major androgen in males and is controlled by luteinizing hormone (LH). LH is released from the anterior pituitary exerting the primary control on testosterone production, and acting directly on the Leydig cells in the testes, where testosterone is produced. Testosterone stimulates adult maturation of external genitalia and secondary sex organs, and the growth of beard, axillary and pubic hair. In addition, testosterone has anabolic effects leading to increased linear growth, nitrogen retention, and muscular development. Clinical evaluation of serum testosterone, along with serum LH, assists in evaluation of hypogonadal males. Major causes of lowered testosterone in males include hypogonadotropic hypogonadism, testicular failure, hyperprolactinemia, hypopituitarism, some types of liver and kidney diseases, and critical illness.

Testosterone levels are much lower in females compared to males. The major sources of testosterone in females are the ovaries, the adrenal glands, and the peripheral conversion of precursors, specifically the conversion of androstenedione to testosterone. In females, the normal levels of androgens may provide a substrate for estrogen production. Increased serum testosterone levels in females may be indicative of polycystic ovary syndrome and adrenal hyperplasia, among other conditions. The clinical manifestations of excess testosterone in females include infertility, hirsutism, amenorrhea, and obesity.

Testosterone strongly binds to plasma proteins such as sex hormone-binding globulin (SHBG) or testosterone-estradiol-binding globulin (TEBG). Testosterone also binds with low affinity to CBG (cortisol-binding globulins) and albumin. Less than 2.5% of testosterone circulates unbound to plasma proteins.

Numerous assays for testosterone are known to those of skill in the art. See, e.g., Marcus and Durnford, Steroids 46: 975-86 (1985); Giraudi et al., Steroids 52: 423-4 (1988); Ooi and Donnelly, Clin. Chem. 44: 2178-82 (1988); Dorgan et al., Steroids 67: 151-8 (2002); Choi et al., Clin. Chem. 49: 322-5 (2003).

**2**

## SUMMARY OF THE INVENTION

In a first aspect, the present invention relates to methods for determining the presence or amount of testosterone in a test sample, comprising ionizing all or a portion of the testosterone present in the sample to produce one or more testosterone ions that are detectable in a mass spectrometer operating in positive ion mode, and detecting the ion(s) so produced. The presence or amount of one or more testosterone ions can be related to the presence or amount of testosterone in the original test sample.

Such methods may preferably comprise ionizing all or a portion of the testosterone present in the sample to produce one or more testosterone ions, isolating the testosterone ions by mass spectrometry to provide one or more precursor ions, fragmenting the precursor ions to provide one or more daughter ions that are detectable in a mass spectrometer operating in positive ion mode, and detecting the ion(s) so produced. The presence or amount of the testosterone daughter ion(s) can be related to the presence or amount of testosterone in the original test sample. Such methods are known in the art as "tandem mass spectrometry."

In preferred embodiments, a separately detectable internal testosterone standard is provided in the sample, the presence or amount of which is also determined in said sample. In these embodiments, all or a portion of both the endogenous testosterone and the internal standard present in the sample is ionized to produce a plurality of ions detectable in a mass spectrometer operating in positive ion mode, and one or more ions produced from each are detected by mass spectrometry.

In preferred embodiments, the testosterone ions detectable in a mass spectrometer include ions with a mass/charge ratio (m/z) of $289.1\pm0.5$, $109.2\pm0.5$, and/or $96.9\pm0.5$, the latter two being fragments of the larger ion. In particularly preferred embodiments, the precursor ion has m/z of 289.1, while the fragment ions have an m/z of 109.2 and 96.9.

A preferred internal testosterone standard is $2,2,4,6,6,-d_5$ testosterone. In preferred embodiments, the internal testosterone standard ions detectable in a mass spectrometer have a mass/charge ratio (m/z) of $294.1\pm0.5$, $113.2\pm0.5$ and/or $99.9\pm0.5$. In particularly preferred embodiments, a precursor ion of the internal testosterone standard has an m/z of 294.1, and two fragment ions having an m/z of 113.2 and 99.9 are each detected.

In preferred embodiments, one may determine the specificity of testosterone determination by mass spectrometry by calculating a ratio of the daughter ions for that sample and comparing that ratio with that of a purified testosterone standard. The daughter ion ratio for purified testosterone is 1.43 (i.e. 109→97) while the daughter ion ratio of the internal testosterone standard ($2,2,4,6,6,-d_5$ testosterone) is 1.07 (i.e. 113→99). Under experimental conditions with multiple replicates, a median or mean and range derived from the standard deviation, coefficient of variation (CV) or percentage for each daughter ion ratio also can be calculated. In this way, the presence of an "unknown" compound (interfering substance) can be detected by either an increase or decrease in the observed daughter ion ratio.

In preferred embodiments, one may increase the signal to noise detection of testosterone (or the internal standard) by summing the signal of the detectable daughter ions for that sample. This has the effect of improving detection by increasing the signal and effectively reducing the background, thus improving the signal to noise ratio. In addition, one can quantitate the amount of testosterone in a sample by comparing the summed daughter ion signal of the unknown

US 7,348,137 B2

3

sample with a standard curve of summed daughter ion signals for known amounts of testosterone.

In certain embodiments, the testosterone present in a test sample can be purified prior to ionization. Numerous methods are known in the art to purify testosterone, including chromatography, particularly high performance liquid chromatography (HPLC), and thin layer chromatography (TLC); electrophoresis, including capillary electrophoresis; extraction methods, including ethyl acetate extraction, and methanol extraction; and affinity separations, including immunoaffinity separations; or any combination of the above.

Preferred embodiments utilize high turbulence liquid chromatography (HTLC), alone or in combination with one or more purification methods, to purify testosterone in samples. HTLC is a form of chromatography that utilizes turbulent flow of the material being assayed through the column packing as the basis for performing the separation. HTLC has been applied in the preparation of samples containing two unnamed drugs prior to analysis by mass spectrometry. See, e.g., Zimmer et al., *J. Chromatogr. A* 854: 23-35 (1999); see also, U.S. Pat. Nos. 5,968,367, 5,919,368, 5,795,469, and 5,772,874, which further explain HTLC and are each hereby incorporated by reference in their entirety including all charts and drawings. Persons of ordinary skill in the art understand "turbulent flow." When fluid flows slowly and smoothly, the flow is called "laminar flow." For example, fluid moving through an HPLC column at low flow rates is laminar. In laminar flow the motion of the particles of fluid is orderly with particles moving generally in straight lines. At faster velocities, the inertia of the water overcomes fluid frictional forces and turbulent flow results. Fluid not in contact with the irregular boundary "outruns" that slowed by friction or deflected by an uneven surface. When a fluid is flowing turbulently, it flows in eddies and whirls (or vortices), with more "drag" than when the flow is laminar. Many references are available for assisting in determining when fluid flow is laminar or turbulent (e.g., *Turbulent Flow Analysis: Measurement and Prediction*, P. S. Bernard & J. M. Wallace, John Wiley & Sons, Inc., (2000); *An Introduction to Turbulent Flow*, Jean Mathieu & Julian Scott, Cambridge University Press (2001)).

Because the steps involved in these HTLC procedures can be linked in an automated fashion, the requirement for operator involvement during the purification of testosterone can be minimized. This can result in savings of time and costs, and eliminate the opportunity for operator error.

Purification in this context does not refer to removing all materials from the sample other than the analyte(s) of interest. Instead, purification refers to a procedure that enriches the amount of one or more analytes of interest relative to one or more other components of the sample. In preferred embodiments, purification can be used to remove one or more interfering substances, e.g., one or more substances that would interfere with detection of an analyte ion by mass spectrometry.

In various embodiments, the testosterone present in a test sample can be ionized by any method known to the skilled artisan. These methods include, but are not limited to, electron ionization, chemical ionization, fast atom bombardment, field desorption, and matrix-assisted laser desorption ionization ("MALDI"), surface enhanced laser desorption ionization ("SELDI"), photon ionization, electrospray, and inductively coupled plasma. The skilled artisan will understand that the choice of ionization method can be determined based on the analyte to be measured, type of sample, the type of detector, the choice of positive versus negative mode, etc.

4

Suitable test samples can include any liquid sample that can contain one or more testosterone. For example, samples obtained during the manufacture of synthetic testosterone can be analyzed to determine the composition and yield of the manufacturing process. In certain embodiments, a sample is a biological sample; that is, a sample obtained from any biological source, such as an animal, a cell culture, an organ culture, etc. Particularly preferred are samples obtained from a mammalian animal, such as a dog, cat, horse, etc. Particular preferred mammalian animals are primates, most preferably humans. Suitable samples include blood, plasma, serum, hair, muscle, urine, saliva, tear, cerebrospinal fluid, or other tissue sample. Such samples may be obtained, for example, from a patient; that is, a living person presenting themselves in a clinical setting for diagnosis, prognosis, or treatment of a disease or condition.

The mass spectrometer typically provides the user with an ion scan; that is, the relative abundance of each m/z over a given range (e.g., 100 to 900). The results of an analyte assay, that is, a mass spectrum, can be related to the amount of the analyte in the original sample by numerous methods known in the art. For example, given that sampling and analysis parameters are carefully controlled, the relative abundance of a given ion can be compared to a table that converts that relative abundance to an absolute amount of the original molecule. Alternatively, molecular standards can be run with the samples, and a standard curve constructed based on ions generated from those standards. Using such a standard curve, the relative abundance of a given ion can be converted back into an absolute amount of the original molecule. Numerous other methods for relating the presence or amount of an ion to the presence or amount of the original molecule are well known to those of ordinary skill in the art.

In other preferred embodiments, the purifying step involves (i) applying the sample to an HTLC extraction column, (ii) washing the HTLC extraction column under conditions whereby testosterone is retained by the column, (iii) eluting retained testosterone from the HTLC extraction column, (iv) applying the retained material to an analytical column, and (v) eluting purified testosterone from the analytical column. In preferred embodiments, the HTLC extraction column is a large particle C-18 extraction column, and the analytical column is a C-18 analytical column. The HTLC extraction column is preferably a large particle column.

By "large particle" column is meant a column containing an average particle diameter greater than about 35 μm. In the most preferred embodiment the column contains particles of about 50 μm in diameter, and the C-18 analytical column comprises particles of about 4 μm in diameter. As used in this context, the term "about" means±10%.

The term "analytical column" as used herein refers to a chromatography column having sufficient chromatographic "plates" to effect a separation of materials in a sample that elute from the column sufficient to allow a determination of the presence or amount of an analyte. Such columns are often distinguished from "extraction columns," which have the general purpose of separating or extracting retained material from non-retained materials in order to obtain a purified sample for further analysis.

In various embodiments, one of more steps of the methods can be performed in an inline, automated fashion. For example, in one embodiment steps (i)-(v) are performed in an inline, automated fashion. In another, the steps of ionization and detection are performed inline following steps (i)-(v). The term "inline, automated fashion" as used herein

US 7,348,137 B2

**5**

refers to steps performed without the need for operator intervention. For example, by careful selection of valves and connector plumbing, two or more chromatography columns can be connected as needed such that material is passed from one to the next without the need for any manual steps. In preferred embodiments, the selection of valves and plumbing is controlled by a computer pre-programmed to perform the necessary steps. Most preferably, the chromatography system is also connected in such an on-line fashion to the detector system, e.g., an MS system. Thus, an operator may place a tray of samples in an autosampler, and the remaining operations are performed under computer control, resulting in purification and analysis of all samples selected.

In contrast, the term "off-line" as used herein refers to a procedure requiring manual intervention of an operator. Thus, if samples are subjected to precipitation, and the supernatants are then manually loaded into an autosampler, the precipitation and loading steps are off-line from the subsequent steps.

In preferred embodiments, the purified testosterone is ionized by one or more of the following methods: electrospray ionization, chemical ionization, photon ionization, matrix-assisted laser desorption ionization (MALDI), and surface enhanced laser desorption ionization (SELDI). In the most preferred embodiment, the testosterone is ionized by electrospray ionization. In preferred embodiments, the testosterone ion is in a gaseous state and the inert collision gas is argon or nitrogen. The test sample is preferably obtained from a patient, for example, blood serum. In other embodiments the test sample can be blood plasma, or another liquid or biological fluid. In a most preferred embodiment the sample is de-proteinated prior to the ionization step by exposing the test sample to formic acid. The high turbulence liquid chromatography column most preferably contains a matrix of a C-12 carbon chain. In various embodiments, the mass spectroscopy is MS/MS/TOF mass spectroscopy, or MALDI/MS/MS/TOF mass spectroscopy, or SELDI/MS/MS/TOF mass spectroscopy.

In preferred embodiments, the presence or amount of the testosterone ion is related to the presence or amount of testosterone in the test sample by comparison to a reference 2,2,4,6,6-d5 testosterone sample.

The summary of the invention described above is non-limiting and other features and advantages of the invention will be apparent from the following detailed description of the invention, and from the claims.

## DETAILED DESCRIPTION OF THE INVENTION

The present invention describes methods and compositions for unambiguously detecting testosterone in a test sample. The methods utilize liquid chromatography (LC), most preferably HTLC, to perform an initial purification of selected analytes, and combine this with unique methods of mass spectrometry (MS), thereby providing a high-throughput assay system for detecting and quantifying testosterone in a liquid sample. The preferred embodiments are particularly well suited for application in large clinical laboratories. Testosterone assays are provided that have enhanced specificity and are accomplished in less time and with less sample preparation than required in presently available testosterone assays. In various embodiments the methods of the invention accurately detect testosterone in samples where it is present in concentrations of less than 50 ng/dL, less than 25 ng/dL, less than 10 ng/dL, less than 5 ng/dL, and even less than 1 ng/dL. In various embodiments the concentration has

**6**

a percent confidence of at least 90% or at least 93% or at least 95% or at least 97% or at least 98% or at least 99%. Persons of ordinary skill in the art understand statistical calculations and how to calculate a percent confidence for particular assays.

In one embodiment, the assay involves the combination of LC with mass spectrometry. In a preferred embodiment, the LC is HTLC. In another preferred embodiment, the mass spectrometry is tandem mass spectrometry (MS/MS).

Liquid chromatography (LC) and high-performance liquid chromatography (HPLC) rely on relatively slow, laminar flow technology. HPLC has been successfully applied to the separation of compounds in biological samples. But a significant amount of sample preparation is required prior to the separation and subsequent analysis with a mass spectrometer (MS), making this technique labor intensive. In addition, most HPLC systems do not utilize the mass spectrometer to its fullest potential, allowing only one HPLC system to be connected to a single MS instrument, resulting in lengthy time requirements for performing a large number of assays. High turbulence liquid chromatography (HTLC) methods that combine multiple separations in one procedure lessen the need for lengthy sample preparation and operate at a significantly greater speed. Such methods also achieve a separation performance superior to laminar flow (HPLC) chromatography. HTLC allows for direct injection of biological samples (plasma, urine, etc.). This is difficult to achieve in traditional forms of chromatography because denatured proteins and other biological debris quickly block the separation columns.

The terms "mass spectrometry" or "MS" as used herein refer to methods of filtering, detecting, and measuring ions based on their mass-to-charge ratio, or "m/z." In general, one or more molecules of interest are ionized, and the ions are subsequently introduced into a mass spectrographic instrument where, due to a combination of magnetic and electric fields, the ions follow a path in space that is dependent upon mass ("m") and charge ("z"). See, e.g., U.S. Pat. No. 6,204,500, entitled "Mass Spectrometry From Surfaces;" U.S. Pat. No. 6,107,623, entitled "Methods and Apparatus for Tandem Mass Spectrometry;" U.S. Pat. No. 6,268,144, entitled "DNA Diagnostics Based On Mass Spectrometry;" U.S. Pat. No. 6,124,137, entitled "Surface-Enhanced Photolabile Attachment And Release For Desorption And Detection Of Analytes;" Wright et al., "Proteinchip surface enhanced laser desorption/ionization (SELDI) mass spectrometry: a novel protein biochip technology for detection of prostate cancer biomarkers in complex protein mixtures," *Prostate Cancer and Prostatic Diseases* 2: 264-76 (1999); and Merchant and Weinberger, "Recent advancements in surface-enhanced laser desorption/ionization-time of flight-mass spectrometry," *Electrophoresis* 21: 1164-67 (2000), each of which is hereby incorporated by reference in its entirety, including all tables, figures, and claims.

For example, in a "quadrupole" or "quadrupole ion trap" instrument, ions in an oscillating radio frequency field experience a force proportional to the DC potential applied between electrodes, the amplitude of the RF signal, and m/z. The voltage and amplitude can be selected so that only ions having a particular m/z travel the length of the quadrupole, while all other ions are deflected. Thus, quadrupole instruments can act as both a "mass filter" and as a "mass detector" for the ions injected into the instrument.

Moreover, one can often enhance the resolution of the MS technique by employing "tandem mass spectrometry," or "MS/MS." In this technique, a precursor ion or group of ions generated from a molecule (or molecules) of interest may be

7

filtered in an MS instrument, and these precursor ions subsequently fragmented to yield one or more fragment ions that are then analyzed in a second MS procedure. By careful selection of precursor ions, only ions produced by certain analytes of interest are passed to the fragmentation chamber, where collision with atoms of an inert gas occurs to produce the fragment ions. Because both the precursor and fragment ions are produced in a reproducible fashion under a given set of ionization/fragmentation conditions, the MS/MS technique can provide an extremely powerful analytical tool. For example, the combination of filtration/fragmentation can be used to eliminate interfering substances, and can be particularly useful in complex samples, such as biological samples.

Additionally, recent advances in technology, such as matrix-assisted laser desorption ionization coupled with time-of-flight analyzers ("MALDI-TOF") permit the analysis of analytes at femtomole levels in very short ion pulses. Mass spectrometers that combine time-of-flight analyzers with tandem MS are also well known to the artisan. Additionally, multiple mass spectrometry steps can be combined in methods known as "MS/MS."

Ions can be produced using a variety of methods including, but not limited to, electron ionization, chemical ionization, fast atom bombardment, field desorption, and matrix-assisted laser desorption ionization ("MALDI"), surface enhanced laser desorption ionization ("SELDI"), photon ionization, electrospray ionization, and inductively coupled plasma.

The term "electron ionization" as used herein refers to methods in which one or more analytes of interest in a gaseous or vapor phase is/are interacted with a flow of electrons. Impact of the electrons with the analyte(s) produces analyte ions, which may then be subjected to a mass spectroscopy technique.

The term "chemical ionization" as used herein refers to methods in which a reagent gas (e.g. ammonia) is subjected to electron impact, and analyte ions are formed by the interaction of reagent gas ions and analyte molecules.

The term "fast atom bombardment" as used herein refers to methods in which a beam of high energy atoms (often Xe or Ar) impacts a non-volatile test sample, desorbing and ionizing molecules contained in the sample. Samples are dissolved in a viscous liquid matrix, such as glycerol, thioglycerol, m-nitrobenzyl alcohol, 18-crown-6 crown ether, 2-nitrophenyloctyl ether, sulfolane, diethanolamine, and triethanolamine. The choice of an appropriate matrix for a compound or sample is an empirical process.

The term "field desorption" as used herein refers to methods in which a non-volatile test sample is placed on an ionization surface, and an intense electric field is used to generate analyte ions.

The term "matrix-assisted laser desorption ionization," or "MALDI" as used herein refers to methods in which a non-volatile sample is exposed to laser irradiation, which desorbs and ionizes analytes in the sample by various ionization pathways, including photo-ionization, protonation, deprotonation, and cluster decay. For MALDI, the sample is mixed with an energy-absorbing matrix, which facilitates desorption of analyte molecules.

The term "surface enhanced laser desorption ionization," or "SELDI" as used herein refers to another method in which a non-volatile sample is exposed to laser irradiation, which desorbs and ionizes analytes in the sample by various ionization pathways, including photo-ionization, protonation, deprotonation, and cluster decay. For SELDI, the sample is typically bound to a surface that preferentially

8

retains one or more analytes of interest. As in MALDI, this process may also employ an energy-absorbing material to facilitate ionization.

The term "electrospray ionization," or "ESI," as used herein refers to methods in which a solution is passed along a short length of capillary tube, to the end of which is applied a high positive or negative electric potential. Solution reaching the end of the tube, is vaporized (nebulized) into a jet or spray of very small droplets of solution in solvent vapor. This mist of droplets flows through an evaporation chamber which is heated slightly to prevent condensation and to evaporate solvent. As the droplets get smaller the electrical surface charge density increases until such time that the natural repulsion between like charges causes ions as well as neutral molecules to be released.

The term "Atmospheric Pressure Chemical Ionization," or "APCI," as used herein refers to mass spectroscopy methods that are similar to ESI; however, APCI produces ions by ion-molecule reactions that occur within a plasma at atmospheric pressure. The plasma is maintained by an electric discharge between the spray capillary and a counter electrode. Then ions are typically extracted into the mass analyzer by use of a set of differentially pumped skimmer stages. A counterflow of dry and preheated $N_2$ gas may be used to improve removal of solvent. The gas-phase ionization in APCI can be more effective than ESI for analyzing less-polar species.

The term "Atmospheric Pressure Photoionization" ("APPI") as used herein refers to the form of mass spectroscopy where the mechanism for the photoionization of molecule M is photon absorption and electron ejection to form the molecular M+. Because the photon energy typically is just above the ionization potential, the molecular ion is less susceptible to dissociation. In many cases it may be possible to analyze samples without the need for chromatography, thus saving significant time and expense. In the presence of water vapor or protic solvents, the molecular ion can extract H to form MH+. This tends to occur if M has a high proton affinity. This does not affect quantitation accuracy because the sum of M+ and MH+ is constant. Drug compounds in protic solvents are usually observed as MH+, whereas nonpolar compounds such as naphthalene or testosterone usually form M+. Robb, D. B., Covey, T. R. and Bruins, A. P. (2000): See, e.g., Robb et al., Atmospheric pressure photoionization: An ionization method for liquid chromatography-mass spectrometry. *Anal. Chem.* 72(15): 3653-3659.

The term "inductively coupled plasma" as used herein refers to methods in which a sample is interacted with a partially ionized gas at a sufficiently high temperature to atomize and ionize most elements.

The term "ionization" or "ionizing" as used herein refers to the process of generating an analyte ion having a net electrical charge equal to one or more electron units. Negative ions are those ions having a net negative charge of one or more electron units, while positive ions are those ions having a net positive charge of one or more electron units.

The term "desorption" as used herein refers to the removal of an analyte from a surface and/or the entry of an analyte into a gaseous phase.

In those embodiments, such as MS/MS, where precursor ions are isolated for further fragmentation, collision-induced dissociation ("CID") is often used to generate the fragment ions for further detection. In CID, precursor ions gain energy through collisions with an inert gas, and subsequently fragment by a process referred to as "unimolecular decomposition." Sufficient energy must be deposited in the precursor

US 7,348,137 B2

9

ion so that certain bonds within the ion can be broken due to increased vibrational energy.

Sample Preparation for Mass Spectrometry

Numerous methods have been described to purify testosterone from samples prior to assay. For example, high performance liquid chromatography (HPLC) has been used to purify samples containing testosterone using C-18 column with an 8:2 methanol:water mixture at 1 ml/min. Mass spectrometry and gas chromatography has been used to analyze metabolites of anabolic steroids (See Choi et al., *Rapid Commun. Mass Spectrom* 12, 1749-55 (1998); Furuta et al., *J Chrom, Biomed Appl* (1990), Vol. 525: 15-23; Carignan et al., *J Chrom* 301(1):292-96 (1984); Minut et al., *Int'l J. Biol. Markers, Vol.* 14(3); 154-59 (1999)).

Recently, high turbulence liquid chromatography ("HTLC") has been applied for sample preparation of samples containing two unnamed drugs prior to analysis by mass spectrometry. See, e.g., Zimmer et al., *J. Chromatogr. A* 854: 23-35 (1999); see also, U.S. Pat. Nos. 5,968,367; 5,919,368; 5,795,469; and 5,772,874, each of which is hereby incorporated by reference in its entirety. Traditional HPLC analysis relies on column packings in which laminar flow of the sample through the column is the basis for separation of the analyte of interest from the test sample. The skilled artisan will understand that separation in such columns is a diffusional process. In contrast, it is believed that turbulent flow, such as that provided by HTLC columns and methods, may enhance the rate of mass transfer, improving the separation characteristics provided.

Additionally, the commercial availability of HTLC apparatuses that permit multiplexing of columns and direct integration with MS instruments makes such instruments particularly well suited to high-throughput applications.

Numerous column packings are available for chromatographic separation of samples, and selection of an appropriate separation protocol is an empirical process that depends on the sample characteristics, the analyte of interest, the interfering substances present and their characteristics, etc. For HTLC, polar, ion exchange (both cation and anion), hydrophobic interaction, phenyl, C-2, C-8, and C-18 columns are commercially available. During chromatography, the separation of materials is effected by variables such as choice of eluant (also known as a "mobile phase"), choice of gradient elution and the gradient conditions, temperature, etc.

In certain embodiments, an analyte may be purified by applying a sample to a column under conditions where the analyte of interest is reversibly retained by the column packing material, while one or more other materials are not retained. In these embodiments, a first mobile phase condition can be employed where the analyte of interest is retained by the column, and a second mobile phase condition can subsequently be employed to remove retained material from the column, once the non-retained materials are washed through. The second mobile phase may be phased in gradually, usually under computer control directing the composition of mobile phase over time, or by an immediate change in the mobile phase. The retained materials may also be removed from the column by "backflushing" the column, or reversing the direction of flow of the mobile phase. This may be particularly convenient for material that is retained at the top of the column. Alternatively, an analyte may be purified by applying a sample to a column under mobile phase conditions where the analyte of interest elutes at a differential rate in comparison to one or more other materials. As discussed above, such procedures may enrich the

10

amount of one or more analytes of interest relative to one or more other components of the sample.

The terms "phenyl," "C-2," "C-8," and "C-18" as used herein refer to functional groups present on a column packing material. For example, a phenyl column exposes the material flowing through the column to unsubstituted phenyl groups, while a C-18 column exposes the material flowing through the column to unsubstituted straight or branched chain 18-carbon alkyl groups.

The term "analytical column" as used herein refers to a chromatography column having sufficient chromatographic "plates" to effect a separation of materials in a sample that elute from a column sufficient to allow a determination of the presence or amount of an analyte without further purification on a chromatography column. However, further purification may occur by one or more other methods (e.g., mass spectrometry). Such columns are often distinguished from "extraction columns," which have the general purpose of separating or extracting retained material from non-retained materials.

In preferred embodiments, one or more of the purification and/or analysis steps can be performed in an "inline" fashion. The term "inline" as used herein refers to steps performed without further need for operator intervention. For example, by careful selection of valves and connector plumbing, two or more chromatography columns can be connected such that material is passed from one to the next without the need for additional manual steps. In preferred embodiments, the selection of valves and plumbing is controlled by a computer pre-programmed to perform the necessary steps. Most preferably, the chromatography system is also connected in such an in-line fashion to the detector system, e.g., an MS system. Thus, an operator may place a tray of samples in an autosampler, and the remaining operations are performed "in-line" under computer control, resulting in purification and analysis of all samples selected.

In contrast, the term "off-line" as used herein refers to a procedure requiring manual intervention of an operator after the test sample is loaded onto the first column. Thus, if samples are subjected to precipitation, and the supernatants are then manually loaded into an autosampler, the precipitation and loading steps are off-line from the subsequent steps.

Traditional HPLC analysis relies on the chemical interactions between sample components and column packings, where laminar flow of the sample through the column is the basis for separation of the analyte of interest from the test sample. The skilled artisan will understand that separation in such columns is a diffusional process. In contrast, it is believed that "turbulent flow," such as that provided by HTLC columns and methods, enhances the rate of mass transfer, thereby improving the separation characteristics provided by the separation system. HTLC columns separate components by means of high chromatographic flow rates through a packed column containing rigid particles. By employing high flow rates (e.g., 3-4 ml/min), turbulent flow occurs in the column that causes nearly complete interaction between the stationary phase and the analytes. An additional advantage of HTLC columns is that the macromolecular build-up associated with biological fluid matrices is avoided since the high molecular weight species are not retained under the turbulent flow conditions.

Numerous column packings are available for chromatographic separation of samples, and selection of an appropriate separation protocol is an empirical process that depends on the sample characteristics, the analyte of interest, the interfering substances present and their characteris-

US 7,348,137 B2

**11**

tics, etc. In preferred embodiments the HTLC columns have a media composition of styrene-divinylbenzene cross-linked copolymer with a median particle size of 60 μm (nominal) and a median particle pore size of 100 Å. In one embodiment the column dimensions are 1.0 mm ID×50 mm length, and the wetted parts of the apparatus are 316 stainless steel and styrene-divinylbenzene copolymer in a preferred embodiment. The preferred columns are silica-based HTLC columns configured to offer rapid processing. Various packing chemistries can be used depending on the needs (e.g., structure, polarity, and solubility of compounds being purified).

In various embodiments the columns are polar, ion exchange (both cation and anion), hydrophobic interaction, phenyl, C-2, C-8, C-18 columns, polar coating on porous polymer, and others are also commercially available. For purification of testosterone, it has been discovered that a column packed with a C-18 or C-8 matrix produces an advantageous separation. More preferably, the C-18 matrix contains bead sizes of about 50 um, trifunctional, at about 200 mg of beads per 3 ml. The total surface area is about 500 m²/gm. Most preferably, the HTLC may be followed by HPLC on a C18 column with a porous spherical silica. During chromatography, the separation of materials is effected by variables such as choice of eluant (also known as a "mobile phase"), choice of gradient elution and the gradient conditions, temperature, etc.

In certain embodiments, an analyte may be purified by applying a sample to a column under conditions where the analyte of interest is reversibly retained by the column packing material, while one or more other materials are not retained. In these embodiments, a first mobile phase condition can be employed where the analyte of interest is retained by the column, and a second mobile phase condition can subsequently be employed to remove retained material from the column, once the non-retained materials are washed through. Alternatively, an analyte may be purified by applying a sample to a column under mobile phase conditions where the analyte of interest elutes at a differential rate in comparison to one or more other materials. As discussed above, such procedures may enrich the amount of one or more analytes of interest relative to one or more other components of the sample.

Daughter Ion Ratios for Specificity Determination

In preferred embodiments, one may determine the specificity of testosterone determination by mass spectrometry by calculating a ratio of the daughter ions for that sample and comparing that ratio with that of a purified testosterone standard. The daughter ion ratio for purified testosterone is 1.43 (i.e. 109÷97) while the daughter ion ratio of the internal testosterone standard (2,2,4,6,6,-d$_5$ testosterone) is 1.07 (i.e. 113÷99). Under experimental conditions with multiple replicates, a median or mean and range derived from standard deviation, CV or percentage for each daughter ion ratio also can be calculated. In this way, the presence of an "unknown" compound (interfering substance) can be detected by either an increase or decrease in the observed daughter ion ratio. Under experimental conditions with multiple replicates, a median and range and standard deviation for each daughter ion ratio also can be calculated. Automated rules can be programmed into the calculation/reporting program to look for these changes in ratios to help in identifying the presence of an "interfering" substance.

Daughter Ion Summation for Quantitation and Sensitivity

In preferred embodiments, one may increase the signal to noise detection of testosterone (or the internal standard) by summing the signal of the detectable daughter ions for that

**12**

sample. This has the effect of improving detection by increasing the signal and effectively reducing the background, thus improving the signal to noise ratio. In addition, one can quantitate the amount of testosterone in a sample by comparing the summed daughter ion signal of the unknown sample with a standard curve of summed daughter ion signals for known amounts of testosterone. Automated rules can be programmed into the calculation/reporting program to sum the daughter ion values for each analysis.

The following examples serve to illustrate the present invention. These examples are in no way intended to limit the scope of the invention.

EXAMPLES

Example 1

Sample Preparation

A blood serum sample is collected from a human patient. The serum is first de-proteinated using a 10% formic acid solution or a 1% trichloroacetic acid solution (in methanol). The deproteination also acts to release testosterone from SHBG, albumin, and other binding proteins. In other embodiments proteins can be removed from the blood with other acids such as a with a solution of 1% trichloroacetic acid in methanol.

Sex hormone-binding globulin (SHBG) is a glycoprotein synthesized by the liver. SHBG's has a high affinity for testosterone that impacts bioavailable testosterone levels because hormone molecules are inactive until they are released and become free. SHBG binds up to 98 percent of the steroid hormones in the blood including 5a-dihydrotestosterone (DHT), testosterone, and androstenediol with particularly high affinity. The binding capacity of SHBG for testosterone is approximately 30,000 times greater than that of albumin.

To understand the stability of testosterone in samples, two levels of sample pool were subjected to the following conditions:

Freeze/Thaw: 1, 2, 3, 4, and 5 cycles.
Room Temperature: 0, 8, 24, 48, 96 and 168 hours.
Refrigerated (2-8° C.): 0, 1, 2, 4, 7, and 14 days.

Duplicate runs of samples were run on two separate days.

Table 1 summarizes the stability of testosterone in samples:

TABLE 1

| Sample Stability of Testosterone | |
|---|---|
| Condition | Stability |
| Refrigerated (0°-8° C.) | 7 Days |
| Room Temp (18-25° C.) | 4 Days |
| Freeze Thaw Cycles: | Up to 5 with no effect |

Example 2

Sample Analysis

This example provides a general description of a preferred embodiment of the methods for determining total testosterone in a sample.

During the HTLC procedure sample contaminants are eliminated through the turbulent flow regimen. As unbound and unwanted debris is swept through the extraction column

US 7,348,137 B2

**13**

at high velocity, the testosterone is captured and concentrated on the column. The extraction column is then back-flushed and the sample is loaded onto an analytical column. The HTLC system is then subjected to an elution gradient. The analytical column is in-line and allows for the chromatographic separation of the components of interest. A gradient/step function of 60% to 100% methanol is useful for enhancing this step.

Detection was accomplished using HTLC/MS/MS. The precursor ion, protonated molecule of interest, and any other ions of similar mass are isolated by the first MS (Q1). These ions enter a second chamber (Q2) where they collide with argon molecules. The collision-induced fragments differ for each molecular ion. Specific fragments produced only by the analyte ion are isolated by the final MS (Q3). The quantitation is based on the abundance of the final fragment ions. Mass transitions used for testosterone and the internal standard, 2,2,4,6,6-d$_5$ testosterone, are shown in Table 2.

TABLE 2

| Testosterone and 2,2,4,6,6-d$_5$ Testosterone ion fragments | | |
|---|---|---|
| Analyte | Precursor Ion | Fragment Ions |
| Testosterone | 289.1 ± 0.5 m/z | 109.2 ± 0.5 m/z |
| | | 96.9 ± 0.5 m/z |
| 2,2,4,6,6-d$_5$ Testosterone | 294.1 ± 0.5 m/z | 113.2 ± 0.5 m/z |
| | | 99.9 ± 0.5 m/z |

After the removal of proteins from the serum, 90 μL of extracted sample was injected into the HTLC system using methanol and water in the mobile phase. The HTLC system is logically divided into two functions: 1) Solid phase extraction using a large particle size (e.g., 50 μm) packed column and 2) HPLC chromatography using a binary gradient and a 4 μm reverse phase analytical column. In this example a C-18 polymer column was used for extraction, which was endcapped, trifunctional, 500 m$^2$/g, and had 50 μm particle size.

In the solid phase extraction mode of the HTLC system, the sample was first pumped through the extraction column at a high (greater than about 1.5 ml/min) flow rate using the HTLC loading pump. The high flow rate creates turbulence inside the extraction column. This turbulence ensures optimized binding of testosterone to the large particles in the column and the passage of residual protein and debris to waste.

After this loading step, the flow was reversed and the sample eluted off of the extraction column and transferred to the analytical HPLC column. The HPLC column was an all-purpose reverse phase column with a 4 μm, 80 Å silica gel. The gel particles were C-12 bonded phase with trimethyl chlorosilane (TMS) endcapping suitable for moderately polar or non-polar analytes, acids, and bases over a broad pH range. Such HPLC columns are commercially available (e.g., MetaChem Polaris).

In the analytical mode of the HTLC, the sample was first loaded onto the analytical column. A binary gradient of from 60% to 100% methanol was used, resulting in the separation of testosterone from other analytes contained in the sample. The separated sample was then transferred to the MS/MS for quantitation.

**14**

Example 3

Detection and Quantitation of Testosterone by MS/MS

The flow of liquid solvent from the HTLC entered the heated nebulizer interface of the MS/MS analyzer. The solvent/analyte mixture was first converted to vapor in the heated tubing of the interface. The analytes, contained in the nebulized solvent, were ionized and a positive charge added by the corona discharge needle of the interface, which applies a large voltage to the nebulized solvent/analyte mixture. The ions passed through the orifice of the instrument and entered the first quadrupole. Quadrupoles 1 and 3 (Q1 and Q3) were the mass filters, allowing selection of ions based on their mass to charge ratio (m/z). Quadrupole 2 (Q2) was the collision cell, where ions were fragmented.

The first quadrupole of the MS/MS (Q1) selected for molecules with the mass to charge ratio of testosterone (289). Ions with this m/z passed to the collision chamber (Q2), while ions with any other m/z collided with the sides of the quadrupole and were destroyed. Ions entering Q2 collided with neutral gas molecules and fragment. This process is called Collisionally Activated Dissociation (CAD). The CAD gas used in this example was argon, resulting in the generation of different fragment ions than those obtained using nitrogen. The fragment ions generated were passed into quadrupole 3 (Q3), where the two fragment ions of testosterone to be measured (m/z 109.2±0.5 m/z & 96.9±0.5 m/z) were selected for, while other ions were screened out. The selected fragment ions were collected by the detector. The same process was carried out for an internal standard, which was a 5-deuterated testosterone molecule. Thus, the ion pairs measured were those shown in Table 2:

Selected MS/MS parameters were:

| | |
|---|---|
| Dwell time: | 250 msec |
| Res Q1: | 0.5 amu |
| Res Q2: | 0.7 |
| Curtain Gas: | 4 |
| CAD Gas: | 1.5 |
| NC Temp.: | 270° C. |
| Temp: | 350° C. |
| GS1: | 20 |
| GS2: | 0 |
| CE: | 20 |

As ions collide with the detector, they produce a pulse of electrons. The pulse was converted to a digital signal, which was counted to provide an ion count. The acquired data was relayed to the computer, which plotted counts of the ions collected vs. time. Heights of the peaks generated were computer-measured, response factors were generated from calibration material, and testosterone thereby quantitated in the sample.

The HTLC system can be operated with 1 to 4 columns in parallel. Given that a single assay requires about 4.75 minutes to traverse the column, by staggering the start time on each column, a 4-fold multiplexed system can inject four times as many test samples into the MS/MS instrument than with a single column. Thus, a set of 200 samples may be assayed for testosterone in 230 minutes using HTLC 4 fold muliplexing, as opposed to 2000 minutes by HPLC which allows only for a single column. Furthermore, following transfer of samples to the autosampler, no further operator handling of samples is required, as the HTLC may be

US 7,348,137 B2

**15**

computer-controlled to perform the subsequent purification and analysis steps in a fully in-line configuration.

### Example 4

### LOD (Limit of Detection)

Twenty one replicates of the zero standard (stripped serum; see below) were run to determine the reproducibility of the method. Statistical analysis was applied to determine the mean counts per second. The mean plus three standard deviations was extrapolated into the standard curve and viewed to determine the LOD. The LOD for the HTLC/MS/MS assay was 0.6 ng/dL. The results were as follows:

TABLE 3

| LOD Determination | |
| --- | --- |
| | Stripped Serum |
| Mean (cps): | 836.3 |
| Standard Deviation (cps): | 140.2 |
| Mean + 3 SD (cps): | 1256.9 |
| LOD testosterone (ng/dL): | 0.6 |

### Example 5

### LOQ (Lower Limit of Quantitation)

The LOQ is the point where measurements become quantitatively meaningful and concentration where CV of the replicates is less than 20%. Standards for LOQ determination were prepared using an in-house pool of charcoal stripped serum. Biocell serum was mixed with Activated Charcoal, centrifuged, and the supernatant removed and saved. The newly prepared stripped serum was first run to check for any endogenous testosterone, of which none was detected. Five pools of different testosterone concentrations were prepared by spiking the stripped serum with testosterone standard in methanol. The levels of pools prepared were: 0.25 ng/dL, 0.5 ng/dL, 1.0 ng/dL, and 2.5 ng/dL. Each standard was run 5 times. The LOQ for the HTLC/MS/MS was determined to be 1 ng/dL from this study. The summarized results were as follows:

TABLE 4

| LOQ Determination | | | | |
| --- | --- | --- | --- | --- |
| | 0.25 ng/dL | 0.5 ng/dL | 1.0 ng/dL | 2.5 ng/dL |
| Mean Testosterone Value (ng/dL) | 1.5 | 2 | 1.1 | 2.5 |
| Standard Deviation | 0.9 | 1.6 | 0.1 | 0.3 |
| % cv | 60% | 73% | 9% | 12% |

### Example 6

### Intra- and Inter-Assay Precision

Two levels of serum pools were run 20 times each within one run to obtain a measure of intra-assay precision. The results obtained are summarized as follows:

**16**

TABLE 5

| Intra-assay precision | | |
| --- | --- | --- |
| | Low Pool | High Pool |
| Average Testosterone Value (ng/dL) | 21.7 | 142.8 |
| Standard Deviation | 2.8 | 16.1 |
| % cv | 13.1% | 11.3 |
| N: | 23 | 22 |

Three levels of serum pools were run 14 times each over 6 separate days (13 separate assays) to obtain a measure of inter-assay precision. The results obtained are summarized as follows:

TABLE 6

| Inter-assay precision | | | |
| --- | --- | --- | --- |
| | Low Pool | Mid Pool | High Pool |
| Average Testosterone Value (pg/mL) | 283 | 2046 | 9148 |
| Standard Deviation | 37 | 123 | 1218 |
| % cv | 12.9% | 6.0% | 13.3% |
| n: | 32 | 32 | 32 |

### Example 6

### Accuracy

Total Testosterone results obtained from the HTLC/MS/MS assay were compared to those obtained using two other methodologies: Radioimmunoassay (RIA) and the Bayer Advia Centaur® automated platform.

Radioimmunoassay vs. HTLC/MS/MS:

140 Female samples were run on both RIA and HTLC/MS/MS Testosterone assays. The results obtained are summarized as follows in Table 6:

For 140 female adult samples:

| Female Samples RIA vs. HTLC/MS/MS | |
| --- | --- |
| R²: | 0.573 |
| Slope | 0.840 |
| Y intercept | 6.4 |
| N: | 140 |

Bayer Advia Centaur vs. LC/MS/MS

243 adult samples (135 females and 108 males) were run on both Centaur and LC/MS/MS Testosterone assays. The results are summarized as follows in Tables 7, 8, and 9:

For all 243 samples (male and female):

| Female Samples Centaur vs. HTLC/MS/MS | |
| --- | --- |
| R²: | 0.974 |
| Slope | 0.992 |
| Y intercept | −15.1 |
| N: | 243 |

US 7,348,137 B2

**17**

For 135 female adult samples:

| Female Samples Centaur vs. HTLC/MS/MS | |
|---|---|
| R²: | 0.437 |
| Slope | 0.529 |
| Y intercept | 4.7 |
| N: | 135 |

For 108 male adult samples:

| Female Samples Centaur vs. HTLC/MS/MS | |
|---|---|
| R²: | 0.945 |
| Slope | 0.985 |
| Y intercept | −10.6 |
| N: | 108 |

### Example 7

#### Linearity

A serial dilution consisting of 6 levels (Back calculation of the standard curve) was run in 10 separate assays. Recovery was calculated for each level. The assay was linear to 33333 pg/mL. The final results are summarized as follows:

TABLE 7

| Assay Linearity | | | | | | |
|---|---|---|---|---|---|---|
| Standard | 137 | 412 | 1235 | 3704 | 11111 | 33333 |
| Average Testosterone Value (pg/mL) | 155 | 435 | 1186 | 3683 | 11082 | 33491 |
| Theoretical Gravimetric Value (pg/mL) | 137 | 412 | 1235 | 3704 | 11111 | 33333 |
| % Recovery | 113% | 106% | 96% | 99% | 100% | 101% |

### Example 8

#### Assay Specificity

| Compound (Dose = 10 µg/dL) | Retention Time (mins.) (Analyte w/Interference) | Observed (ng/Dl) | % Interference |
|---|---|---|---|
| 5-AD-17β | 1.22 | 1500.0 | 15.0 |
| AD | N/D | — | 0.05 |
| 17-HP | N/D | — | 0.05 |
| PT | N/D | — | 0.05 |
| ESTRIOL | N/D | — | 0.05 |
| PT-ONE | 0.88 | 50.0 | 0.5 |
| 5-PT | 1.13 | 200.0 | 2.0 |
| CORTISOL | N/D | — | 0.05 |
| PD | N/D | — | 0.05 |
| 5α-THA | N/D | — | 0.05 |
| ETIO | N/D | — | 0.05 |
| 20α-DHE | N/D | — | 0.05 |
| 20β-DHE | N/D | — | 0.05 |
| 20α-DHF | N/D | — | 0.05 |
| 20β-DHF | N/D | — | 0.05 |
| ANDRO | N/D | — | 0.05 |
| THDOC | N/D | — | 0.05 |
| 5α-THB | N/D | — | 0.05 |

**18**

-continued

| Compound (Dose = 10 µg/dL) | Retention Time (mins.) (Analyte w/Interference) | Observed (ng/Dl) | % Interference |
|---|---|---|---|
| THS | N/D | — | 0.05 |
| DHA | N/D | — | 0.05 |
| THE | N/D | — | 0.05 |
| THF | N/D | — | 0.05 |
| 5α-THF | N/D | — | 0.05 |
| A-CORTOLONE | N/D | — | 0.05 |
| B-CORTOLONE | N/D | — | 0.05 |
| CORTOLONE | N/D | — | 0.05 |
| α-CORTOL | N/D | — | 0.05 |
| THA | N/D | — | 0.05 |
| THB | N/D | — | 0.05 |
| 5α-THB | N/D | — | 0.05 |
| METHYLTESTO | N/D | — | 0.05 |

### Example 9

#### Atmospheric Pressure Photoionization

This example describes an embodiment utilizing atmospheric pressure photoionization mass spectroscopy (APPI) in the present invention. As the information that follows indicates, APPI is a robust and sensitive triple quad MS system. The system offers improved ion transfer optics to enhance stability and sensitivity. An APPI system can be used either by itself or in combination with an APCI or API source.

The procedure is similar to that described in Example 2, but utilizes an APPI system, e.g. the Finnigan TSQ Quantum Discovery™ (ThermoFinnigan, San Jose, Calif.) or equivalent to assay for testosterone. This system is a robust and sensitive triple quadrupole mass spectrometry using photoionization. The assay offers enhanced specificity and reduced run-time and sample preparation. To this end two systems have been combined: HTLC and Tandem Mass Spectroscopy (e.g., the ThermoFinnigan system). Blood serum was used as the test sample for the assays described in this example, however, plasma samples are also acceptable. The mass transitions used where those in Table 2.

Various parameters of the assay were investigated. The limit of detection (LOD) is the point at which a measured value is larger than the uncertainty associated with it and is defined arbitrarily as 3 standard deviations (SD) from zero concentration. 21 replicates of the zero standard were analyzed to determine the mean counts per second of the twenty-one replicates and 3 SD was added. The mean+3 SD was extrapolated back into the standard curve and used to determine the LOD. The LOD for the assay was determined to be 0.6 ng/dL.

The lower limit of quantitation (LOQ) is the point where measurements become quantitatively meaningful and is set at the concentration where the CV of the replicates is <20%. Four low concentration pools were analyzed and the results statistically analyzed to determine the mean, standard deviation, and coefficient of variation. The LOQ for the assay was determined to be 1.0 ng/dL.

Intra-assay variation was measured to determine the precision of a sample value within an assay. The coefficient of variation (CV) for 20 replicates of a sample was determined and the precision was found to be acceptable (≦15% CV). Two sample pools were used to evaluate the intra-assay variation, a low concentration pool and a medium concentration pool. The low concentration pool (16-27 ng/dl) gave

US 7,348,137 B2

19

a CV of 13.1% with mean concentration of 21.7 ng/dL, and the medium pool (131-189 ng/dl) gave a CV of 11.3% with a mean of 142.8 ng/dL.

The inter-assay variation of a sample value was evaluated using a CV of <20% as acceptable. Three sample pools were analyzed in multiple assays. The low concentration pool (15-21 ng/dl) was found to have a CV of 11.5% with a mean concentration of 18.3 ng/dL.

Sample recovery was analyzed using two patient samples of different concentrations. These samples were diluted with mobile phase (1:1, 1:2, 1:4, 1:8). Sample #1 had 24.5 ng/dl and was diluted in the stated ratios into #2, which had a concentration of 312.7 ng/dl. Sample #3 had a concentration of 20.5 ng/dl and was diluted at the stated ratios into Sample #4, which had a concentration of 293.0 ng/dl. The samples were analyzed in singlet and the observed values (y) were compared to the expected values (x). Linear regression of the combined data showed that the mean percent recovery for all analytes was 103% for the two sets. The mean recovery was 99%.

The correlation of the assay was analyzed by assaying 49 serum samples for testosterone according to the APPI method against two commonly accepted testosterone assays—the testosterone radioimmunoassay and the ADVIA CENTAUR® assay (Bayer Diagnostics, Tarrytown, N.Y.). Linear regression analysis was performed on the combined data showing y=0.87x+15.67 with a $r^2$ of 0.95.

The contents of the articles, patents, and patent applications, and all other documents' and electronically available information mentioned or cited herein, are hereby incorporated by reference in their entirety to the same extent as if each individual publication was specifically and individually indicated to be incorporated by reference. Applicants reserve the right to physically incorporate into this application any and all materials and information from any such articles, patents, patent applications, or other physical and electronic documents.

The inventions illustratively described herein may suitably be practiced in the absence of any element or elements, limitation or limitations, not specifically disclosed herein. Thus, for example, the terms "comprising", "including", "containing", etc. shall be read expansively and without limitation. Additionally, the terms and expressions employed herein have been used as terms of description and not of limitation, and there is no intention in the use of such terms and expressions of excluding any equivalents of the features shown and described or portions thereof, but it is recognized that various modifications are possible within the scope of the invention claimed. Thus, it should be understood that although the present invention has been specifically disclosed by preferred embodiments and optional features, modification and variation of the inventions embodied therein herein disclosed may be resorted to by those skilled in the art, and that such modifications and variations are considered to be within the scope of this invention.

The invention has been described broadly and generically herein. Each of the narrower species and subgeneric groupings falling within the generic disclosure also form part of the invention. This includes the generic description of the invention with a proviso or negative limitation removing any subject matter from the genus, regardless of whether or not the excised material is specifically recited herein.

Other embodiments are within the following claims. In addition, where features or aspects of the invention are described in terms of Markush groups, those skilled in the

20

art will recognize that the invention is also thereby described in terms of any individual member or subgroup of members of the Markush group.

The invention claimed is:

1. A method for determining the presence or amount of testosterone in a test sample comprising,
   (a) purifying testosterone from the test sample by turbulent flow chromatography;
   (b) ionizing the purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer having a mass/charge ratio selected from the group consisting of 289.1±0.5, 109.2±0.5, and 96.9±0.5; and
   (c) detecting the presence or amount of the testosterone ion(s) by a mass spectrometer, wherein the presence or amount of the testosterone ion(s) is related to the presence or amount of testosterone in the test sample,
   wherein said ionizing and detecting utilize tandem mass spectrometry/time-of-flight (MS/MS/TOF) spectroscopy.

2. The method of claim 1 wherein the ionizing of step (b) comprises,
   ionizing said testosterone from said sample to provide a precursor ion having a mass/charge ratio (m/z) of about 289.1±0.5;
   isolating the precursor ion by mass spectroscopy; and
   effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 109.2±0.5, and 96.9±0.5.

3. The method of claim 1, wherein the purifying step comprises:
   (i) applying the sample to a high turbulence liquid chromatography (HTLC) extraction column;
   (ii) washing the HTLC extraction column under conditions whereby testosterone is retained by the column;
   (iii) eluting retained testosterone from the HTLC extraction column;
   (iv) applying the retained material to an analytical column; and
   (v) eluting purified testosterone from the analytical column.

4. The method of claim 3, wherein steps (i)-(v) are performed in an in-line automated fashion.

5. The method of claim 3, wherein steps (a) and (b) are performed in an in-line automated fashion with steps (i)-(v).

6. The method of claim 1 wherein the ionization in step (b) is performed by a method selected from the group consisting of chemical ionization, photon ionization, and surface enhanced laser desorption ionization (SELDI).

7. The method of claim 1 wherein the ionization in step (b) is performed by atmospheric pressure photoionization (APPI).

8. The method of claim 1 wherein the test sample is obtained from a human.

9. The method of claim 1 wherein the test sample is blood, serum, plasma, or urine.

10. The method of claim 9 wherein the test sample is deproteinated prior to the ionization step.

11. The method of claim 1 wherein the presence or amount of the testosterone ion is related to the presence or amount of testosterone in the test sample by comparison to a reference sample.

12. The method of claim 11, wherein the reference sample is 2,2,4,6,6,-d5 testosterone.

13. The method of claim 12, wherein said reference sample is detected by ionizing said reference to produce one

US 7,348,137 B2

21

or more ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 294.1±0.5, 113.2±0.5, and 99.9±0.5.

**14**. The method of claim **13** wherein said ionizing comprises generating a precursor ion having a mass/charge ratio (m/z) of about 294.1±0.5;

isolating the precursor ion by mass spectroscopy; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more daughter ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 113.2±0.5, and 99.9±0.5.

**15**. The method of claim **1** further comprising determining the specificity of testosterone detection by calculating a ratio of the daughter ions for the sample and comparing that ratio with a daughter ion ratio for a purified sample of testosterone.

**16**. The method of claim **1** wherein detecting the presence or amount of the testosterone ion(s) by mass spectrometry involves combining the signal for ion 109.2±0.5 with the signal for ion 96.9±0.5 to obtained a summed daughter ion signal.

**17**. The method of claim **16** wherein the amount of testosterone is detected by comparing the summed daughter ion signal with a standard curve of summed daughter ion signals for known amounts of testosterone.

**18**. The method of claim **13** wherein detecting the presence or amount of the reference testosterone ion(s) by mass spectrometry involves combining the signal for ion 113.2±0.5, with the signal for ion and 99.9±0.5 to obtain a summed daughter ion signal.

**19**. A method for determining the presence or amount of testosterone in a test sample comprising,

(a) purifying testosterone from the test sample by turbulent flow chromatography;

(b) ionizing the purified testosterone by surface enhanced laser desorption ionization (SELDI) to produce one or more testosterone ions detectable by a mass spectrometer having a mass/charge ratio selected from the group consisting of 289.1±0.5, 109.2±0.5, and 96.9±0.5; and

(c) detecting the presence or amount of the testosterone ion(s) by a mass spectrometer, wherein the presence or amount of the testosterone ion(s) is related to the presence or amount of testosterone in the test sample, wherein said ionizing and detecting utilize tandem mass spectrometry/time-of-flight (MS/MS/TOF) spectroscopy.

**20**. The method of claim **19** wherein the ionizing of step (b) comprises,

ionizing said testosterone from said sample to provide a precursor ion having a mass/charge ratio (m/z) of about 289.1±0.5;

isolating the precursor ion by mass spectroscopy; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 109.2±0.5, and 96.9±0.5.

**21**. The method of claim **19**, wherein the purifying step comprises:

(i) applying the sample to a high turbulence liquid chromatography (HTLC) extraction column;

(ii) washing the HTLC extraction column under conditions whereby testosterone is retained by the column;

(iii) eluting retained testosterone from the HTLC extraction column;

22

(iv) applying the retained material to an analytical column; and

(v) eluting purified testosterone from the analytical column.

**22**. The method of claim **21**, wherein steps (i)-(v) are performed in an in-line automated fashion.

**23**. The method of claim **21**, wherein steps (a) and (b) are performed in an in-line automated fashion with steps (i)-(v).

**24**. The method of claim **19** wherein the test sample is obtained from a human.

**25**. The method of claim **19** wherein the test sample is blood, serum, plasma, or unne.

**26**. The method of claim **25** wherein the test sample is deproteinated prior to the ionization step.

**27**. The method of claim **19** wherein the presence or amount of the testosterone ion is related to the presence or amount of testosterone in the test sample by comparison to a reference sample.

**28**. The method of claim **27**, wherein the reference sample is 2,2,4,6,6,-d5 testosterone.

**29**. The method of claim **28**, wherein said reference sample is detected by ionizing said reference to produce one or more ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 294.1±0.5, 113.2±0.5, and 99.9±0.5.

**30**. The method of claim **29** wherein said ionizing comprises generating a precursor ion having a mass/charge ratio (m/z) of about 294.1±0.5;

isolating the precursor ion by mass spectroscopy; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more daughter ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 113.2±0.5, and 99.9±0.5.

**31**. The method of claim **19** further comprising determining the specificity of testosterone detection by calculating a ratio of the daughter ions for the sample and comparing that ratio with a daughter ion ratio for a purified sample of testosterone.

**32**. The method of claim **19** wherein detecting the presence or amount of the testosterone ion(s) by mass spectrometry involves combining the signal for ion 109.2±0.5 with the signal for ion 96.9±0.5 to obtained a summed daughter ion signal.

**33**. The method of claim **32** wherein the amount of testosterone is detected by comparing the summed daughter ion signal with a standard curve of summed daughter ion signals for known amounts of testosterone.

**34**. The method of claim **29** wherein detecting the presence or amount of the reference testosterone ion(s) by mass spectrometry involves combining the signal for ion 113.2±0.5, with the signal for ion and 99.9±0.5 to obtain a summed daughter ion signal.

**35**. A method for determining the presence or amount of testosterone in a test sample comprising,

(a) purifying testosterone from the test sample by turbulent flow chromatography;

(b) ionizing the purified testosterone by atmospheric pressure photoionization (APPI) to produce one or more testosterone ions detectable by a mass spectrometer having a mass/charge ratio selected from the group consisting of 289.1±0.5, 109.2±0.5, and 96.9±0.5; and

(c) detecting the presence or amount of the testosterone ion(s) by a mass spectrometer, wherein the presence or amount of the testosterone ion(s) is related to the presence or amount of testosterone in the test sample,

US 7,348,137 B2

23

wherein said ionizing and detecting utilize tandem mass spectrometry/time-of-flight (MS/MS/TOF) spectroscopy.

**36.** The method of claim **35** wherein the ionizing of step (b) comprises:

ionizing said testosterone from said sample to provide a precursor ion having a mass/charge ratio (m/z) of about 289.1±0.5;

isolating the precursor ion by mass spectroscopy; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 109.2±0.5, and 96.9±0.5.

**37.** The method of claim **35**, wherein the purifying step comprises:

(i) applying the sample to a high turbulence liquid chromatography (HTLC) extraction column;

(ii) washing the HTLC extraction column under conditions whereby testosterone is retained by the column;

(iii) eluting retained testosterone from the HTLC extraction column;

(iv) applying the retained material to an analytical column; and

(v) eluting purified testosterone from the analytical column.

**38.** The method of claim **37**, wherein steps (i)-(v) are performed in an in-line automated fashion.

**39.** The method of claim **37**, wherein steps (a) and (b) are performed in an in-line automated fashion with steps (i)-(v).

**40.** The method of claim **35** wherein the test sample is obtained from a human.

**41.** The method of claim **35** wherein the test sample is blood, serum, plasma, or urine.

**42.** The method of claim **41** wherein the test sample is deproteinated prior to the ionization step.

**43.** The method of claim **35** wherein the presence or amount of the testosterone ion is related to the presence or amount of testosterone in the test sample by comparison to a reference sample.

24

**44.** The method of claim **43**, wherein the reference sample is 2,2,4,6,6,-d5 testosterone.

**45.** The method of claim **44**, wherein said reference sample is detected by ionizing said reference to produce one or more ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 294.1±0.5, 113.2±0.5, and 99.9±0.5.

**46.** The method of claim **45** wherein said ionizing comprises generating a precursor ion having a mass/charge ratio (m/z) of about 294.1±0.5;

isolating the precursor ion by mass spectroscopy; and

effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more daughter ions detectable by mass spectrometry having a mass/charge ratio selected from the group consisting of 113.2±0.5, and 99.9±0.5.

**47.** The method of claim **45** further comprising determining the specificity of testosterone detection by calculating a ratio of the daughter ions for the sample and comparing that ratio with a daughter ion ratio for a purified sample of testosterone.

**48.** The method of claim **45** wherein detecting the presence or amount of the testosterone ion(s) by mass spectrometry involves combining the signal for ion 109.2±0.5 with the signal for ion 96.9±0.5 to obtained a summed daughter ion signal.

**49.** The method of claim **48** wherein the amount of testosterone is detected by comparing the summed daughter ion signal with a standard curve of summed daughter ion signals for known amounts of testosterone.

**50.** The method of claim **45** wherein detecting the presence or amount of the reference testosterone ion(s) by mass spectrometry involves combining the signal for ion 113.2±0.5, with the signal for ion 99.9±0.5 to obtain a summed daughter ion signal.

\* \* \* \* \*

# EXHIBIT L

## Redacted in Full

# EXHIBIT M

## Redacted in Full

# EXHIBIT N

**Redacted**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST DIAGNOSTICS INVESTMENTS LLC, <br><br> Plaintiff, <br><br> v. <br><br> LABORATORY CORPORATION OF AMERICA HOLDINGS, ESOTERIX, INC., and ENDOCRINE SCIENCES, INC., <br><br> Defendants. | C.A. No.:  1:18-cv-01436-MN <br><br> **<u>REDACTED PUBLIC VERSION</u>** |

**DECLARATION OF DEBORAH FRENCH, PH.D., IN SUPPORT OF
DEFENDANT LABCORP'S ANSWERING CLAIM CONSTRUCTION BRIEF**

I, Dr. Deborah French, declare as follows:

## I.    PERSONAL BACKGROUND

1.      I am an Associate Clinical Professor in the Department of Laboratory Medicine at

the University of California San Francisco ("UCSF"), where I have worked since 2011. I am also

the Assistant Director of Chemistry, Parnassus and China Basin, and the Director of Mass

Spectrometry for UCSF Clinical Laboratories, positions I have held since 2011. In 2016, I

became the Director of Chemistry, Mission Bay and Mount Zion for UCSF Clinical

Laboratories.

2.      As the Director of Mass Spectrometry, I oversee the clinical mass spectrometry

section of UCSF Clinical Laboratories. My responsibilities include training technologists,

choosing and buying new instrumentation and developing and validating hormone and drug

assays. I am responsible for the development and validation of new methods using mass

spectrometers along with training clinical laboratory scientists and trouble-shooting any

1

problems that occur with the instrument. In the past two years, I have overseen the development and validation of LC-MS/MS assays to quantify serum isavuconazole and serum estradiol.

3.       I received a Bachelor of Science with Honors in Biochemistry from the University of Strathclyde in Glasgow, Scotland in 1999. I also received a Ph.D. from the University of Strathclyde in 2003. I completed two postdoctoral fellowships after receiving my Ph.D. One in Pharmaceutical Sciences at St. Jude's Children's Research Hospital in Memphis, TN and another in Clinical Chemistry at the University of California, San Francisco.

4.       Since completing my Ph.D. and postdoctoral fellowships, I have received licenses and certifications in the area of clinical chemistry. I am a licensed by the State of California as a Clinical Chemist Scientist and a Fellow of the American Association for Clinical Chemistry Academy. I am also a Diplomate of the American Board of Clinical Chemistry in both Clinical Chemistry and Toxicological Chemistry.

5.       I am active in professional organizations related to clinical chemistry and mass spectrometry. For the past 2 years, I have been on the American Board of Clinical Chemistry Board of Directors as a Director and the Secretary/Treasurer and currently also as the Vice President of Exams. I continued on the Society for Young Clinical Laboratorians (part of the American Association for Clinical Chemistry) National Core Committee until August 2019, of which I have been a member since 2015. In 2018, I was the Chair of the Northern California local section of the American Association for Clinical Chemistry. Last year I became the Reviews Editor for the Journal of Applied Laboratory Medicine. I was also on the 2019 Annual Meeting Organizing Committee for the American Association for Clinical Chemistry, a meeting with over 20,000 attendees. At UCSF, I have been on the Department of Laboratory Medicine Appointments, Promotions and Merits (APM) Committee since 2011. I was a faculty member for

███████████████████

the American Association for Clinical Chemistry Tandem Mass Spectrometry Online Certificate program revision. I have co-chaired the Mass Spectrometry in the Clinical Lab: Best Practices and Current Applications 2014 Conference.

6.      I am also active in an editorial/review capacity with journals related to clinical chemistry and mass spectrometry. I have been an editorial board member of Practical Laboratory Medicine since 2015 and an associate editor of the Journal of Applied Laboratory Medicine since 2018. I have been an ad-hoc reviewer for the Journal of Mass Spectrometry and Clinical Mass Spectrometry.

7.      I have received awards and honors relating to my work with mass spectrometry. In 2017, I received the Excellence in Education Award from the American Association for Clinical Chemistry Mass Spectrometry and Separation Sciences Division. In 2016, I received the Outstanding Speaker Award for the American Association for Clinical Chemistry Introductory Liquid Chromatography Mass Spectrometry for the Clinical Laboratory Mass Spectrometry Online Certificate Program.

8.      My teaching activities have included teaching the principles and practice of mass spectrometry and other Clinical Chemistry topics to medical technologists, students, residents and fellows on an informal basis. From 2011 to 2012 I taught a UCSF resident liquid chromatography-tandem mass spectrometry with specific emphasis on measuring testosterone in serum. In 2017, I was an invited Faculty Instructor at the "Clinical testing using mass spectrometry: a hands-on training course" offered by Emory University and the Centers for Disease Control and Prevention over 4.5 days. In 2018, I presented in the Mass Spectrometry Applications to the Clinical Laboratory (MSACL) annual conference in the Practical Training track on "Selecting and planning for the right mass spectrometer" and "Making the most of

vendor visits and discussions with colleagues." In July 2018, I was one of three instructors in a full day course at the American Association for Clinical Chemistry University called "The secrets to success: Implementing robust LC-MS/MS methods in the clinical laboratory." My presentation titles were "The basics of mass spectrometry" and "Sample preparation."

9.      My research interests focus on improving the diagnostic capabilities of the testing we do in the clinical laboratory in order to aid clinicians in treating their patients. I am particularly interested in determining the applications of mass spectrometry (LC-MS/MS) in clinical chemistry. One area my research has focused on is using LC-MS/MS for steroid hormone testing and I have helped implement LC-MS/MS in UCSF clinical laboratories for this purpose.

10.      I have been an author of at least 42 peer-reviewed and published articles, including at least a dozen that dealt with the topic of mass spectrometry. As a recent example, I was the lead author of the 2019 article "Comparison of four clinically validated testosterone LC-MS/MS assays: harmonization is an attainable goal" in the journal *Clinical Mass Spectrometry*. As another recent example I was the senior author of the 2018 article "Quantification of serum voriconazole, isavuconazole and posaconazole by liquid chromatography tandem mass spectrometry (LC-MS/MS)" in the journal *Current Protocols in Toxicology*.

11.      I am informed that Plaintiff Quest Diagnostics Investments, LLC ("Quest") has asserted U.S. Patent Nos. 7,972,867 ("the '867 patent"); 7,972,868 ("the '868 patent"); 8,101,427 ("the '427 patent"); and 8,409,862 ("the '862 patent"). I have been asked by counsel for Defendants Laboratory Corporation of America Holdings, Esoterix, Inc., and Endocrine Sciences, Inc. (collectively "LabCorp") to review the '862 patent and to opine on what this

███████████████

patent would inform a person of ordinary skill in the art, with reasonable certainty, about the scope of the claimed inventions in that patent.

12.    I am being compensated for the work I have performed on this matter at my standard rate of $450 per hour. My compensation is not in any way dependent on the outcome of this litigation.

13.    In preparing this declaration, I have considered the '862 patent, its prosecution history, and the exhibits identified herein.

14.    I reserve the right to supplement this declaration to address any further information that I become aware of in the future.

## II.    Legal Standards

15.    I am informed by counsel that the following legal standards are applicable to the issues I address in this declaration and have relied on these standards in this declaration.

16.    I understand that the starting point of my analysis is that each claim of a patent is presumed valid. It is the burden of the party asserting that a patent claim is invalid to prove such assertion by clear and convincing evidence. Clear and convincing evidence of invalidity is evidence that shows it is highly probable that the claim is invalid.

17.    I understand that a patent includes a written description that has a "specification" and "claims." I further understand that the applicable patent law requires: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." I understand that the requirement I quote above is referred to as the definiteness requirement and that a claim that fails to meet this requirement is invalid for being indefinite.

18.     I understand that claim construction is the process in which courts interpret the meaning and scope of a patent's claims and may include an analysis as to whether the claim is indefinite. I further understand that the general principle of claim construction is that words of a claim are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. I understand that, to ascertain the meaning of a claim term, the court will look to those sources available to the public that show what a person of ordinary skill in the art would have understood disputed claim language to mean.

19.     I understand that both claim construction and indefiniteness are viewed from the standpoint of a hypothetical person of ordinary skill in the art and what that hypothetical person would understand from the claims, specification, and file history. I understand that this process involves determining the level of skill in the art at the time the invention was made, because the hypothetical person or ordinary skill in the art is deemed to have that level of skill. I further understand that a person of ordinary skill in the art is presumed to have known the relevant art at the time of the invention.

20.     I understand that the claims, specification, and file history are referred to as intrinsic evidence and that such intrinsic evidence is highly relevant and often the best guide to claim construction and indefiniteness. I understand that other evidence, such as expert testimony or prior art, may be considered and that such evidence is referred to as extrinsic evidence. I further understand that extrinsic evidence may not be used to contradict the intrinsic evidence.

21.     I understand that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty those skilled in the art about the scope of the invention. I understand that

one way a claim is indefinite is if its language might mean several different things and no informed and confident choice is available among the contending definitions. I understand that another way a claim is indefinite is if the claim is internally inconsistent in a way that renders the claim nonsensical. Additionally, I understand that a claim is indefinite if claims use a term in a way that is contrary to the description in the specification.

## III.    PERSON OF ORDINARY SKILL IN THE ART

22.    The field of art of the '862 patent is analyzing testosterone and detecting testosterone in samples by mass spectrometry. Ex. B[1] ('862 patent) at 1:22–24.

23.    In my opinion, a personal of ordinary skill in the art for the '862 patent would have an advanced degree (e.g., M.S. or Ph.D.) in chemistry or a related discipline, such as pharmacology or biochemistry, and at least 2-3 years of experience in a clinical or research laboratory. In addition, a person of ordinary skill in the art would typically have experience with various extraction methods, mass spectrometry, and high performance liquid chromatography (HPLC), including the use of such methods for determining levels of analytes in biological samples. A person of ordinary skill in the art also would have knowledge regarding what parameters would be suitable to adapt for the optimization of extraction, HPLC, and/or mass spectrometry to meet the requirements of a particular laboratory test.

24.    I understand that Plaintiffs have proposed the following definition of a person of ordinary skill in the art: "A person of ordinary skill in the art at the time of the testosterone and vitamin D inventions is someone having the knowledge of a person with a bachelor's degree in chemistry, medicinal chemistry, biochemistry, pharmaceutics, or a related discipline and at least

---

[1] References to Exhibits refer to Exhibits to the Joint Claim Construction Chart and the parties' briefs.

three to four years of experience using chromatography to perform analytical assays to characterize organic and/or biological materials. The skilled person would be familiar with the application of mass spectrometry including tandem mass spectrometry in conjunction with High Performance Liquid Chromatography (HPLC) to perform those analytical assays. Alternatively, a person of ordinary skill in the art might be a person with an advanced degree (master's or doctorate) in these same fields and a lesser amount of experience, such as one to two years with a master's degree or a few months to a year with a doctorate." Plaintiff's Opening Claim Construction Brief ("Pl.'s Br.") at 5, n.3.

25.    In my opinion, Plaintiff's definition is substantially the same as my definition of a person of ordinary skill in the art. In any event, I have performed my analysis under each definition of the level of ordinary skill in the art and under each definition, my opinions, analysis, and conclusions are the same.

## IV.    BACKGROUND OF THE TECHNOLOGY

26.    The '862 patent is directed to methods for analyzing testosterone and for detecting testosterone in samples by mass spectrometry.

27.    Testosterone is a steroid produced by the human body. In males, testosterone is the major androgen, which stimulates maturation into an adult. Ex. B ('862 patent) at 1:34–48. In females, testosterone is also present but at much lower levels. Ex. B ('862 patent) at 1:49–59. Around August 2002,[2] numerous assays for testosterone were known to those of skill in the art,

---

[2] I understand that Quest has contended the '862 patent was conceived of and reduced to practice "by at least August 2002," a date which precedes September 8, 2003, which is the earliest filing date listed on the Facepage of the '862 patent. I have thus performed my analysis based on what a person of ordinary skill in the art would have understood from the '862 patent around August 2002. However, I have also considered what a person of ordinary skill in the art would have understood from the '862 patent around September 2003 and my analysis, opinions, and conclusions do not change if that timeframe is used instead of August 2002.

Ex. B ('862 patent) 1:66–2:4, including assays that use mass spectrometry. Ex. B ('862 patent) at 2:2–3 citing Dorgan et al., Measurement of Steroid sex hormones in serum: a comparison of radioimmunoassay and mass spectrometry, Steroids, 67: 151-8 (2002).

28.     Mass spectrometry is a technique for analyzing ions generated from an analyte of interest in a sample. A mass spectrometer separates those ions by their mass-to-charge ratio (m/z), and detects those ions qualitatively or quantitively by their mass-to-charge ratio and abundance. The output of a mass spectrometer typically includes data about signal intensity for ions with various mass-to-charge ratios. Peaks of these intensities reflect the relative abundance of ions with specific mass-to-charge ratios. Analytical techniques can be applied to convert a peak or collection of peaks into useful information about the analyte in the sample. One such useful piece of information is a concentration of the analyte of interest. This analytical technique is called quantitation or quantification. Another useful piece of information is a ratio between two different ions which can indicate that the output of a mass spectrometer relates to the analyte of interest and not some interfering species.

## V.   THE '862 PATENT

29.     I have examined the '862 patent, and in particular, the terms "capable of detecting testosterone at concentrations of less than 10 [or 5 or 1] ng/dL in the sample" in claims 1, 8, 9, 15, 23, and 24,[3] "ionizing" in claims 1 and 15, and "testosterone ions" in claims 1 and 15. In my opinion, these terms fail to inform, with reasonable certainty, those skilled in the art of the scope of the invention because (1) the terms are imprecise and without clear intrinsic explanation and

---

[3] Claims 1 and 15 include the phrase "capable of detecting testosterone at concentrations of less than 10 ng/dL in the sample." Claims 8 and 23 substitute "5" in place of "10" for the concentration i.e. "capable of detecting testosterone at concentrations of less than 5 ng/dL in the sample." Claims 9 and 24 substitute "1" in place of "10" for the concentration. I refer to these phrases collectively as the "capable of detecting . . ." phrases or limitations.

██████████████

(2) there are multiple ways to potentially interpret the term and its scope, and consequently multiple ways of determining infringement.

A.   **"capable of detecting testosterone at concentrations of less than [10 or 5 or 1] ng/dL in the sample"**

30.   Turning first to "capable of detecting testosterone at concentrations of less than [10 or 5 or 1] ng/dL in the sample," this phrase is vague, incomplete, and without a clear intrinsic definition.  One of ordinary skill in the art would not be able to determine with reasonable certainty what "capable of detecting testosterone at concentrations of less than [10 or 5 or 1] ng/dL in the sample" means.

31.   **Claim Language**. The "capable of detecting . . ." limitation is directed to a result or function of the claimed method without any claim language explaining how to achieve this result or function or even how to determine when the result or function is achieved. Claim 1 indicates that it is a "method for determining the amount of testosterone in a sample." Ex. B ('862 patent) at 19:50–51. The method recites a purifying step that comprises extracting testosterone, an ionizing step, and a step for detecting the amount of testosterone ions and relating that to the amount of testosterone in a sample. As I address in more detail below, all of these steps were found in the prior art. Claim 1 indicates that testosterone is "not-derivatized" before mass spectrometry. But missing from the claim is any indication as to *how* the method achieves the result or function of being "capable of detecting testosterone at concentrations of less than 10 ng/dL in the sample" or how to determine if the result or function is satisfied.

32.   Claim 15 is similar with the only difference being that it recites using a prior art method of high turbulence liquid chromatography (HTLC) to extract testosterone and it does not contain the negative limitation that testosterone is not derivatized. The dependent claims 8, 9, 23, and 24 simply recite a modified function or result of the method with a lower concentration of 5

or 1 ng/dL. Nothing in the claims addresses how that function or result is achieved or how to determine when it is.

33.    **Specification**.  Turning the specification of the patent, it does not provide reasonable certainty as to how to determine when this limitation is met. Other than in the claims, the patent does not use the phrase "capable of detecting testosterone." The specification states that "[t]he present invention describes methods and compositions for unambiguously detecting testosterone in a test sample." Ex. B ('862 patent) at 5:50–51. It goes on to indicate: "Testosterone assays are provided that have enhanced specificity and are accomplished in less time and with less sample preparation than required in presently available testosterone assays." Ex. B ('862 patent) at 5:58–62. The patent continues: "In various embodiments the methods of the invention accurately detect testosterone in samples where it is present in concentrations of less than 50 ng/dL, less than 25 ng/dL, less than 10 ng/dL, less than 5 ng/dL, and even less than 1 ng/dL." Ex. B ('862 patent) at 5:62–65. Other than in the claims and the single passage above, the patent does not refer to these concentration values of "less than 10 [or 5 or 1] ng/dL." Instead the specification discloses at least four possible meanings for the "capable of detecting . . ." limitations and therefore there are multiple ways of determining if a method meets the claim requirement.

34.    The first meaning that this phrase could have is that the claimed function or result means a method with a Limit of Detection (LOD) below 10 (or 5 or 1) ng/dL. The patent indicates that LOD is only one of the "[v]arious parameters of the assay [that] were investigated." Ex. B ('862 patent) at 18:24–33. The patent indicates that LOD is "the point at which a measured value is larger than the uncertainty associated with it" and that the inventors "arbitrarily" defined LOD to be 3 standard deviations from zero concentration. Ex. B ('862

████████████

patent) at 18:24–28. One of ordinary skill in the art would understand that this definition of LOD was an attempt by the inventors to determine when a signal produced by a detector rises an arbitrary amount above the uncertainty, e.g. noise, in the detector signal. The inventors included an example related to LOD in Example 4. Ex. B ('862 patent) at 14:55–15:10. According to this example, the LOD was 0.6 ng/dL.

35.     One of skill in the art would consider LOD a candidate meaning of the "capable of detecting . . ." phrases given the similar language: Limit of *Detection* and "capable of *detecting*."[4] But given the patent's clear statements that "the methods *of the invention accurately* detect testosterone" (5:62–65) and the "present invention describes methods and compositions for *unambiguously* detecting testosterone," (5:50–51) a person of ordinary skill in the art would look to the additional possible meanings found in the patent that I discuss below.

36.     The second meaning that the "capable of detecting testosterone . . ." limitations could have is that this claimed function or result means a method with a Lower Limit of Quantitation (LOQ) below 10 (or 5 or 1) ng/dL. LOQ is another of the "various parameters" that the inventors investigated. Ex. B ('862 patent) at 18:34–40. The patent indicates that LOQ "is the point where measurements become quantitatively meaningful" and was set "at the concentration where the "coefficient of variation" CV of the replicates is <20%." Ex. B ('862 patent) at 18:34–36. One of ordinary skill in the art would understand that this discussion of LOQ reflects the inventors' attempt to determine at what point the measured concentration of the method differs from the actual concentration in the sample with a CV of less than 20%. The inventors included an example related to LOQ in Example 5. Ex. B ('862 patent) at 15:12–15:42. According to this example, the LOQ was determined to be 1 ng/dL. Ex. B ('862 patent) at 15:30–31.

---

[4] All emphasis in quoted material is added unless stated otherwise.

37.     As with LOD, one of skill in the art would consider LOQ to be a candidate

meaning of the "capable of detecting . . ." phrases. In particular, LOQ would be a measure that

would be relevant to determining whether "the methods of the invention *accurately* detect

testosterone." Ex. B ('862 patent) at 5:62–63. However, one of skill in the art would recognize

that the LOQ determined by the inventors was 1.0 ng/dL—a value that does not fall within the

scope of claims 9 and 24, which require a method "capable of detecting testosterone at

concentrations of *less than 1 ng/dL* in the sample." Thus, one of skill in the art would keep

looking.

38.     The third meaning that the "capable of detecting testosterone . . ." limitations

could have is that this claimed function or result means a method with sufficient "specificity of

testosterone determination." Ex. B ('862 patent) at 11:36–40.  The patent discussed a method that

uses daughter ions—fragments of a precursor ion—to evaluate specificity. The patent indicates

that "one may determine the specificity of testosterone determination by mass spectrometry by

calculating a ratio of the daughter ions for that sample and comparing that ratio with that of a

purified testosterone standard." Ex. B ('862 patent) at 11:36–40. The patent goes on to suggest

that "[u]nder experimental conditions with multiple replicates" various statistical values can be

calculated. Ex. B ('862 patent) at 11:43–46; *see also id.* at 2:58–60 ("a median or mean and

range derived from the standard deviation, coeffic[i]ent of variation (CV) or percentage for each

daughter ion ratio also can be calculated.") And these statistical values can be used to determine

"an increase or decrease in the observed daughter ion ratio" which indicates the presence of an

"'unknown' compound (interfering substance)." Ex. B ('862 patent) at 11:46–48. One of skill in

the art would understand that here, the patent is referring to comparing measured daughter ion

ratios to the daughter ion ratios that one of skill in the art would expect pure testosterone to

13

generate. When measured daughter ion ratios are sufficiently close to the expected daughter ion

ratios, the method has detected testosterone and not an interfering substance, i.e. the

measurement is "specific" as to testosterone. The patent presents a table regarding "Assay

Specificity" in Example 8. Ex. B ('862 patent) at 17:30–67.

39.      As with LOD and LOQ, one of skill in the art would consider specificity to be a

candidate meaning of the "capable of detecting . . ." phrases. In particular, specificity would be a

way of assessing whether the method described by the present invention "unambiguously

detect[s] testosterone in a test sample." Ex. B ('862 patent) at 5:50–51. Furthermore, the patent

explicitly references "enhanced specificity" as an aspect of the assays provided by the patent. Ex.

B ('862 patent) at 5:59–62. But one of skill in the art would recognize that the patent does not

have any disclosure explaining how the disclosed specificity determination could be used to

detect testosterone "at concentrations less than 10 [or 5 or 1] ng/dL in the sample." Thus, as with

the LOD and LOQ, one of skill in the art would not know which method to use in determining

whether the "capable of detecting testosterone . . ." limitation was met.

40.      The fourth meaning that the "capable of detecting testosterone . . ." limitations

could have is that the method must be performed on a sample taken from a female human that

actually has testosterone at a concentration of less than 10 [or 5 or 1] ng/dL. Claims 1 and 15

indicate that the claimed methods are "for determining the amount of testosterone in a sample

*when taken from a female human*." The "capable of detecting testosterone . . ." limitations refer

"*the* sample," a reference to "sample when taken from a female human." Under this meaning, the

claimed function or result ("capable of detection") could only be achieved when the actual

concentration in the sample taken from a female human is less than 10 [or 5 or 1] ng/dL and

the method detects the testosterone.

████████████████████

41.     **Prosecution History**. I have reviewed the prosecution history and it further supports my opinion that the phrase "capable of detecting testosterone . . ." is indefinite. With respect to at least one prior art reference, Quest argued that the phrase "capable of detecting testosterone . . ." was the only element that distinguished the claims. During prosecution the examiner rejected claims 1 and 15 (original claims 13 and 29) as obvious over Ong et al. (50ths ASMS Conference Abstract Viewer, June 2002). Ex. F ('862 patent file history) at QUESTMS-00002824–825. In response, Quest amended claims 1 and 15 (original claims 13 and 29), including to add "wherein the method is capable of detecting testosterone at concentrations of less than 10 ng/dL in the sample." Ex. F ('862 patent file history) at QUESTMS-00002851, -2853. In addressing the Ong reference, Quest argued: "Thus, even if it is assumed that the cited portion of Ong teaches detection of testosterone in biological samples lower limits of quantitation <u>approaching</u> 0.1 ng/mL (which Applicant does not concede), Ong still does not provide any reasonable expectation that testosterone could be detected in biological samples at levels <u>below</u> 0.1 ng/mL (or 10 ng/dL) as required in the instant claims." Ex. F ('862 patent file history) at QUESTMS-00002858 (emphasis in original). In response, the examiner did not maintain the rejection over Ong (Ex. F ('862 patent file history) at QUESTMS-00002962–2974) and went on to allow the claims to issue (QUESTMS-00003009).

42.     When Quest amended claims 1 and 15 (original claims 13 and 29) to add the phrase "capable of detecting testosterone . . ." it told the patent office: "Claim 13 has also been amended to specify that the claimed methods are capable of detecting testosterone at concentrations of less than 10 ng/dL. Support for this detection limit is found, e.g., in the Specification at paragraph [0030]." Ex. F ('862 patent file history) at QUESTMS-00002855. The paragraph of the application Quest cited, [0030], became the paragraph starting at column 5 line

████████████████

50 and ending at column 6 line 3 of the '862 patent. *Compare* Ex. F ('862 patent file history) at QUESTMS-00002615–16 *with* Ex. B ('862 patent) at 5:50–6:3. That passage is *not* one of the examples in the patent that identified a specific meaning, i.e. LOD in Example 4, LOQ in Example 5, or assay specificity in Example 8. As I address below, the passage does not otherwise identify any specific meaning that should apply the claimed phrase "capable of detecting testosterone . . . ."

43.     When identifying paragraph [0030] as support for the phrase "capable of detecting testosterone . . .", Quest referred to that phrase as a "detection limit," reinforcing my opinion that a person of skill in the art would consider the patent's discussion of "Limit of Detection" to be one possible meaning for this limitation. But application paragraph [0030] itself suggests other possible meanings as I discussed above. That passage says the methods of the invention "accurately detect testosterone," which a person of skill in the art would understand to refer to LOQ.  Ex. B ('862 patent) at 5:62–65. The passage also refers to "unambiguously detecting testosterone" and "enhanced specificity," which a person of skill in the art would understand to refer to a "specificity" determination. Ex. B ('862 patent) at 5:50–51; 5:58–62. And finally, the passage says "methods of the invention accurately detect testosterone *in samples where it is present* in concentrations of less than 50 ng/dL, less than 25 ng/dL, less than 10 ng/dL, less than 5 ng/dL, and even less than 1 ng/dL" (5:62–65), which a person of skill in the art would understand to refer to the fourth meaning—that the method is performed on a sample where the actual concentration is less than a certain value.

44.     Elsewhere in the prosecution history, the examiner and Quest referred to this limitation in various ways that support multiple meanings. In a June 14, 2011 office action, the examiner rejected original claims 22 and 23—dependent claims with a "capable of detecting

testosterone . . ." limitation (Ex. F ('862 patent file history) at QUESTMS-00002662)—as obvious over three prior art references. Ex. F ('862 patent file history) at QUESTMS-00002678. According to the examiner, the Zimmer et al. prior art reference disclosed a "limit of *quantitation*" of 0.1 µg/dL (Ex. F ('862 patent file history) at QUESTMS-00002679) and found that a "skilled artisan would have been motivated to [] use Zimmer [et] al.'s turbulent flow chromatographic method because it created a fast and high *selectivity and sensitivity* method down to 0.1 µg/dl . . ." (Ex. F ('862 patent file history) at QUESTMS-00002680).  The examiner further found that the skilled artisan "would have been motivated to decrease the *detection limit* by using this higher sensitivity and selectivity and thus determining the *lower limit of detection* based on the teachings of Zimmer et al." Ex. F ('862 patent file history) at QUESTMS-00002680.

45.     Later in the June 14, 2011 office action, the examiner compared a "capable of detecting testosterone . . ." limitation to U.S. Patent No. 7,348,137, one of Quest's earlier patents in the same family as '862 patent. Ex. B ('862 patent) at 1:12; Ex. K ('137 patent). According to the examiner, the "capable of detecting testosterone . . ." limitation was found in the claims of the '137 patent and "the section regarding the limit of detection (LOD) in Example 4 which describes the LOD is 0.6 ng/dl)." Ex. F ('862 patent file history) at QUESTMS-00002685. Example 4 regarding LOD in the '137 patent is the same Example 4 regarding LOD in the '862 patent. *Compare* Ex. K ('137 patent) at 15:4–27 *with* Ex. B ('862 patent) at 14:56–15:10.

46.     In the amendment responding to the June 14, 2011 office action, Quest argued that Zimmer was distinguishable from rejected original claims 22 and 23, which had a "capable of detecting testosterone . . ." limitation. In doing so, Quest did not indicate what specific

meaning to apply to this limitation. Instead, Quest's arguments use language that one of skill in the art would understand to refer to each of the four potential meanings I discussed above.

47.     As to the first meaning, LOD, Quest wrote: "Applicant respectfully traverses the reading of Zimmer as disclosing and enabling TFLC extraction coupled to MS/MS to achieve *detection* at levels down to 0.1 μg/dL . . . ." Ex. F ('862 patent file history) at QUESTMS-00002750. Similarly, Quest wrote that "the majority of the normal reference range for total testosterone in female human serum is at a level that was underlined undetectable by methods of the prior art." Ex. F ('862 patent file history) at QUESTMS-00002751(emphasis in original).

48.     As to the second meaning, LOQ, Quest argued there was uncertainty associated with predicting "the level at which a specific analyte (such as testosterone) could be *quantitated* via Zimmer's method . . . ." Ex. F ('862 patent file history) at QUESTMS-00002750. Quest also distinguished the Starcevic prior art references based on the "limit of quantitation" reported in Starcevic. Ex. F ('862 patent file history) at QUESTMS-00002750. Similarly, Quest argued that the Ong reference's use of testosterone is not predictive of an ability to "quantitate testosterone in a female human sample." Ex. F ('862 patent file history) at QUESTMS00002752–53.

49.     As to the third meaning, specificity, Quest distinguished the Ong reference because "Ong makes no indication that *testosterone* was detected." Ex. F ('862 patent file history) at QUESTMS-00002752. According to Quest, Ong merely indicated the analysis of "various analytes." Ex. F ('862 patent file history) at QUESTMS-00002752. A person of ordinary skill in the art would understand this language to support a meaning that requires assay specificity, i.e. that testosterone is detected instead of one of the other various analytes.

50.     As to the fourth meaning, that the concentration of testosterone in the sample used in the claimed method must actually be below a certain level (10 or 5 or 1 ng/dL), Quest

distinguished Ong based on an argument applying this meaning. Quest wrote: "the levels of testosterone *used by Ong* are in vast excess of testosterone levels found in female human samples and there is no indication that Ong's method could be successfully employed to quantitate testosterone at the requisite levels." Ex. F ('862 patent file history) at QUESTMS-00002751. Additionally, Quest wrote that "the levels of testosterone *used by Ong* are far greater than those typically found in human samples." Ex. F ('862 patent file history) at QUESTMS-00002752. Quest also argued that Ong's use of testosterone was not predictive of an ability to perform a quantitation "at testosterone levels present when taken from the female human." Ex. F ('862 patent file history) at QUESTMS-00002752–53. One of skill in the art would understand based on these Quest statements that the "capable of detecting testosterone . . ." limitation potentially referred to the actual concentration of testosterone in the sample and not a performance characteristic of the method like LOD or LOQ.

51.     As prosecution continued, both the examiner and Quest used the various potential meanings when discussing the "capable of detecting testosterone . . ." limitation. In a January 13, 2012 office action, the examiner rejected the claims based on U.S. Patent No. 7,473,560 to Soldin and referenced both Soldin's "limit of detection of testosterone" (Ex. F ('862 patent file history) at QUESTMS-00002820) and Soldin's "lower level of sensitivity" (Ex. F ('862 patent file history) at QUESTMS-00002822) i.e. LOQ. In a March 28, 2012 Request for Continued Examination, Quest called the "capable of detection testosterone . . ." limitation of claim 1 (original claim 13) a "detection limit" and referred to the similar limitations in other claims as "detection limits."  Ex. F ('862 patent file history) at QUESTMS-00002855, -2856. In that same filing, as I discussed above, Quest cited to application paragraph [0030] which one of ordinary skill in the art would understand to refer to other three possible meanings besides LOD.

52.     During prosecution, Quest also submitted two declarations from Michael P. Caulfield, one of the named inventors listed on the '862 patent regarding a purported reduction to practice before the earliest filing date of the '862 patent. Ex. F ('862 patent file history) at QUESTMS-00002806–2813, -2861–65. Noticeably absent from both declarations is any discussion of the "capable of detecting testosterone . . ." limitations. In the declarations, Dr. Caulfield attached a copy of page 18 of a Validation Summary Report that only purports to show testosterone concentrations at levels in excess of 200 ng/dL. Ex. F ('862 patent file history) at QUESTMS-00002812–13, -2865. Thus, one of skill in the art would not understand Dr. Caulfield's declaration to identify any of the four possible meanings for the "capable of detecting testosterone . . ." limitations.

53.     **Quest's Proposed Construction**. Quest's proposed "plain and ordinary meaning" construction and arguments in its opening claim construction brief further support my opinion that one of skill in the art would understand that the "capable of detecting testosterone . . ." limitations could have multiple meanings and would not know which one to apply. First, Quest's proposed construction is "the method is able to detect testosterone at concentrations below 10 ng/dL [or 5 ng/dL or 1 ng/dL] in the female human sample." Pl.'s Br. At 8–9. Quest's construction does not specify whether this limitation refers to one of various performance characteristics of the equipment used to carry out the claimed test method, i.e. LOD, LOQ, or specificity, or the way in which the method is used, i.e. on a sample with a concentration less than 10 or 5 or 1 ng/dL.

54.     In its opening brief Quest argues: "The term means exactly what it says: that the claimed methods can detect testosterone at concentrations of less than 10, 5 or 1 ng/dL in a sample . . . ." Pl.'s Br. at 9. The only support Quest cites are the claims themselves (Claims 9 &

24) the statement in the Background of the Invention section that says "Testosterone levels are much lower in females compared to males" (1:49–50) and two other passages in the specification (5:62–65 and 16:11–17:9). Quest does not cite Example 4 LOD (Limit of Detection), Example 5 LOQ (Lower Limit of Quantitation), Example 8 Assay Specificity, or any of the other passages that would identify one of various possible meanings of the phrase in question.

55.     The first passage Quest cited (5:62–65) is part of the passage (5:50–6:3) that was paragraph [0030] in the application. I addressed this passage above, specifically how neither the text of the passage nor Quest's discussion of it during prosecution inform a person of ordinary skill in the art which of the at least four possible meanings to apply.

56.     The second passage Quest cited (16:11–17:9) is Example 6 "Accuracy," which relates to statistical values Quest obtained from comparing the results of an HTLC/MS/MS assay to two other methodologies: Radioimmunoassay (RIA) and the Advia Centaur assay. The '862 patent explains that these other methodologies are "two commonly accepted testosterone assays." Ex. B ('862 patent) at 19:1–5. The '862 patent cites prior art regarding RIA as one of "[n]umerous assays for testosterone [] known to those of skill in the art." Ex. B ('862 patent) at 1:66–2:4 (citing Dorgan et al., Steroids 67: 151-8 (2002)); *see also* '862 patent at Facepage under "OTHER PUBLICATIONS" listing Dorgan et al., Measurement of Steroid sex hormones in serum: a comparison of radioimmunoassay and mass spectrometry, Steroids, 67: 151-8 (2002). As to the Advia Centaur assay, the patent attributes that assay to "Bayer Diagnostics, Tarrytown, N.Y." Ex. B ('862 patent) at 19:4–5. Thus, one of skill in the art would understand that Example 6 (16:11–17:9) was statistical data offered to show how embodiments of the '862 patent compared to prior art RIA assays and the common Advia Centaur assay offered by another company. Nowhere in Example 6 does the patent include any actual or measured concentration

██████████████████

below 10 or 5 or 1 ng/dL. Additionally, Example 6 does not identify any improvement to LOD, LOQ, or assay specificity that the patent provides over the other methodologies. Thus, Example 6 would not inform one of skill in the art which of various possible meaning the claimed phrases "capable of detecting testosterone . . ." should have.

57.    **Quest's Infringement Contentions**. Quest's infringement contentions for the '862 patent also support my opinion that one of skill in the art would understand that the "capable of detecting testosterone . . ." limitations could have multiple meanings and would not know which one to apply. With regard to the "capable of detecting testosterone . . ." limitation of claim 1, ████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████.

58.    For claim 9, which recites "capable of detecting testosterone at concentrations of less than 1 ng/dL in the sample", █████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ This suggests that one meaning Quest has given to the "capable of detecting testosterone . . ." phrase is the fourth meaning, i.e. a sample with less than 1ng/dL is used in the method. In the very next sentence,

██████████████████

however, ███████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████. Thus, in formulating its contentions, Quest itself

mixed the at least four possible meanings that a person of ordinary art would recognize from the

intrinsic evidence.

59.     Therefore, the phrases "capable of detecting testosterone at concentrations of less

than 10 [or 5 or 1] ng/dL in the sample" are indefinite because there are at least four possible

meanings and one of ordinary skill in the art would not know which meaning would apply. In

sum, a person of ordinary skill in the art would not know with reasonable certainty the scope of

the claimed invention in light of the specification and prosecution history.

    **B.      "ionizing" and "testosterone ions"**

60.     Turning next to the terms "ionizing" and "testosterone ions" of claims 1 and 15 of

the '862 patent, the patent uses these terms in an inconsistent and confusing way that renders

their use in the claims nonsensical. The patent specification defines "ionizing" in accordance

with its ordinary meaning and uses it through the specification in this way. In the claims,

however, the patent uses ionizing in a nonstandard way that nonsensically includes a separate

fragmenting step.

61.     The '862 patent specification defines "ionizing" to mean "the process of

generating an analyte ion having a net electrical charge equal to one or more electron units." Ex.

B ('862 patent) at 8:45–47. One of skill in the art would understand this to be the ordinary

meaning of "ionizing." In addition, one of skill in the art would understand that this definition

means ionizing testosterone involves giving a testosterone molecule, i.e. the "analyte," a net electrical charge. The patent refers to these ions as "testosterone ions" and "precursor ions."

62.    The '862 patent defines "mass spectrometry" as "methods of filtering, detecting, and measuring ions based on their mass-to-charge ratio, or 'm/z.'" Ex. B ('862 patent) at 6:28–30. The patent explains: "In general, one or more molecules of interest are ionized, and the ions are subsequently introduced into a mass spectrographic instrument . . . ." Ex. B ('862 patent) at 6:30–35. In the '862 patent, testosterone is the molecule of interest, so a person of skill in the art would understand this passage to be consistent with the definition of "ionizing," i.e. that giving net electrical charge to a testosterone molecule produces a testosterone ion. In addition, one of skill in the art would understand based on the definition of mass spectrometry, that ionization is a process that occurs *before* testosterone ions are introduced into the mass spectrographic instrument.

63.    The patent also discusses "tandem mass spectrometry." The patent explains: "In this technique, a precursor ion or group of ions generated from a molecule (or molecules) of interest may be filtered in an MS instrument, and these precursor ions subsequently fragmented to yield one or more fragment ions that are then analyzed in a second MS procedure." Ex. B ('862 patent) at 6:63–67. Here, a person of ordinary skill would understand this to be consistent with the definitions of ionizing and mass spectrometry in that the precursor ion is generated from testosterone and then introduced into the mass spectrographic instrument for filtering and fragmenting to produce fragment ions. The patent's discussion of "tandem mass spectrometry" continues: "By careful selection of precursor ions, only ions produced by certain analytes of interest are passed to the fragmentation chamber, where collision with atoms of an inert gas occurs to produce the fragment ions." Ex. B ('862 patent) at 6:67–7:4. Again, one of ordinary

24

skill in the art would understand this to be consistent with portions of the specification I discuss above because the precursor ions created by ionizing testosterone are then passed into a fragmentation chamber where precursor ions are split into fragment ions. The patent continues by maintaining the distinction between ionization and fragmentation by explaining: "Because both the precursor and fragment ions are produced in a reproducible fashion under a given set of ionization/fragmentation conditions, the MS/MS technique can provide an extremely powerful analytical tool." Ex. B ('862 patent) at 7:4–7. Here, the patent draws a distinction between "ionizing" and "fragmenting" and explains that precursor ions are produced by ionizing and fragment ions are produced by fragmentation.

64.     The patent explains that "testosterone present in a test sample can be ionized by any method known to the skilled artisan." Ex. B ('862 patent) at 3:59–61. The patent provides examples of ionization techniques: "electron ionization, chemical ionization, fast atom bombardment, field desorption, and matrix-assisted laser desorption ionization ("MALDI"), surface enhanced laser desorption ionization ("SELDI"), photon ionization, electrospray, and inductively coupled plasma." Ex. B ('862 patent) at 7:19–24. A person of ordinary skill in the art would recognize that the patent's explanation and all the examples of ionizing techniques refer to a process for giving a net electrical charge to testosterone molecules. The patent does not discuss any example for ionizing that also include a fragmenting step or a step that splits precursor ions into fragment ions.

65.     The patent also discusses techniques for fragmenting precursor ions: "In preferred embodiments, the testosterone ion is in a gaseous state and the inert collision gas is argon or nitrogen." Ex. B ('862 patent) at 5:26–28; see also Ex. B ('862 patent) at 6:67–7:4 ("only ions

produced by certain analytes of interest are passed to the fragmentation chamber, where collision with atoms of an inert gas occurs to produce the fragment ions.").

66.     In embodiments that use tandem mass spectrometry or MS/MS, "precursor ions are isolated for further fragmentation." Ex. B ('862 patent) at 8:54–55. The patent explains that "collision-induced dissociation ("CID") is often used to generate the fragment ions for further detection." Ex. B ('862 patent) at 8:54–57. One of skill in the art would understand that here the patent is referring to the fragmentation step that occurs after the precursor ions have been generated and passed into the mass spectrographic instrument for filtering and fragmentation. The patent refers to these fragments as "fragment ions" or "daughter ions." Ex. B ('862 patent) at 2:21–23; 6:66.

67.     In Example 3, the patent provides additional detail about the process that is consistent with the distinction the patent specification has drawn between ionizing testosterone to generate precursor ions before passing those precursor ions to a mass spectrographic instrument where they are fragmented. In the mass spectrographic instrument, the first quadrupole (Q1) selects for "molecules with the mass to charge ratio of testosterone (289)." Ex. B ('862 patent) at 14:1–2. Then ions with that mass to charge ratio (289) are passed to a collision chamber Q2 where the ions "collided with neutral gas molecules and fragment." Ex. B ('862 patent) at 14:5–6. The example identifies "two fragment ions of testosterone to be measured (m/z 109.2±0.5 m/z & 96.9±0.5 m/z) . . . ." Ex. B ('862 patent) at 14:9–13.

68.     Upon reaching the claims, one of ordinary skill in the art would find that the claims combine ionizing and fragmenting into a single step. Claim 1 and 15 include as step (b) "*ionizing* said purified testosterone to produce one or more *testosterone ions* detectable by a mass spectrometer."

█████████████

69.     Dependent claims 11, 12, 19, and 20, recite additional requirements for the "ionizing of step (b)" from the independent claims 1 and 15. Dependent claims 11 and 19 recite an ionizing step (b) that "comprises producing one or more testosterone fragment ions having a mass/charge ratio selected from the group consisting of 109.2±0.5 and 96.9±0.5." Dependent claims 12 and 20 recite an ionizing step (b) that "comprises . . . effecting a collision between the isolated precursor ion and an inert collision gas to produce one or more testosterone ions detectable by mass spectrometry having m/z selected from the group consisting of 109.2±0.5, and 96.9±0.5." A person of skill in the art would understand that these limitations are directed to the separate fragmenting step described in the specification. As I discuss above, the ionizing step occurs before precursor ions are introduced into the mass spectrographic instrument. And the fragmenting step occurs inside the mass spectrographic instrument after the precursor ions have been filtered. A person of ordinary skill in the art would find no discussion in the specification of an ionizing step that both produces testosterone precursor ions and fragments them in the same step. Instead a person of ordinary skill in the art would recognize that the patent claims use of "ionizing" and "testosterone ions" is inconsistent with the ordinary and customary meaning given to those terms throughout the specification. A person of ordinary skill in the art would be unable to arrive at a workable definition of "ionizing" or "testosterone ions" that works in the context of the claims.

70.     Therefore, the terms "ionizing" and "testosterone ions" render the claims indefinite because the patent uses these terms in an inconsistent and confusing way that renders their use in the claims nonsensical. In sum, a person of ordinary skill in the art would not know with reasonable certainty the scope of the claimed invention in light of the specification and prosecution history.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2019.                    _____ French _____

                                                 Deborah French, Ph.D.

28

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST DIAGNOSTICS INVESTMENTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>LABORATORY CORPORATION OF<br>AMERICA HOLDINGS, ESOTERIX, INC., and<br>ENDOCRINE SCIENCES, INC.,<br><br>Defendants. | C.A. No. 1:18-cv-01436 (MN) |

## DECLARATION OF LEONARD J. CHYALL, PH.D.

## <u>TABLE OF CONTENTS</u>

I.      Background ..................................................................................................................1

        A.      Education and Experience .............................................................................1

        B.      Scope of Analysis and Materials Considered................................................3

II.     Person of Ordinary Skill in the Art ............................................................................4

III.    Legal Standards ...........................................................................................................6

IV.     U.S. Patent No. 8,409,862...........................................................................................6

        A.      "ionizing" and "testosterone ions" ...............................................................7

                1.      "ionizing".............................................................................................7

                2.      "testosterone ions" ............................................................................10

        B.      "capable of detecting testosterone at concentrations
                of less than 10 [or 5 or 1] ng/dL in the sample"........................................11

JURAT .................................................................................................................................19

I, Leonard J. Chyall, Ph.D., declare as follows:

1.      I have been retained as an expert witness on behalf of Plaintiff Quest Diagnostics Investments LLC ("Plaintiff" or "Quest") in connection with the above-identified action.  In this declaration, I provide scientific background information and my opinions in relation to the construction of certain claim terms from U.S. Patent No. 8,409,862 (the "'862 patent").

I.      BACKGROUND

        A.      <u>**Education and Experience**</u>

2.      I am an independent consultant and the president of Chyall Pharmaceutical Consulting, LLC ("Chyall Pharma"), which is my consulting business.  I am a Ph.D. chemist with expertise in the study of organic materials and the synthesis, characterization, and analytical testing of organic compounds.

3.      I obtained my Bachelor of Arts degree from Oberlin College in 1986, with a major in chemistry, and my Ph.D. in chemistry from the University of Minnesota in 1991.  My doctoral research focused on the synthesis and characterization of novel organic molecules, and my dissertation focused on understanding the reactivity of high-energy cyclopropane molecules. I was a postdoctoral fellow from 1992-1996 in the chemistry department at Purdue University, where I studied the properties and reactivity of organic molecules using the techniques of mass spectrometry.  My research involved both small molecular weight molecules as well as large biological molecules.  Following my postdoctoral fellowship, I worked as a research chemist at Great Lakes Chemical Corporation, which is now part of LANXESS.  My research involved the identification, characterization, and development of new products for the company.  In 2000, I joined SSCI, Inc., as a Research Investigator.  In 2003, I was promoted to Senior Research Investigator.  In 2006, SSCI was purchased by Aptuit, Inc. In 2007, I was promoted to Principal, and in 2010, I was promoted to Director.  While at Aptuit, Inc., I served as project leader and

group manager for external client projects involving various aspects of organic and analytical chemistry. I was also involved in the development of new pharmaceutical products and providing outside testing for chemical products.

4.      I have spent my career working in the fields of analytical and organic chemistry. I have extensive experience with the characterization of organic compounds using a variety of analytical techniques, including mass spectrometry.

5.      I am an author on 23 publications in peer reviewed journals and have presented 8 papers before various conferences, including multiple papers at the National Meeting of the American Chemical Society. I am named as an inventor on five U.S. patents directed to novel compounds, compositions, and crystalline materials. My publications and presentations include the application of mass spectrometry to identify and characterize organic compounds among other areas.

6.      Through my education and work experience, I have obtained extensive education and training in chemistry with specific experience in the areas of organic chemistry. I have worked on numerous projects providing research and consulting services related to the analysis of organic substances, particularly those involving pharmaceutical applications. I have directed research projects conducted on behalf of clients who were interested in quantitative determinations of the purity and contents of various products (*e.g.* assay determinations). Other projects involved determining the identity and quantity of trace levels of impurities in products and mixtures. I have also worked on research projects concerning the development of analytical methods for the preparation, characterization, and stability of solid compounds used in pharmaceutical applications.

7.      Among other techniques, I have extensive experience in the analysis of organic

compounds using mass spectrometry, including quadrupole and triple-quadrupole systems.

quadrupole ion traps, and ion cyclotron resonance ("ICR") systems. I am familiar with the

underlying technology of other mass spectrometers including sector instruments and time-of-

flight mass spectrometers. I am also familiar with techniques used in tandem mass spectrometry

(or "MS/MS") analysis, and I have published several research articles involving MS/MS

techniques.

    8.    I have extensive experience with high performance liquid chromatography

(HPLC), particularly HPLC techniques involving assay determinations of organic compounds. I

am familiar with the applications of mass spectrometry as a means of detection and quantitation

of compounds, including analytical techniques where mass spectrometry is coupled with HPLC

analysis.  I am familiar with various sample preparation techniques used for analyses involving

HPLC, MS, HPLC-MS, and HPLC-MS/MS systems.

    9.    My background and qualifications are more fully set out in my *curriculum vitae*,

which was previously filed in this matter.  (D.I. 37, at 16-20.)

    10.    I am being compensated at a rate of $500 per hour for my work on this matter.

My compensation is in no way dependent upon the outcome of this litigation.

    **B.    Scope of Analysis and Materials Considered**

    11.    I understand that the parties are in the claim construction phase of the case, during

which the Court construes certain disputed claim terms.  I have been asked to review and

respond to LabCorp's positions on the claim terms "ionizing," "testosterone ions," and "capable

of detecting testosterone at concentrations of less than 10 [or 5 or 1] ng/dL in the sample" as

used in the claims of the '862 patent, including the opinions of Dr. Deborah French offered in

support of LabCorp's positions. I have also been asked to consider and provide opinions

regarding how a person of ordinary skill in the art would understand those terms in the context of

the '862 patent.

12.     I have reviewed the '862 patent and its prosecution history.  I have also reviewed the parties' Opening and Answering Claim Construction Briefs and the exhibits thereto, including the Declaration of Deborah French, Ph.D., in Support of Defendant LabCorp's Answering Claim Construction Brief, as well as each of the references cited in this declaration. In addition to these materials, I base my opinions on my general knowledge and experience with the analysis of pharmaceutical products and their formulations, as well as my experience in mass spectrometry.

13.     The opinions that I express in this declaration are based on the information and evidence currently available to me.  I reserve the right to change, amend, and/or supplement any of my opinions as necessary, in response to new information and evidence made available to me, additional scientific analysis that leads me to conclude that supplementation is necessary, new issues that may arise, and any additional discovery, arguments, evidence, or testimony presented in this case.

14.     If called as a witness, I am prepared to testify about and explain the opinions and analysis described in this declaration (including the possible use of demonstratives), whether in a deposition, at a hearing, or otherwise.  I expect to respond, as appropriate, to assertions made by LabCorp or its experts in any declarations, or during deposition, hearings, trial, or otherwise, or to provide additional evidence or testimony.  I reserve the right to respond to LabCorp's expert's declaration(s) at a hearing or trial or, if appropriate, in a supplemental declaration.

15.     If asked, I will also be prepared to provide at a hearing or trial a tutorial on basic principles of tandem mass spectrometry, as they relate to the '862 patent.

## II.    PERSON OF ORDINARY SKILL IN THE ART

16.     I understand that claim construction is conducted from the perspective of a person

of ordinary skill in the art at the time of the invention, which, from Counsel, I understand for the '862 patent is at least August 2002. I have reviewed the definition of a person of ordinary skill provided by Quest in its opening brief and agree with the definition, which is: "someone having the knowledge of a person with a bachelor's degree in chemistry, medicinal chemistry, biochemistry, pharmaceutics, or a related discipline and at least three to four years of experience using chromatography to perform analytical assays to characterize organic and/or biological materials. The skilled person would be familiar with the application of mass spectrometry including tandem mass spectrometry in conjunction with High Performance Liquid Chromatography (HPLC) to perform those analytical assays. Alternatively, a person of ordinary skill in the art might be a person with an advanced degree (master's or doctorate) in these same fields and a lesser amount of experience, such as one to two years with a master's degree or a few months to a year with a doctorate."

17.    I have also reviewed the definition provided by Dr. French. (French Decl., ¶23.) Dr. French proposes that "a person of ordinary skill in the art for the '862 patent would have an advanced degree (e.g., M.S. or Ph.D.) in chemistry or a related discipline, such as pharmacology or biochemistry, and at least 2-3 years of experience in a clinical or research laboratory. In addition, a person of ordinary skill in the art would typically have experience with various extraction methods, mass spectrometry, and high performance liquid chromatography (HPLC), including the use of such methods for determining levels of analytes in biological samples. A person of ordinary skill in the art also would have knowledge regarding what parameters would be suitable to adopt for the optimization of extraction, HPLC, and/or mass spectrometry to meet the requirements of a particular laboratory test."

18.    I have considered each of these definitions of a person of ordinary skill in the art

in my analysis.  My analysis and opinions are the same under either definition of a person of ordinary skill in the art.

## III.   LEGAL STANDARDS

19.     I have been informed that intrinsic evidence, including the claims, the patent specification, and the prosecution history, is the best guide to construing a disputed claim term.  I have been informed that a construction that is at odds with the intrinsic evidence is generally not correct.  I have additionally been informed that courts may also consider extrinsic evidence, such as treatises, dictionary definitions, or expert opinions in construing claims, but that these extrinsic sources may not be used to vary or contradict the meaning of a term that is otherwise clear from the intrinsic evidence.

20.     I have been informed that inventors may act as their own "lexicographers" and, in so doing, may a give a specific definition in the specification.  I have been informed that if the inventors provide a specific definition for a term, that definition should control even if it is different from the way the term is generally used in the field.

21.     I have been informed that definiteness of a claim is evaluated from the perspective of a person of ordinary skill in the art and measured at the time of the patent application.  I have been further informed that for a patent claim to be indefinite, the claim when read in light of the patent's specification and the prosecution history, must fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  I have been further informed that indefiniteness must be proved by clear and convincing evidence.

## IV.   U.S. PATENT NO. 8,409,862

22.     I provided a background discussion of mass spectrometry (D.I. 37), which I incorporate herein by reference.

### A.  "ionizing" and "testosterone ions"

23.    I understand that Dr. French and LabCorp are arguing that the terms "ionizing" and "testosterone ions" are indefinite.  I disagree.  In my opinion, the '862 patent provides persons of ordinary skill in the art reasonable certainty of the meaning and scope of these terms and the claims in which they appear.  In my opinion, a person of ordinary skill would have no difficulty understanding the meaning of these terms.

### 1.  "ionizing"

24.    The specification provides an explicit definition of the term "ionizing," as follows:

> The term 'ionization' and 'ionizing' as used herein refers to the process of generating an analyte ion having a net electrical charge equal to one or more electron units.

('862 patent, col. 8, ll. 45-47.)

25.    A person of ordinary skill in the art would understand this passage broadly defines ionization to include the generation of any "analyte ion", which is a species with a positive or negative electrical charge.  Ionization refers generally to producing an analyte ion without restricting it to particular steps or where the analyte ions are generated.  This broad definition would include processes use to generate analyte ions for mass spectrometry or tandem mass-spectrometry ("MS/MS") analyses, where the "ionizing" would occur during a process where, for example, a proton ($H^+$) is added to a neutral molecule to generate an $[M+H]^+$ analyte ion.  That ion that may also be used as a precursor ion in MS/MS experiments, whereby the precursor ion is dissociated to produce a fragment ion (aka "daughter ion").  Moreover, the use of the term "analyte ion" in this definition is telling.  This definition is *not* limited to precursor ions used in MS/MS experiments.  A skilled person would understand an "analyte ion" to encompasses charged species that are generated by a variety of techniques, mass-selected, and

detected in a mass spectrometry experiment.  In tandem mass spectrometry, such as reflected in, for example, claims 11 and 12 of the '862 patent, the analyte ion is the fragment ion because it is the species that is generated, mass selected and reaches the detector of the mass spectrometer.

26.     A person of ordinary skill in the art reading the '862 patent would understand that the broad definition of "ionization" provided in the specification can include the fragmentation step of a tandem mass spectrometry experiment because it refers to "the process of generating an analyte ion."  To the extent Dr. French attempts to confine ionizing in the claims of the '862 patent to a particular type of ionization process, where it occurs, or that ionizing is a single step based on some examples in the '862 patent (French Decl. ¶¶61-67, 69), a person of ordinary skill in the art reading the entire patent would not consider such examples to limit the broad express definition.  This is because doing so would conflict with the definition's use of the word "analyte ion," as well as the words of the claims and the patent's discussion of tandem mass spectrometry.

27.     The claims of the '862 patent are also consistent with the inventors' express definition of ionizing.  Claims 1 and 15 include a step that requires "ionizing said purified testosterone to produce one or more testosterone ions detectable by a mass spectrometer."  When considering the express definition of "ionizing," a person of ordinary skill in the art would understand that step recited in the claims as encompassing the production of ions that may optionally be fragmented to other ions in MS/MS experiments.  The dependent claims then further confirm that the "ionizing" step, consistent with its definition, includes fragmentation. Claim 11, for example, states that the "ionizing" step of claim 1 (from which claim 11 depends), "comprises producing one or more testosterone fragment ions having a mass/charge ratio selected from the group consisting of 109.2±0.5 and 96.9±0.5."  Claim 11, and all of the other dependent claims that further describe the "ionizing" step (*e.g.*, claims 10, 12, 18, 19, and 20),

are consistent with the definition of "ionizing" provided in the '862 patent's specification.  A person of ordinary skill in the art would have no difficulty in understanding the scope of term "ionizing" as used in the claims, and there simply is no conflict with the broad definition of "ionizing" in the specification.

28.    I have reviewed Dr. French's Declaration and disagree with her analysis because she seemingly adopts a definition for "ionizing" that departs from the express definition in the specification.  That is, although Dr. French recognizes that the specification includes a definition for "ionizing," her analysis is more consistent with the application of the following definition (which is different from the specification's definition): "a process for giving a net electrical charge to testosterone molecules."  (French Decl., ¶64.)  This definition is much narrower than the express definition provided by the inventors of the '862 patent.  Indeed, the '862 patent's definition of "ionizing" is not limited to a process for "giving a net electrical charge," but includes any process that "generat[es] an analyte ion having a net electrical charge."  ('862 patent, col. 8, ll. 45-47.)  Dr. French's proposed definition conflicts with the express definition of "ionizing" because it disregards the use of the word "analyte ion" (she replaces it simply with "molecule").  Moreover, as discussed below, Dr. French's conclusions would be inconsistent with the '862 patent's referring to both precursor and fragment ions as ions that are detectable by mass spectrometry.  Even further, Dr. French's reference to "examples of ionization" does not support her conclusion that ionization excludes fragmentation because at least some of those methods – *e.g.*, "electron ionization" – will cause fragmentation per se.  (*See* French Decl., ¶64.)  In my opinion, all of Dr. French's analysis is based on her adoption of the narrow, incorrect definition and therefore is not a useful guide regarding the scope of the '862 patent's claims.  (*See generally* French Decl., ¶¶60-70.)

2.      "testosterone ions"

29.      I have reviewed Quest's opening claim construction brief and agree that the term "testosterone ions" should receive it's plain and ordinary meaning: "one or more testosterone molecules that have been altered to have a net electric charge or one or more fragments thereof with a net electric charge."  This construction includes both precursor and fragment ions.  I therefore disagree with the premise underlying Dr. French's analysis that "testosterone ions" only refers to precursor ions.

30.      Quest's proposed construction is consistent with the term's use in the claims and the specification.  Claim 10, for example, describes the production of testosterone ions with a mass/charge ratio of 289.1±0.5.  Then, claim 12, as a further example, describes the production of testosterone ions "having m/z selected from the group consisting of 109.2±0.5, and 96.9±0.5." These are the mass/charge ratio associated with testosterone precursor and fragment ions, respectively.  The specification explicitly describes these ions.

## TABLE 2

| Testosterone and 2,2,4,6,6-d$_5$ Testosterone ion fragments | | |
| --- | --- | --- |
| Analyte | Precursor Ion | Fragment Ions |
| Testosterone | 289.1 ± 0.5 m/z | 109.2 ± 0.5 m/z |
| | | 96.9 ± 0.5 m/z |
| 2,2,4,6,6-d$_5$ Testosterone | 294.1 ± 0.5 m/z | 113.2 ± 0.5 m/z |
| | | 99.9 ± 0.5 m/z |

('862 patent, col. 13, ll. 8-17 (Table 2).)  The specification also references both precursor and fragment ions of testosterone.  "In preferred embodiments, the *testosterone ions* detectable in a mass spectrometer include ions with a mass/charge ratio (m/z) of 289.1±0.5, 109.2±0.5, and/or 96.9±0.5, the latter two being fragments of the larger ion.  In particularly preferred embodiments,

the precursor ion has m/z of 289.1, while the fragment ions have an m/z of 109.2 and 96.9."

('862 patent, col. 2, ll. 36-41 (emphasis added).)

31.    The '862 patent provides reasonable certainty to a person of ordinary skill in the art regarding the scope of the term "testosterone ions" and the claims in which that term appears.

**B.    "capable of detecting testosterone at concentrations of less than 10 [or 5 or 1] ng/dL in the sample"**

32.    I have reviewed Quest's opening claim construction brief and agree that the term should receive its plain and ordinary meaning: "the method is able to detect testosterone at concentrations below 10 [or 5 or 1] ng/dL in the female human sample."  This is the meaning that a person of ordinary skill in the art would give this term after reading the claims, specification, and file history of the '862 patent.  A person of ordinary skill would further understand that the word "detecting" in this term includes the requirement that one can scientifically demonstrate the presence of a given substance from an experimental measurement – *i.e.*, the "signal" of the measurement – above the "noise."  In my opinion, nothing in the intrinsic evidence suggests that this term should have a different meaning.  This is the first and only logical meaning this term would have to a person of ordinary skill in the art reading the '862 patent, as Dr. French herself appears to recognize.  (French Decl. ¶33 ("the point at which a measured value is larger than the uncertainty associated with it") (quoting '862 patent at col. 18, ll. 24-28).)

33.    In my opinion, the specification of the '862 patent, beyond the clear language of the claim itself, supports giving the "capable of detecting" term its plain and ordinary meaning. The term requires a method that can "detect" testosterone at concentrations of "less than 10 [or 5 or 1] ng/dL."  The '862 patent describes how methods of this invention may detect levels below 1 ng/dL, as required by claims 9 and 24. ('862 patent, col. 5, ll. 62-65 ("[T]he methods of the

invention accurately detect testosterone in samples where it is present in concentrations of less than . . . 1 ng/dL."); col. 14, ll. 66-67 (noting that the invented method was capable of detecting testosterone to levels of "0.6 ng/dL").)  Based on the plain language of the claim and the description in the specification, a person of ordinary skill in the art would readily understand that the "capable of detecting" claim term refers to the levels of testosterone that the method is able to detect (i.e., distinguish from background or noise).

34.     I have reviewed Dr. French's declaration and LabCorp's Answering Brief and understand that Defendants argue that, despite having a first and apparently most obvious meaning, this term could have three different "possible" alternative meanings, including: (second meaning) limit of quantitation ("LOQ"), (third meaning) specificity of testosterone determination, and (fourth meaning) use of a sample taken from a female human that actually has testosterone at a concentration of less than 10 [or 5 or 1] ng/dL.  (*See* LabCorp's Answering Br. at 5.)  In my opinion, a person of ordinary skill in the art would not credibly consider any of these "possible" alternative meanings, particularly in view of the first and most logical meaning.

35.     <u>LOQ is not a reasonable meaning for this term:</u>  The lower "limit of quantitation" ("LOQ") of an analytical method refers to the lowest amount of a substance that can reliably assigned a numerical value to the amount present in the sample when analyzed by the method, *i.e.*, it is a "quantitative analysis."  The ability to perform a quantitative analysis of a given species is a different type of analysis than merely determining the presence of a substance in a sample. The ability to "detect" a substance simply answers the threshold question as to whether the material is present in the sample.  When very small amounts of a substance are present in a sample there will be limitations on how much of the analyte must be present to distinguish it from a background signal, but simply detecting the presence of the substance does not

necessarily provide a quantitative assay.

36.     Of course, if a quantitative analysis of sample can be performed on a substance of interest then that substance was detected.  However, the converse is not necessarily true.  As an example, an analytical method may refer to a lower "limit of detection" ("LOD") which describes the minimum amount of a species that can be reliably detected with that method (e.g., differentiated from a background or noise) without attributing a numerical value to the actual amount of material in the sample.  When a person of ordinary skill detects a material, he or she reliably determines that the material is present, but does not necessarily quantitate the amount of material present.  Therefore, the LOD value for an analytical method refers to least amount of the substance in a sample that may be reliably detected by that method.  Assays of the kind described in the '862 patent are capable of detecting lower levels than they can quantitate.  In other words, the LOD capability of the method will be lower than the LOQ.

37.     I understand Dr. French and LabCorp argue that parts of the specification support LOQ as a possible meaning (French Decl., ¶¶36, 37), including:

- LOQ is one of the "various parameters" that the investigators investigated (French Decl., ¶36);

- The specification states that the "methods of the invention *accurately* detect testosterone" (French Decl., ¶37 (citing '862 patent, col. 5, ll. 62-63);

38.     I disagree that those excerpts from the specification support replacing the clear meaning of this term with LOQ.  First, although the '862 patent provides information on the LOQ for the invented methods, a person of ordinary skill in the art would not believe that those descriptions regarding LOQ were incorporated into the claims that use the words "capable of *detecting"* (emphasis added).  A skilled person would understand that the words "accurately

detect" used in this context refers to the ability of the method to reliably detect the presence of testosterone and not to any particular performance criteria of the method with respect to the LOQ.

39.     I further understand Dr. French and LabCorp argue that parts of the prosecution history support LOQ as a possible meaning (French Decl., ¶¶43, 48), including:

- That Quest cited the paragraph of the specification which includes the phrase "accurately detect testosterone" as support when it added this term to the claim (French Decl., ¶43);

- That Quest, according to Dr. French, distinguished a reference by noting that there was "uncertainty associated with predicting 'the level at which a specific analyte (such as testosterone) could be quantitated via Zimmer's method . . ." (French Decl., ¶48 (citing QUESTMS-00002750));

- That Quest, according to Dr. French, distinguished Starcevic (another literature reference) "based on the 'limit of quantitation' reported in Starcevic" (French Decl., ¶48 (citing (QUESTMS-00002750)); and

- That Quest, according to Dr. French, "argued that the Ong reference's use of testosterone is not predictive of an ability to 'quantitate testosterone in a female human sample'" (French Decl., ¶48 (citing QUESTMS-00002752-53)).

40.     In my opinion, a person of ordinary skill in the art would not find that any of those aspects of the prosecution history provide a basis to interpret "capable of *detecting*" as the LOQ.  First, as mentioned above in Paragraph 39, the phrase "accurately detect testosterone" supports a plain and ordinary meaning focused on the method's ability to "detect."  A person of ordinary skill in the art would not find that the adverb "accurately" somehow transforms the focus on detection into quantitation.  Second, Dr. French's arguments based on Zimmer,

Starcevic, and Ong ignore the information provided in those references and entirely miss the actual basis for distinguishing those references. Those references referred to LOQ and did so for LOQ values much higher than the claimed detection capabilities of the '862 patent (1.00 µg/L (*i.e.*, 100 ng/dL) in Zimmer, 50 ng/dL in Starcevic, and between "over 140,000 ng/dL and 14,000 ng/dL" in Ong). (QUESTMS-00002706, 2750, 2752.) It is not surprising that with only LOQ values referenced by the art, that applicants explained that it is impossible to determine whether the methods in the literature references meet the "capable of detecting . . ." limitation of the '862 patent. Therefore, a person of ordinary skill in the art would not understand that the applicants considered LOQ as a possible meaning for "capable of detecting." Rather the skilled person would understand that the disclosed LOQ values in the literature did not provide a basis to conclude that the claimed values for the levels of *detection* were met by those references.

41.     Dr. French's and LabCorp's suggested specificity construction is not a reasonable meaning for this term: "Specificity" refers to the ability of an analytical method to attribute the measured signal to the substance of interest, and not to other materials that may be present in the sample being studied. In other words, for a method to have "specificity" the observed signal for the measurement must arise from the substance being analyzed and not from another component in the sample. It follows that a person of ordinary skill in the art cannot reliably detect or determine the quantity of a given substance if he or she cannot reliability determine that they are detecting that particular substance.

42.     Dr. French alleges that the specification supports "specificity as a possible meaning for the "capable of detecting . . ." term because the specification describes comparing daughter ion ratios as a way of differentiating between testosterone and interfering substances. (French Decl., ¶38.) Dr. French also points to a single line of the specification – *i.e.*, that the

invention "unambiguously detect[s] testosterone" (French Decl., ¶39) – as support for this possible meaning.  A person of ordinary skill in the art would not consider either of these points as evidence favoring the proposed "specificity" meaning for the term "capable of detecting." First, as described above, specificity is a characteristic of any analytical method for the detection of a particular substance, *i.e.*, a person of ordinary skill in the art cannot detect a particular substance if the analytical method is not specific for that substance.  Thus, evidence that fragment ions can be used to detect testosterone with specificity supports Quest's proposed construction (plain and ordinary meaning), but does not support an entirely separate meaning. For the same reasons, the '862 patent's ability to "unambiguously detect testosterone in a test sample" favor's Quest's plain and ordinary meaning.  A person of ordinary skill in the art would interpret that phrase merely as evidence of the method's capabilities.  Moreover, the preamble and the rest of the claim, which specifically refer to the detection of testosterone or testosterone ions already addresses this issue of specificity.  There simply is no reason a person of ordinary skill in the art would use this to alter the plain meaning of "capable of detecting testosterone at concentrations of less than 10 [or 5 or 1] ng/dL in the sample."

43.    <u>Requiring detection of testosterone in female human samples with concentrations below 10, 5, or 1 ng/dL is not a reasonable meaning for this term:</u>  A person of ordinary skill would understand that the claim term "capable of detecting . . ." refers to an assay that is able to detect testosterone at the concentrations recited in the claims.  This term certainly does not require that the samples being tested contain those recited amounts of testosterone, but that the analytical method would be *able* to detect testosterone if it were present at those amounts.  In other words, the claim concerns the performance capabilities of the analytical method for detecting testosterone and not the amounts of testosterone in the samples tested by the claimed

method.  Moreover, Dr. French's explanation appears to effectively rewrite the claim to remove the word "capable."  It is my opinion that a person of ordinary skill in the art would not understand the claim term in this manner, because it would make the word "capable" in the claims superfluous. 2. "testosterone ions"

44.     Dr. French argues in favor of this possible "actual amount" construction based on Quest's distinguishing of a reference by Ong in the file history.  Dr. French notes that Quest distinguished Ong by noting that the "levels of testosterone *used by* Ong are in vast excess of testosterone levels found in female human samples and there is no indication that Ong's method could be successfully employed to quantitate testosterone at the requisite levels."  (French Decl., ¶50 (citing QUESTMS-00002751).)  Dr. French suggests that Quest's prosecution statements, particularly the one included in that paragraph, would suggest to a person of ordinary skill that the "capable of detecting testosterone . . ." limitation "potentially referred to the actual concentration of testosterone in the sample and not a performance characteristic of the method."  (French Decl., ¶50.)  I disagree.  A person of ordinary skill in the art, after reading the prosecution history with respect to Ong, would understand that Quest was merely pointing out that Ong tested samples with much higher levels of testosterone and thus Ong could not show that that its method was capable of detecting testosterone at very low levels, *i.e.*, at concentrations of less than 10 or 5 or 1 ng/dL.  A person of ordinary skill in the art would understand that detecting testosterone at higher levels (like those in Ong – which were between approximately "140,000 ng/dL and 14,000 ng/dL" (QUESTMS-00002752)) is easier to achieve than detecting very low levels (like the claimed methods of the '862 patent).  Thus, Quest merely explained that there was no evidence supporting that Ong's method met the claim requirement that the method was "capable of detecting" such low levels of testosterone.  I agree with Quest's

explanation.

## **JURAT**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  November 8, 2019

Respectfully submitted,

*Leonard J. Chyall*

Leonard J. Chyall, Ph.D.

# EXHIBIT P

245496ruf

17        Q    Okay?

18        A    And injecting  injecting different

19   matrices.

20        Q    And there's no evidence that he performed

21   that infusion test here, correct?

22        A    Correct.

23        Q    Is it your opinion Dr. Fitzgerald that

24   Clarke uses or doesn't use derivatization of the

25   testosterone in this experiment?

139

↑

1        A    He does not use derivatization.

2        Q    And what's the basis for you're saying

3   that he doesn't use it?

4        A    The ion transitions that he monitors.

5        Q    Are those ion transitions in impossible to

6   achieve with derivatization?

7        A    Derivatization changes the structure it

8   changes the molecular weight.

9        Q    So your answer is yes those transitions

                    Page 180

245496ruf

10   would be impossible to achieve with derivatization?

11        A    I believe they would be impossible to

12   achieve.

13        Q    On let's see the top of page 2 talks about

14   the lower limit of quantification.  Do you see that?

15        A    I do.

16        Q    There's two lines.  And that's, you know,

17   the lower limit of quantification reported by Clarke

18   is 50 picograms per mL correct?

19        A    Yes.

20        Q    And you translate that to five nanograms

21   per did it liter, correct?

22        A    Yes.

23        Q    If we turn to paragraph 50, you talk about

24   this 50 picogram per mL and I will just read you

25   Clarke reports that they're as say, has an LOQ of 50

140

1   picograms per mL which equals 5 nanograms per

2   deciliter of detection cannot exceed the LOQ and

Page 181

245496ruf

3    thus cannot exceed 5 nanograms per deciliter, thus

4    Clarke discloses a method capable of detecting

5    testosterone at concentrations of less than ten

6    nanograms per deciliter as recited in Claim 1 do you

7    see that?

8         A    I do.

9         Q    So when you use the word capable or the

10   phrase capable of detecting, in your report here,

11   are you referring to the limit of detection?

12        A    Yes.

13        Q    Okay.  I want to turn to a different

14   section in your report now, paragraph 25, please.

15   In paragraph 25 you say before the critical date, on

16   skilled in the art knew how to optimize HPLC-MS

17   methods given the limited number of methods in the

18   system.  Do you see that?

19        A    I do.

20        Q    Then you say such variable includes

21   adjusting for the type of instrument mentation used,

22   type of extraction technique, resolution settings

23   for the instrument, volume of the sample used for

24   extraction, volume of the sample injected into the

25   HPLC-MS system, column type, and type of liquid

Page 182

245496ruf

141

↑

1    chromatography do you see that?

2        A    I do.  So.

3        Q    Did so you've listed if I'm counseling

4    right seven different variables, correct?

5        A    That sounds right.

6        Q    Are those the only seven variables that

7    one can use to optimize HPLC-MS methods?

8        A    No.

9        Q    Is there are many more, correct?

10       A    There are several that would be

11   potentially high return.

12       Q    Potentially higher return?

13       A    Potentially high return.

14       Q    Oh potentially high return.  And what are

15   those high return variables that aren't listed here?

16           MR. ALEMANNI:  Objection.  Form.

17           THE WITNESS:  One of them that's not

18   listed would be collision energy.

19       Q    Okay?

Page 183

245496ruf

20      A    But those other ones are a good summation.

21      Q    Okay so we can add to this collision

22   energy by that you mean the that was what we were

23   talking about before that's the voltage applied to

24   quadrupole two the collision cell?

25      A    Yes.

142

1      Q    Can you think of anything other than those

2   eight variables that would be in your words sort of

3   high return variables?

4           MR. ALEMANNI:  Objection.  Form.

5           THE WITNESS:  That's a reasonable

6   assessment of the variables to change.

7   BY MR. WINTNER:

8      Q    Okay.  I think in some part of your report

9   you actually refer to a variable known as the or are

10   fist potential voltage, is that the same as the

11   collision voltage or different?

12      A    That's different.

Page 184

## Other Documents

1:18-cv-01436-MN Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings et al

MEDIATION-MPT,PATENT

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Dorsney, Kenneth on 12/5/2019 at 6:01 PM EST and filed on 12/5/2019

| | |
|---|---|
| **Case Name:** | Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings et al |
| **Case Number:** | 1:18-cv-01436-MN |
| **Filer:** | Quest Diagnostics Investments LLC |
| **Document Number:** | 89 |

**Docket Text:**
**[SEALED] APPENDIX *Joint Claim Construction Appendix Volume III* by Quest Diagnostics Investments LLC. (Attachments: # (1) Exhibit H-P)(Dorsney, Kenneth)**

**1:18-cv-01436-MN Notice has been electronically mailed to:**

Adam Gahtan     agahtan@fenwick.com

Edward G. Poplawski     epoplawski@wsgr.com, labrown@wsgr.com, twilliamsdavis@wsgr.com

Elizabeth B. Hagan     ehagan@fenwick.com, smcphee@fenwick.com

Eric M. Majchrzak     emajchrzak@fenwick.com, mcampion@fenwick.com

Erik J. Carlson     ecarlson@wsgr.com, anavarro@wsgr.com

Ian Robert Liston     IListon@wsgr.com, kkharris@wsgr.com, kramos@wsgr.com, rdean@wsgr.com, twilliamsdavis@wsgr.com

Kenneth Laurence Dorsney     kdorsney@morrisjames.com, ippara@morrisjames.com

Kevin X. McGann     kmcgann@fenwick.com, paola.guerrero@fenwick.com

Matias Ferrario     mferrario@kilpatricktownsend.com

Melanie M. Mayer     mmayer@fenwick.com

Olivia M. Kim     okim@wsgr.com, ctong@wsgr.com

**1:18-cv-01436-MN Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/5/2019] [FileNumber=4038599-0
] [1098118a71e57739f709ad4b4d4d7e55082fd6270088cc9bda5e219db7beea51c87
7d4f09ac32d1359e1a1596be5dc57187e2096f21c26f77d534c961045f07c]]
**Document description:**Exhibit H-P
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/5/2019] [FileNumber=4038599-1
] [18ca3aaee8774eceb93da5a102d0ac32 75328df8379bdc6139e465a8d43c14d5884
234ecfe29bee8e64aa6f391216b0c57981fd0ad539a667c509402fd551572]]