**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QUEST DIAGNOSTICS INVESTMENTS LLC, | |
| Plaintiff, | C.A. No.:  1:18-CV-01436-MN |
| v. | |
| LABORATORY CORPORATION OF AMERICA HOLDINGS, ESOTERIX, INC., and ENDOCRINE SCIENCES, INC., | |
| Defendants. | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION FOR STAY PENDING RESOLUTION OF *INTER PARTES* REVIEW**

*Of Counsel*:
Edward G. Poplawski
Olivia M. Kim
Erik J. Carlson
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

Matias Ferrario
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
mferrario@kilpatricktownsend.com

Ian R. Liston (#5507)
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com

*Counsel for Defendants Laboratory Corporation of America Holdings; Esoterix, Inc.; and Endocrine Sciences, Inc.*

Dated: May 19, 2020

# <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................................. ii

I.    INTRODUCTION ............................................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

III.    SUMMARY OF ARGUMENT ........................................................................................ 3

IV.    STATEMENT OF FACTS .............................................................................................. 4

    A.    The Asserted Claims ............................................................................................. 4

    B.    The Parties' Efforts in COVID-19 Response ......................................................... 5

V.    ARGUMENT .................................................................................................................. 6

    A.    A Stay Pending IPR is Likely to Simplify the Issues For Trial ............................. 7

    B.    The Stage of Litigation Favors a Stay ................................................................... 8

    C.    A Stay Will Not Unduly Prejudice Plaintiffs or Present Clear Tactical Advantage for Defendants ................................................................................................................ 10

        1.    The LabCorp IPRs Were Timely Filed .................................................... 10

        2.    Defendants Timely Moved to Stay This Case. ......................................... 12

        3.    The Status of the IPR Proceedings Favors a Stay. ................................... 12

        4.    The Relationship of the Parties Does Not Create Undue Prejudice. .......... 13

VI.    CONCLUSION ............................................................................................................. 14

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*,
    No. 15-595-LPS, 2016 WL 6594083 (D. Del. Nov. 7, 2016)..............................................8, 14

*Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*,
    No. 15-516-LPS-CJB, 2016 WL 558615 (D. Del. Feb. 11, 2016) .........................................12

*AIP Acquisition LLC v. Level 3 Commc'ns, LLC*,
    No. 12-1688-GMS, 2014 WL 12642000 (D. Del. Jan. 9, 2014) .............................................8

*Alloc, Inc. v. Unilin Decor N.V.*,
    No. Civ. A. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ................................8

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
    No. 12-CV-1107 (GMS), 2014 WL 1369721 (D. Del. Apr. 7, 2014) ..............................11, 13

*CallWave Commc'ns, LLC v. AT & T Mobility, LLC*,
    No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015) .............................................9

*Celorio v. On Demand Books LLC*,
    No. 12-821-GMS, 2013 WL 4506411 (D. Del. Aug. 21, 2013).........................................7, 10

*Contour IP Holding, LLC v. GoPro, Inc.*,
    C.A. No. 15-1108LPS-CJB, 2016 WL 4474340 (D. Del. July 14, 2016) ..........................8, 10

*Copy Prot. LLC v. Netflix, Inc.*,
    No. 14-365- LPS, 2015 WL 3799363 (D. Del. June 17, 2015) .............................................12

*Ethicon LLC v. Intuitive Surgical, Inc.*,
    No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ...............................................13

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988)................................................................................................6

*Ever Win Int'l Corp. v. RadioShack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012)....................................................................................7, 13

*First Am. Title Ins. Co. v. Maclaren, LLC*,
    No. 10-cv-363 (GMS), 2012 WL 769601 (D. Del. Mar. 9, 2012)............................................6

*Found. Med., Inc. v. Guardant Health, Inc.*,
    No. 17-807-LPS-CJB, 2018 WL 950261 (D. Del. Feb. 15, 2018) ...........................................6

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ......................................6, 7, 10

*Novartis AG v. HEC Pharm Co.*,
183 F. Supp. 3d 560 (D. Del. 2016) (Stark, J.) ...........................................................................6

*Peschke Map Techs., LLC v. J.J. Gumberg Co.*,
40 F. Supp. 3d 393 (D. Del. 2014)..........................................................................................6, 9

*Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*,
No. 10-389-LPS, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ...................................10, 11, 13

*SenoRx, Inc. v. Hologic, Inc.*,
No. 12-173-LPS-CJB, 2013 WL 144255 (D. Del. Jan. 11, 2013) .......................................8, 13

*Sirona Dental Sys. GmbH v. Dental Wings Inc.*,
No. 14-460-LPS-CJB (D. Del. Mar. 22, 2016) ..........................................................................8

*Softview LLC v. Apple Inc.*,
No. 12-989-LPS, 2013 WL 4757831 (D. Del. Sept. 4, 2013) ....................................................6

*SunPower Corp. v. PanelClaw*,
No. 12-1633-GMS, 2014 WL 12774919 (D. Del. May 16, 2014) ...........................................11

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014)................................................................................................13

**Statutes**

35 U.S.C. § 315(b) ..............................................................................................................................11

35 U.S.C. § 315(e)(2) ...........................................................................................................................8

35 U.S.C § 316(a)(11).........................................................................................................................12

**Other Authorities**

Patent Trial & Appeal Bd., *Trial Statistics: IPR, PGR, CBM*, at 10 (Mar. 2020),
https://www.uspto.gov/sites/default/files/documents/trial_statistics_20200331.
pdf ......................................................................................................................................... 7-8

## I.   __INTRODUCTION__

Defendants Laboratory Corporation of America Holdings, Esoterix, Inc., and Endocrine Sciences, Inc. (collectively, "Defendants" or "LabCorp") hereby request that the Court stay this matter until the final disposition, including the completion of any appeals, of the currently pending *inter partes* review ("IPR") proceedings regarding the Asserted Patents.

For three of the four Asserted Patents, the Patent Trial and Appeal Board ("PTAB") has instituted IPR of all the challenged claims.  IPRs have been initiated as to U.S. Patent Nos. 8,409,862 (the "'862 Patent"), 8,101,427 (the "'427 Patent"), and 7,972,868 (the "'868 Patent") (collectively, the "Asserted Patents") asserted against LabCorp in the above-captioned case.[1]  *See* Ex. A: *Laboratory Corp. of America Holdings v. Quest Diagnostics Inv. LLC*, No. IPR2019-00738, Paper 14 (the "'862 Patent IPR"); Ex. B: *Laboratory Corp. of America Holdings v. Quest Diagnostics Inv. LLC*, No. IPR2019-01425, Paper 9 (the "'427 Patent IPR"); Ex. C: *Laboratory Corp. of America Holdings v. Quest Diagnostics Inv. LLC*, No. IPR2019-01618, Paper 12 (the "'868 Patent IPR") (collectively, the "LabCorp IPRs").  Because (a) the LabCorp IPRs will simplify issues for trial, (b) the case is still in fact discovery with trial over fourteen (14) months away, and (c) Plaintiff Quest Diagnostics Investments LLC ("Quest") will not be prejudiced, LabCorp respectfully requests a stay of the present litigation pending resolution of the LabCorp IPRs.

The potential for simplification is great in this case, and staying this action will maximize the likelihood that neither the Court nor the parties will expend additional resources addressing potentially invalid claims.  The case is at an efficient stopping point as well.  Due to the COVID-

---

[1] The PTAB did not initiate IPR with respect to U.S. Patent No. 7,972,867 (the "'the '867 Patent").  LabCorp has requested rehearing on the decision.  *See* Ex. D: *Laboratory Corp. of America Holdings v. Quest Diagnostics Inv. LLC*, No. IPR2019-01517, Paper 12.

19 pandemic, the parties have already agreed, with the Court's blessing, to extend fact discovery and related deadlines and also to reschedule the taking of depositions from certain fact witnesses. Many case milestones still lie ahead, including expert discovery, dispositive motions, *Daubert* motions, pretrial and trial, all of which will incur significant burden and costs for those involved. Unique to this matter, key witnesses for both parties are also presently involved in trying to resolve the nationwide testing crisis for the COVID-19 pandemic; a stay will further reduce burdens of litigation on these key personnel. In short, a stay would save the Court and parties substantial time and effort.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

On September 17, 2018, Quest filed this case, accusing LabCorp of infringement under the '862, '427, '867, and '868 Patents. In the months that followed, LabCorp filed a petition for IPR directed to each of the Asserted Patents.[2] IPR proceedings for three of the four Asserted Patents were instituted: (1) the '862 Patent IPR was instituted on September 4, 2019, with PTAB's Final Written Decision due on September 15, 2020; (2) the '427 Patent IPR was instituted on February 6, 2020, with PTAB's Final Written Decision due on February 7, 2021; and (3) the '868 Patent IPR was instituted on March 20, 2020, with PTAB's Final Written Decision due on March 5, 2021. Fact discovery in this case closes on July 2 2020. Fact depositions have yet to begin in light of travel disruptions caused by various COVID-19 orders. (D.I. 129 at ¶¶ 5-6.) The parties have not yet served expert reports or begun expert discovery, which is set to close on November 13, 2020. Dispositive motion briefing is approximately 7 months away, and trial is set for July 12, 2021.

---

[2] The '862 Patent IPR was filed on February 25, 2019. The '427 Patent IPR was filed on July 29, 2019. The '867 Patent IPR was filed on August 19, 2019. The '868 Patent IPR was filed on September 17, 2019. Defendants have not previously filed a motion to stay pending resolution of the IPR proceedings.

III. **SUMMARY OF ARGUMENT**

The Court should stay this case in order to permit the simplification that will come from the PTAB's review of three of the four Asserted Patents. Given the substantial likelihood that the LabCorp IPRs will streamline the issues, the Court should exercise its inherent authority to stay this case in the interests of judicial and litigant efficiency. All three factors typically evaluated when considering a request to stay weigh strongly in favor of a stay here. In addition, key witnesses from both parties are presently working on testing in response to the COVID-19 pandemic – a stay would temporarily relieve the burden of this litigation from these witnesses.

*First*, a stay will simplify the issues in this case. If the LabCorp IPRs are entirely successful, a significant portion of this case will be moot. And even if the LabCorp IPRs are only partially successful, numerous issues in this case will be reduced or simplified, with estoppel attached to certain prior art. If a stay is not issued, by contrast, the Court and the parties may undertake full fact and expert discovery and dispositive motion practice only to have at least some of the asserted claims later ruled invalid by the PTAB. With fact depositions yet to begin, and expert reports, dispositive motions, and trial still in the future, a stay will prevent unnecessary expenditure of resources by both the Court and the parties in the likely event that the LabCorp IPRs narrow and simplify many issues in this case.

*Second*, this case is still more than a year from trial. As discussed above, fact discovery has been extended by agreement of the parties and leave of the Court, with depositions yet to begin. This extension is due in part to the COVID-19 pandemic and the disruptions caused by various stay-at-home orders. Expert discovery also has yet to begin. It is therefore at a timely pausing point, where the parties' current activities will not be severely impaired but before additional expenses are incurred by moving into the next phase of the litigation.

- 3 -

*Third,* a stay will not unduly prejudice Quest or provide LabCorp with a clear tactical advantage.  Other than the '868 Patent IPR, the petitions were filed months before the one-year deadline to do so.  LabCorp did not immediately seek a stay upon filing the petitions, but instead has waited until all of the institution decisions have been put into place.  Now, LabCorp seeks this stay within two months of the last institution decision – this Court dissuades seeking stays until all applicable institution decisions are made by the PTAB.  Finally, Quest did not seek preliminary injunctive relief against LabCorp for the alleged infringement.   Any delay in litigation resulting from a stay does not alone constitute undue prejudice, and there would be no tactical advantage or disadvantage imposed by a stay in this case.

*Fourth*, as seen in the recently filed joint Stipulation for Extension of Time (D.I. 129-1), key witnesses from both parties, including an inventor on three of the patents, are directly involved in the development of testing in response to the COVID-19 pandemic.  Both parties operate laboratories on a nationwide basis, and these witnesses are at the forefront of the parties' respective responses to the pandemic.  A stay would temporarily relieve the burden of litigation on these witnesses.

## IV.   **STATEMENT OF FACTS**

### A.   **The Asserted Claims**

In its April 12, 2019 Disclosures Pursuant to Paragraph 4(c) of the Default Standard for Discovery, Plaintiff alleged infringement of claims 1–24 of the '862 Patent (directed to detection of testosterone by mass spectrometry); and claims 1–6, 9–11 of the '427 Patent and claims 9–13 of the '868 Patent (both directed to detection of Vitamin D metabolites by mass spectrometry) (collectively, the "Asserted Claims").[3]  In the '862 Patent IPR, LabCorp sought review of claims

---

[3] Quest also asserted claims 21-25, 28, and 31 of the '867 Patent.  The '867 Patent IPR was not instituted by the PTAB and LabCorp's request for rehearing is pending.  *See* n.1 *supra*.

1, 2, and 4-14; the PTAB instituted IPR on all of the challenged claims.  *See* Ex. A at 31.  In the ’427 Patent IPR, LabCorp sought review of claims 1-11; the PTAB instituted review on all of the challenged claims.  *See* Ex. B at 25.  In the ’868 Patent IPR, LabCorp sought review of claims 1, and 9-14; the PTAB instituted review on challenged claims 9-14.[4]  This means that for the patents subject to IPR, nearly all of the Asserted Claims are subject to review by the PTAB, including all asserted claims from the ’427 and ’868 Patents.  A summary is below:

| Patent | Asserted Claims | Claims Subject to IPR |
|---|---|---|
| ’862 Patent | Claims 1-24 | Claims 1, 2, 4-14 |
| ’427 Patent | Claims 1-6, 9-11 | Claims 1-11 |
| ’868 Patent | Claims 9-13 | Claims 9-14 |

Quest’s preliminary infringement contentions were served before the benefit of discovery.  Now that technical documents have been produced, those documents show that the accused tests do not employ High Turbulent Liquid Chromatography (HTLC), which is an element in claims 3 and 15-24 of the ’862 Patent and claim 7 of the ’427 patent.  Thus, virtually all of the Asserted Claims likely to be at issue at trial are being considered in the instituted IPRs.

### B.       The Parties’ Efforts in COVID-19 Response

In the Stipulation for Extension of Time, Quest explained that Dr. Nigel Clarke, “a Quest employee who is a named inventor on three of the four patents in suit, and Quest’s Rule 30(b)(6) designee for technical topics related to all four patents, is fully committed on an emergency basis to Quest’s COVID-19 response, and has been since the crisis began.”  (D.I. 129-1 at ¶ 8.) Similarly, LabCorp explained that Drs. Russ Grant and Brett Holmquist, “both LabCorp

---

[4] Prior to institution, Quest disclaimed claim 1 of the ’868 patent.

employees with knowledge of the technologies at issue in the case, are directly involved with LabCorp's COVID-19 testing efforts, including development" of testing.  (*Id.* at ¶ 8.)  As a result, the parties agreed that these witnesses, including Quest's key employee and Rule 30(b)(6) designee, are "unavailable for deposition for the foreseeable future." (*Id.* at ¶ 8.)

## V.   **ARGUMENT**

District courts have inherent authority to control the disposition of the cases on its docket, including the discretion to stay judicial proceedings pending IPR.  *See First Am. Title Ins. Co. v. Maclaren, LLC*, No. 10-cv-363 (GMS), 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988).  Whether to stay litigation pending IPR is a matter left to the Court's discretion.  *See Novartis AG v. HEC Pharm Co.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016) (Stark, J.); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *1 (D. Del. July 2, 2013).  Delaware courts have consistently granted stays of pending IPR during the discovery period.  *See, e.g., Peschke Map Techs., LLC v. J.J. Gumberg Co.*, 40 F. Supp. 3d 393, 396 (D. Del. 2014) (granting IPR stay during ongoing discovery); *Softview LLC v. Apple Inc.*, No. 12-989-LPS, 2013 WL 4757831, at *2 (D. Del. Sept. 4, 2013) (granting IPR stay after fact discovery and Markman).

In exercising their broad discretion, courts typically consider three factors in a stay analysis: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Found. Med., Inc. v. Guardant Health, Inc*., No. 17-807-LPS-CJB, 2018 WL 950261, at *1 (D. Del. Feb. 15, 2018). Here, each factor supports a stay.

### A.       A Stay Pending IPR is Likely to Simplify the Issues For Trial

A stay to allow the PTAB to complete the LabCorp IPRs will result in a simplification of issues as nearly all of the Asserted Claims from three of the four Asserted Patents are subject to review.   "Whatever outcome occurs [in an IPR proceeding], there is the potential for the simplification of issues for trial, either by reducing the number of claims at issue, confirming the validity of the surviving claims, or narrowing the scope of a modified claim." *Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503, 505-06 (D. Del. 2012).

No matter the outcome of an IPR, "the results of the reexamination proceeding will aid in simplifying or eliminating the overlapping issues before the court…[i]ndeed, even if the PTO were to ultimately confirm all of the claims, the court would likely benefit from the expert analysis the PTO conducts, thus further simplifying the issues before the court." *Celorio v. On Demand Books LLC,* No. 12-821-GMS, 2013 WL 4506411, at *1 n. 1 (D. Del. Aug. 21, 2013). Courts in this District have, in fact, articulated specific ways a PTO proceeding can simplify issues for the district court, including consideration of prior art by the PTAB with its particular expertise, the potential to encourage settlement, and reduction of costs. *See Neste Oil OYJ*, 2013 WL 3353984, at *4.   While LabCorp acknowledges that a fourth patent (the '867 Patent) in the case is not subject to an IPR, a stay to allow the other IPR proceedings to complete will still result in significant savings; for example, the '867 Patent addresses similar subject matter as the '427 and '868 Patents (*i.e.*, detection of Vitamin D metabolites by mass spectrometry).

Here, resolution of the LabCorp IPRs will simplify the issues before the Court.  As 80% of the PTAB's final written decisions find some or all claims unpatentable – with 62% finding all claims unpatentable – there is a strong likelihood that any claim the PTAB decides to review will be cancelled or modified, streamlining the issues for this Court and the parties. *See* Patent Trial & Appeal Bd., *Trial Statistics: IPR, PGR, CBM*, at 10 (Mar. 2020),

https://www.uspto.gov/sites/default/files/documents/trial_statistics_20200331.pdf.   Therefore, a ruling on LabCorp's IPRs by the PTAB will reduce, or indeed moot, issues that the Court otherwise have to decide regarding fact and expert discovery, and dispositive motions.  *See Alloc, Inc. v. Unilin Decor N.V.,* No. Civ. A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003).  Even in the very unlikely event that no claims are found invalid by the PTAB, the Court will have the benefit of the Patent Office's analysis, performed by subject matter experts, that may eliminate certain pieces of prior art from the instant litigation.  *See 454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, No. 15-595-LPS, 2016 WL 6594083, at *3 (D. Del. Nov. 7, 2016).

Finally, estoppel principles may narrow the invalidity defenses for presentation at trial, including from raising validity challenges "on any ground that the petitioner raised or reasonably could have raised during that inter partes review."  35 U.S.C. § 315(e)(2); *see also Sirona Dental Sys. GmbH v. Dental Wings Inc.*, No. 14-460-LPS-CJB, at *10-12 (D. Del. Mar. 22, 2016); *AIP Acquisition LLC v. Level 3 Commc'ns, LLC*, No. 12-1688-GMS, 2014 WL 12642000, at *2 (D. Del. Jan. 9, 2014).  That estoppel may limit the issues and evidence that can be presented at trial, and the parties and the Court would surely recognize cost and time savings as a result.

For all the reasons stated above, the simplification factor weighs in favor of a stay.

**B.    The Stage of Litigation Favors a Stay**

Staying a case in its early stage advances judicial efficiency and prevents the court and the parties from expending resources on claims that may be rendered invalid.  *See Contour IP Holding, LLC v. GoPro, Inc.*, C.A. No. 15-1108LPS-CJB, 2016 WL 4474340, at *3 (D. Del. July 14, 2016).  This factor examines the extent to which "the most significant case events…are in the future, not the past."  *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013).

- 8 -

With fact discovery not closing until July 2020, and fact depositions still to come, this is an appropriate stage of the case to enter into a stay while the LabCorp IPRs are decided. No depositions have yet been conducted, and as discussed above, three key witnesses, including Quest's Rule 30(b)(6) designee on technical topics – and the inventor of three of the four Asserted Patents – are heavily burdened by their respective roles in the response to COVID-19 and will not be available for depositions in the immediate timeframe.[5] Expert discovery has not yet started. Dispositive motions are not due until the end of the year; there will be no sunk costs in such briefing in light of a stay. And the parties have already stated that they "agree to reassess the situation by June 26, 2020, and to provide a status update to the Court at that time," which suggests the potential for further delay is likely. Courts in this district have found the stage of the litigation favored stays in cases where parties were still in a similar stage of discovery as they are here. *See, e.g., CallWave Commc'ns, LLC v. AT & T Mobility, LLC*, No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (granting a stay, finding the stage of litigation favored a stay where few depositions had been taken and expert discovery had not yet begun); *Peschke Map Techs.*, 40 F. Supp. 3d at 396 (granting a stay pending IPR despite that fact discovery and the Markman briefing were complete and trial set for later in the year).

Thus, because fact discovery is still ongoing and expert discovery has yet to begin, the Court and parties will be able to realize significant benefits from a stay by avoiding the potentially needless cost and effort of continuing to litigate issues relating to the Asserted

---

[5] Recently, a court in the Central District of California found that impacts of the COVID-19 pandemic on the schedule, including possible delays to hearings and trials, is "a relevant consideration" to this factor. Ex. E, *DivX, LLC v. Netflix, Inc.*, No. CV19-1602 PSG, slip op. at 5 (C.D. Cal. May 11, 2020). As the COVID-19 pandemic has already impacted this case from a scheduling perspective, and will continue to do as key personnel from each party works on testing responses, the pandemic is certainly relevant to the stage of these proceedings.

Patents.  In addition, a stay at this stage would alleviate specific burdens on specific employees who are critical to both party's COVID-19 response and the issues in this matter.

Accordingly, the stage of the case weighs in favor of a stay.

**C.    A Stay Will Not Unduly Prejudice Plaintiffs or Present Clear Tactical Advantage for Defendants**

A stay in this litigation will not unduly prejudice Quest.  To the contrary, a stay would allow the parties, including Quest, to avoid the burden of duplicative, needless proceedings as set forth above.  Indeed, the LabCorp IPRs present a strong likelihood of eliminating multiple claims, or even one or more patents, from this case, significantly simplifying the issues and disputes for the parties and the Court.

Mere delay in litigation "does not, by itself, establish undue prejudice."  *Neste Oil OYJ*, 2013 WL 424754, at *2 (emphasis in original); *see also Celorio*, 2013 WL 4506411, at *1 n.1 ("[T]he mere possibility of resulting delay is not dispositive and is insufficient to establish that a party will be 'unduly' prejudiced." (citation omitted)).  In evaluating the potential prejudice of a stay, this Court has analyzed four factors: "(1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceeding; and (4) the relationship of the parties."  *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, No. 10-389-LPS, 2014 WL 3819458, at *4 (D. Del. Jan. 15, 2014); *Contour*, 2016 WL 4474340, at *4.

Balancing these factors, the potential prejudice of a stay (or lack thereof) also favors granting the requested partial stay.

**1.    The LabCorp IPRs Were Timely Filed.**

"The more diligent a defendant is in seeking *inter partes* review, the less likely it is that the non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the IPR petition to be a dilatory tactic."  *Bonutti Skeletal Innovations, L.L.C. v. Zimmer*

- 10 -

*Holdings, Inc.*, No. 12-CV-1107 (GMS), 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014). Here, LabCorp was unquestionably diligent, as all but one of the LabCorp IPRs were filed well-within the one-year statutory deadline:

- The '862 Patent IPR was filed on February 25, 2019, five months after the date of the Complaint.

- The '427 Patent IPR was filed on July 29, 2019, ten months after the date of the Complaint.

- LabCorp's petition directed to the '867 Patent, which was not instituted, was filed on August 19, 2019, eleven months after the date of the Complaint.

- The '868 Patent IPR was filed on September 17, 2019, one year after the date of the Complaint.

Trial before the PTAB for the '862 patent was instituted on September 4, 2019; the '427 patent was instituted on February 6, 2020; and the '868 patent was instituted on March 20, 2020.

Courts in this District have consistently granted stays pending IPR when defendants have filed their petitions within the one-year timeframe provided by 35 U.S.C. § 315(b). *See, e.g., SunPower Corp. v. PanelClaw*, No. 12-1633-GMS, 2014 WL 12774919, at *3 (D. Del. May 16, 2014) (filing IPR one day before statutory expiration date was not dilatory); *Princeton Dig. Image*, 2014 WL 3819458, at *4-5 (granting stay where the defendant filed the IPR petition "almost a year to the day after Plaintiff filed the initial Complaint against it"); Ex. F: *MAX Int'l. Converters, Inc. v. Iconex LLC*, C.A.. No. 18-1412 (D. Del. Mar. 18, 2020) (J. Noreika) (Tr. at 19) (finding that defendant "acted with dispatch" in filing IPR petitions eight (8) months into the statutory period). The LabCorp IPR petitions were filed within the statutory time limit, and were therefore timely. This factor weighs in favor of granting a stay.

**2.      Defendants Timely Moved to Stay This Case.**

LabCorp timely filed this motion.  The institution decision on the final, pending petition for IPR (the '868 Patent IPR) was entered by the PTAB on March 20, 2020.  Courts in this District do not favor stays of litigation prior to an institution decision by the PTAB. *See Copy Prot. LLC v. Netflix, Inc.*, No. 14-365- LPS, 2015 WL 3799363, at *1 (D. Del. June 17, 2015) ("Generally, 'the "simplification" issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review.'" (quoting *Freeny v. Apple Inc.*, No. 2:13-cv-00361-WCB 2014 WL 3611948, at *2 (E.D. Tex. July 22, 2014))); *see also Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC*, No. 15-516-LPS-CJB, 2016 WL 558615, *2 (D. Del. Feb. 11, 2016).  And in the interim period between the final institution decision and the filing of this motion, the COVID-19 pandemic arose.  LabCorp therefore properly waited to file this motion until after the PTAB's decision to institute review, and was diligent in preparing and filing this request for stay in the present circumstances.

Additionally, Defendants do not seek this stay for an inappropriate tactical advantage, as Defendants have moved for a stay only after the Board's decision finding a reasonable likelihood that nearly all of the Asserted Claims from three of the four Asserted Patents in this litigation are invalid. See Exs. A-C.  Accordingly, LabCorp timely filed the instant motion.

This factor weighs in favor of granting the stay.

**3.      The Status of the IPR Proceedings Favors a Stay.**

Here, three LabCorp IPRs – addressing nearly all Asserted Claims from three of the four Asserted Patents – have been instituted by the PTAB.  Congress has mandated that, absent good cause, the PTAB must generally render a final determination within one year of its decision to institute.  35 U.S.C § 316(a)(11).  The latest IPR institution decision is March 20, 2020, which means that the final written decisions for each of the three IPRs will be available by March 20,

2021, four months before trial.  Thus, unlike in other cases where a motion to stay has been made before the PTAB has decided to institute review, the PTAB in this case has already found that affected claims are likely invalid and the proceedings in the PTAB will be largely complete prior to the scheduled trial date.  *See, e.g.*, *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *5. Therefore, the expeditious nature of IPR proceedings weighs in favor of a stay.  Furthermore, "the mere possibility of a delay in litigation due to a stay pending reexamination is in itself insufficient to establish undue prejudice."  *Bonutti*, 2014 WL 1369721, at *4.

   This factor thus weighs in favor of a stay.

    **4.**  **The Relationship of the Parties Does Not Create Undue Prejudice.**

   While courts have recognized that, when the parties are direct competitors, there is a "reasonable chance" delay will negatively impact the party alleging infringement (*SenoRx*, 2013 WL 144255, at *7), in this case there is reason to believe that a stay will not cause such outsized harm.  Any alleged harm due to the competitive nature of the parties is undermined by Quest's failure to seek a preliminary injunction. *See Ever Win*, 902 F. Supp. 2d at 511 ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not a severe as it contends."); *see also Ethicon LLC v. Intuitive Surgical, Inc*., No. 17-871-LPS, 2019 WL 1276029, at *2-3 (D. Del. Mar. 20, 2019) (implementing a stay despite the competitive position of the party because, *inter alia*, plaintiff did not seek a preliminary injunction); *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (finding that, although plaintiff had "rational reasons" for not seeking a preliminary injunction, "the fact that it was not worth the expense to ask for this remedy contradicts VA's assertion that it needs injunctive relief as soon as possible").

   Finally, the fact that LabCorp and Quest are national laboratory testing companies also weighs in favor of a stay.  A stay here does not prejudice Quest, rather, the stay would allow both

parties to dedicate their resources, including critical witnesses, to meeting this country's testing needs.

Accordingly, this factor also favors a stay or is, at worst, neutral.[6]

## VI.    <u>CONCLUSION</u>

Because all relevant factors strongly weigh in favor of a stay, the Court should grant LabCorp's motion and stay this action in its entirety until final disposition, including the completion of any appeals, of the LabCorp IPRs discussed herein.

Dated:  May 19, 2020

*Of Counsel*:

Edward G. Poplawski*
Olivia M. Kim*
Erik J. Carlson*
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com

Matias Ferrario*
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
mferrario@kilpatricktownsend.com

*Added Pro Hac Vice

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI, P.C.

*/s/ Ian R. Liston*
Ian R. Liston (#5507)
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 304-7600
iliston@wsgr.com

Counsel for Defendants Laboratory Corporation of America Holdings; Esoterix, Inc.; and Endocrine Sciences, Inc.

---

[6] Even if the Court finds that this factor weighs against a stay, because the other three undue prejudice subfactors favor a stay, the Court should nevertheless find, as it has in other cases, that the overall undue-prejudice factor favors a stay. *See, e.g., 454 Life Scis.*, 2016 WL 6594083, at *6 ("As three of the subfactors weigh in favor of a stay, and one weighs against a stay, the Court finds that the 'undue prejudice' factor favors a stay.").